UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.fslb.uscourts.gov

In re:                                            Chapter 11

FONTAINEBLEAU LAS VEGAS                            Case No. 09-21481-BKC-AJC
HOLDINGS, LLC, ET AL.,[1]

          Debtors.                           (Jointly Administered)
_____/

## MOTION TO TRANSFER VENUE TO THE DISTRICT OF NEVADA

Movants,[2] holders of mechanics' and materialmens' liens in excess of $111,000,000.00 against the Fontainebleau Las Vegas (collectively "Movants" or "M&M Lienholders"), by and through their counsel, the law firms of Gordon Silver and Shraiberg, Ferrara & Landau, P.A. hereby respectfully submit their Motion To Transfer Venue To The District Of Nevada (the "Motion") in the above-captioned bankruptcy cases (the "Chapter 11 Cases"), seeking entry of an order transferring these Chapter 11 Cases to the unofficial Southern Division of the District of Nevada.

This Motion establishes the need for transfer on the following grounds: (1) venue of these Chapter 11 Cases in the Miami Division of the Southern District of Florida is improper under 28 U.S.C. § 1408 and consequently, these Chapter 11 Cases must be transferred pursuant to Rule 1014(a)(2) of the Federal Rules of Bankruptcy Procedure; and (2) alternatively, pursuant to 28 U.S.C. § 1412 and Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure, in the interest

_____

[1] *In re Fontainebleau Las Vegas Holdings, LLC*, Case No. 09-21481-BKC-AJC, *In re Fontainebleau Las Vegas, LLC*, Case No. 09-21482-BKC-AJC, and *In re Fontainebleau Las Vegas Capital Corp.*, Case No. 09-21483-BKC-AJC.

[2] The full names and face amount of mechanics' materialmens' liens is attached hereto as Exhibit "A." It further anticipated that Exhibit "A" will be supplemented as additional mechanics' and materialsmens' lienholders join the movant group.

of justice and for the convenience of the parties, these Chapter 11 Cases should be transferred to the unofficial Southern Division of the District of Nevada.

This Motion is based on the points and authorities contained herein, the <u>Declaration Of Gregory E. Garman In Support Of Motion To Transfer Venue To The District Of Nevada</u> (the "Garman Declaration") and the <u>Declaration of Dallin T. Wayment In Support Of Motion To Transfer Venue To The District Of Nevada</u> (the "Wayment Declaration"), both filed concurrently herewith, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and the argument of counsel entertained by the Court at the time of the hearing of the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTORY STATEMENT

An objective analysis of Debtors'[3] pleadings demonstrates that their assets, operations, books and records, employees, and the overwhelming bulk of creditors are located in Nevada. As set forth herein, Debtors' have made judicial admissions that their principal place of business is Las Vegas, Nevada, By contrast, Debtors have no connections to the Southern District of Florida, other than the residences or office space of Misters Karawan, Soffer, and Kotite.

Contrary to what Debtors cleverly infer, the obscurely-presented "Board of Managers" are not the managers of any Debtors.  As reflected in Exhibit "A" to the <u>Declaration of Howard C. Karawan in Support of Debtors' Chapter 11 Petitions and First Day Motions</u> (hereinafter the "Karawan Declaration"), Fontainebleau Resorts, LLC ("FBR"), a Delaware company that is not a Debtor in these Chapter 11 Cases, is the sole member of Fontainebleau Resort Holdings, LLC, another Delaware company that is not a debtor in these Chapter 11 Cases.[4] Fontainebleau Resort

---

[3] Debtors are collectively defined as Fontainebleau Las Vegas Holdings, LLC ("Resort Holdings"), Fontainebleau Las Vegas, LLC ("Resort"), and Fontainebleau Las Vegas Capital Corp. ("Capital")

[4] Karawan Declaration, Exhibit A (Case No. 09-21481-BKC-AJC, Docket No. 5); <u>see</u> <u>also</u> Garman Declaration, Exhibits 1 and 2.

Holdings, LLC is turn the sole member of Fontainebleau Resort Properties I, LLC, a Delaware limited liability company identifying the address of its management to the Nevada Secretary of State as 2827 Paradise Road, Las Vegas, Nevada.[5]  Fontainebleau Resort Properties I, LLC, is in turn the sole member of Resort Holdings, which is then the sole manager of the other two Debtors, Resort and Capital.[6]  Though the Karawan Declaration asserts that FBR is headquartered in Miami, Florida,[7] FBR is in fact a Delaware limited liability company which has represented to the Florida Department of State that its principal place of business is 2827 Paradise Road, Las Vegas, Nevada.[8]  Thus, no Debtor in these Chapter 11 Cases and no manager of any Debtor has any connection to Florida.  Pursuant to 28 U.S.C. § 1408 and Eleventh Circuit law, Debtors are precluded from establishing venue in Florida.

Alternatively, in the interests of justice and for the convenience of the parties this Court should transfer these Chapter 11 proceedings to Nevada pursuant to 11 U.S.C. § 1412 and Federal Bankruptcy Rule 1014(a)(1).  As established herein, these Chapter 11 Cases have everything to do with Las Vegas and nothing to do with Miami.  Of Resort's approximately 1,730 identified creditors, only 93 are located in the entire state of Florida.  By contrast, more than 700 identified creditors are in Nevada, not to mention the thousands of people employed or contracted to work on the Fontainebleau Las Vegas reside and work in Nevada.  Similarly, no member of the Official Committee of Unsecured Creditors is located in Florida.  None of the Debtors' utility providers or "Ordinary Course Professionals" are located in Florida.  None of the Movants, who hold more than $100 Million in claims secured by the Fontainebleau Las Vegas, reside in or are domiciled in Florida.

---

[5] Karawan Declaration, Exhibit A; see Garman Declaration, Exhibit 3.

[6] Karawan Declaration, Exhibit A; see also Garman Declaration, Exhibits 4 and 5.

[7] Karawan Declaration, p. 5, para. 12.

[8] See Garman Declaration, Exhibit 6 (2009 Limited Liability Company Annual Report of Fontainebleau Resorts, LLC, filed April 23, 2009 with the Florida Department of State.)

## II.

## STATEMENT OF RELEVANT FACTS

**A.**    **Debtors Are Nevada Entities Whose Sole Assets and Operations Are In Nevada.**

- Two of the Debtors - Resort Holdings and Resort - are both limited liability companies formed in and domiciled in Nevada.[9]   Debtor Capital is a Delaware corporation.[10]   No Debtor is domiciled in Florida.  In fact, in the adversary recently filed by Debtor Resort against various lenders in this Court and the prepetition suit filed by Resort against the same lenders in Clark County, Nevada, Resort admitted that its principal place of business is 2827 Paradise Road, Las Vegas, Nevada 89109.[11]

- Fontainebleau Resorts, LLC, a Delaware company that is not a Debtor in these Chapter 11 Cases, is the sole member of Fontainebleau Resort Holdings, LLC, another Delaware company that is not a debtor in these Chapter 11 Cases.[12]   Fontainebleau Resort Holdings, LLC is the sole member of Fontainebleau Resort Properties I, LLC, a Delaware limited liability company identifying the address of its management to the Nevada Secretary of State as 2827 Paradise Road, Las Vegas, Nevada.[13]   Fontainebleau Resort Properties I, LLC, is in turn the sole member of Resort Holdings, which is in turn the sole manager of the other two Debtors, Resort

---

[9] See Karawan Declaration, p. 5; see also Garman Declaration, Exhibits 4 and 5.

[10] See Karawan Declaration, p. 5.

