**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| In re: : | Chapter 11 |
| : | |
| FONTAINEBLEAU LAS VEGAS : | |
| HOLDINGS, LLC, *et al,*[1] : | Case No. 09-21481-BKC-ALC |
| : | |
| Debtors. : | |
| : | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF THE DEBTORS OR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND (III) SCHEDULING FINAL HEARING**

The Official Committee of Unsecured Creditors (the "Committee") hereby objects (the "Objection") to the motion of Fountainbleau Las Vegas Holdings, LLC, Fountainbleau Las Vegas, LLC and Fountainbleau Las Vegas Capital Corp. (collectively, the "Debtors"), for entry of interim and final orders (i) authorizing the Debtors to use cash collateral; (ii) providing adequate protection to prepetition secured parties pursuant to 11 U.S.C. §§ 361, 362 and 363 and (iii) scheduling final hearing (the "Motion"). In support of the Objection, the Committee respectfully states as follows:

**Preliminary Statement**

1. The Committee was appointed less than five (5) days ago. Immediately upon its formation, it began the process of fulfilling its fiduciary duties by, among other things, engaging undersigned counsel. Immediately thereafter, counsel began having discussions with Debtors' counsel to begin its due diligence on the Debtors, their business and their financial affairs, as

---

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp., [7822]. The Debtors' current mailing address is: 19950 West County Club Drive, Aventura, Florida 33180.

PH1 2344848v1 06/26/09

well as all "first day" matters that were filed in these cases.[2]  Also during this time, counsel for the Committee began engaging counsel for the Term Lender Steering Committee[3] to request copies of all of the documents related to the Prepetition Credit Agreement as well as to discuss the terms of the Motion.  As the Court is aware, the fact that the Committee has been thrust into fast moving proceedings is an understatement.  To date, the Committee has not received all of the Prepetition Credit Loan Documents[4] that it needs to review as part of its investigation of the Debtors and their lending relationships.

2.  The Motion engenders numerous concerns on the part of the Committee, which concerns are more particularly described in the Objection section below.  To date, counsel for the Debtors has been very cooperative and responsive to requests from counsel to the Committee in regard to the Motion and the Committee's concerns.  As for the Term Lender Steering Committee, the Committee has engaged and will continue to engage counsel for the Term Lender Steering Committee in an effort to address and try to resolve the Committee's most pressing issues as they pertain to the terms under which the Term Loan Lenders are attempting to condition the Debtors' use of cash collateral.[5]  In the meantime, the Committee outlines below for the Court those terms contained in the Second Proposed Interim Order (defined below)

---

[2] The Committee also scrambled to learn details surrounding the Debtors' request to pay vendors that they deem "critical" as that request was set for hearing less than twenty four (24) hours after the appointment of the Committee.

[3] Any capitalized terms not defined herein shall have the meanings ascribed to them in the Motion and the First Interim Order (as defined herein).

[4] Counsel to the Debtor provided certain of such documents upon request of counsel to the Committee.  However, when counsel for the Committee requested the loan documents from counsel to the Term Lender Steering Committee, counsel was told that that information should be obtained from Bank of America (the "Agent"), which is the administrative agent for the Prepetition Lenders.  Thus, it appears to the Committee that the Term Lender Steering Committee has subsumed the role of agent for purposes of negotiating and dictating Cash Collateral terms on behalf of the Prepetition Lenders, but defers to the administrative agent on other matters.  Therefore, the Committee is somewhat confused as to who on the side of the Term Lenders is ultimately responsible for what aspects of these cases.

about which the Committee has the most concern at this time, namely: (i) no carve-out of Cash Collateral for <u>any</u> chapter 11 professionals in these cases; (ii) no line items in the Budget (defined below) providing for payment of most chapter 11 expenses (including professional fees); (iii) no carve-out for fees due to the United States Trustee under 28 U.S.C. § 1930, as is required under the Court's *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* (the "<u>Guidelines</u>"); (iv) a waiver under section 506(c) of the Bankruptcy Code; and (v) a Superpriority Claim.

