Case 09-21481-AJC    Doc 309    Filed 07/22/09    Page 1 of 8



**ORDERED in the Southern District of Florida on July 22, 2009.**

*[signature]*
_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

FONTAINEBLEAU LAS VEGAS,
HOLDINGS, LLC, ET AL.,

          Debtors.
_____/

Case No.: 09-21481-BKC-AJC
Chapter 11
(Jointly Administered)

**ORDER DENYING MOTION TO TRANSFER VENUE FOR *FORUM NON CONVENIENS* PURSUANT TO 28 U.S.C. §1412 AND SETTING HEARING TO DETERMINE PROPER VENUE PURSUANT TO 28 U.S.C. §1408**

THIS MATTER came before the Court upon the *Motion to Transfer Venue to the District of Nevada* (CP 133) (the "Motion"), and upon the *Debtors' Opposition to Motion for Transfer of Venue of the Chapter 11 Cases to the District of Nevada* (CP 236). The Motion, filed by certain holders of mechanics' and materialmen's liens ("Movants"), seeks an order of this Court transferring these Chapter 11 cases from Florida to Nevada. As grounds in support of the Motion, the Movants assert venue of these cases in Miami, Florida is improper under 28 U.S.C. §1408. In the alternative, the Movants contend that venue should be transferred to Nevada in the interest of justice and for the

convenience of the parties pursuant to 28 U.S.C. §1412.

The Court, having considered the Motion and the Debtors' response thereto, determines that transferring venue of these cases to Nevada would not promote the economic and efficient administration of the bankruptcy estates and therefore denies the motion to transfer pursuant to 28 U.S.C. §1412. However, with regard to the motion to transfer venue pursuant to 28 U.S.C. §1408, the Court herein schedules an evidentiary hearing to determine the location of the Debtors' principal place of business during the one-hundred-and-eighty-day period immediately preceding the commencement of these cases, so as to establish venue pursuant to 28 U.S.C. §1408.

**I.  28 U.S.C. §1412**

Section 1412 of the Bankruptcy Code provides authority for a court to transfer a case to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.  *See* FRBP 1014(a)(1).  However, upon consideration of the parties' submissions and the Court record, the Court is not persuaded that transferring these cases would be economical to the administration of these cases, convenient to all creditors, or advance the interests of justice.

These cases were not filed in this forum to harass Movants, or any other creditors for that matter, nor were they filed here to disenfranchise Movants' right to participate in the Chapter 11 cases.  In fact, this reorganization has little if nothing to do with the Movants' claims and the construction of the Project in Las Vegas.  Rather, this case is all about the financing of the Las Vegas Project, which is in the hands of the lenders and financial institutions – all of whom are located outside of Nevada (with the exception of one lender who went into receivership prior to funding any commitments under the parties' Credit Agreement).

The Movants are holders of mechanics' and materialmen's liens in excess of $111,000,000.00, representing less than 5% of the over $2 billion in claims in these cases. If, as they assert, under applicable governing state law, their liens on Debtors' Property are in a first position, ahead of the secured lenders, then they will likely be paid in full if these cases are a success. If these cases fail, and Movants are, in fact, in a first lien position, they will pick up whatever pieces are left of this estate.

The well-protected interests of the Movants should not override the deference accorded the Debtors' choice of forum. Under 28 U.S.C. § 1412, transfer of a bankruptcy case should occur sparingly and only in the interest of justice or for the convenience of the parties. *See Commonwealth of Puerto Rico v. Commonwealth Oil Refining Company, Inc. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1241 (5th Cir. 1979) (citing *In re Fairfield P.R., Inc.*, 333 F. Supp. 1187, 1189 (D. Del. 1971)); *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1390 (2d Cir. 1990); *In re Campbell*, 242 B.R. 740, 746 (Bankr. M.D. Fla. 1999); *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) ("Transferring venue of a bankruptcy case is not to be taken lightly.") "'[W]here a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities lean[] but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed.'" *Garden Manor Assocs.,* 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988) (quoting 1 J. Moore, *Moore's Federal Practice* ¶ 0.145[5] at 1616 (2d ed. 1988)).

This Court has analyzed the factors courts typically consider when adjudicating venue transfer motions and determines transfer to be inappropriate under 28 U.S.C. §1412. "[T]he most important consideration is whether the requested transfer would promote the economic and efficient

administration of the estate." *Commonwealth Oil Refining Co.,* 596 F.2d at 1247. Moreover, the interest of justice component requires consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness. *In re Blumeyer*, 224 B.R. 218, 220 (Bankr. M.D.Fla. 1998). None of these factors weighs in favor of transfer of venue to Nevada.

Significantly, only four of the seventeen Movants are located exclusively in Nevada. To date, claimants who have filed lien notices against the project are located in Nevada, Idaho, Georgia, Ohio, Wisconsin, Arizona, Missouri, Oklahoma, Indiana, Michigan, Illinois and California. Notwithstanding their various locales, the Movants will likely be infrequent visitors to the Court, particularly given their alleged first position lien status.

In addition, it appears the key creditor participants do not reside in Nevada. As the Debtor aptly emphasizes:

- The Debtors' creditors are both national and international in scope (including London, Milan, Tokyo and Paris).

- The largest undersecured creditor, U.S. Bank, as Trustee, in respect of the Second Mortgage Notes is headquartered in St. Paul, Minnesota. This claim is estimated at $675,000,000.

- Fourteen of the Debtors' 20 largest unsecured creditors on a consolidated basis are headquartered in states other than Nevada, including Florida, Illinois, California, Maryland, Georgia, Ohio, and Michigan.

- None of the parties to the adversary proceeding (Adv. No 09-1621-BKC-AJC) between the Debtors and the Revolver Lenders reside in Nevada and counsel is located in Florida, New York, California and Illinois.

