UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov


In re:                                                    Chapter 11

FONTAINEBLEAU LAS VEGAS                                    Case No. 09-21481-BKC-AJC
HOLDINGS, LLC, ET AL.,[1]

                        Debtors.                           (Jointly Administered)
_____/


### M&M LIENHOLDERS' MOTION FOR MODIFICATION OF THE AUTOMATIC STAY

Movants, various mechanics' and materialmen's lienholders (the "M&M Lienholders" or

"Movants"),[2] by and through their attorneys, the law firms of Gordon Silver and Shraiberg,

Ferrara & Landau, P.A., hereby file their Motion For Modification Of The Automatic Stay (the

"Motion"), pursuant to 11 U.S.C. §§ 362(d), Fed. R. Bankr. P. 4001(a), and LR 4001.[3]

### INTRODUCTION

While the M&M Lienholders remain hopeful the Debtor will find additional funds (either

through an equity infusion and/or junior debt facility) to complete the project, we are ninety (90)

days into this reorganization proceeding and reality has begun to set in.  On one hand, the M&M

Lienholders are under siege from the Term Lenders who are waging a campaign to enhance their

---

[1] *In re Fontainebleau Las Vegas Holdings, LLC*, Case No. 09-21481-BKC-AJC, *In re Fontainebleau Las Vegas, LLC*, Case No. 09-21482-BKC-AJC, and *In re Fontainebleau Las Vegas Capital Corp.*, Case No. 09-21483-BKC-AJC.

[2] The M&M Lienholders are Architectural Materials, Inc., d/b/a AMI Hospitality, Inc., and its subsidiary Peregrine Installation Co., Collings Interiors, LLC, Commercial Roofers, Inc., Door-Ko, Inc., Door & Hardware Management, Inc., Eberhard Southwest Roofing, Inc., EIDS Steel Company, LLC, Gallagher-Kaiser Corp., L.A. Nevada, Inc., d/b/a G&G Systems, JS&S, Inc., LVI Environmental of Nevada, Inc., Marnell Masonry, Inc., Midwest Drywall Co., Inc., Midwest Pro Painting, Inc., Mechanical Insulation Specialists, Modernfold of Nevada, LLC, Southern Nevada Paving, Inc., Universal Piping, Inc., West Edna & Associates, d/b/a Mojave Electric, W&W Steel LLC of Nevada.

[3] Unless otherwise expressly stated, all Chapter and Section references are to 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and all Rule references are to the Federal Rules of Bankruptcy Procedure, 1001-9037 (the "Rule(s)") and the Local Rules of the Bankruptcy Court ("LR").

otherwise junior position through priming liens and arbitrary litigation deadlines. On the other hand, after three months, Debtors have identified no exit strategy nor source of additional outside capital. With no financing, no equity infusion, and no plan, it has become clear Movants are forced to take action to protect their interests.

By way of this Motion, Movants seek modification of the automatic stay for the limited purpose of permitting the Nevada state courts to determine the extent, validity, and priority of all of the liens against the Property. Such affirmative action is exactly the relief the Debtors/Term Lenders have forced upon mechanics' lien claimants via the deadlines set forth in the various interim cash collateral orders. Because Movants are not seeking by the proposal set forth in this Motion to foreclose on the Project or obtain payment of their claims without further order of this Court, Debtors can continue their efforts to find capital as the lien litigation proceeds.

This Motion is made and based on the points and authorities which follow, the declarations of the M&M Lienholders filed contemporaneously herewith in support of this Motion (the "Lienholder Declarations"), the pleadings and papers and other records contained the Court's file, judicial notice of which is hereby requested, and any evidence or oral argument presented at the time of the hearing on this matter.

This Court has jurisdiction pursuant to 28 U.S.C. §1334 and 11 U.S.C. §362. The statutory basis for the relief requested herein is 11 U.S.C. §362(d), Rules 4001(a) and 9014.

## I.
## STATEMENT OF FACTS

On June 9, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). Each of the Debtors continues to operate its business and manage its affairs as a debtor in possession pursuant to

Sections 1107(a) and 1108 of the Code.  No request has been made for the appointment of a trustee or examiner.

Prior to the Petition Date, the Resort Debtors were engaged in the construction and development of "Fontainebleau Las Vegas," a casino hotel resort with gaming, lodging, convention and entertainment amenities (the "Project").[4]  Debtors allege that the Project is 70% complete, and that construction was halted as a result of the unjustified failure of certain of the Debtors' lenders to fulfill their loan commitments.[5]

Debtors contend that as of the Petition Date, Debtors owed approximately $1,711,700,000 in secured debt, not including debt owed to the lien claimants.  Specifically, Debtors contend that as of the Petition Date, approximately $700 million was outstanding under the Term Loan Facility;[6] approximately $336.7 million was outstanding under the Delayed Draw Facility; and letters of credit in the aggregate face amount of approximately $13 million were outstanding under the Revolver Facility.[7]  Further, $675 million, the entire principal amount of the Junior Mortgage Notes,[8] along with the accrued interest thereon, was outstanding.[9]

Debtors filed an adversary proceeding against the members of the Senior Credit Facility[10] (the "Term Lenders") in connection with the alleged defaults and wrongful termination by the bank of their alleged funding commitments, seeking specific performance of the Term Lenders'

---

[4] See Declaration of Howard C. Karawan in Support of Debtors' Chapter 11 Petitions and First Day Pleadings ("Karawan Declaration"), ¶ 7.

[5] Karawan Declaration, ¶ 7.

[6] As defined in the Karawan Declaration, ¶ 13.

[7] See Karawan Declaration, ¶ 13-23 ("The Debtors' Financing Structure").

[8] As defined in the Karawan Declaration, ¶ 15.

[9] See Karawan Declaration, ¶ 13-23.

[10] As defined in the Karawan Declaration, ¶ 13.

obligations as well as monetary damages.[11]   Debtors' summary judgment motion against the Term Lenders has been denied and will be proceeding to trial.[12]   The district court determined that the Term Lenders' interpretation of the Credit Agreement is correct as a matter of law, which does not bode well for Debtors' prospects of forcing the Term Lenders to fund completion of the Project.[13]   To date, the alleged obligations remain unfunded and Debtors have not found a source of funding adequate to complete the Project.  Now three months after the Petition Date, construction has not recommenced.  As of the date of this Motion, Debtors have not come forward with a buyer for the Project, located a source of funding for completion of the Project, or proposed a plan of reorganization.

Debtors admit that as of the Petition Date, approximately $403 million of payables were outstanding in connection with the Project, and that lien claims resulting from these payables may prime the mortgage liens of existing lenders.[14]   However, Debtors sought, presumptively at the behest of the Term Lenders, and have obtained a peremptory ruling by the Court under the various interim cash collateral orders[15] (the "Interim Cash Collateral Orders") that the liens of the

---

[11] See Karawan Declaration, ¶ 26.

