# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                        Chapter 11

FONTAINEBLEAU LAS VEGAS
HOLDINGS, LLC, ET AL.,[1]                    Case No.  09-21481-BKC-AJC


            Debtors.                                (Jointly Administered)
_____/

**[PROPOSED] FIFTH INTERIM ORDER (I) AUTHORIZING USE OF CASH**
**COLLATERAL PURSUANT TO SECTION 363 OF BANKRUPTCY CODE,**
**(II) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED**
**PARTIES PURSUANT TO SECTIONS 361, 363, AND 364, OF THE**
**BANKRUPTCY CODE, AND (III) SCHEDULING FINAL HEARING**

Upon the motion, dated September 14, 2009, of Fontainebleau Las Vegas

Holdings, LLC (the "Company"), Fontainebleau Las Vegas, LLC, and Fontainebleau

---

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

2

Las Vegas Capital Corp. (collectively, the "Debtors"), as debtors and debtors in possession (each, individually a "Debtor" and, collectively, the "Debtors") (the "Motion") for entry of (1) this fifth interim order (the "Order") (a) authorizing the Debtors to use Cash Collateral (as hereinafter defined) pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") on an interim basis and in limited amounts pending a final hearing (the "Final Hearing") on the Motion, (b) granting the Prepetition Agent[2] and the Prepetition Lenders certain liens and other rights pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code with respect to, inter alia, such use of Cash Collateral granted under the Prepetition Credit Agreement (as hereinafter defined), and (c) in accordance with Rule 4001(b)(2), (c)(2) and (d)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting that this Court schedule a Final Hearing and approve notice with respect thereto and (2) an order granting the relief requested in the Motion on a final basis (the "Final Order"); and the Court having considered the Motion and the exhibits attached thereto, including, without limitation, the Budget (as hereinafter defined); and a hearing to consider approval of the Motion on an interim basis having been held and concluded on September __, 2009 (the "Interim Hearing"); and upon all of the pleadings filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

THE COURT FINDS:

A.      On June 9, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  (the "Chapter 11 Cases").

B.      Jurisdiction.  Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §157(b)(2)(M).  This Court has jurisdiction over the Chapter 11

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

Cases, this proceeding, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice.  Notice of the relief sought by the Motion and the hearing with respect thereto was delivered on September ___, 2009 via electronic mail, facsimile transmission and/or overnight delivery, as the case may be, to the following parties in interest:  (a) the Office of the United States Trustee for the Southern District of Florida (the "OUST"); (b) those parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims Against the Debtors, as identified in the Debtors' chapter 11 petitions; (c) counsel to the Prepetition Agent; (d) counsel to Term Lenders that are members of a steering group (the "Term Lender Steering Group"); (e) counsel to Bank of America, N.A. in all of its capacities under the Prepetition Loan Documents (as defined below) and as an individual Revolving Lender; (f) counsel to the Trustee for the Second Mortgage Notes;  (g) counsel  for  the  Official  Committee  for  Unsecured  Creditors  (the "Committee"); and (h) any party asserting a Lien (as hereafter defined) against any of the Debtors' assets (collectively, the "Interim Notice Parties").  Given the nature of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of the Motion, the relief requested therein and this Order pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and section 102(1) of the Bankruptcy Code, as required by section 363(b) and 364(c) of the Bankruptcy Code, and no further notice of the Motion or this Order is necessary or required.