[11] Amended Complaint for Declaratory Judgment; Specific Performance and/or Damages (*Fontainebleau Las Vegas, LLC v. Bank of America, N.A., et al.*, Adversary No. 09-01621-AJC, Docket No. 5), p. 6, para. 15 ("Fontainebleau is a Nevada limited liability company, with its principal place of business at 2827 Paradise Road, Las Vegas, Nevada 89109.  Plaintiff is also the successor by merger to Fontainebleau Las Vegas II, LLC, a Florida limited liability company."); Garman Declaration, Exhibit 7 (Amended Complaint, *Fontainebleau Las Vegas, LLC, et. al v. Bank of America, N.A., et al.*, Case No. A588636, District Court of Clark County, Nevada), p. 5, para. 13 ("Fontainebleau is a Nevada limited liability company, with its principal place of business at 2827 Paradise Road, Las Vegas, Nevada 89109").

[12] Karawan Declaration, Exhibit A (Case No. 09-21481-BKC-AJC, Docket No. 5); see also Garman Declaration, Exhibits 1 and 2.

[13] Karawan Declaration, Exhibit A; Garman Declaration, Exhibit 3.

and Capital.[14]  Though the Karawan Declaration asserts that FBR is headquartered in Miami, Florida,[15] FBR is in fact a Delaware limited liability company which has represented to the Florida Department of State that its principal place of business is 2827 Paradise Road, Las Vegas, Nevada.[16]

- The "Board of Managers" of FBR appears to have only become the Board of Managers less than 60 days before the Petition Date, when FBR filed its 2009 Annual Report with the Florida Department of State and only upon the filing its 2009 Annual Report was the Aventura, Florida address first used.[17]  Prior to the filing of the 2009 Annual Report, the manager of FBR was identified as yet another entity, Fontainebleau Equity Holdings Voteco, LLC, with its principal place of business at 2827 Paradise Road, Las Vegas, Nevada.[18]

- On June 17, 2009, the United States Trustee filed its Appointment and Notice of Appointment of Committee of Creditors Holding Unsecured Claims.[19]  Of the five unsecured creditors appointed to the Committee, two are located in Las Vegas and none are located in Florida.

- Three non-debtor affiliates of Debtors which have participated in the development of approximately 286,500 square feet of the Fontainebleau Las Vegas' retail component[20] - Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC, and Fontainebleau Las Vegas Retail, LLC (collectively, the

---

[14] Karawan Declaration, Exhibit A; see also Garman Declaration, Exhibits 4 and 5.

[15] Karawan Declaration, p. 5, para. 12.

[16] See Garman Declaration, Exhibit 6 (2009 Limited Liability Company Annual Report of Fontainebleau Resorts, LLC, filed April 23, 2009 with the Florida Department of State.)

[17] See id.

[18] See id.

[19] Appointment and Notice of Appointment of Committee of Creditors Holding Unsecured Claims (Case No. 09-21481-BKC-AJC, Docket No. 97).

[20] See Karawan Declaration, p. 4.

102045-002/Motion to Transfer Venue

"Retail Entities") - are Delaware limited liability companies.[21]  Like the rest of the Fontainebleau family of entities, each of the Retail Entities has identified 2827 Paradise Road, Fourth Floor, Las Vegas, Nevada  89109 as its address in its filings with the Nevada Secretary of State.[22]

- Fontainebleau Las Vegas, LLC has also identified its address as 2827 Paradise Road, Las Vegas, Nevada  89109 to the Clark County Assessor.[23]

- Not one of the Debtors has identified any real or personal property owned or leased in Florida by any Debtor.[24]

- Since their inception, Debtors' business has been the construction and development of the aptly named "Fontainebleau Las Vegas," located at the north end of the Las Vegas Strip in Las Vegas, Nevada, which Debtors envisioned as a signature high-end casino hotel resort with gaming, lodging, convention, and entertainment amenities.[25]

- Debtors' Consolidated Chapter 11 Case Management Summary identifies eight (8) locations from which Debtors operate.[26]  Of these eight, seven are located in Las Vegas, Nevada.  Fontainebleau Las Vegas, Debtors' principal asset, is located at 2777 Las Vegas Blvd. S., Las Vegas, Nevada, approximately 2.29 miles from the Las Vegas Bankruptcy Court.[27]  Debtors' corporate office, located at 2827 Paradise Road in Las Vegas, Nevada, is approximately 2.24 miles from the Las Vegas Bankruptcy Court.[28]  The offices of the Retail Entities are also located at 2827 Paradise Road in

---

[21] See Garman Declaration, Exhibit 8.

[22] See id.

[23] See Garman Declaration, Exhibit 9.

[24] See Debtors' Consolidated Chapter 11 Case Management Summary (Case No. 09-21481-AJC, Docket No. 36).

[25] See Karawan Declaration, p. 3.

[26] See Debtors' Consolidated Chapter 11 Case Management Summary, p. 2, item 4 (Case No. 09-21481-AJC, Docket No. 36).

[27] See Garman Declaration, Exhibit 10.

[28] See Garman Declaration, Exhibit 11.

6

Las Vegas, Nevada,[29] approximately 2.24 miles from the Las Vegas Bankruptcy Court.

- Of the Debtors' "Ordinary Course Professionals" (employed by Debtors prepetition), three are located in Las Vegas, Nevada, three are located in Los Angeles, California, and one is located in Austin, Texas.[30] *None* are located in Florida.

- Debtors have not identified *any* utility providers in Florida.[31]

**B.    Debtors' Creditors and Other Parties in Interest are Predominantly Located In Nevada.**

- Approximately 715 of Debtor Resort's creditors are located in Clark County, Nevada, while only 93 of Debtors' creditors, or 5.37%, are located in the entire state of Florida.[32] Of the 93 creditors located in Florida, 17 share the same address.[33]  In fact, of Resort's 1732 known creditors, only 62 reside or are located within 35 miles of the United States Bankruptcy Court for the Southern District of Florida.[34]

- Though Debtors failed to provide addresses for the "critical vendors" identified in the critical vendor motion, seven of Debtors' "critical vendors" are located in Las Vegas, two are in California, one is in Arizona, one in Georgia, and *none* are located in Florida.[35]

---

[29] See id.

[30] Emergency Motion for Entry of an Order Authorizing the Retention and Compensation of Certain Professionals in the Ordinary Course of Business *Nunc Pro Tunc* to the Petition Date (Case No. 09-21481-AJC, Docket No. 29).

[31] Motion by Debtors for Entry of an Order (I) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Service, (II) Deeming Utility Providers Adequately Assured of Future Payment, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance (Case No. 09-21481, Docket No. 14).

[32] See Creditor Matrix, Case No. 09-21482 (Docket No. 1), (hereinafter "Creditor Matrix").  Because Debtors have not yet filed their Schedules or Statements of Financial Affairs, the total dollar value of the debt owed to the creditors located in Nevada compared to the debt owed to creditors located in Florida is unknown.

[33] Id.

[34] See Garman Declaration.

[35] See Emergency Motion by Debtors for Entry of an Order Authorizing the Debtors to Pay Prepetition Critical Vendor Claims in the Ordinary Course of Business (Case No. 09-28481-AJC, Docket No. 99); Garman Declaration.