3.  If the parties are not able to consensually resolve these primary issues prior to the hearing on Tuesday, June 30, 2009, then it is clear that the Prepetition Lenders are determined to see that the Committee is without any real opportunity to fulfill its statutory duties in these cases and/or to meaningfully participate in these cases. As a result, the Committee is left to seriously question the motives of the Prepetition Lenders in taking such a draconian and unreasonable position.

4.  Accordingly, for the reasons set forth herein, the Committee respectfully objects to the Motion as presented and entry of the Proposed Second Interim Order.

## Background

5.  On June 9, 2009 (the "<u>Petition Date</u>"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"). The Debtors continue to operate their businesses and manage their property as debtors in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

---

[5] As of the filing of this Objection, counsel to the Committee had one conference call with counsel to the Term Lender Steering Committee and has delivered a set of specific objections/concerns to the Motion.

3

PH1 2344848v1 06/26/09

6.  On June 22, 2009, the Committee was duly appointed pursuant to section 1102 of the Bankruptcy Code to represent creditors holding unsecured claims in these cases.

7.  According to the Debtors, until recently, the Debtors were actively engaged in ongoing construction and development of "Fountainebleau Las Vegas," conceived as a signature "Tier A" casino hotel resort with gaming, lodging, convention and entertainment amenitites.

8.  On the Petition Date, the Debtors filed a number of "first day" motions seeking emergency relief on several matters, one of which was the Motion. After a hearing on the "first day" motions, on June 11, 2009, the Court entered the Interim Order (i) Authorizing the Debtors to Use Cash Collateral; (ii) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code and (iii) Scheduling Final Hearing (the "First Interim Order"). The First Interim Order authorized the Debtors to use Cash Collateral based on the stipulations and terms contained therein through July 8, 2009, and scheduled a final hearing on the Debtors' use of Cash Collateral for June 30, 2009 at 3:00 p.m.

9.  Subsequent to entry of the First Interim Order, the Debtors filed a supplement (the "Supplement") to the Motion seeking authorization for the continued use of Cash Collateral on a further interim basis for the period up to August 6, 2009. Attached to the Supplement was a proposed further interim order (the "Proposed Second Interim Order"), which would provide the Debtors with further interim authority to use Cash Collateral based on the terms contained therein and pursuant to a budget (the "Budget") attached thereto. As discussed above, the Budget does not provide for the payment of any chapter 11 professionals fees and expenses.

PH1 2344848v1 06/26/09

## Objection

**I.     The Motion and Second Proposed Interim Order Impermissibly Impairs the Committee's Ability to Perform its Duties Pursuant to Section 1103(c) of the Bankruptcy Code.**

10.     Debtors' counsel has disclosed that as of the Petition Date they possessed a retainer from the Debtors in the amount of $1 million, so they are sufficiently protected in these cases in respect of the fees and expenses that they have and will continue to incur in the early stages of these cases.  In addition, the other professionals engaged by the Debtors have received and hold significant pre-petition retainers.  Moreover, Counsel for the Term Lender Steering Committee must also possess a sufficient retainer to protect them in these cases as the Budget does not provide for payment of their fees or expenses.  However, counsel for the Committee obviously does not possess any such retainers, as is always the case in any chapter 11 proceeding.  Rather, it is standard and typical for professionals representing committees in large chapter 11 cases to be afforded protection by being paid in such chapter 11 proceedings through either a carve-out in the debtor's use of cash collateral or through postpetition financing obtained by a debtor.  As discussed above, the Proposed Second Interim Order does not provide for any carve-out or even a line item in the Budget for such funding.  Thus, the Committee's professionals have zero promise of payment at all in these cases and are being treated differently in light of the fact that the Debtors' professionals have significant retainers and can afford to delay on the carve-out issue.  The Committee submits that this is *de facto* disparate treatment of the Committee's professionals.

11.     As a result of this overwhelmingly disparate treatment afforded to the Committee by the Motion, the Proposed Second Interim Order deprives the Committee of the funding necessary to discharge its fiduciary duties pursuant to section 1103(c) of the Bankruptcy Code.