- Three of the five members of the Official Committee of Unsecured Creditors reside outside of Nevada and notwithstanding that two members do reside in Nevada, the Committee has chosen to oppose the transfer of venue.

- The financial parties capable of restoring the Debtors' business are located throughout the world and not exclusively in Nevada.

• Bank of America, N.A., as Administrative Agent, Issuing Lender and Swing Line Lender, and Wilmington Trust Company, the proposed successor Administrative Agent, as well as various other lenders that are party to the $1.85 billion senior secured credit facility are not located in Nevada (with the exception of 1 lender, who went into receivership prior to funding any commitments under the Credit Agreement).

• None of the Lenders to the Term Lender Steering Group reside in Nevada.

• The Debtors' trade vendors exist in Alabama, Arizona, California, Colorado, Connecticut, Washington, D.C., Delaware, Florida, Georgia, England, Hong Kong, Illinois, Kent, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Michigan, Minnesota, Missouri, North Carolina, New Jersey, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin.

• None of the lenders to the non-Debtor affiliates which are developing the retail component of the Project are located in Nevada. In fact, the lead lender – Lehman Brothers – is a chapter 11 debtor in the Southern District of New York.

• The majority of the equity of the Debtors' ultimate corporate parent is held by entities located outside of Nevada.

The professionals involved in these Chapter 11 cases also reside thousands of miles from Nevada:

• Reorganization counsel for the Debtors, Bilzin Sumberg Baena Price & Axelrod LLP, is located in Miami.

• Special counsel for the Debtors, Buchanan Ingersoll & Rooney PC and Kasowitz, Benson, Torres & Friedman, LLP are located in Miami, Pittsburgh and New York.

• The Debtors' proposed financial advisory and investment banking firms Moelis & Company is located in New York, Boston, Chicago, Los Angeles, and London.

• The Debtors' proposed financial advisory and investment banking firm Citadel is located in New York, Chicago, San Francisco, London and Hong Kong.

• Kurtzman Carson Consultants, the claims agent for the Debtors, is located in New York, Memphis and Los Angeles.

• Counsel to the Official Creditors' Committee is located in Atlantic City, New Jersey, California and Florida.

- Counsel to each of the parties to the Adversary Proceeding resides in Florida, New York, California and Illinois.

- Counsel to the Term Lender Steering Committee resides in California and Florida.

- Counsel to each of the pre-petition lenders who have filed notices of appearance in these cases resides outside of Nevada.

- Florida counsel Berger Singerman represents the general contractor of the Project, Turnberry West Construction, Inc., Jeffrey Soffer and Turnberry Residential Limited Partner.

- Counsel to NV Energy, the Project's electricity provider, is located in Birmingham, Alabama.

While the Project itself is located in Nevada, that fact alone is not compelling, as the construction of the Project has currently been halted as a result of the lack of financing and the business of these Debtors is actually being carried on outside the state of Nevada. Moreover, with regard to potential witnesses who may be necessary to the administration of the estate, they can be deposed where they reside unless they agree otherwise. They need not even attend Court hearings if they reside more than 100 miles from Miami, and their transcribed testimony will still be useable. Accordingly, the Court believes no relationship exists between the proximity of the courthouse to the Project and the Debtors' ability to reorganize.

Because the issue of *forum non-conveniens* is evaluated from the debtor's perspective in bankruptcy cases, the Court concludes that Florida is most convenient for these Debtors due to the structure of the Debtors' organizations. Even if this Court were to consider transferring the cases to anywhere other than Florida for the convenience of the parties, the Court believes New York or Delaware, rather than Nevada, might be more convenient forums, but that relief is not being requested.

**II.  28 U.S.C. §1408**

The Court finds there are issues of fact remaining as to the location of the Debtors' principal place of business during the one-hundred-and-eighty-day period immediately preceding the commencement of these cases, so as to establish venue pursuant to 28 U.S.C. §1408.  The Eleventh Circuit is bound by the Fifth Circuit's decision in *Commonwealth Oil Refining Co.,* 596 F.2d at 1244, which found that the location of the debtor's production facilities "has greatly diminished in significance" and the location of the decision-making authority is more appropriate for venue purposes in the context of a financial restructuring.  *Commonwealth Oil Refining Co.,* 596 F.2d at 1245-46.  As the Movants emphasize in their Motion, "[w]here a company's activities are not concentrated in one place, a district court is entitled 'to give these nerve-center-related facts greater significance' in determining principal place of business." *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)).  The Court therefore believes the determination of where the "nerve center" of the Debtors is located is required to ultimately decide proper venue under 28 U.S.C. §1408.  The Court herein schedules an evidentiary hearing to determine the location of the Debtors' principal place of business during the one-hundred-and-eighty-day period immediately preceding the commencement of these cases.

**ORDERED and ADJUDGED** that the *Motion to Transfer Venue to the District of Nevada* (CP 133) is DENIED in part, as follows:

1. The motion to transfer pursuant to 28 U.S.C. §1412 is DENIED.

2. The motion to transfer pursuant to 28 U.S.C. §1408 is scheduled for evidentiary hearing on **August 17, 2009 at 2:00 pm in Courtroom 1410, 51 SW First Ave.,**

**Miami, FL,** to determine the location of the Debtors' principal place of business during the one-hundred-and-eighty-day period immediately preceding the commencement of these cases.

###

Copies to:

Philip Landau, Esq.
Gregory Garman, Esq.
Thomas Fell, Esq.
Mindy Mora, Esq.
Scott Baena, Esq.

Attorney Philip Landau is directed to immediately mail a conformed copy of this order to all interested parties and to file a certificate of service with the Clerk of Court.