[12] See Order Denying Motion For Partial Summary Judgment; Denying Motion For Turnover; Granting Motion To Permit Discovery, *Fontainebleau Las Vegas, LLC v. Bank of America, N.A., et al. (In re Fontainebleau Las Vegas Holdings, LLC, et al.)*, Case No. 1:09-cv-21879-ASG, Docket No. 62, United States District Court, Southern District of Florida.

[13] See id. at p.2 ("Defendants are legally correct in their interpretation of the Credit Agreement as a matter of law").

[14] Karawan Declaration, ¶ 27.

[15] See Interim Order (I) Authorizing Use of Cash Collateral Pursuant to § 363 of Bankruptcy Code; (II) Adequate Protection to Secured Parties Pursuant to §§ 361, 362, 363, and 364, of Bankruptcy Code; and (III) Scheduling Final Hearing [Docket No. 49]; Second Interim Order (I) Authorizing Use of Cash Collateral Pursuant to § 363 of Bankruptcy Code; (II) Adequate Protection to Secured Parties Pursuant to §§ 361, 362, 363, and 364, of Bankruptcy Code; and (III) Scheduling Final Hearing [Docket No. 242]; Third Interim Order (I) Authorizing Use of Cash Collateral Pursuant to § 363 of Bankruptcy Code; (II) Adequate Protection to Secured Parties Pursuant to §§ 361, 362, 363, and 364, of Bankruptcy Code; and (III) Scheduling Final Hearing [Docket No. 359], subsequently amended by the Amended Third Interim Order (I) Authorizing Use of Cash Collateral Pursuant to § 363 of Bankruptcy Code; (II) Adequate Protection to Secured Parties Pursuant to §§ 361, 362, 363, and 364, of Bankruptcy Code; and (III) Scheduling Final Hearing [Docket No. 389]; Fourth Interim Order (I) Authorizing Use of Cash Collateral Pursuant to § 363 of Bankruptcy Code; (II) Adequate Protection to Secured Parties Pursuant to §§ 361,

Term Lenders are entitled to first priority unless lien claimants challenge the liens of the Term Lenders on or before October 15, 2009.

The M&M Lienholders have filed liens against the Project in the total amount of $111,525,830. Specifically, Movants' current lien claims are as follows:

- Architectural Materials, Inc., d/b/a AMI Hospitality, Inc. and its subsidiary Peregrine Installation Co. hold lien claims in the approximate amount of $12,000,000;[16]

- Collings Interiors, LLC holds a lien claim in the approximate amount of $640,855;

- Commercial Roofers, Inc. holds a lien claim in the approximate amount of $4,336,563;

- Door-Ko, Inc. holds a lien claim in the approximate amount of $961,059;

- Door & Hardware Management, Inc. holds a lien claim in the approximate amount of $2,332,618;

- Eberhard Southwest Roofing, Inc. holds a lien claim in the approximate amount of $1,456,459;

- EIDS Steel Company, LLC holds a lien claim in the approximate amount of $4,954,379;

- Gallagher-Kaiser Corp. holds a lien claim in the approximate amount of $30,718,439;

- L.A. Nevada, Inc., d/b/a G&G Systems holds a lien claim in the approximate amount of $163,115;

- J.S. & S., Inc. holds a lien claim in the approximate amount of $1,000,000;

- LVI Environmental of Nevada, Inc. holds a lien claim in the approximate amount of $3,172,460;

- Marnell Masonry, Inc. holds a lien claim in the approximate amount of $2,049,169;

- Midwest Drywall Co., Inc. holds a lien claim in the approximate amount of $8,555,472;

- Midwest Pro Painting, Inc. holds a lien claim in the approximate amount of $1,777,049;

---

362, 363, and 364, of Bankruptcy Code; and (III) Scheduling Final Hearing [Docket No. 454] (Mark, J.) (the "Fourth Interim Cash Collateral Order").

[16] Architectural Materials, Inc. has asserted a lien claim of $22,895,181, based upon the total contract price. This claim has been revised to encompass only work already performed, without waiver of any right to assert a claim for any additional amounts allowed under Nevada law.

- Mechanical Insulation Specialists holds two lien claims in the combined approximate amount of $4,602,559;

- Modernfold of Nevada, LLC holds a lien claim in the approximate amount of $1,269,607;

- Southern Nevada Paving, Inc. holds a lien claim in the approximate amount of $3,160,674;

- Universal Piping, Inc. holds a lien claim in the approximate amount of $3,496,538;

- West Edna & Associates, d/b/a Mojave Electric, holds four lien claims in the approximate amounts of $460,764, $89,818, $126,627, and $29,760;

- W&W Steel LLC of Nevada has a lien claim in the approximate amount of $24,171,846.[17]

Debtors contend that there are approximately 180 lien claimants.[18]

## II.
## LEGAL ARGUMENT

Section 362(d) of the Bankruptcy Code provides, in pertinent part, as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) *for cause*, including the lack of adequate protection of an interest in property of such party in interest…

11 U.S.C. § 362(d) (emphasis added).

The Bankruptcy Code does not define "cause," which must be determined on a case-by-case basis under the totality of circumstances.[19]  Whether modification of the stay is appropriate is within the sound discretion of this Court.[20]

---

[17] Lienholder Declarations, attached hereto as Exhibits "1" through "18."  The declarations of Mechanical Insulation Specialists and J.S.&S., Inc. have not yet been obtained, and Movants anticipate that they will be supplemented as Exhibits 19 and 20.

[18] Motion by Debtors for Entry of an Order Staying Adjudication of Count II of Amended Complaint, Docket No. 13, Adversary No. 09-01762-BKC-AJC-A (*Turnberry West Const., Inc. v. Avenue Fund, Ltd., et al.*).

[19] See In re MacDonald, 755 F.2d 715, 717 (9th Cir. 1985); In re Mid-Atlantic Handling Systems, 304 B.R. 111, 129-130 (Bankr. D.N.J. 2003) (citing In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997); In re South Oakes Furniture, Inc., 167 B.R. 307, 308 (Bankr. M.D.Ga. 1994)).

[20] In re MacDonald, 755 F.2d at 716; Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie

**A.    Factors Applicable to Determining Whether to Modify Stay to Permit Litigation in Another Forum**

Numerous courts have held that allowing a matter to proceed in another forum may constitute "cause" for relief from the stay under Section 362(d)(1).[21]  Bankruptcy courts in Nevada have recognized the desirability of permitting lien litigation to take place in Nevada state courts.  In The Resort at Summerlin, the Bankruptcy Court allowed limited relief from the automatic stay to allow litigation to proceed in Nevada state court with respect to the determination of the priority between the mechanics' lienholders and the noteholders, and continued the stay in connection with all other lien litigation issues.[22]  In its order, the Bankruptcy Court specifically authorized the special master appointed by the state court to determine discovery disputes in connection with the priority issue.[23]  Similarly, in Aladdin Gaming, LLC, the Bankruptcy Court granted limited relief from the automatic stay to permit the parties to proceed with an action in Nevada state court to determine the priority of lien claims.[24]

In determining whether to grant relief from the stay to permit a lawsuit to proceed in state

---

Broadcasting, Inc.), 871 F.2d 1023, 1026 (11th Cir. 1989); Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999); In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992) (citing In re Boomgarden, 780 F.2d 657, 660 (7th Cir. 1985)).