D.    Cash Collateral.  For purposes of this Order, the following constitute "Cash Collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code:  (a) all funds of the Debtors (including any funds subject to a right of setoff in favor of any Prepetition Lender, any funds on deposit or maintained in any account subject to a control agreement with the Prepetition Agent, and any proceeds of the Prepetition Collateral) as of the Petition Date, including the contents of all of the

Accounts identified in Section 2.2 of the Master Disbursement Agreement as to which the Prepetition Agent is listed as pledgee (but excluding funds in Accounts identified in Section 2.2 of the Master Disbursement Agreement as to which only the Retail Agent is pledgee and the Completion Guaranty Proceeds Account (which is the encumbered property of Turnberry Residential Limited Partner, LP)); (b) all cash proceeds of Prepetition Collateral received after the Petition Date including amounts set forth in the Budgets approved in connection with the Second Interim Order and the Third Interim Order that were transferred by the Prepetition Agent from the pre-petition Bank Proceeds Account to the debtor-in-possession resort payment account (the "DIP Account") established pursuant to the *Final Order Granting in Part and Denying in Part Emergency Motion By Debtors for Entry of an Order (A) Authorizing the Debtors to Maintain their Existing Cash Management System, Bank Accounts, and Business Forms, (B) Granting Administrative Expense Priority to Postpetition Intercompany Claims and Authorizing Continued Intercompany Arrangements and Historical Practices; and (C) Waiving Investment and Deposit Requirements* [Dkt. No. 227] (the "Final Cash Management Order").

       E.      Prior Cash Collateral Orders.

       (a)      On June 11, 2009, this Court entered the Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, and Scheduling Final Hearing [Dkt. No. 49] (the "First Interim Order").

       (b)      On July 7, 2009, this Court entered the Second Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, and Scheduling Final Hearing [Dkt. No. 242] (the "Second Interim Order").

(c)        On July 31, 2009, this Court entered the *Third Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, and Scheduling Final Hearing* [Dkt No. 359], which order was subsequently amended by the *Amended Third Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, and (III) Scheduling Final Hearing* [Dkt. No. 389] (as amended, the "Third Interim Order").

(d)        On August 27, 2009, this Court entered the *Fourth Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code, and (III) Scheduling Final Hearing* [Dkt No. 454] (the "Fourth Interim Order" and, together with the First Interim Order and the Second Interim Order, and the Third Interim Order, the "Prior Cash Collateral Orders").

(e)        Except as expressly provided herein or in another order of the Court, the Prior Cash Collateral Orders remain in full force and effect and shall not be restated herein.

**F.        Prepetition Debt and Adequate Protection Obligations Deemed to Be Postpetition Debt Secured by Senior Lien Under Section 364(d) of the Bankruptcy Code.  Under the First Interim Order, the Second Interim Order, and the Third Interim Order (but not the Fourth Interim Order, because funds comprising the Cash Collateral that was authorized to be used thereunder were not drawn by the Debtors), the Prepetition Secured Parties were granted Adequate Protection Obligations, including Adequate Protection Liens and Superpriority Claims, as protection for the use of Cash Collateral thereunder.  While no creditor has asserted a lien in the Cash Collateral senior to the Prepetition Secured Parties, certain**

**creditors have, subsequent to the Petition Date, asserted the existence of statutory liens with priority over the real property subject to the Prepetition Liens.  Pursuant to the Second Interim Order and the Third Interim Order, the Cash Collateral presently in the DIP Account was deemed to have been repaid to the Prepetition Secured Parties in satisfaction of payment Obligations under the Prepetition Loan Documents, and further deemed to have been reborrowed by the Debtors as postpetition debt, pursuant to section 364(d) of the Bankruptcy Code, secured by the Adequate Protection Liens granted under the Second Interim Order and/or the Third Interim Order, as applicable.  Based on the record before this Court, the continued application of such provisions to the Cash Collateral utilized under this Order is likewise appropriate, necessary, and authorized by the Bankruptcy Code.**

G.      Findings Regarding the Use of Cash Collateral.

(a)      Good cause has been shown for the entry of this Order. The Debtors have an immediate and critical need to use the Cash Collateral in order to continue to attempt to effectuate a reorganization of their financial affairs.

(b)      Based on the record presented to the Court at the Interim Hearing, good, adequate and sufficient cause has been shown to justify the immediate grant of the relief requested in the Motion to avoid irreparable harm to the Debtors' estates.  The terms of the Debtors' use of the Cash Collateral, as more fully set forth herein, are fair and reasonable.  Entry of this Order is in the best interests of the Debtors' estates and all parties in interest in these Chapter 11 Cases.