- The prepetition action filed by Debtor Resort against Bank of America, N.A. and other lenders (the "Lender Litigation") was commenced by Fontainebleau Las Vegas, LLC in Las Vegas, Nevada.[36]

## III.

## LEGAL ANALYSIS AND ARGUMENT

### A.    The Chapter 11 Cases Must be Transferred As Florida Is An Impermissible Venue Pursuant to 28 U.S.C. § 1408.

Absent an affiliate in bankruptcy, venue for a bankruptcy case is only proper in the district court for the district in which: (1) Debtor is a resident or (2) domiciled; (3) Debtor's principal place of business is located; or (4) Debtor's principal assets are located, for the greater of the one hundred and eighty (180) days proceeding the commencement of the bankruptcy case. 28 U.S.C. § 1408(1).   Courts have routinely held that a bankruptcy court may not retain an improperly-venued case.   See In re Newport Creamery, 265 B.R. 614, 616 (Bankr. M.D.Fla. 2001)("If venue is not proper, then the court must consider whether to dismiss the case for improper venue, or, if in the interest of justice or the convenience of the parties, transfer the case to the Rhode Island Bankruptcy Court"), citing Fed.R.Bankr.P. 1014(a)(2); In re Great Lakes Hotel Assocs., 154 B.R. 667 (E.D.Va.1992); ICMR, Inc. v. Tri-City Foods, Inc., 100 B.R. 51 (D.Kan.1989); In re Washington, Perito & Dubuc, 154 B.R. 853 (Bankr.S.D.N.Y.1993); In re Petrie, 142 B.R. 404 (Bankr.D.Nev.1992); In re Sporting Club, 132 B.R. 792 (Bankr.N.D.Ga.1991); In re Pick, 95 B.R. 712 (Bankr.D.S.D.1989).

### 1.    Debtors Are Domiciled In And Residents Of Nevada And Their Principal Assets Are Located In Las Vegas, Nevada.

Resort Holdings and Resort are indisputably domiciled in and residents of Nevada as they are Nevada limited liability companies.[37]   See Hoffman v. Bullmore et al. (In re the National

---

[36] See Garman Declaration, Exhibit 7 (Amended Complaint, p. 5, para. 13).  In its jurisdictional allegations, Resort seems to have forgotten that its principal place of business was supposed to be Aventura, Florida.  Id. ("For diversity purposes, Fontainebleau is a citizen of New York, Delaware, North Carolina, Illinois, and numerous other jurisdictions.")

[37] See Garman Declaration, Exhibits 4 and 5.

Warranty Ins. Risk Retention Group), 384 F.3d 959, 962 (8th Cir. 2004)("For years, federal courts interpreting jurisdictional and venue issues have considered a corporation's domicile to be its place of incorporation"); In re B.L. of Miami, Inc., 294 B.R. 325, 328 (Bankr. D. Nev. 2003)(finding venue proper in Nevada because it was the debtor's state of incorporation).

Additionally, the Fontainebleau Las Vegas, which is Debtors' principal asset, is located in Las Vegas, Nevada.[38] Thus, as Debtors' principal asset is located in Nevada and two of the three debtors are domiciled in Nevada (and none in Florida), venue before this Court is only permissible if Debtors' "principal place of business" is found to be located in the Southern District of Florida.

### 2. Under the Eleventh Circuit's "Total Activities" Test, Debtors' Principal Place Of Business Is Nevada

The Eleventh Circuit has clearly enunciated the test for identifying a corporation's principal place of business in the context of determining subject matter jurisdiction in diversity cases as follows:

> We have adopted the "total activities" test to determine a corporation's principal place of business. See Vareka Investments, N.V. v. American Investment Properties, Inc., 724 F.2d 907, 910 (11th Cir. 1984). This test combines the "place of activities" test and the "nerve center" test used by other circuits. Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005). Under the "place of activities" test, the location of the majority of the corporation's sales or production activities is its principal place of business Id. Under the "nerve center" test, the location of the corporate offices is generally the principal place of business. Id.
>
> The total activities test requires a somewhat subjective analysis to choose between the results of the nerve center and place of activities tests, if they differ. Toms v. Country Quality Meats, Inc., 610 F.2d 313, 315 (5th Cir. 1980)…We provided guidance as to how the district courts should balance the two tests in Sweet Pea Marine. **Where a company's activities are not concentrated in one place, a district court is entitled "to give these nerve-center-related facts greater significance" in determining principal place of business**. Sweet Pea Marine, 411 F.3d at 1247.

MacGinnitie v. Hobbs Group, LLC, 420 F.3d 1234, 1239 (11th Cir. 2005) (emphasis added).[39]

---

[38] See Consolidated Chapter 11 Case Management Summary, item 9.

[39] Similarly, if the Court were to apply Ninth Circuit authority, it could only conclude that Las Vegas, Nevada is Debtors' principal place of business. See Tosco Corp. v. Cmtys. for a Better Env't, 236 F.3d 495, 500 (9th Cir. 2001) (where a majority of a corporation's business activity takes place in one state, that state is the corporation's principal place of business, even if the corporate headquarters are located in a different

Applying the "place of activities" test as described by the Eleventh Circuit, Debtors' principal place of business is exclusively Las Vegas, Nevada. Debtors' sole significant asset - the Fontainebleau Las Vegas - is located in Las Vegas, Nevada. Debtors' sole business is the construction and development of the Fontainebleau Las Vegas, and thus any operations undertaken with regard to constructing and developing the Fontainebleau Las Vegas therefore must generally occur in Nevada. Approximately 725 of Debtors' creditors, representing most of its trade creditors, suppliers, subcontractors, and materialmen, are located in Nevada, and 715 of these are located in Clark County. Debtor Resort has even admitted in its pleadings before this Court that its principal place of business is 2827 Paradise Road, Las Vegas, Nevada 89109.[40]

Because the persons and entities with whom the Debtors conducted business on a day-to-day basis are located in Las Vegas, Nevada, as evidenced by the Creditor Matrix, any recovery actions Debtors may possess will likely relate to goods and services provided in Nevada and require application of Nevada law. Moreover, because Debtors' real property is located in Las Vegas, Nevada, any issues relating to permits will likely involve Clark County and/or the City of Las Vegas, and gaming issues will involve the State of Nevada.[41] Most importantly, the resolution of the priority of liens, which may dominate these proceedings, will be governed by unique aspects of Nevada law. See NRS Chapter 108.

Debtors' cling to the thin thread of the "nerve center" analysis through the tortured argument that "critical decisions" are made in Aventura, Florida, by a small group who are neither members or managers of any of the Debtors. As set forth above, the "nerve center"

---

state…**The "nerve center" test should be used only when no state contains a substantial predominance of the corporation's business activities**) (emphasis in original), citing Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1094 (9th Cir. 1990); accord United Computer Systems, Inc. v. AT&T Corp. et al., 298 F.3d 756, 763 (9th Cir. 2002). Thus in both the Eleventh and Ninth Circuits, courts are instructed to give greater weight to the center of a debtor's operations rather than its "nerve center."

[40] See Amended Complaint for Declaratory Judgment; Specific Performance and/or Damages (*Fontainebleau Las Vegas, LLC v. Bank of America, N.A., et al.*, Adversary No. 09-01621-AJC, Docket No. 5)

[41] Any development or sale of any part of Fontainebleau Las Vegas as condominium units will also be governed by Nevada's specific statutes relating to the development and sales of condominium units and common-interest communities. See, e.g., NRS Chapters 116, 117, 119, and 645.

analysis is disfavored where a debtor's activities are concentrated in one location,  However, under the facts at hand, even applying the "nerve center" analysis exclusively would not provide Debtors with a claim to venue in Florida.  Debtors have failed to adduce the facts necessary to show that the "nerve center" of their operations exists in Miami as opposed to Las Vegas. Debtors have neither established nor even alleged that all of the operations of the Fontainebleau Las Vegas are directed from Florida.  Debtors have not shown that a majority of managers and department heads live and work in Florida.  Debtors have not shown that negotiation of contracts with their contractors, subcontractors, and materialmen occurs in Florida.  Debtors have not shown that accounts are paid from Florida.  See Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.), 596 F.2d 1239 (5th Cir. 1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980) ("*CORCO*").  Unlike *CORCO*, this is not a case where a corporate headquarters are located in one city and a production facility directed by headquarters is located in another.  Debtors allege only that certain behind-the-scenes individuals that do not directly control the Debtors, and in fact are multiple entities removed from Debtors, make decisions in Florida.  Title 28 does not provide that the residence of an indirect principal of a company is a sufficient basis for venue. See 28 U.S.C. § 1408.