12. This Court has recognized the dangers of treating a Committee's professionals differently from professionals retained by the Debtor. As a result, the Court's Guidelines require, *inter alia,* that any motion that provides disparate treatment to a committee's professionals also provide the justification for the inclusion of such provision. *See Guidelines* at II (B)(6) (the "Guidelines"). The Term Lender Steering Committee cannot and does not provide any such justification.

13. In addition, paragraph 19.(a) of the Proposed Second Interim Order provides the Committee a sixty (60) day period (up to August 21, 2009 (the "Objection Date")) within which to object to the extent, validity and priority of the Prepetition Term Obligations and Prepetition Term Obligations, as well as any claims with respect thereto. This provision meets the requirements under the Guidelines. However, the fact that the Committee has no funding to conduct its investigation of the Prepetition Term Obligations and Prepetition Term Obligations renders the Objection Date a virtual "death sentence." As a result, the Term Lender Steering Committee is basically seeking to hamstring the Committee. Even if the Committee was not being thwarted in its investigation as it now is, the sixty (60) day period is clearly insufficient time for the Committee to do the necessary due diligence on the Prepetition Lenders and their dealings with the Debtors. Accordingly, the Committee requests that regardless of the ultimate terms of the further use of Cash Collateral, the Court order that the Committee has at least sixty (60) additional days to investigate the extent, validity and priority of the Prepetition Term Obligations and Prepetition Term Liens, as well as any claims with respect thereto.

14. Therefore, the Committee is at a loss as to the position being taken by the Lender Steering Committee and submits that it is simply a brazen attempt to subvert the Committee from

carrying out its statutory duties. This is even more egregious when other provisions of the Proposed Second Interim Order are analyzed, as discussed below.

## II. The Debtors' Waiver of their Surcharge Rights Under Section 506(c) of the Bankruptcy Code and the Grant of a Superpriority Claim are Inappropriate and Should not be Approved.

15. Paragraph 4.(b) of the Proposed Second Interim Order contains a waiver of the Debtors' surcharge rights under section 506(c) of the Bankruptcy Code. Thus, the Prepetition Lenders are both (a) not agreeing to the use of Cash Collateral to fund the Committee in these cases, and (b) attempting to obtain a section 506(c) waiver. The Prepetition Lenders cannot have it both ways. In these cases, the right to surcharge the Prepetition Lenders' collateral is paramount because given the alleged breadth of the Prepetition Lenders' collateral, essentially every administrative expense incurred in this case is a reasonable and necessary cost of preserving the Prepetition Lenders' collateral. This Court should not approve the Debtors' waiver of its section 506(c) rights, and to the contrary, those rights should be reserved for all parties in interest to assert on a derivative basis.[6]

16. Furthermore, paragraph 6.(b) of the Proposed Second Interim Order provides the Prepetition Lenders with the Superpriority Claim, which is an administrative claim allowed under the Bankruptcy Code that gives the Prepetition Lenders priority over any and all other claims against the Debtors. As is the case with the section 506(c) waiver, the Superpriority Claim allows the Prepetition Lenders to reap a paramount benefit from the Debtors' estates (including from the proceeds of Avoidance Actions) without incurring any burden whatsoever. Thus, again, the Prepetition Lenders are attempting to have this Court sanction their "have it both

---

[6] The United States Supreme Court has clarified that only the debtor (or an appointed trustee) may assert a claim to surcharge a secured lender's collateral pursuant to section 506(c) of the Bankruptcy Code. *See Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A. (In re Hen House Interstate, Inc.)*, 120 S. Ct. 1942 (2000).

7

ways" position. The Committee submits that this Court should not approve the Proposed Second Interim Order that gives the Prepetition Lenders any Superpriority Claim.

## Conclusion

17.     For the foregoing reasons, the Committee contends that the Court should not approve the Motion as it is currently presented nor should it enter of the Proposed Second Interim Order. The Prepetition Lenders want to utilize the benefits of chapter 11 without incurring any of the burdens of chapter 11. If the Prepetition Lenders do not want to incur such burdens then they should seek stay relief or dismissal and exercise their rights in state court. Nevertheless, the Committee hopes that ultimately this Objection was filed out of an abundance of caution and will continue in its efforts to try and resolve its issues with the Term Lender Steering Committee before the hearing on Tuesday, June 30, 2009.