[21] See, e.g. Murray Ind., Inc. v. Aristech Chem. Corp. (In re Murray Industries, Inc.), 121 B.R 635 (Bankr. M.D.Fla. 1990); Matter of Holtkamp, 669 F.2d 505 (7th Cir. 1982); In re Bison Resources, Inc., 230 B.R. 611, 616-18 (Bankr. N.D.Okla. 1999) (citing In re Marvin Johnson's Auto Service, Inc., 192 B.R. 1008, 1013 (Bankr.N.D.Ala.1996)); In re Parkinson, 102 B.R. 141, 142 (Bankr. C.D.Ill. 1988) (citing In re Valley Kitchens, Inc., 58 B.R. 6 (Bankr. S.D.Ohio 1985)); In re Davis, 91 B.R. 470 (Bankr. N.D.Ill. 1988).

[22] See Order Re: J.A. Jones' And Joining Parties' Objection To Notice Of Debtors' Intentions With Respect To Proceeding With Certain Litigation And Motion To Modify Automatic Stay To Allow State Court Litigation To Proceed [Docket No. 305], February 1, 2001, In re The Resort at Summerlin, et al., Case No. BK-S-00-18878-RCJ, United States Bankruptcy Court, District of Nevada.

[23] Id.

[24] Notice Of Entry Of Order Granting Sturgeon Electric Co., Inc.'s Motion To Modify The Automatic Stay To Allow State Court Litigation To Proceed To Determine Priority And Denying Motion To Extend Time To Remove [Docket No. 711], March 21, 2002, and Amended And Clarified Order  Case Granting Sturgeon Electric Co., Inc.'s Motion To Modify The Automatic Stay To Allow State Court Litigation To Proceed To Determine Priority And Denying Motion To Extend Time To Remove [Docket No. 934], July 17, 2002, In re Aladdin Gaming, LLC, Case No. BK-S-01-20141-RCJ, United States Bankruptcy Court, District of Nevada.

courts, bankruptcy courts apply a balancing test based upon the totality of circumstances.[25] Generally, these factors are (1) whether there will be any "great prejudice" to the estate or the debtor that will result from prosecution of the civil suit; (2) whether the hardship to the movant by maintenance of the stay outweighs the hardship to the debtor; and (3) whether the movant has a probability of prevailing on the merits of the case.[26]

Courts also consider (1) whether the issues in the pending litigation involve only state law so that the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.[27]

Even where abstention has not been raised, factors affecting mandatory or permissive abstention under 29 U.S.C. § 1334(c) also inform a bankruptcy court's exercise of discretion to modify the automatic stay.[28]   In deciding whether to exercise its discretion to abstain, a bankruptcy court will consider, among other factors, (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate; (3) comity to the state court; (4) the degree of relatedness or remoteness of the proceeding to the main bankruptcy

---

[25] See, e.g. In re Wilson, 116 F.3d at 90 (citing Trident Assocs., 52 F.3d 127).

[26] In re South Oakes Furniture, Inc., 167 B.R. at 308-309 (citing In re Pro Football Weekly, Inc., 60 B.R. 824, 826 (N.D. Ill. 1986)).  The merits of the lien dispute have been previewed to the Court in prior hearings.  Movants are confident that in any priority dispute with the Term Lenders, Movants will prevail.  However, as argued herein, a priority determination between the Term Lenders and Movants and other lien claimants must be made at some point, in some court, and thus the real issue is not whether the litigation should be permitted to go forward, but the forum in which it is prosecuted.

[27] See In re Robbins, 964 F.2d at 345, (citing, inter alia, In re MacDonald, 755 F.2d at 717, Matter of Holtkamp, 669 F.2d at 508-509, S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836).  See also In re Bison Resources, Inc., 230 B.R. at 616-18; In re Davis, 91 B.R. at 471-72; In re Mid-Atlantic Handling Systems, 304 B.R. 111 (citing 12 separate factors); In re Beane, 404 B.R. 942, 948 (M.D.Fla. 2008) (listing factors) (citing In re Sonnax Industries, Inc., 907 F.2d 1280, 1286 (2d Cir. 1990)).

[28] See In re Davis, 91 B.R. at 472.

case; and (5) the existence of the right to a jury trial.[29]  Courts have also considered the burden

on the bankruptcy court's docket, the jurisdictional basis, if any, other than 28 U.S.C. § 1334, and

the substance, rather than the form, of an asserted "core" proceeding.[30]  Not every factor is

relevant in every case.[31]

**B.    Movants And Other Lienholders Will Be Irreparably Harmed By Continuation Of The Stay**

      The substantial prejudice to Movants and other lien claimants if the stay is not modified

compared to the minimal or non-existent prejudice to Debtors if the stay is modified favors

modifying the automatic stay.  For almost 90 days, Debtors have failed to locate a buyer or

funding for the Project.  The Term Lenders have succeeded in priming the liens of the Movants

and other lien claimants by having the use of cash collateral be deemed post-petition financing,

thereby converting the prepetition debt into postpetition liens which prime those of the

lienholders.[32]

      In addition to the amount of the priming liens of the Term Lenders and the amounts

owned to holders of mechanics' and materialmen's liens, approximately $1,711,700,000 is owed

to the Term Lenders.  Debtors have recognized that they essentially have no stake in the

Project.[33]  With each interim cash collateral order, Debtors' minimal interest in the outcome of

these Bankruptcy Cases decreases while the Term Lenders obtain ever larger liens which prime

the interests of Movants and other lien claimants.  Thus, with each interim cash collateral order,

---

[29] See In re Mid-Atlantic Handling Systems, 304 B.R. at 126 (also citing the difficulty or unsettled nature of state law and prejudice to involuntarily removed defendants as factors).

[30] In re Pac. Gas & Elec. Co., 279 B.R. 561, 569-70 (Bankr. N.D.Cal. 2002) (citing Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1167 (9th Cir. 1990)).

[31] See In re Beane, 404 B.R. at 948 (citing In re Bogdanovich, 292 F.3d 104, 110 (2d Cir. 2002)).

[32] See Interim Cash Collateral Orders.