(c)      The Adequate Protection Obligations provided for hereunder including, without limitation, the Priming Lien in the Collateral granted herein, constitute adequate protection pursuant to section 361 of the Bankruptcy Code of the interests of any of the Prepetition Lenders who have objected to the use of Cash Collateral in accordance with the Budget attached hereto as Exhibit "A" (the "Budget") that is authorized hereunder.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Motion is granted. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Order shall constitute findings of fact and conclusions of law, and shall become effective immediately upon its entry.

2.      Subject to all of the terms and conditions set forth in this Order, the Debtors are authorized, pursuant to section 363(c)(2)(A) (as to those parties who have an interest in the Cash Collateral and who did not object to entry of this Order) and section 363(c)(2)(B) of the Bankruptcy Code, to use the Cash Collateral presently in the DIP Account solely and exclusively for the disbursements set forth in the Budget for the period of time from the date hereof until the earliest to occur of (a) the date that this Order or the Final Order (when applicable) ceases to be in full force and effect or (b) the occurrence and continuation of a "Termination Event." A Termination Event shall constitute any of the following:[3]

(i)      October 5, 2009 (the "Outside Date");

(ii)      any Debtor shall fail to comply with any of the terms or conditions of this Order;

(iii)      the occurrence of a Termination Event under the Prior Cash Collateral Orders (other than by virtue of the occurrence of the Outside Date provided therein);

(iv)      the cumulative aggregate cash disbursements exceed 105% of cumulative aggregate amount of cash disbursements projected in the Budget line "Weekly Subtotal" during the term of the Budget;

provided, however, that the Term Lender Steering Group may waive in writing any Termination Event, and provided further, that neither the filing of the Motion, the entry

---

[3] Unless otherwise defined herein, terms used in this Paragraph 2 shall have the same meaning(s) ascribed to them under the Prepetition Loan Documents.

of this Order nor any of the provisions hereof shall constitute a Termination Event under any of the Prior Cash Collateral Orders.

3.    The Debtors' authority to use the Cash Collateral shall automatically terminate upon the occurrence of a Termination Event, all without further order or relief from the Court.  Notwithstanding anything herein or the occurrence of a Termination Event, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under this Order shall survive such Termination Event.

4.    (a)    From and after the Petition Date, all proceeds of Collateral, including, without limitation, all of the Debtors' existing or future cash and Cash Collateral (collectively, "Lender Funds"), shall not, directly or indirectly, be used to pay expenses of the Debtors or to make debt payments (except as set forth in this Order) or be otherwise disbursed except for those debt payments, expenses and/or disbursements that are expressly permitted under this Order and are consistent with the Budget.

**(b)    No administrative expense claims, including fees and expenses of professionals, that are incurred during the Fifth Interim Cash Collateral Period shall be charged or assessed against or recovered from the Collateral or attributed to the Prepetition Secured Parties with respect to their interests in the Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through, or on behalf of the Debtors, without the prior written consent of the Term Lender Steering Group, and no such consent shall be implied from any action, inaction, or acquiescence by, either with or without notice to, the Prepetition Agent or Term Lender Steering Group.**

(c)    All disbursements to be made under the Budget shall be made solely from the DIP Account.

(d)    Notwithstanding anything herein to the contrary, no Cash Collateral may be used directly or indirectly by any of the Debtors, any Committee, or any other person or entity to (A) object, contest, or raise any defense to the validity,

perfection, priority, extent, or enforceability of the Prepetition Term Obligations or the Prepetition Liens, (B) assert or prosecute any Claims and Defenses (as defined below) against any Prepetition Term Lender on account of their Prepetition Term Obligations, or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, (C) prevent, hinder, or otherwise delay the Prepetition Agent's or any Prepetition Lender's assertion, enforcement, or realization on the Cash Collateral, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with this Order, (D) seek to modify any of the rights granted to the Prepetition Agent or the Prepetition Lenders hereunder, in each of the foregoing cases without such parties' prior written consent (provided, however, that neither the filing of the Motion nor the entry of this Order shall implicate this provision), (E) obtain Liens that are senior to, or on parity with the Liens or Adequate Protection Liens of the Prepetition Secured Parties in the Collateral or any portion thereof, and (F) seek or obtain Liens on any Avoidance Actions (as hereafter defined).