In Newport Creamery, Inc., the Bankruptcy Court for the Middle District of Florida rejected an argument made by the debtor that venue should lie in Florida because that that is where the debtor's two principal directors lived and where "strategic decisions" involving the debtor were made, an argument strikingly similar to the one Debtors make to this Court.  In re Newport Creamery, Inc., 264 B.R. 614 (Bankr. M.D.Fla. 2001).  See also In re Standard Tank Cleaning Corp., 133 B.R. 562, 564 (Bankr. E.D.N.Y. 1991) ("What constitutes the principal place of business of a corporation is a question of objective fact, not subjective intention."), citing In re Dock of the Bay, Inc., 24 B.R. 811, 814 (Bankr. E.D.N.Y. 1982); In re Hudson River Nav. Corp., 59 F.2d 971 (2d Cir. 1932).

11

It is beyond reasonable dispute that two of the three Debtors are domiciled in Nevada, their principal assets are in Las Vegas, Nevada, and their principal place of business for the requisite 180-day period preceding the date of the bankruptcy petition was in Las Vegas, Nevada Section 1408 of Title 28 and the precedent of the Eleventh Circuit thus compels a finding that Debtors' sole available venue for the Chapter 11 Cases is the District of Nevada. This Court therefore should either dismiss or transfer the Chapter 11 Cases to the District of Nevada under 11 U.S.C. § 1412 and Fed.R.Bankr.P. 1014(a)(2).

**B.      Alternatively, The Interests Of Justice And The Convenience Of The Parties Necessitate That The Chapter 11 Cases Be Transferred To The District Of Nevada.**

Even a case filed in the proper district may be "dismissed or transferred to any other district if the court determines that transfer is in the interest of justice *or* for the convenience of the parties." See Fed.R.Bankr.P. 1014(a)(1) (emphasis added).

As aptly explained by the United States Bankruptcy Court for the Eastern District of New York, the breadth of 28 U.S.C. § 1408 gives wide latitude to a prospective debtor in choosing its forum, which "wide options seed potentiality for abuse in the nature of forum shopping." See In re Pinehaven Assoc., 132 B.R. 982, 987 (Bankr. E.D.N.Y. 1991). Thus, even if Debtors' venue choice is proper and therefore is accorded appropriate deference, it is not controlling. See id.[42] "[V]enue statutes usually give a plaintiff a choice of courts '[b]ut the open door may admit those who seek not simply justice but perhaps justice blended with some harassment.' In order to curb misuse or misapplication of broad federal venue provisions, Congress enacted change of venue statutes." Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)).

---

[42] Assuming Debtors' selected venue is proper, Movant must only demonstrate by a preponderance of the evidence that the transfer of the Chapter 11 Cases to the District of Nevada is in the interest of justice or more convenient for the parties. Taca International Airlines, S.A. v. Pan Am World Airways, Inc. (In re Pan Am Corp.), 177 B.R. 1014, 1018 (Bankr. S.D.Fla. 1995), citing In re Manville Forest Products Corp., 896 F.2d 1384 (2d Cir. 1990). "Preponderance of the evidence" is not a difficult burden as it simply means that Movant must produce the greater weight of evidence or that Movant's position is more probably true than not. See In re Arnold, 252 B.R. 778, 784, n. 10 (9th Cir. B.A.P. 2000).

As 28 U.S.C. § 1412 is written in the disjunctive, a bankruptcy case may be transferred for the convenience of the parties *or* in the interest of justice.  See In re Pinehaven Assocs., 132 B.R. at 989-990.  In this case, both the interest of justice and the convenience of the parties necessitates transfer.

The decision of whether to transfer venue pursuant to 28 U.S.C. § 1412 "is within the court's discretion based on an individualized case-by-case analysis of convenience and fairness."  See In re B.L. of Miami, Inc., 294 B.R. 325, 329 (Bankr. D. Nev. 2003) (internal citations omitted).  In this instance, even if Debtors' selected venue is permissible, the Court should nonetheless transfer the Chapter 11 Cases to the District of Nevada as the current venue substantially prejudices the rights of Debtors' creditors and contravenes the interests of justice.

### 1.    The District of Nevada Is The Most Convenient Venue.

In determining whether the convenience of the parties necessitates the transfer of a bankruptcy case to an alternate venue, bankruptcy courts generally analyze the following five factors:  (1) the proximity of the creditors, both large and small, to the court; (2) the proximity of the debtor; (3) the proximity of witnesses necessary to the administration of the estate; (4) the location of the assets; and (5) the economic administration of the estate.  See In re B.L. of Miami, Inc., 294 B.R. 325, 329 (Bankr. D. Nev. 2003) (citing In re Consol. Equity Prop., Inc., 136 B.R. 261, 266 (D. Nev. 1991) (citing In re Commonwealth Oil Refining Co., 596 F.2d 1239, 1247 (5th Cir.1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980)).[43]

---

[43] See also In re Standard Tank Cleaning Corp., 133 B.R. 562, 566, n.3 (Bankr. E.D.N.Y. 1991) (explaining that although some courts list a sixth factor - the necessity for ancillary administration if liquidation should result - anticipating the "failure of the Chapter [11] proceeding is an illogical basis upon which to predicate a transfer.")

(a)        **Economic Administration of the Estate and Applicable Nevada Law.**

The economic administration of the bankruptcy estate, which encompasses factual considerations pertinent to the other "convenience" factors, is frequently considered the most important factor in the analysis.  See In re Commonwealth Oil Refining Co., 596 F.2d at 1247.  It is commonly understood that a real estate case involving a single asset can be most economically and efficiently administered in the bankruptcy court closest to its major asset and that the Chapter 11 bankruptcy case can best unfold there.  See In re Pinehaven Assocs., 132 B.R. 982, 989 (Bankr. E.D.N.Y. 1991), citing In re Pavilion Place Assocs., 88 B.R. 32 (Bankr. S.D.N.Y. 1988), In re 19101 Corp., 74 B.R. 34 (Bankr. D.R.I. 1987), In re Nantucket Apartments Assocs., 80 B.R. 154 (Bankr. E.D. Mo. 1987), In re Eleven Oak Tower Ltd. Partnership, 59 B.R. 626 (Bankr. N.D. Ill. 1986), In re Pickwick Place Ltd. Partnership, 63 B.R. 290 (Bankr. N.D. Ill. 1986), In re Old Delmar Corp., 45 B.R. 883 (Bankr.S.D.N.Y.1985), In re Developers of Caguas, Inc., 26 B.R. 977 (Bankr. E.D.N.Y. 1983), In re Landmark Capital Co., 19 B.R. 342 (Bankr. S.D.N.Y. 1982), aff'd sub nom., Landmark Capital Co. v. North Central Dev. Co. (In re Landmark Capital Co.), 20 B.R. 220 (S.D.N.Y. 1982), In re Greenridge Apartments, 13 B.R. 510 (Bankr. D.Haw. 1981).