## Reservation of Rights

18.     The Committee hereby reserves its rights to supplement this objection and/or to further object to the Motion and the use of Cash Collateral going forward.

WHEREFORE, the Committee requests that the Court (i) deny the Motion as currently Presented, (ii) deny entry of the Proposed Second Interim Order, and (iii) grant any other relief as is proper and just.

---

The Supreme Court, however, did not preclude the right of a third party to seek to assert a section 506(c) claim derivatively, on behalf of the debtor.

Dated: June 26, 2009 Respectfully submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Proposed Co-Counsel for the Official Committee of Unsecured Creditors*

100 Southeast 2nd Street, 44th Floor
Miami, Florida 33131
Telephone: 1.305.349.2300
Facsimile: 1.305.349.2310
pbattista@gjb-law.com


 */s/ Paul J. Battista*
Paul J. Battista, Esq.
Fla. Bar No. 884162
pbattista@gjb-law.com
Glenn D. Moses, Esq.
gmoses@gjb-law.com
Fla. Bar No. 174556


FOX ROTHSCHILD, LLP
*Proposed Co-Counsel for the Official Committee of Unsecured Creditors*

Michael Viscount, Esq. (*Pro Hac* App. Pending)
mviscount@foxrothschild.com
 Josefina Fernandez McEvoy, Esq. (*Pro Hac* App. Pending)
jfmcevoy@foxrothschild.com
Joshua T. Klein, Esq. (*Pro Hac* App. Pending)
jklein@foxrothschild.com

9

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via facsimile, CM/ECF, and/or first-class postage-prepaid U.S. Mail to all parties as indicated on the attached service list on this 26th day of June, 2009.

/s/ Paul J. Battista
Paul J. Battista, Esq.