[33] Transcript of July 27, 2009 Hearing, p. 34, lines 14-17 ("Judge, we don't pretend that there is room here for equity at the end of the day.  We understand that the money doesn't get down to the bottom of the food chain, and we have been acting as fiduciaries") (argument by Debtors' counsel).

the value of the liens of Movants and other lien claimants is further eroded.

Most damaging to Movants and other lien claimants, however, are the terms of the Interim Cash Collateral Orders awarding the Term Lenders prepetition liens seniority over the lien claimants unless the lien claimants undertake the burden of challenging the liens of the Term Lenders on or before October 15, 2009 via filing an adversary proceeding or proof of claim in Miami, Florida.

The provisions of the Fourth Interim Order impose upon Movants and other lien claimants substantial burdens that do not ordinarily arise under either bankruptcy or nonbankruptcy law.  While the liens of secured creditors generally may "ride through" a bankruptcy case intact and unimpaired without the filing of a proof of claim, and while the requirement that lien claimants enforce their liens is stayed by Section 108(c), the lien claimants in this case are forced to take affirmative action not required by the Code.  Thus, if Movants are not permitted to seek a determination of the validity, extent, and priority of all of the liens asserted against the Property in a Nevada court of competent jurisdiction that allows notice to all lienholders and consolidation of all lienholders in a single action, as discussed below, approximately 180 lien claimants will be required to pursue piecemeal litigation via either (or both) adversary proceedings and the claim objection process before this Court, at significantly greater cost to Movants and inconvenience to this Court.[34]

As stated in the Lienholder Declarations, Movants will face significantly greater costs in pursuing enforcement of their lien claims in this Court, as the documents and witnesses

---

[34] Despite the Debtors' contention that "the Amended Complaint will undoubtedly precipitate a storm of unnecessary litigation," Debtors created a process through the various Interim Cash Collateral Orders whereby each of the almost 180 lien claimants must file an adversary proceeding, a proof of claim, or "opt-in" to the Turnberry adversary on or before October 15, 2009 in order to preserve their lien rights.   Motion by Debtors for Entry of an Order Staying Adjudication of Count II of Amended Complaint, Adversary No. 09-01762-BKC-AJC-A, p. 4; Third Interim Order; Fourth Interim Order.

necessary to establish the extent, validity, and priority of their liens are located in Nevada.[35]  Due

to the substantial size of the Project and substantial number of lien claimants, establishing the

validity, extent, and priority of the lien claimants' liens is likely to involve hundreds of witnesses

and tens or even hundreds of thousands of documents.[36]  By way of example, in connection with

the Venetian Casino Resort lien litigation, nine witnesses testified and approximately 400

exhibits were introduced in the trial of the single lien claim of Scott Co. of California, which

lasted 33 days.[37]  In the 130-day trial of the lien claim of Lehrer McGovern Bovis, the general

contractor of the Venetian, 43 fact witnesses and five expert witnesses gave testimony, and

11,000 exhibits were introduced.[38]  Though other parties may minimize the complexity or

intricacy of the litigation of lien claims in Nevada, there is no question that a determination of

the validity, priority, and amounts of liens in large-scale construction projects such as the

Fontainebleau Las Vegas is a time-consuming and tedious process.  As set forth below, the

Nevada mechanics' lien statute provides mechanisms for the greatest possible expediency in

determining lien claims in Nevada.

      Debtors, by contrast, will suffer little or no prejudice if the stay is modified.  As indicated

above, Debtors have no real stake in the outcome of the lien litigation.  Debtors have no equity

---

[35] Though this Court has previously noted the ability of Movants and certain other lien claimants to advocate effectively on their own behalves, other lien claimants are not likely to have the financial wherewithal to pursue extensive litigation in Florida.

[36] See Lienholder Declarations.  See generally Blan v. Nachogdoches Co. Hosp. (In re Blan), 237 B.R. 737, 738 (8th Cir. BAP 1999) (discussing issues of judicial economy and location of witnesses and documents in support of stay relief).  See also Venetian Casino Resort, LLC v. Eight Judicial Dist. Court of State ex rel. County of Clark, 41 P.3d 327, 329, 118 Nev. 124, 128 (Nev. 2002) (noting that a single lien hearing involved four days of testimony and 80 exhibits).

[37] In re Venetian Lien Litigation, Case No. A397391, Individual Case No. A409223, In the Eighth Judicial District Court, Clark County, Nevada.

[38] John L. Smith, Construction Firm Scales The Heights Of Litigation To Win Venetian Judgment, Las Vegas Review Journal (reviewjournal.com), Apr. 6, 2005, available at http://www.reviewjournal.com/lvrj_home/2005/Apr-06-Wed-2005/news/26229658.html (last visited September 3, 2009); See also In re Venetian Lien Litigation, Case No. A397391, Individual Case No. A406590, In the Eighth Judicial District Court, Clark County, Nevada.

interest in the Project, and the dispute is likely to come down to efforts by the Term Lenders to defeat the senior priority of the lien claimants and chip away at the amounts of their liens.  The imminent lien dispute will be driven by the lien claimants and the Term Lenders.  Absent the need to give Debtors "breathing room" and protect Debtors from litigation on multiple fronts, there is no logical reason to require the litigation between the Term Lenders and the lien claimants of 180 lien claims to take place in this Court.  Of course, this Court may always retain jurisdiction to re-impose the automatic stay to the extent Debtors develop a realistic prospect of reorganizing or locate a buyer for the Project.

Even if Debtors continue to have an interest in the outcome of the lien litigation, however, the lien claims will have to be resolved at some point during this bankruptcy case. Though Debtors have attempted to short-circuit the litigation of the lien claims through proposing a specialized claims process and other questionable tactics, these claims may be resolved only through litigation pursuant to Rule 7001(2) or under Nevada law.[39]  The issue therefore is not whether Debtors may avoid litigation entirely by continuation of the stay, but whether the inevitable litigation will take place in this Court or in Nevada.[40]  Even if Debtors have any interest in contesting the lien claimants' claims, Debtors will not be prejudiced by having the lien claims resolved in Nevada, as Debtors' lien counsel is Snell & Wilmer, LLP, located in Las Vegas, Nevada.

The Court must balance the burden imposed by requiring the approximately 180 Nevada

---

[39] Fed.R.Bankr.P. 7001(2).   See Chase Automotive Fin., Inc. v. Kinion (In re Kinion), 207 F.3d 751, 757 (5th Cir. 2000) (contesting a lien calls for an adversary proceeding, and allowing a motion for reconsideration cannot substitute for the before-the-fact protections of creditors' interests embodied in the adversary rules); Lyons v. Lyons (In re Lyons), 995 F.2d 923, 924 (9th Cir. 1993) (when a Rule 7001 category is at issue, the movant "may obtain the authority he seeks only through an adversary proceeding").