5.    The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral (as hereinafter defined) without an order of this Court.

6.    The Prepetition Secured Parties are entitled, under sections 363(e) and/or 364(d)(1)(B) of the Bankruptcy Code, to adequate protection of their interest in the Cash Collateral, for and equal in amount to the amount of Cash Collateral utilized pursuant to this Order, and the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Cash Collateral during the Fifth Interim Cash Collateral Period (the "Adequate Protection Obligations") for which each of the Debtors shall be jointly and severally obligated).  The following protections constitute adequate protection pursuant to section 361 of the Bankruptcy Code of the interests of the Prepetition Secured Parties in the Cash Collateral.

(a)    **Adequate Protection Liens.  To secure the Adequate Protection Obligations, the Prepetition Secured Parties are hereby granted, effective and**

perfected as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements, a valid and perfected replacement security interest in, and lien on the Collateral (the "Adequate Protection Liens"), which Adequate Protection Liens shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to any liens (as that term is defined in section 101(37) of the Bankruptcy Code) ("Liens") on the Collateral including, without limitation, any statutory Liens that may exist under Nevada law, provided, that any Adequate Protection Liens resulting from use of Cash Collateral under the First Interim Order and Second Interim Order shall not have priority under section 364(d) and shall instead have the priority set forth in those respective orders.  In addition, U. S. Bank National Association, in its capacity as successor indenture trustee under the Second Mortgage Indenture (the "Trustee") is hereby granted, effective and perfected as of the Petition Date, and without the necessity of the execution by Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements, a valid and perfected replacement security interest in and lien on the Collateral  (other than the Bank Proceeds Account and any DIP Account as such term is defined in the Final Cash Management Order) that is subordinated  in all respects to the Liens securing the Prepetition Term Obligations and the Adequate Protection Obligations and which is subject in all respects to the rights of the Prepetition Agent and Term Lenders  (including the subordination by the Trustee and the Second Mortgage Holders) under the Intercreditor Agreement (Project Lenders), dated June 6, 2007 between the Trustee and the Prepetition Agent.  For purposes of this Order, the term "Collateral" shall include, without limitation, all prepetition and postpetition assets and properties (tangible, intangible, real, personal, and mixed) of each of the Debtors of any kind or nature, whether now existing or newly acquired or arising, and wherever located, including, without

limitation, all Collateral (as such term is defined in the Prepetition Loan Documents), all accounts, accounts receivable, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, intellectual property, general intangibles, payment intangibles, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, vehicles, real property (including all facilities), fixtures, leases, all of the issued and outstanding Capital Stock entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and all of the issued and outstanding Capital Stock not entitled to vote (within the meaning of Treas. Reg. Section 1.956¬2(c)(2)) of each Subsidiary of the Company, all of the Capital Stock of all other Persons that are not Subsidiaries directly owned by the Company, money, investment property, deposit accounts, securities accounts, books and records, all commercial tort claims and all other causes of action (including any judgment and recovery upon such judgment obtained by the Debtors on account of such commercial tort claims and other causes of action) excluding the proceeds of all Avoidance Actions (as hereafter defined), all Cash Collateral (as defined in this Interim Order), and all cash and non-cash proceeds, rents, products, substitutions, accessions and profits of all of the foregoing.