This is particularly true in this case as numerous facets of these Chapter 11 Cases will implicate Nevada-specific law.  The disputes as to the validity and priority of the liens recorded by the secured creditors are governed by unique aspects of Nevada law, and any sale or foreclosure of the Las Vegas Property would be conducted pursuant to and governed by Nevada law.  A large number of entities have recorded deeds of trust and mechanic's liens against the Fontainebleau Las Vegas.  One of the most significant issues in these Chapter 11 Cases is likely to be the extent and priority of the mechanics' and materialmens' liens pursuant to Nevada's lien statutes codified in Chapter 108 of the Nevada Revised Statutes.  See e.g. NRS 108.225 (governing the priority of liens); NRS 108.226 (governing the perfection of a lien); NRS 108.236 (requiring a court to declare the rank of lien claimants or a class of lien claimants and governing the application of proceeds).  Additionally, NRS 108.239, entitled "[a]ction to enforce notice of

lien: Complaint; required notices; joinder of persons holding or claiming notice of lien; consolidation of actions; hearing and judgment; preferential trial setting; binding arbitration; sale of property" governs the enforcement of liens.  See NRS 108.239.

The Nevada mechanic's lien laws are more complex than those of many states.  While the mechanic's lien laws are found in NRS 108.221 to 108.246, other Nevada statutes governing construction also play a large role in determining the validity of a lien.  Nevada's construction law statutes were passed by the Nevada State Legislature to address Nevada's unique construction environment found due to the grand scale of resort/casino construction projects.  Part of the complexity of Nevada's mechanic's lien laws stems from the procedural nuances required to perfect a lien and determine priority.  Factual determines arise with respect to each requirement of the mechanic's lien statute, and evidentiary hearings are almost inevitably necessary.

First, lien claimants must provide certain notices within specific time limits to perfect a lien claim.  For example, at the beginning of a project, a contractor not contracting with the owner must provide "Notices of Right to Lien," which will relate back and secure work or materials provided 30 days prior to service of the notice.  NRS 108.245.  Significantly, in Nevada, the time of service of the Notice of Right to Lien does not alter the priority position of the lien, which may be determined months or years before a subcontractor starts work on a project.  See NRS 108.225; see also NRS 108.22112, NRS 108.22188.  Other notices that are required depend on whether a project is commercial or residential and how the property has been apportioned between parcel numbers. See NRS 108.226

The Fontainebleau Las Vegas was announced as a "mixed use property" of hotel and condominiums with additional retail space, requiring analysis of mechanic's lien issues respecting both residential and commercial properties.  Moreover, the project is currently split between two separate parcels so apportionment issues will arise.[44]  Whether proper notice was

---

[44] See Wayment Declaration, Exhibit 1 (Southern Nevada GIS parcel data).

given for each of the liens, and how the liens were apportioned between different parcels are all factual determinations that will have to be resolved, most likely in an evidentiary hearing.   The notice and apportionment issues are complicated in this matter due to the size of the Fontainebleau Las Vegas project, resulting in multiple subcontractors working under different subcontracts.   In the case before the Court, a single subcontractor may have multiple separate liens recorded on the Fontainebleau Las Vegas project, each of which will require a separate factual and legal determination.   Familiarity in applying Nevada mechanic's lien laws will be essential for determining the notice and apportionment issues for each lien claimant.

If a lien claimant's notice of lien is properly recorded, the Court's next step is to determine the proper lien amount.   To determine a lienable amount, the Court will need familiarity with the Nevada's mechanic's lien statutes, "Prompt-Pay" statutes, and "Right to Stop Work" statutes.   For example, Nevada's mechanic's lien statutes provide that claimants are able to lien for work, material or equipment that was furnished to the project, or in some cases that *will be* furnished to the project.   NRS 108.222(1).   Moreover, unlike some states, Nevada lien claimants can lien for unapproved change orders for their fair market value, plus reasonable overhead and profit.   Id.   The Right to Stop Work statutes, NRS 624.624 to 624.626, contain specific provisions that deem written change orders approved unless the higher tiered subcontractors respond in writing within 30 days.   NRS 624.624, 624.625 624.626.   Together these statutes determine the lienable amounts and proper offsets.   The issue of offsets, including allegations of defective or incomplete work, is almost always an issue of fact requiring testimony from superintendants and project managers of both the owner and the subcontractor.   Expert testimony is frequently necessary to establish whether work performed was defective or complied with the "scope of work" of the contract, and site inspections are frequently required.

In this matter, each of the M&M Lienholders will have to prove its lien, and Fontainebleau will likely argue for offsets.   Each of the M&M Lienholders will have boxes of documentary evidence (all located in Nevada) showing materials provided, work performed, and

correspondence between it and the Debtors or general contractor regarding change orders.  In some cases site inspections will be necessary.

Another issue raised by Nevada's mechanic's lien statutes, which will certainly be the most heavily litigated between the M&M Lienholders and other secured creditors in these Chapter 11 Cases, is based on the lien priority.  It bears repeating that Nevada law is unique on this issues.  For example, in Florida a lien takes priority from specific dates, the recordation of the lien claim or the recordation of the notice of commencement. Fl. Stat. 713.07(1) & (2).  In Nevada, mechanic's liens will have priority over other encumbrances, including deeds of trust, that attached after the "commencement of the construction" of the "work of improvement."  NRS 108.225(1)(a).

NRS 108.22112 defines "commencement of construction" as the date that work was performed or materials or equipment were furnished to a work of improvement.  If upon a reasonable site inspection the work performed is visible, the project is deemed to be commenced for the purposes of determining the priority date. See NRS 108.225(1)(a).

"Work of improvement" is defined by NRS 108.22188 and includes, with some exceptions, "the entire structure or scheme of improvement as a whole, including, without limitation, all work, materials and equipment to be used in or for the construction, alteration or repair of the property or any improvement thereon, whether under multiple prime contracts or a single prime contract…"  An exception is when the scheme of improvement consists of separate buildings on separate parcel numbers subject to separate prime contracts. See 108.22188.

In this matter, the mechanic's lien claimants are superior in priority over the deed of trust on the property.  According to the Title Report for the Fontainebleau Las Vegas, the deeds of trust filed by the secured lenders were recorded on June 7, 2007.[45]  Photographs of the project show that grading work was underway on February 17, 2007, cranes were on site by March 13, 2007, and steel erection had commenced by April 14, 2007.[46]  As the commencement of the

---

[45] See Wayment Declaration, Exhibit 2 (Title Report), para. 41-46.

[46] See Wayment Declaration, Exhibit 3 (dated photographs taken from Vegastodayandtomorrow.com).

102045-002/Motion to Transfer Venue

work of improvement for the Fontainebleau Las Vegas project occurred prior to the recorded deeds of trusts, and the work performed on the project prior to the deeds of trust was clearly visible based on a reasonable site inspection, the deeds of trust are subordinate to the mechanic's liens arising from the work of improvement (the Fontainebleau Las Vegas project).  See NRS 108.225.  Undoubtedly, the resolution of this issue will involve hearings involving the M&M Lienholders and other contractors who provided work to the project prior to June 7, 2007.  Both the evidence and parties are in Nevada, and Nevada courts, including the bankruptcy courts in the unofficial Southern Division of the District of Nevada, are familiar with these determinations.

In addition to the unique mechanic's lien and construction statutes applicable to these Chapter 11 Cases, Nevada has enacted a number of statutes that govern the development of condominiums and the sale of condominium units, in addition to numerous ordinances and regulations.  Thus, to the extent that Debtors' contemplated reorganization strategy may involve the incorporation of condominiums into the Fontainebleau Las Vegas, Chapters 116, 117, 119, and 645 of the Nevada Revised Statutes may be significant considerations in these Chapter 11 Cases.