| | | |
|---|---|---|
| Akerman Senterfitt<br>Michael Goldberg<br>Las Olas Centre II<br>350 East Las Olas Boulevard Ste 1600<br>Ft. Lauderdale, FL 33301-2229 | Akerman Senterfitt<br>James Fierberg<br>One SE Third Ave 25th Fl<br>Miami, FL 33131-1714 | Bank of America NA<br>Swaps Operations<br>233 S Wacker Dr Ste 2800<br>Chicago, IL 60606 |
| Bank of America, N.A.<br>Ronaldo Naval, Vice President<br>901 Main Street, 14th Floor<br>Bank of America Plaza<br>Mail Code TX1-492-14-11<br>Dallas, TX 75202-3714 | Barclays Capital<br>General Counsel<br>200 Park Avenue<br>New York, NY 10166 | Barclays Capital<br>5 The North Colonnade<br>Canary Wharf<br>London, UK E14 4BB<br>GREAT BRITAIN |
| Berger Singerman<br>Paul Singerman<br>200 South Biscayne Boulevard, Suite 1000<br>Miami, FL 33131 | Bilzin Sumberg Baena Price & Axelrod LLP<br>Jason Jones & Jay M. Sakalo<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, FL 33131-5340 | Decca Hospitality<br>c/o Nick Hart, President & CEO<br>3525 Piedmont Rd<br>Building 7 Ste 205<br>Atlanta, GA 30305 |
| Deutsche Bank AG New York<br>60 Wall St<br>New York, NY 10005 | Ehrenstein Charbonneau Calderin<br>Robert P Charbonneau<br>800 Brickell Ave Ste 902<br>Miami, FL 33131 | Fontainebleau Las Vegas Holdings, LLC et al.<br>c/o Howard Karawan<br>19950 W. Country Club Drive<br>Aventura, FL 33180 |
| GMI Counsel<br>Swaps Legal<br>Merrill Lynch World Headquarters<br>4 World Financial Center 18th Fl<br>New York, NY 10080 | Greenberg Traurig PA<br>Mark Bloom<br>1221 Brickell Ave<br>Miami, FL 33131 | Hennigan Bennett & Dorman LLP<br>Bruce Bennett<br>865 South Figueroa Street<br>Ste 2900<br>Los Angeles, CA 90017 |
| Hunton & Williams<br>Craig Rasile<br>1111 Brickell Avenue, Suite 2500<br>Miami, FL 33131 | Hunton & Williams LLP<br>Craig V Rasile & Kevin M Eckhardt<br>1111 Brickell Avenue, Suite 2500<br>Miami, FL 33131 | Internal Revenue Service<br>Centralized Insolvency Operation<br>11601 Roosevelt Blvd Mail Drop N781<br>Philadelphia, PA 19255 |
| Jones Day<br>Stacey N. Lefont<br>222 East 41st Street<br>New York, NY 10017-6702 | Katten Muchin Rosenman LLP<br>Kenneth E Noble & Camille G Fesche<br>575 Madison Ave<br>New York, NY 10022-2585 | Kelley II LLC d/b/a Kelley Technologies<br>c/o Brooks Pickering, President & CEO<br>5625 Arville Street Unit D<br>Las Vegas, MNV 89118 |
| Mayer Brown LLP<br>Jean Marie L Atamian & Jason I Kirschner<br>1675 Broadway<br>New York, NY 10019 | Merrill Lynch World Headquarters<br>Swap Group<br>4 World Financial Center 18th Fl<br>New York, NY 10080 | Mini Bar North America Inc<br>c/o Anthony Joseph Torano, President & CEO<br>7430 Westmore Rd<br>Rockville, MD 20850 |
| Paul Steelman Design Group<br>c/o Matt Mahaney, General Counsel<br>3330 West Desert Inn Rd<br>Las Vegas, NV 89102 | RBS The Royal Bank of Scotland<br>Global Banking & Markets<br>280 Bishopsgate<br>London, UK EC2M 4RB<br>GREAT BRITAIN | Securities & Exchange Commission<br>David Nelson, Regional Director<br>Miami Regional Office<br>801 Brickell Ave., Suite 1800<br>Miami, FL 33131 |
| Sheppard Mullin Richter & Hampton LLP<br>Alan H Martin<br>650 Town Ctr Dr 4th Fl<br>Costa Mesa, CA 92626 | Sheppard Mullin Richter & Hampton LLP<br>Kyle Mathews<br>333 South Hope Street<br>48th Fl<br>Los Angeles, CA 90071-1448 | Sheppard Mullin Richter & Hampton LLP<br>William M. Scott IV<br>333 South Hope Street<br>48th Fl<br>Los Angeles, CA 90071 |

| | | |
|---|---|---|
| Shutts & Bowen LLP<br>Robert Fracasso<br>201 S Biscayne Blvd<br>1500 Miami Center<br>Miami, FL 33131 | Simpson Thacher & Bartlett LLP<br>Thomas C Rice David J Woll Sandeep Qusba<br>425 Lexington Ave<br>New York, NY 10017 | State of Florida Dept of Revenue<br>Bankruptcy Section<br>Joel S Knee, Assistant General Counsel<br>6565 Taft Street Ste 400<br>Hollywood, FL 33024-4044 |
| State of Florida Dept of Revenue<br>Bankruptcy Section<br>PO Box 6668<br>Tallahassee, FL 32314-6668 | Stearns Weaver Miller Weissler Alhadeff &<br>Sitterson PA<br>Harold D Moorefield Jr<br>Museum Tower Ste 2200<br>150 W Flagler St<br>Miami, FL 33130 | The Royal Bank of Scotland PLC<br>36 St Andrew Sq<br>Edinburgh, UK EH2 2YB<br>GREAT BRITAIN |
| United States Trustee<br>Donald F Walton<br>51 SW First Ave Rm 1204<br>Miami, FL 33130 | Wells Fargo Bank, as Indenture Trustee<br>c/o Thomas Korsman, Vice President<br>MAC 9311-110<br>625 Marquette Avenue<br>Minneapolis, MN 55479 | |