[40] See, e.g, In re Davis, 91 B.R. at 472 (granting relief from the stay where debtor would experience no hardship by defending the breach of contract action in state court because if the case was not tried in state court, the same proceeding would be conducted in bankruptcy court).

lien claimants to file separate adversary proceedings or claims in Florida against the burden imposed upon the Debtors by requiring the Debtors to assert any contest to the validity, extent, or priority of liens in a single, expedited process in Nevada, to the extent Debtors have any interest in doing so.  The burden imposed upon the Movants and other lien claimants by maintenance of the stay far outweighs the minimal burden on the Debtors.

**C.**    **The Lien Litigation Is Solely A Matter Of Nevada State Law**

The issues in the pending litigation involve only Nevada law, and thus the special expertise of this Court is unnecessary to resolve the substantive issues.  Further, there is no jurisdictional basis for these claims to be brought in this Court other than 28 U.S.C. § 1334 and the determination of the validity, extent, and priority of liens raises no substantive rights under the Bankruptcy Code.  It is indisputable that Chapter 108 of the Nevada Revised Statutes, not any substantive provision of federal law, will govern the outcome of any lien proceeding.  Had Debtors not filed bankruptcy petitions, this Court would have no basis for jurisdiction over the lien claims.[41]

Further, the Nevada legislature has codified its desire that lien claims under NRS Chapter 108 be heard in Nevada courts in NRS 108.239(1), which provides for enforcement of a lien in the county where the property upon which the work of improvement is located.[42]   Thus the interest of giving comity to the Nevada courts weighs in favor of modifying the automatic stay to

---

[41] See In re Robbins, 964 F.2d at 345 (identifying whether the issues in the pending litigation involve only state law so that the expertise of the bankruptcy court is unnecessary as a factor in deciding whether to grant relief from the stay); In re Mid-Atlantic Handling Systems, 304 B.R. at 126 (identifying the extent to which state law issues predominate and the degree of relatedness or remoteness of the proceeding to the main bankruptcy case in deciding whether to grant relief from the stay); In re Pac. Gas & Elec. Co., 279 B.R. at 569 (citing In re Tucson Estates, Inc., 912 F.2d at 1167) (identifying the jurisdictional basis, if any, other than 28 U.S.C. § 1334, and the substance, rather than the form, of an asserted "core" proceeding as factors in deciding whether to grant relief from the stay)).

[42] NRS 108.239(1).

permit the lien litigation to occur in a Nevada court.[43]

**D.      The Interest Of Promoting Judicial Economy And The Practical Problems Raised By Litigation In This Court Favor Modification Of The Stay**

The policy of promoting judicial economy strongly weighs in favor of modifying the automatic stay.  Debtors contend that approximately 180 statutory liens have been filed against the Property, but not all 180 lien claimants have appeared before this Court.  As a result, duplicative and inconsistent litigation may result due to the procedural and substantive due process issues previously raised by Movants.  By contrast, the Nevada state court in Clark County (the Eighth Judicial District Court) has indisputably proper jurisdiction over all of the parties and proper venue.  Where one forum with jurisdiction over all parties involved is available to fully dispose of all issues relating to a lawsuit, the lawsuit should be brought in that forum.[44]

As previously argued by Movants, lien claimants who are not joined to an adversary to determine the extent, validity, and priority of liens will be deprived of due process unless they are entitled to bring a subsequent action to determine priority and contest matters of foreclosure.[45]  Lien claimants who are not joined an action to determine the validity, extent, and priority of liens may thus enforce their liens in a later action.  As previously argued by Movants in the Proposed Memorandum Decision and Order Vacating Findings of Lien Priority of The Third Interim Order (I) Authorizing Use of Cash Collateral Pursuant to § 363 of Bankruptcy

---

[43] See In re Mid-Atlantic Handling Systems, 304 B.R. at 126 (identifying the interest of comity to the state court as a factor in deciding whether to grant relief from the stay).

[44] See Smith v. Tricare Rehabilitation Systems, Inc. (In re Tricare Rehabilitation Systems, Inc.), 181 B.R. 569, 574 (Bankr. N.D.Ala. 1994) (citations omitted).  See also In re South Oakes Furniture, Inc., 167 B.R. at 309-310 (noting the bankruptcy court's jurisdiction over the guarantor was "problematical," such that the rights of all parties may not be finally adjudicated by the bankruptcy court, whereas the state court seemed to have personal jurisdiction over all of the necessary parties).

[45] A.F. Constr. Co. v. Virgin River Casino Corp., 118 Nev. 699, 56 P.3d 887, 890 (Nev.2002).  While the validity and amount of a lien may be established without joinder of all parties holding a recorded interest in the property, a party who is not joined to such proceeding will not be bound by a determination of priority.

Code; (II) Adequate Protection to Secured Parties Pursuant to §§ 361, 362, 363, and 364, of Bankruptcy Code; and (III) Scheduling Final Hearing, the Court may be unable to assert personal jurisdiction against all necessary parties to a lien proceeding.  Therefore, a ruling by this Court as to the validity, extent, and priority of liens as between the Term Lenders, the Debtors, and only certain of the lien claimants may not afford final relief as it will affect only the parties before it in the adversary.  The priority of the lien claims of the non-appearing lien claimants may still be litigated vis-à-vis the Term Lenders or other lien claimants, resulting in duplicative and inconsistent litigation.

Even if the assertion of personal jurisdiction over all of the lien claimants is proper, and the lien claimants are capable of being joined in an adversary proceeding, the Court is almost certain to be faced with multiple motions for change of venue[46] and motions to abstain because the Property is located in Clark County, Nevada, all work and materials were provided in Clark County, Nevada, and all lien claims were filed in Clark County, Nevada.

An action in Nevada would not suffer from these procedural obstructions, as the Nevada court will have jurisdiction over all lien claimants and venue will be proper in Clark County, Nevada.[47]  Nevada is thus the one forum with jurisdiction over all parties involved and is available to fully dispose of all issues relating to the lien litigation, and therefore the lawsuit should be brought in Nevada.[48]

The fact that approximately 180 lien claims have been filed against the Property also raises concerns about the burden on this Court's docket.  For example, in the Venetian Casino

---

[46] See Motion by Debtors for Entry of an Order Staying Adjudication of Count II of Amended Complaint, Adversary No. 09-01762-BKC-AJC-A, p. 6.

[47] See NRS 108.239(1) ("A notice of lien may be enforced by an action in any court of competent jurisdiction that is located within the county where the property upon which the work of improvement is located…")

[48] See In re Tricare Rehabilitation Systems, Inc.), 181 B.R. at 574; In re South Oakes Furniture, Inc., 167 B.R. at 309-310.