(b)    **Superpriority Claim.**  The Prepetition Secured Parties are hereby granted in each of the Debtors' Chapter 11 Cases an allowed, superpriority administrative expense claim (the "**Superpriority Claim**") under section 507(b) of the Bankruptcy Code with respect to the Adequate Protection Obligations under subparagraphs (a) and (c) of this Paragraph 6.  The Superpriority Claim shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code, or otherwise (whether

**incurred in any of the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto), which Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including the proceeds of any Avoidance Actions).**

7.    The Debtors shall prepare and furnish to the Prepetition Agent, the Term Lender Steering Group, and the Committee, in form and substance reasonably satisfactory to the Prepetition Agent and Term Lender Steering Group, a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Budget, on a line-by-line basis showing any variance to the proposed corresponding line item of the Budget (the "Budget Reconciliation"). Such Budget Reconciliation shall be provided to the Term Lender Steering Group so as actually to be received within three (3) Business Days following the end of each prior week.

8.    (a)    This Order and the Budget shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms.  No obligation, payment, transfer, or grant of security under this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

(b)    The failure or delay by the Prepetition Agent or any Prepetition Lender to exercise its rights and remedies under this Order shall not constitute a waiver of any of the rights of the Prepetition Agent or any such Prepetition Lender hereunder or otherwise, and any single or partial exercise of such rights and remedies against any of the Debtors or the Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other Debtors and/or Collateral.

(c)     Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (i) any of the rights of any of the Prepetition Lenders or the Prepetition Agent under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the Prepetition Secured Parties to (A) request termination or modification of the automatic stay of section 362 of the Bankruptcy Code, (B) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers), or (C) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (ii) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Agent or any Prepetition Lender, (iii) the rights of the Debtors to oppose any requests made in accordance with clauses (i)(A), (B) and (C) above, (iv) upon a Termination Event, the right of the Debtors to request approval of this Court for use of Cash Collateral, subject to the right of the Prepetition Secured Parties to object and the need for the Debtors to obtain Court approval (and meet all applicable legal standards) prior to any further use of Cash Collateral after the Termination Event, and (v) any right of any party in interest to object to the terms and conditions of any subsequent request by the Debtors for use of cash collateral, including without limitation any request to condition such future use on the granting of an Adequate Protection Lien with priority under section 364(d) of the Bankruptcy Code.

(d)     **The provisions of this Order shall be binding upon and inure to the benefit of each of the Prepetition Agent, the Prepetition Lenders, and the Debtors.**

(e)     The Adequate Protection Liens shall not be (i) subject or junior to any Lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, or (ii) subordinated to or made *pari passu* with any

other Lien, whether under section 364(d) of the Bankruptcy Code or otherwise. No Lien

having a priority superior to or *pari passu* with those granted by this Order with respect

to the Adequate Protection Obligations shall be granted or allowed until the indefeasible

payment in full in cash and satisfaction in the manner provided in this Order of the

Adequate Protection Obligations.  No claim having a priority superior to or *pari passu*

with the Superpriority Claims granted by this Order with respect to the Adequate

Protection Obligations shall be granted or allowed until the indefeasible payment in full

in cash and satisfaction in the manner provided in this Order of the Adequate Protection

Obligations.

9.      (a)      On the date of any sale, lease, transfer, license, or other disposition

of property outside the ordinary course of business of any Debtor that constitutes

Collateral, the Debtors shall escrow and not be permitted to use any of the gross proceeds

resulting therefrom, subject to (i) subparagraph (c) of this Paragraph 9, or (ii) the entry of

an order of the Bankruptcy Court authorizing such use or payment to the Prepetition

Agent (or, in the absence of any Prepetition Agent, directly to the Prepetition Lenders).

Upon such disposition of property, any Liens on the Collateral shall automatically attach

to the gross proceeds of such Collateral and constitute valid, enforceable and perfected

Liens, without the need for further order of this Court or any act to effect perfection.

(b)      In the event of any casualty, condemnation, or similar event with

respect to property that constitutes Collateral, the Debtors are authorized and directed to

pay to the Prepetition Agent, for the benefit of the Prepetition Agent and the Prepetition

Lenders (or, in the absence of any Prepetition Agent, directly to the Prepetition Lenders),

100% of any insurance proceeds, condemnation award, or similar payment within two (2)

business days of receipt thereof.