The Bankruptcy Court for the Eastern District of New York succinctly described the rationale for allowing real property cases to be determined in the district in which the property is located, stating

> The state of title to and interests in the Motel, and the property of which the Motel forms a part, involve documents which are voluminous, complex, unclear and subject to significant questions.  The efficacy of deeds, secured instruments and leases pertaining to the Debtor's property will be governed by, and interpreted under, the laws of the State of Mississippi.  If the property is to be appraised, those performing the task will be real estate experts familiar with the real estate conditions and markets in Mississippi.  A Mississippi bankruptcy court could address the inevitable questions of Mississippi law and evaluate appraisals of Mississippi real property with greater ease, familiarity, and thus efficiency, than can be reasonably expected from a New York bankruptcy court.  Further, the Mississippi bankruptcy court is in a better position to render accurate and proper decisions on these questions.

18

In re Pinehaven Assocs., 132 B.R. at 990; see also In re B.L. of Miami, Inc., 294 B.R. at 333 (holding that where Florida law will be applied to issues raised within the bankruptcy case, "it is certainly more economical and efficient to have a Florida court interpret and apply its law"); Butner v. United States, 440 U.S. 48, 58 (1979) ("The federal judges who deal regularly with questions of state law in their respective districts and circuits are in a better position than we to determine how local courts would dispose of comparable issues.")

Movants are aware that this Court is more than capable of becoming knowledgeable with regard to the relevant Nevada law.  However, it is indisputable that it is most efficient and economical to have the United States Bankruptcy Court for the District of Nevada adjudicate these issues because witnesses are closer in proximity and the courts are intimately familiar with these statutory provisions which come before them on a regular basis.  Moreover, Nevada's interest in having the adversaries and additional contested matters arising under or controlled by Nevada law determined within its boarders strongly favors the requested venue transfer.  See In re Condor Exploration, LLC, 294 B.R. 370, 378 (Bankr. D. Colo. 2003)(identifying a state's interest in having local controversies decided within its borders as a significant factor), citing In re Standard Tank Cleaning Corp., 133 B.R. at 567.

**(b)    The Proximity Of The Creditors To The Court.**

As previously set forth herein, the largest group of Debtors' creditors are located in Nevada, as are the thousands of workers hired to construct the Fontainebleau Las Vegas.  If venue is not transferred, the result is that the Debtors' creditors, particularly Debtors' creditors will smaller claims, will be precluded from meaningful participation in the Chapter 11 Cases. Participation of creditors is the lynchpin of Chapter 11 reorganization.  See In re B.L. of Miami, Inc., 294 B.R. at 334.   A creditor or its counsel travelling to Miami for an argument or evidentiary hearing will be required to devote an entire day to travel.  Even the earliest flight leaving Las Vegas does not arrive in Miami until after 2:00 p.m., thereby requiring such creditor to travel to Florida the day before the hearing, obtain a hotel, and spend the remainder of the day

after the hearing traveling back to Las Vegas.[47]  While the Court may generously allow counsel to appear by phone, attorneys appearing by telephone will necessarily be disadvantaged by the medium and witnesses cannot give testimony by phone.  This Court has previously considered the convenience of travel for the parties and their personnel in determining whether to transfer venue.  Taca International Airlines, S.A., 177 B.R. at 1018-19.

Few creditors have the financial wherewithal to devote two full days to attending a hearing or alternatively to retain local counsel to appear on their behalf.  Effectively precluding the participation of the majority of Debtors' creditors is particularly unjust as such creditors reasonably expected to be able to protect their rights in Nevada because Debtors are Nevada companies that operated their business in Nevada, and because such creditors provided their goods and services within Las Vegas, Nevada.

This is not a case where an honest but unfortunate debtor, being unable to afford counsel, has sought to navigate the bankruptcy system himself and has inadvertently filed his petition in the wrong district.  Rather, these are sophisticated Debtors with substantial operations, assets, and liabilities that have retained sophisticated bankruptcy counsel, and have made a strategic decision to file their Chapter 11 Cases in an improper venue in an apparent effort to preclude their creditors from economical and meaningful participation in these Chapter 11 Cases.

### (c)    **Proximity of Witnesses**

The proximity of witnesses necessary to the administration of Debtors' estate, which includes, among others, the adjudication as to the priority of all of Debtors' secured creditors' claims, all claims objection proceedings, all adversary proceedings, all valuation and stay relief proceedings, and any contested confirmation proceedings, also favors venue in Nevada.  All of Debtors' business activities have taken place in Nevada, such that all claims pertaining to its business activities will likely require witnesses and other sources of proof that are located in Nevada.  Further, to the extent that non-party witnesses may be called upon to testify in

---

[47] See Garman Declaration, Exhibit 11.  This excludes flights during the midnight hour which arrive in Miami after 10:00 a.m.

connection with Debtors' reorganization efforts, including any contested matters and adversary proceedings, such witnesses most likely reside in Clark County, Nevada. While the Chapter 11 Cases remain in the United States Bankruptcy Court for the Southern District of Florida, the appearance of these non-party witnesses may not be compelled by subpoena. See Fed.R.Bankr.P. 9016 (incorporating Fed.R.Civ.P. 45).

**(d)    Proximity of Debtors.**

As previously set forth at length herein, two of the three Debtors are Nevada limited liability companies and the business operations of all Debtors have been conducted almost exclusively in Las Vegas, Nevada. Though Mr. Karawan, Debtors' Chief Restructuring Officer, has made clear that Miami, Florida is a more convenient location for Jeffrey Soffer, Albert Kotite, and him, the convenience of Misters Soffer, Kotite, and Karawan should not take precedence over the fair administration of these Chapter 11 Cases. Though Mr. Karawan resides in Florida, he nonetheless was able to operate the Fontainebleau Las Vegas project in Las Vegas prior to the commencement of these Chapter 11 Cases. As stated by the United States Bankruptcy Court for the Eastern District of New York, "[o]bviously, accompanying Wolpert's [debtor's key player] personal convenience at the expense of creditors and other interested parties does not advance the 'interest of justice.' Having chosen to purchase a Motel in Mississippi, the Debtor cannot be heard to complain that its Chapter 11 effort is being transferred to that location." In re Pinehaven Assocs., 132 at 990-991.

Moreover, it appears that Debtors' allegation that Florida is the center of executive activity is overstated. James A. Freeman, the Senior Vice President and Chief Financial Officer of Fontainebleau Resorts, LLC, the alleged indirect parent company of Debtors, apparently has been able to participate in these Chapter 11 Cases from Clark County, Nevada.[48]

---

[48] See Affidavit of James A. Freeman in Support of Fontainebleau's Motion for (A) Partial Summary Judgment on Liability With Respect to the March 2 Notice of Borrowing, (B) an Order Pursuant to 11 U.S.C. § 5442 Directing the Turnover of Funds to the Debtors' Estate; and (C) Expedited Filing and Consideration of this Motion, and Memorandum in Support (Adversary No. 09-01621-AJC, Docket No. 8) (executed by Mr. Freeman in Clark County, Nevada).

(e)    **Location of Assets.**

All or substantially all of Debtors' assets are located in Nevada.[49]  As explained in In re B.L. of Miami, Inc., where the debtor owns but one primary asset, "[i]t makes good sense 'to locate the bankruptcy in a venue where the judge presiding would more likely have active familiarity with the community and the milieu' in which the night club operates."  In re B.L. of Miami, Inc., 294 B.R. 323 (quoting In re Abacus Broad. Corp., 154 B.R. 682, 683 (Bankr. W.D. Tex. 1993)).  In transferring the case before it to the Southern District of Miami, the Nevada Bankruptcy Court noted that "Such a judge 'would be in a much better position to gauge the likelihood of an effective reorganization.'"  Id.