Resort lien litigation, involving more than 100 lien claims, a *single* lien trial involved four days of testimony and 80 exhibits.[49]   Another lien claim, that of Scott Co. of California, required a 33-day trial encompassing nine live witnesses and approximately 400 exhibits.[50]   Attempting to resolve the lien claims of all 180 of the claimants in this Court would require months of this Court's time and resources.   Even Debtors have admitted that litigation of the lien claims in the Turnberry adversary or in numerous adversary proceedings will be "unwieldy, time-consuming and expensive..."[51]

While federal courts have certain tools available for complex litigation, such as Federal Rule 42, Nevada law has specific procedures designed to expedite mechanics' lien litigation.   In Nevada, a court may consolidate all actions by lien claimants to foreclose on respective liens.[52]   By statute, lien claims are entitled to preferential trial settings upon request,[53] and the court is required to set the matter for hearing within 60 days after the filing of the demand for preferential trial setting.[54]   The purpose of the lien statute is to provide a speedy remedy to secure payment of the claims of lien claimants.[55]   Preferential lien hearings must be heard in a summary manner and may be referred to a special master.[56]   Expedited discovery procedures are provided

---

[49] <u>Venetian Casino Resort, LLC</u>, 41 P.3d at 329, 118 Nev. at 128.

[50] <u>See</u> generally *In re Venetian Lien Litigation*, Case No. A397391, Individual Case No. A409223 (Scott Co. of California), In the Eighth Judicial District Court, Clark County, Nevada.

[51] Motion by Debtors for Entry of an Order Staying Adjudication of Count II of Amended Complaint, Adversary No. 09-01762-BKC-AJC-A, p. 2.

[52] NRS 108.239(6).

[53] NRS 108.239(8) (Upon petition by a lien claimant for a preferential trial setting: (a) the court shall give preference in setting a date for the trial of an action brought pursuant to this section; and (b) if a lien action is designated as complex by the court, the court may take into account the rights and claims of all lien claimants in setting a date for the preferential trial."); NRS 108.2421 (specific procedures for litigation of lien claims).

[54] NRS 108.2421(3).

[55] <u>California Commercial v. Amedeo Vegas I, Inc.</u>, 67 P.3d 328, 119 Nev. 143 (Nev. 2003)

[56] NRS 108.239(7).  <u>See</u> <u>also</u> <u>Venetian Casino Resort</u>, 41 P.3d 327.

by the statute.[57]   Allowing the litigation of the lien claims in Nevada state courts thus will facilitate the most expeditious and economical resolution of the lien claims.

### E.    M&M Lienholders' Proposed Lien Litigation Process

To facilitate the Debtors' goal of obtaining information regarding the lien claims asserted against the Property, and to accord due process to the lien claimants and facilitate the expeditious determination of the validity, extent, and priority of each of the lien claims asserted against the Project, the automatic stay should be modified for a <u>specified period of time</u> and for the <u>specified purpose</u> of permitting the lien claimants to institute a lawsuit to determine the extent, validity, and priority of all lien claims against the Project in Clark County, Nevada.

The order modifying the automatic stay should require that Movants file a complaint under NRS 108.239 (an action to enforce notice of lien) in the appropriate forum within 20 days of entry of the order modifying the stay.  A case management order should be submitted to the state court, which provides for division of the lien litigation into two phases.  The case management order should contain and/or require for Phase I of the lien litigation:

- requirement of joinder of all lien claimants to the proceeding in compliance with NRS 108.239(2) and (4),[58] such that all lien claims are consolidated in a single action to avoid duplicative litigation;[59]

---

[57] NRS 108.2421(4)-(6).

[58] NRS 108.239(2) requires that at the time of filing the complaint and issuing the summons, the lien claimant must:

(a) File a notice of pendency of the action in the manner provided in NRS 14.010; and

(b) Cause a notice of foreclosure to be published at least once a week for 3 successive weeks, in one newspaper published in the county… notifying all persons holding or claiming a notice of lien pursuant to the provisions of NRS 108.221 to 108.246, inclusive, on the property to file with the clerk and serve on the lien claimant and also on the defendant, if the defendant is within the State or is represented by counsel, written statements of the facts constituting their liens, together with the dates and amounts thereof.

Following notice by publication, NRS 108.239(4) requires service of notice on other lien claimants identified in the county recorder's records by registered or certified mail, or by delivery of the notice of foreclosure in person.

Following proper notice under NRS 108.239(2)(a), (b), and (4), NRS 108.239(4) provides that "All persons holding or claiming a notice of lien may join a lien claimant's action by filing a statement of facts within a reasonable time after publication of the notice of foreclosure or receiving notice of the foreclosure, whichever occurs later. Any number of persons claiming liens may join in the same action if they timely file a statement of facts in the lien

- a limitation on the pleadings that may be filed without further order of the Bankruptcy Court, which will be limited to a single complaint, answer, cross-claim, and counterclaim by each party;

- preparation of an approved service list;

- discovery:

     1. appointment of a special master pursuant to NRS 108.239(7), who will preside over discovery disputes which arise and to resolve disputes in the form of a recommended order;

     2. a discovery procedure that will organize the voluminous documents necessary to prosecution of the litigation and prevent unnecessary duplication of document production, including designation of a document repository;

     3. a limitation on discovery that may be propounded without further order of this Court to (1) providing information to the Debtors regarding the amount, priority, and basis for the lien claim; and (2) depositing of Project files into a document repository in Las Vegas, Nevada. Project files will include all documents relating to the work of improvement as contemplated by NRS 108 and include correspondence, design changes, pre-construction reports, feasibility studies, and any other document or file relating to the design, construction, and progress of the Project;

     4. all parties should be required to produce all documents the party intends to rely upon within 75 days of the date of entry of the case management order, which must be bates-stamped in a uniform manner.

Upon completion of Phase I of the lien litigation, the state court litigation should be stayed if Debtors have come forward with a buyer for the Project, located a source of funding for completion of the Project, or proposed a plan of reorganization. Upon further order of the Court, Phase II of the litigation, encompassing all discovery not completed in Phase I of the litigation, trials of the lien claims, and eventually foreclosure, may commence.

…

…

---

claimant's action. The lien claimant and other parties adversely interested must be allowed 20 days to answer the statements."

[59] Under NRS 108.239(6), when more than one action is commenced by lien claimants, the court may consolidate all of the actions.

**III.**
## CONCLUSION

WHEREFORE, the M&M Lienholders respectfully request the Court grant this Motion and enter an order: 1) modifying the automatic stay pursuant to Section 362(d) to permit the M&M Lienholders to file the necessary action in Nevada court solely to determine the validity, extent, and priority of all lien claims recorded against the Project, as set forth herein, but not to foreclose; 2) providing that the provisions of Rule 4001(a)(3) be waived; and 3) granting such other and further relief as is just and proper.

DATED this 11th day of September, 2009.

### *ATTORNEY CERTIFICATION*

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 11, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served via transmission of Notice of Electronic Filing generated by CM/ECF on all parties who are authorized to receive Notices of Electronic Filing on September 11, 2009, and is being served via U.S. Mail to all other persons on the attached Service List on September 14, 2009.