(c)      Any proceeds and payments received by the Debtors pursuant to

this Paragraph 9 shall be delivered to the Prepetition Agent (or in the absence of any

Prepetition Agent, directly to the Prepetition Lenders) to be applied to the Adequate

Protection Obligations without any need for further order of this Court, and in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any such collateral or otherwise. Any proceeds or payments in excess of the Adequate Protection Obligations shall be held in escrow by the Debtors absent further order of this Court.

10.     **Pursuant to this Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection, and all liens on any deposit accounts or securities accounts shall, pursuant to this Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the New York Uniform Commercial Code as in effect as of the date hereof in favor of the Prepetition Secured Parties)**; provided, however, that the Prepetition Agent and the Prepetition Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens granted to them hereunder. The Debtors shall execute and deliver to the Prepetition Agent all such agreements, financing statements, instruments, and other documents as the Prepetition Agent may reasonably request to evidence, confirm, validate, or perfect the Liens granted pursuant hereto (other than mortgages). If the Term Lender Steering Group or Prepetition Agent shall, in their sole discretion, choose to require the execution of and/or file (as applicable) such financing statements, control agreements, notices of Liens, and other similar instruments and documents, all such financing statements, control agreements, notices of Liens, or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded

MIAMI 1942504.4 7650831854                    15

at the time and on the date of the Petition Date.  A certified copy of this Order may, in the discretion of the Term Lender Steering Group or the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments.  Each and every federal, state, and local government agency or department may accept the entry by this Court of this Order as evidence of the validity, enforceability, and perfection on the Petition Date of the Adequate Protection Liens granted herein to or for the benefit of the Prepetition Lenders and the Prepetition Agent.

11.     Based on the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the use of Cash Collateral contemplated by this Order, in the event that any or all of the provisions of this Order, are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacation shall affect the validity, enforceability, or priority of any Adequate Protection Lien or claim authorized or created hereby or thereby or any Adequate Protection Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment, or vacation, any Adequate Protection Obligations incurred and any claim or Adequate Protection Lien granted to the Prepetition Secured Parties hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges, and benefits, including the Liens and priorities granted herein and therein, with respect to any such Adequate Protection Obligations and Adequate Protection Liens.

12.     The Debtors are authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages, and financing statements).

13.     (a)     The provisions of this Order, including the obligations of the Debtors in respect of the Adequate Protection Obligations, and the claims and Adequate Protection Liens granted to or for the benefit of the Prepetition Secured Parties pursuant to this Order, and any actions taken pursuant to this Order shall not be discharged by and shall survive the entry of an order (i) confirming a chapter 11 plan in any of the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such discharge) or (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.  Under no circumstances shall any chapter 11 plan, including, without limitation, the Plan, in any of the Chapter 11 Cases be confirmed or become effective unless such chapter 11 plan provides that the Adequate Protection Obligations shall be paid in full in cash and satisfied in the manner provided for in this Order on or before the effective date of such chapter 11 plan.

(b)     Until all of the Adequate Protection Obligations shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Order, no Debtor shall seek an order dismissing any of the Chapter 11 Cases. If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and Liens granted pursuant to this Order and any subsequent order to or for the benefit of the Prepetition Agent and/or the Prepetition Lenders shall continue in full force and effect and shall maintain their perfection and priorities as provided in this Order and subsequent orders until all obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Order (and that such claims and Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and Liens.

18

14.    The provisions of this Order, the Superpriority Claim, the Adequate Protection Obligations, the Adequate Protection Liens, the Adequate Protection Payments, and any and all rights, remedies, privileges, and benefits in favor of the Prepetition Secured Parties provided or acknowledged in this Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Order pursuant to Bankruptcy Rules 6004(h) and 7062.

# # #

Submitted by:

Scott L. Baena (Florida Bar No. 186445)
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

Copies to:
Scott L. Baena
*(Attorney Baena shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service.)*

MIAMI 1942504.4 7650831854                     18