Transferring even a properly-venued case to the venue where its single principal asset is located is advisable as "[i]n bankruptcy, more than in most other kinds of federal proceedings, judges tend to draw on their experience to test the promises and platitudes floated up to the bench."  Id. at 332, citing In re Abacus Broad. Corp., 154 B.R. at 683.  "It is the judge in that community that is in the better position to judge whether the particular enterprise 'is a good candidate for reorganization…in the economic community in which it operates.'"  Id. (also citing In re Consol. Equity Prop., Inc., 136 B.R. 261, 267 (D. Nev. 1991) for the proposition that courts should consider 'any local interests' when determining venue because matters affecting real property are always of local concern).

This is particularly true where the Debtors' primary asset is real property that is located only a few blocks away from the Las Vegas Bankruptcy Court.  See id.; see also In re Standard Tank Cleaning Corp., 133 B.R. at 568.  Valuation of the property is almost inevitably a crucial and contested issue in cases involving real estate.  The court where the property is located will certainly have a better sense of property valuations and a better ability to evaluate the valuation evidence presented.  Further, if a sale of the assets becomes necessary, court supervision is easier if the sale is conducted in the district in which the property is located.  See id.  "Requiring [out of

---

[49] See Debtors' Consolidated Chapter 11 Case Management Summary (Case No. 09-21481, Docket No. 36).

22

state] experts to come to Brooklyn, New York to educate a Brooklyn bankruptcy judge as to the value of [out of state] property will impose unnecessarily great expense … and will serve neither the interest of justice, nor the convenience of the parties." Id. (quoting In re Developers of Caguas, Inc., 26 B.R. 977, 980 (Bankr. E.D.N.Y. 1983)).

The Debtors have endeavored to construct and develop a casino, but have failed to complete the project, leaving a partially completed building on the Las Vegas Strip. Unfortunately, this is not an entirely unique phenomenon in Las Vegas. Many failed casinos and real property developments have sought bankruptcy protection in the District of Nevada. The United States Bankruptcy Court for the District of Nevada is uniquely familiar with the physical property, the local economic climate, the valuation of similar properties, and the impact of gaming regulations on the restructuring or liquidation process.

### 2.    Furthering the Interests of Justice

Although 28 U.S.C. § 1412's "interest of justice" phrase is less easily defined, courts have held that this evaluation involves "a broad and flexible standard considering whether the transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness." In re Condor Exploration, LLC, 294 B.R. at 378. Other courts have emphasized that this evaluation further requires "looking into the desirability of having a judge familiar with applicable law hear and determine issues arising in the case." See In re Pinehaven Assocs., 132 B.R. 982 (Bankr. E.D.N.Y. 1991) (collecting cases). Additionally, what "generally serves the convenience of the parties will also serve the interest of justice." See In re B.L. of Miami, Inc., 294 B.R. at 334. Thus, for all of the reasons previously set forth herein, not only does the convenience of the parties necessitate the transfer of the Chapter 11 Cases to the District of Nevada, but the interest of justice independently requires the requested venue transfer.

### (a)    Interests of the Community.

Though the interests of the local community have not been expressly considered by most federal courts in deciding bankruptcy venue matters under 11 U.S.C. § 1412, this Court has considered the local interest in having local matters decided at home. Taca International

Airlines, S.A., 177 B.R. at 1018, 1019.  The substantial size of the Fontainebleau Las Vegas project and the impact of its reorganization on the local community cannot be ignored.  The State of Nevada, the City of Las Vegas, and Clark County have a vested interest in the outcome of the Chapter 11 Cases.  In its Amended Complaint filed in the Lender Litigation, Debtor Resort acknowledged the interest that Nevadans have in Fontainebleau Las Vegas, stating the following to the Clark County District Court:

> …In addition to the approximately 3,300 construction workers on-site daily (plus the additional 1,700 workers who would be needed to work on the final stages of the Project) and hundreds of others presently employed by the Project, the opening of the Fontainebleau Las Vegas is expected to result in over 6,000 full-time jobs at the facility, and approximately 2,000 additional jobs elsewhere in Las Vegas.  All of these sources of employment will vanish as a result of the Banks' breach--a further blow to a local economy that, in the words of the Las Vegas Sun, is in "freefall" and may be in for its "longest recession since the Great Depression."[50]

The Amended Complaint further stated

> The Revolver Banks' breach of their obligations will also cause extensive and irreparable harm to Clark County and the Las Vegas economy.  Currently, southern Nevada faces one of the most significant economic challenges in its modern history.  Unemployment has spiked to more than 10 percent and the annual job loss rate is 4.8 percent and climbing.  Southern Nevada's hotels and casino-hotels directly employed an average of 176,100 workers in 2008 but as of January 2009 this number fell to 164,700 - a loss of 11,400 jobs.  It is undeniable that the interest of the public is best served by the completion of the Project.  If the Revolver Banks' breach forces the Project to shut down, there would be a profound impact on the community and the already reeling Las Vegas economy.

> At the upcoming peak of its construction cycle, the Project is expected to employ more than 5,000 workers and generate nearly $41 million dollars per month in wages and benefits to southern Nevada households.  Under the current plans, the finished Project will employ over 6,000 people directly and an addition 2,000 indirect regional jobs.  Moreover, the Project would result in substantial public revenues, including property tax payments of $1.1 million per acre per year and $73 million dollars in tax and fee payments annually.

> …Should the Project fail, the aforementioned benefits would not be realized, thousands of jobs would be lost, millions of dollars in tax revenue would evaporate, and Clark County would likely sink further into economic recession.

It is clear that not only the 725 creditors located in Nevada, but also the State of Nevada, Clark County, and Las Vegas have an interest in Debtors' reorganization and the future of

---

[50] See Garman Declaration, Exhibit 7 (Amended Complaint, p. 3, para. 6.)

Fontainebleau Las Vegas.  Any effort by Debtors to minimize the interest of Nevada, Clark County, or Las Vegas or its residents in these Chapter 11 Cases in favor of the convenience of the "Board of Managers" should not be well-taken.

## IV.

### CONCLUSION

These Chapter 11 Cases were improperly filed in this Court.  Even if venue is technically proper, Debtors' selection of a venue across the country from its assets and its operations suggests a calculated effort to exclude its creditors, its employees, and the local community from its reorganization proceedings by substantially increasing the cost of participation.  As aptly explained by Judge Zive when transferring the B.L. of Miami case to this Court,

> [r]etaining venue in Reno would make it difficult and expensive for interested parties to participate in the case.  Creditors would be geographically distant and if they wanted to participate would need to retain local counsel.  There is little doubt that distance and cost would unfairly reduce participation in the reorganization proceedings and that participation is a fundamental predicate of Chapter 11.  See 11 U.S.C. § 1109(b).  While Debtor argues that its "nerve center" is in Nevada…its business activity and its trade creditors are in Miami, Florida.  This case simply does not belong in Reno, Nevada, even after giving deference to Debtor's venue choice.  While venue may be technically proper, retention of the case would not be in the interest of justice.  Transfer of the case will afford all parties in interest more efficient, economic and meaningful justice.

In re B.L. of Miami, Inc., 294 B.R. at 334.

**WHEREFORE** Movants respectfully request that this Court transfer these Chapter 11 Cases to the unofficial Southern Division of the District of Nevada and for such other and further relief as the Court deems just and proper.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing or U.S. Mail this 19th day of June, 2009 to all persons on the attached Service List.