By: */s/ Philip J. Landau*
Philip. J. Landau
Florida Bar No. 504017
SHRAIBERG, FERRARA & LANDAU P.A.
2385 N.W. Executive Center Dr.,
Suite 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: Plandau@sfl-pa.com

Gregory E. Garman
Nevada Bar No. 6654
Thomas H. Fell
Nevada Bar No. 3717
GORDON SILVER
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone: (702) 796-5555
Facsimile: (702) 369-2666
*Admitted Pro Hac Vice*

**SERVICE LIST**

**Case No. 09-21481**

**Via CM/ECF:**

Brett M. Amron
On behalf of Creditor Aurelius Capital Management, l.P.
bamron@bastamron.com, jrivera@bastamron.com, jeder@bastamron.com

Scott L. Baena
On behalf of Debtor Fontainbleau Las Vegas Capital Corp.
sbaena@bilzin.com, lflores@bilzin.com, eservice@bilzin.com

Carla M. Barrow
On behalf of Creditor Fisk electric Company
cbarrow@wsh-law.com

Paul J. Battista
On behalf of Creditor Committee Creditors Committee
pbattista@gjb-law.com, ctarrant@gjb-law.com; gjbecf@gjb-law.com

Mark D. Bloom
On behalf of Creditor Barclays Bank PLC
bloom@gtlaw.com, phillipsj@gtlaw.com, mialitdock@gtlaw.com, miaecfbky@gtlaw.com

Jacqueline Calderin
On behalf of Creditor Absocold Corporation d/b/a Econ Appliance
jc@ecccounsel.com, phornia@ecccounsel.com; tmuller@ecccounsel.com; nsocorro@ecccounsel.com

Candace C. Carlyon
On behalf of Creditor Young Electric Sign Company
ccarlyon@sheacarlyon.com

Robert P. Charbonneau
On behalf of Creditor Absocold Corporation d/b/a Econ Appliance
rpc@ecccounsel.com, nsgm0024@aol.com; dgold@eccounsel.com; scunningham@eccounsel.com; phornia@ecccounsel.com; tumuller@ecccounsel.com; nscocorro@ecccounsel.com

David Colvin
On behalf of Creditor Dana Kepner Company
dcolvin@marquisaurbach.com

Sara D. Cope
On behalf of Creditor Southern Nevada Painters Trust Funds
saradcope@gmail.com, kbchrislaw@aol.com

Ryan E. Davis
On behalf of Creditor Cemex Construction Materials Florida, LLC
rdavis@whww.com, rwilliams@whww.com

Thomas H. Fell
On behalf of Creditor M&M Lienholders
bknotices@gordonsilver.com, bankruptcynotices@gordonsilver.com

James H. Fierberg
On behalf of Creditor Term lender Steering Group
James.fierberg@akerman.com

Robert G. Fracasso, Jr.
On behalf of Interested Party Sumitomo Mitsui Banking Corporation
rfracasso@shutts.com

Thomas Joseph Fancella
On behalf of Interested Party Minibar Systems and Minibar NA, Inc.
tfrancella@wtplaw.com

Robert C. Furr
On behalf of Creditor MB Financial Bank NA
bnasralla@furrcohen.com

Jay M. Gamberg
On behalf of Creditor Mechanical Systems West, Inc.
lbernstein@gamberglaw.com

James D. Gassenheimer
On behalf of Interested Party Turnberry Residential Limited Partner, L.P.
jgassenheimer@bergersingerman.com

Daniel L. Gold
On behalf of Creditor Absocold Corporation
dgold@ecccounsel.com, scunningham@eccclega.com

Michael I. Goldberg
On behalf of Creditor Term Lender Sterring Group
michaelgoldberg@akerman.com , charlene.cerda@akerman.com

Alvin S. Goldstein
On behalf of Creditor MB Financial Bank, NA
mmitchell@furrcohen.com

Ross R. Hartog
On behalf of Credtor Aderholt Specialty Company, Inc.
rharog@mdrtlaw.com

Thomas E. Kaaran
On behalf of Creditor Southwest Gas Corporation
kthomas@mcdonaldcarano.com

John W. Kozyak
On behalf of Creditor Apollo Investment Fund, VII, LP
jk@kttlaw.com

David M. Levine
On behalf of Fidelity National Title Insurance Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company, Transnation Title Insurance Company, and First American Title Insurance Company
dml@tewlaw.com

Paul J. McMahon
On behalf of Creditor Colasanti Specialty Services, Inc.
pjm@pjmlawmiami.com

Robert C. Meacham
On behalf of Creditor Derr and Gruenewald Construction Co.
rmeacham@mmdpa.com

Lawrence H. Meuers
On behalf of Interested Party CCCS International
lmeuers@meuerslawfirm.com

Harold D. Moorefield, Jr.
On behalf of Interested party Bank of Scotland plc
hmoorefield@swmwas.com, cgraver@swmwas.com; larrazola@swmwas.com; rross@swmwas.com

Minda A. Mora
On behalf of Debtor Fontaineblewau Las Vegas Holdings, LLC
mmora@bilzin.com;        eservice@bilzin.com;        lflores@bilzin.com;        laparaicio@bilzin.com;
jslanker@bilzin.com

Kenneth E. Noble
On behalf of Defendant Bank of Scotland
Kenneth.noble@kattenlaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Becky Pintar
On behalf of Creditor D'Alessio Contracting, Inc.
bpintar@gglts.com
Craig V. Rasile
On behalf of Creditor Bank of America, N.A.
crasile@hunton.com;        mtucker@hunton.com;        mmannering@hunto.com;        keckhardt@hunton.com,
adeboer@hunton.com

Robert F. Reynolds
On behalf of Creditor American Crane & Hoist, LLC
rreynolds@slatkinreynolds.com, imalcom@slatkinreynolds.com

Arthur J. Rice
On behalf of Interested Party HSH Nordbank AG, New York Branch
Arice.ecf@rprslaw.com

Ralf R. Rodriguez
On behalf of Creditor Colasanti Specialty Services, Inc.
rrodriguez@pecklaw.com, sdumbar@pecklaw.com, jfried@pecklaw.com

Michael L. Schuster
On behalf of Creditor Committee Creditors Committee
mschuster@gjb-law.com, ctarrant@gjb-law.com, gjbecf@gjb-law.com, mpachecco@gjb-law.com

Shlomo S. Sherman
On behalf of Creditor Young Electric Sign Company
ssherman@sheacarlyon.com

Paul Steven Singerman
On behalf of Interested Party Turnberry Residential Limited Partner, LP
singerman@bergersingerman.com; efile@bergersingerman.com

Tina M. Talarchyk
On behalf of Creditor US Bank National Association
TTalarchyk@ssd.com