Respectfully Submitted,

By:  _/s/ Philip J. Landau_____
Philip. J. Landau
Florida Bar No. 504017
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 N.W. Executive Center Dr.,
Suite 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: Plandau@sfl-pa.com

Gregory E. Garman
Nevada Bar No. 6654
Thomas H. Fell
Nevada Bar No. 3717
GORDON SILVER
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone: (702) 796-5555
Facsimile: (702) 369-2666

*Pro hac vice* admission pending

# EXHIBIT A

## Mechanics' and Materialmens' Lienholders

| M&M Lienholder | Amount of Lien |
| --- | --- |
| Architectural Materials, Inc., 4775 W. Teco, Suite 130, Las Vegas, NV 89118 | $22,000,000 |
| Collings Interiors, 16791 Burke Lane Huntington Beach, CA 92647 | $640,855.63 |
| Door-Ko, Inc., 2901 Made Ave., Las Vegas, NV 89102 | $961,059 |
| Door & Hardware Management, Inc., 4544 W. Russell Rd. #A, Las Vegas, NV 89118 | $2,332,618 |
| Eberhard/Southwest Roofing, Inc., 3995 W. Dewey Dr., Las Vegas, NV 89118 | $1,456,459 |
| EIDS Steel Company, LLC, 15 W. 256 N. Frontage Rd., Willowbrook, IL 60527 | $4,954,379 |
| Eugenio Painting Company, 1935 Veriener Rd. Grosse Pointe Woods, MI 48236 | $4,696,172 |
| Gallagher-Kaiser Corporation, 2755 Las Vegas Blvd. Las Vegas, NV 89109 | $30,718,439 |
| Marnell Masonry, Inc., 5455 Polaris Ave. Las Vegas, NV 89118 | $2,049,169 |
| Midwest Drywall Co., Inc., 4029 S. Industrial Las Vegas, NV 8910 | $8,116,932.71 |
| Midwest Pro Painting, Inc., 5008 Cecile Ave. Las Vegas, NV 89115 | $1,777,049 |
| Mechanical Insulation Specialists (MIS), 910 Brooks Park Dr. North Las Vegas, NV 89030 | $122,935 |
| Modernfold of Nevada, LLC, 215 West New Road Greenfield, IN 46140 | $1,000,000 |
| Southern Nevada Paving, Inc., 3101 East Craig Rd. N. Las Vegas, NV 89030 | $3,160,674 |

| M&M Lienholder | Amount of Lien |
|---|---|
| Universal Piping, Inc., 6120 N. Hollywood, #101<br>Las Vegas, NV  89115 | $3,496,538 |
| West Edna & Associates, d/b/a Mojave Electric<br>3755 West Hacienda Avenue<br>Las Vegas, NV 89118 | |
| W&W Steel, LLC of Nevada, PO Box 25369<br>1730 E. Reno, Oklahoma City, OK  73125-0369 | $24,171,846 |

102045-002/Motion to Transfer Venue

## SERVICE LIST

**Via CM/ECF:**

Scott L. Baena
On behalf of Debtor Fontainbleau Las Vegas Capital Corp.
sbaena@bilzin.com, lflores@bilzin.com, eservice@bilzin.com

Mark D. Bloom
On behalf of Creditor Barclays Bank PLC
bloom@gtlaw.com, phillipsj@gtlaw.com, mialitdock@gtlaw.com, miaecfbky@gtlaw.com

Jacqueline Calderin
On behalf of Creditor Absocold Corporation d/b/a Econ Appliance
jc@ecccounsel.com, phornia@ecccounsel.com; tmuller@ecccounsel.com;
nsocorro@ecccounsel.com

Robert P. Charbonneau
On behalf of Creditor Absocold Corporation d/b/a Econ Appliance
rpc@ecccounsel.com, nsgm0024@aol.com; dgold@eccounsel.com;
scunningham@eccounsel.com; phornia@ecccounsel.com; tumuller@ecccounsel.com;
nscocorro@ecccounsel.com

James H. Fierberg
On behalf of Creditor Term lender Steering Group
James.fierberg@akerman.com

Robert G. Fracasso, Jr.
On behalf of Interested Party Sumitomo Mitsui Banking Corporation
rfracasso@shutts.com

Michael I. Goldberg
On behalf of Creditor Term Lender Sterring Group
michaelgoldberg@akerman.com , charlene.cerda@akerman.com

Harold D. Moorefield, Jr.
On behalf of Interested party Bank of Scotland plc
hmoorefield@swmwas.com, cgraver@swmwas.com; larrazola@swmwas.com;
rross@swmwas.com

Minda A. Mora
On behalf of Debtor Fontaineblewau Las Vegas Holdings, LLC
mmora@bilzin.com; eservice@bilzin.com; lflores@bilzin.com; laparaicio@bilzin.com;
jslanker@bilzin.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Craig V. Rasile
On behalf of Creditor Bank of America, N.A.
crasile@hunton.com; mtucker@hunton.com; mmannering@hunto.com; keckhardt@hunton.com, adeboer@hunton.com

Arthur J. Rice
On behalf of Interested Party HSH Nordbank AG, New York Branch
Arice.ecf@rprslaw.com

Paul Steven Singerman
On behalf of Interested Party Turnberry Residential Limited Partner, LP
singerman@bergersingerman.com; efile@bergersingerman.com

Steven J. Solomon
On behalf of Creditor Young Electric Sign Company
steven.solomon@gray-robinson.com

Diane Noller Wells
On behalf of Creditor Young Electric Sign Company
dwells@devinegoodman.com; efiling@devinegoodman.com

**Via U.S. Mail:**

Bruce Bennett
On behalf of Creditor Term Lender
Steering Group
865 S. Figueroa Ave.
Los Angeles, CA 90017

Alan H. Martin
On behalf of Creditor Bank of America
650 Town Center Dr., 4th Floor
Costa Mesa, CA 92626

Candace Carlyon
701 Bridger #850
Las Vegas, NV 89101

Kyle Mathews
On behalf of Creditor Bank of America
333 S. Hope St., 48th Floor
Los Angeles, CA 90071

Jeff J. Friedman
On behalf of Interested Party Bank of Scotland plc
575 Madison Avenue
New York, NY 1022-2585

Joshua M. Mester
On behalf of Creditor Term Lender
Steering Group
865 S. Figueroa Avenue
Los Angeles, CA 90017

102045-002/Motion to Transfer Venue

Phillip A. Geraci
On behalf of Interested Party HSH
425 Park Avenue
New York, NY

HSH Nordbank AG, New York Branch
c/o Aaron Rubenstein, Esq.
425 Park Avenue
New York, NY 10022

HSH Nordbank AG, New York Branch
c/o Andrew W. Kress, Esq.
425 Park Avenue
New York, NY 10022

Todd Kaplan
Citadel Derivatives Group, LLC
131 Dearborn St
Chicago, IL 60603

Andrew A. Cress
On behalf of Interested Party HSH
425 Park Avenue
New York, NY 10022

Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

Arthur S. Linker
On behalf of Interested Party Bank of
Scotland PLC
575 Madison Avenue
New York, NY 1022-2585

Kenneth E. Noble
On Behalf of Interested Party Bank of
Scotland, plc
575 Madison Avenue
New York, NY 10022

Anthony L. Paccione
On behalf of Interested party Bank of
Scotland, plc
575 Madison Avenue
New York, NY 10022

Matthew D. Parrot
On behalf of Interested party Bank of
Scotland, plc
575 Madison Avenue
New York, NY 10022

Thomas C. Rice
On behalf of Creditor Barclays Bank
PLC
425 Lexington Avenue
New York, NY 10017

Aaron Rubinstein
On behalf of Interested Party HSH
Nordbank AG
425 Park Avenue
New York, NY 10017

Justin S. Stern
On behalf of Creditor Barclays Bank
PLC
425 Lexington Avenue
New York, NY 10017

David J. Woll
On behalf of Creditor Barclays Bank
PLC
425 Lexington Avenue
New York, NY 10017