Charles M. Tatelbaum
On behalf of Creditor Johnson Controls, Inc.
ctatelbaum@adorno.com

Diane Noller Wells
On behalf of Creditor Young Electric Sign Company
dwells@devinegoodman.com; efiling@devinegoodman.com

**Via U.S. Mail:**

Bruce Bennett
On behalf of Creditor Term Lender
Steering Group
865        S.        Figueroa        Ave.
Los Angeles, CA 90017

Alan H. Martin
On behalf of Creditor Bank of America
650 Town Center Dr., 4th Floor
Costa Mesa, CA 92626

Thomas J. Francella, Jr.
On behalf of Minibar Systems
1220 N. Market Street, Ste. 608
Wilmington, DE 19801-2535

AKFCF, Inc.
10432 N. Lake Vista Circle
Davie, FL 33328

Kyle Mathews
On behalf of Creditor Bank of America
333 S. Hope St., 48th Floor
Los Angeles, CA 90071

Jean Marie L. Atamian
1675 Broadway
New York, NY 10019

Jeff J. Friedman
On behalf of Interested Party Bank of
Scotland plc
575 Madison Avenue
New York, NY 1022-2585

Joshua M. Mester
On behalf of Creditor Term Lender
Steering Group
865 S. Figueroa Avenue
Los Angeles, CA 90017

Jed I. Bergman
1633 Broadway
New York, NY 10019

Phillip A. Geraci
On behalf of Interested Party HSH
425 Park Avenue
New York, NY

Kenneth E. Noble
On Behalf of Interested Party Bank of
Scotland, plc
575 Madison Avenue
New York, NY 10022

Bradley Butwin
7 Times Square
New York, NY 10036

HSH Nordbank AG, New York Branch
c/o Aaron Rubenstein, Esq.
425 Park Avenue
New York, NY 10022

Anthony L. Paccione
On behalf of Interested party Bank of
Scotland, plc
575 Madison Avenue
New York, NY 10022

Daniel Cantor
7 Times Square
New  York, NY 10036

HSH Nordbank AG, New York Branch
c/o Andrew W. Kress, Esq.
425 Park Avenue
New York, NY 10022

Matthew D. Parrot
On behalf of Interested party Bank of
Scotland, plc
575 Madison Avenue
New York, NY 10022

Kelly M. Cooper
1301 Atlantic Ave
Atlantic City, NJ 08401

Todd Kaplan
Citadel Derivatives Group, LLC
131 Dearborn St
Chicago, IL 60603

Thomas C. Rice
On behalf of Creditor Barclays Bank PLC
425 Lexington Avenue
New York, NY 10017

Noah G. Allison
3191 E. Warm Springs Road
Longford Plaza East, Bldg. 13
Las Vegas, NV 89120

Andrew A. Cress
On behalf of Interested Party HSH
425 Park Avenue
New York, NY 10022

Aaron Rubinstein
On behalf of Interested Party HSH
Nordbank AG
425 Park Avenue
New York, NY 10017

Gregory Garman
3960 Howard Hughes Pkwy, 9th Fl
Las Vegas, NV 89169

Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

Justin S. Stern
On behalf of Creditor Barclays Bank PLC
425 Lexington Avenue
New York, NY 10017

Robert W. Glantz
321 N. Clark St., #800
Chicago, IL 60654

Arthur S. Linker
On behalf of Interested Party Bank of
Scotland PLC
575 Madison Avenue
New York, NY 1022-2585

David J. Woll
On behalf of Creditor Barclays Bank PLC
425 Lexington Avenue
New York, NY 10017

IKON Financial Services
POB 13708
Macon, GA 31208

Marc E. Kasowitz
1633 Broadway
New York, NY 10019

Jack J. Kessler
19950 AW Country Club Dr #101
Aventura, FL 33180

Jason I. Kirschner
1675 Broadway
New York, NY 10019

Joshua T. Klein
2000 Market St., 10th Fl
Philadelphia, PA 19103

Sidney P. Levinson
865 S. Figueroa Avenue
Los Angeles, CA 90017

Arthur S. Linker
575 Madison Avenue
New York, NY 10022-2585

Jennifer R. Lloyd-Robinson
6750 Via Austi Parkway #170
Las Vegas, NV 89119

Josefina Fernandez McEvoy
1800 Century Park East, #300
Los Angeles, CA 90067-1506

Sharon Merrill
350 E. Las Olas Boulevard, #170
Ft. Lauderdale, FL 33301

Seth A. Moskowitz
1633 Broadway
New York, NY 10019

Matthew D. Novello
3201 University Drive, #100
Auburn Hills, MI 48326

Bryan J. Pezzillo
6750 Via Austi Parkway, #170
Las Vegas, NV 89119

Peter J. Roberts
321 N. Clark St. #800
Chicago, IL 60654

Jonathan Rosenberg
7 Times Square
New York, NY 10036

Alan Rubin
100 Second Street, 34th Floor
Miami, FL 33131

David M. Friedman
1633 Broadway
New York, NY 10019

William Sushon
7 Times Square
New York, NY 10036

Garces Restaurant Group, LLC
c/o Robert W. Keddie, III, Esq.
502 Carnegie Center, #103
Princeton, NJ 08540

Michael J. Viscount
1301 Atlantic Ave
Atlantic City, NJ 08401-7212

Clark T. Whitmore
90 S. 7th St., #300
Minneapolis, MN 55401

David J. Woll
425 Lexington Avenue
New York, NY 10017

Christopher R. Belmonte
Pamela Bosswick
230 Park Avenue
New York, NY 10169

Frederick D. Hyman
Mayer Brown LLP
1675 Broadway
New York, NY 10019

Kesha Tanabe
90 south Seventh Street
3300 Wells Fargo Center
Minneapolis, MN 55402

Donald H. Williams
612 south 10th Street
Las Vegas, NV 89101

Eric D. Winston
865 S. Figueroa Street
10th Floor
Los Angeles, CA 90017

Eric Dobberstein, Esq.
Dobberstein & Associates
8965 S. Eastern Ave., Ste. 280
Las Vegas, NV 89123

Ahern, QED and STMI
c/o Dixon Truman Fisher & Clifford
Attn: Robin E. Perkins, Esq.
221 N. Buffalo Dr., Ste. A
Las Vegas, NV 89145

Jason A. Rose, Esq.
Fahrendorf, Viloria, Oliphant & Oster, LP
327 California Avenue
Reno, NV 89502

Kevin B. Christensen, Esq.
7440 W. Sahara Avenue
Las Vegas, NV 89117

Michael R. Mushkin, Esq.
4475 S. Pecos Road
Las Vegas, NV 89121

Thomas D. Lumpkin, II, Esq.
6258 SW 99th Terrace
Pinecrest, FL 33146-3345

26