UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)

IN RE

FONTAINEBLEAU LAS VEGAS, LLC,
et al.,

Debtors.

Chapter 11

Case No. 09-21481

(Jointly Administered)

REPLY MEMORANDUM OF TERM LENDER
STEERING GROUP TO OBJECTIONS FILED TO ENTRY
OF FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

The Term Lender Steering Group, whose members are listed in Exhibit A attached

hereto, submit this reply memorandum to the objections [Docket Nos. 489, 490, 517, 518, 519,

520, 524, 526, 529, 539] filed to the entry of a Final Order in the form submitted to this Court by

the Term Lender Steering Group on September 14, 2009.[1]  [Docket No. 521].  The Final Order

contains terms and conditions largely similar to the prior Interim Orders, particularly the Fourth

Interim Order, with one notable exception – it seeks approval of a waiver of rights under section

506(c) that would extend not only to expenses incurred during the interim periods covered by the

four Interim Orders but for the entire bankruptcy cases.

The objections to the entry of the Final Order appear, in large part, designed to re-litigate

and even unravel the benefits, rights, remedies and protections granted to the Prepetition Secured

Parties under the prior four Interim Orders [Docket Nos. 49, 242, 359, and 454], and upon which

---

[1] Capitalized terms not otherwise defined herein have the meaning used in the Motion.

the Term Lenders relied in granting consent of the Term Lenders to the use of their cash collateral.

Each of the four Interim Orders is, with respect to the benefits, rights, remedies, and protections conferred thereunder, not subject to modification or appeal. The only distinction between an interim and final order is that the former lasts for an interim period needed to avoid immediate and irreparable harm, while the general purpose of a final order is to authorize use beyond that period.

While it is typically the case in bankruptcy proceedings that interim orders are followed by final orders, that is not always the case. As one court has recently held in a case where a lender sought to enforce the terms of an interim order authorizing use of cash collateral even though no final order was ever entered:

> The purpose of a final hearing under Rule 4001(b)(2) is not to make the interim order a final, appealable order, as the interim order is already such an order. Instead, the purpose of a final hearing is to obtain authorization for the use of cash collateral beyond that use that was required to be authorized on an emergency basis as necessary to avoid immediate and irreparable harm.

*In re NetTel Corp., Inc.*, 2008 WL 1932075, at *6 (Bankr. D.D.C. 2008). With respect to each of the four Interim Orders, the periods to appeal those orders have expired, and the orders are thus non-appealable.

The court in *NetTel* noted that the interim order "made clear in decretal paragraph 2 that the adequate protection rights afforded the Lenders with respect to the transactions that occurred prior to the debtor's authorization under the Interim Order terminating (as occurred here on October 31, 2000), were to survive the termination of such authorization, and that the provisions were to be binding on all creditors, including any chapter 7 trustee." *Id.* Likewise, each of the four Interim Orders are replete with similar provisions. *See* Interim Orders, ¶ 3

("Notwithstanding anything herein or the occurrence of a Termination Event, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Order shall survive such Termination Event"), ¶ 16 ("Notwithstanding any such modification, amendment or vacation [of the Interim Orders], any Adequate Protection Obligations incurred or any claim or Adequate Protection Lien granted to the Prepetition Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits"), ¶ 18 ("The provisions of this Order, including the obligations of the Debtors in respect of the Adequate Protection Obligations, and the claims and Adequate Protection Liens granted to or for the benefit of the Prepetition Secured Parties pursuant to this Order, and any actions taken pursuant to this Order shall be discharged by and shall survive the entry of an order . . . (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code").

In *NetTel*, the court's finding that the interim order was to be a final and binding order "was made clear by a provision that allowed a creditor's committee to revisit at the final hearing a provision regarding such a committee's not having any right to surcharge the cash collateral. No other provision of the Interim Order allowed the protections it accorded the Lenders to be revisited as a result of the right to object to the entry of a further order." *Id.* at *7. The same is true under the four Interim Orders, which either expressly stated that the grant of a waiver of all section 506(c) claims for the entire bankruptcy cases were "subject to entry of a final order" (as in the First Interim Order and Second Interim Order, at ¶ 4), or provided notice that such relief

would be sought at the Final Hearing (as in the Third Interim Order and Fourth Interim Order, at ¶ 21).[2]

In one case that involved the entry of a final order that changed the terms under which use of cash collateral or financing was approved, the bankruptcy court for the Northern District of Georgia did not upset the terms of the prior interim orders with respect to the money borrowed during those interim periods. In *In re M4 Enterprises, Inc.*, 183 B.R. 981 (Bankr. N.D. Ga. 1995), the court entered two interim financing orders, each for one month, authorizing the payment of postpetition interest to the oversecured creditors. Subsequent to the entry of those orders but before the entry of a final order, the Eleventh Circuit issued an opinion prohibiting the payment of such interest. In the final order, the Court applied the Eleventh Circuit's decision and refused to authorize further payment of post-petition interest, *but did not disturb the interim financing orders* to the extent those payments were already made. *Id.* at 985. In similar fashion, the Final Order submitted by the Term Lender Steering Group does not seek authority for further payment of any post-petition interest or fees that accrue after the Termination Event (September 17, 2009), and even contains language in Paragraph 6(d) to make that point explicit.

Ultimately, the court in *NetTel* concluded that the Lenders should not be worse off for endeavoring to reach agreement and then relying upon the terms of that agreement in consenting to the use of their cash collateral:

> The Lenders relied upon the terms of the Interim Order in permitting the debtor's use of the Lenders' cash collateral during the Chapter 11 Period. Had the debtor sought leave to use cash collateral over the Lenders' objection, the court would have

---

[2]  Other courts have also enforced the terms of interim orders where no final order was ever entered. In *Arlington LF, LLC v. Arlington Hospitality, Inc.*, 2007 WL 3334499 (N.D. Ill. 2007) where an interim post-petition financing order was entered and the parties agreed not to seek a final order, no party ever challenged the lender's right to enforce the provisions of the interim order when a dispute subsequently arose (and in fact, the lender prevailed).

> conditioned such use on the provision of adequate protection,
> which would have included a term providing for a replacement lien
> to the extent that cash collateral upon which the Lenders held valid
> and perfected liens was diminished by the debtor's use of cash
> collateral. The Lenders ought not be worse off because they
> endeavored to arrive at mutually acceptable terms for use of their
> cash collateral, terms that parties in interest could have, but did
> not, oppose.

*NetTel*, 2008 WL 1932075, at *7.

Here, because the Debtors cannot provide the Term Lenders with adequate protection, the

absence of consent of the Term Lenders would have precluded any use of their cash, thereby

leaving the Term Lenders' position intact. As the court in *NetTel* concluded, the Term Lenders

should not be "worse off" for agreeing to such use. This is particularly true where each of the

parties now objecting to entry of a Final Order is raising objections that have already been fully

adjudicated by this Court – in some cases, multiple times – in granting the four Interim Orders.

To cite a few examples:

Priming Liens. The Contractor Claimants, M&M Lienholders and others filed written

objections to the priming liens granted under the Third Interim Order and Fourth Interim Order.

They offered the very same arguments presented in opposition to entry of a Final Order,

including their misplaced reliance upon *Shapiro v. Saybrook Mfg. Co., Inc. (In re Saybrook Mfg.

Co. Inc.,)*, 963 F.2d 1490, 1494-95 (11th Cir. 1992)(which involves cross-collateralization for

pre-petition loans and not adequate protection for diminution resulting from post-petition use of

cash collateral, particularly where deemed reborrowing occurs) or a lack of adequate protection.

On the latter point, this Court received evidence at the hearing to approve the Third Interim

Order, in the form of a proffer made by the Debtors of Howard Karawan, the chief restructuring

officer, that the value of the property was "a lot more" than $318 million and that the holders of

statutory liens were, unlike the Term Lenders, oversecured. (7/27/09 Tr., at 89:5-10). The

Debtors even made Mr. Karawan available for cross-examination; having failed to avail themselves then of the opportunity, there is no basis to re-litigate the issue now.

Official Committee of Unsecured Creditors. The Committee has argued, on three previous occasions, that the Interim Orders were discriminatory because they do not provide any payment of the Committee's fees. [3] On each occasion, the budget has been approved over their objection.

Aurelius. This Court previously found Aurelius' objection to Paragraph 6(c) of the Third Interim Order to be without merit. Aurelius tries to argue in its objection that it is raising a new argument by "attempting to ensure that the principal amount of its prepetition claims are not reduced by virtue of payments to other Term Lenders." Aurelius Objection, at ¶ 12. But at the hearing held on July 27, 2009, Aurelius argued to this Court that "even the fees of the term lenders steering committee's lawyers, a fraction of that is coming out of the my client. So, in other words, I am, in fact, paying his fees -- or, I'm not, but my client is." (7/27/09 Tr., at 103:21-25). Then, in its letter submission to this Court on July 30, 2009 objecting to the form of the order, Aurelius raised the following argument:

> Including paragraph 6.(c)ii raises a related problem, as demonstrated in the last sentence of paragraph 6.c of the Debtors' Form. This sentence's plain language provides that if the obligations owed to the Term Lenders are in fact undersecured, the payments to the professionals employed by the Term Lender Steering Committee *reduce the outstanding principal balance* owed to all Prepetition Secured Parties, which would necessarily include Aurelius. *It would be manifestly unfair for Term Lenders who are not represented by the professionals employed by the Term Lender Steering Committee to have their principal*

---

[3] Incredibly, the Committee has not, in its limited objection [Docket No. 529] to the Emergency Motion filed Monday by the Debtors to approve use of cash collateral without the consent of the Term Lenders, raised any objection to the Debtors' budget which, like prior budgets approved by this Court, proposes to pay only the Debtors' professionals and not the Committee's.

> ***obligations reduced because of payments made to Term Lender
> Steering Committee's professionals.*** This fatal flaw in paragraph
> 6.c can be avoided simply by deleting paragraph 6.c(ii), as set forth
> in Aurelius' Form."

(Emphasis added). There is no basis for Aurelius to re-litigate the provisions of the Third

Interim Order, particularly where the order includes language finding Aurelius' position to be

"without merit."

Accordingly, there is no basis for any party to object to entry of the Final Order, other

than perhaps with respect to the provision seeking a waiver of the Debtors' rights under section

506(c) for the entire bankruptcy cases. Even with respect to that provision, the Final Order

should be entered as proposed. Any other result that treats "interim" orders as subject to revision

with respect to the benefits, rights, remedies and protections granted with respect to such use

during the interim period would discourage lenders from granting consent to use of cash

collateral or providing financing and, by so doing, harm the chapter 11 process.

WHEREFORE, the Term Lenders respectfully request that the Court enter the Final

Order as proposed.

Dated:  September 16, 2009

Respectfully submitted,

**I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rules 2090-1(A).**

AKERMAN SENTERFITT
Michael I. Goldberg
James H. Fierberg
One Southeast Third Avenue, 25th Floor
Miami, Florida 33131-1714
Telephone: (305) 374-5600
Facsimile: (305) 374-5095


By:____/s/ *James H. Fierberg*_____
          Michael I. Goldberg
          Florida Bar No. 886602

-and-

HENNIGAN, BENNETT & DORMAN LLP
Bruce Bennett
Sidney P. Levinson
Joshua M. Mester
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Facsimile:  (213) 694-1234

Attorneys for Term Lender Steering Group

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing, REPLY MEMORANDUM OF TERM LENDER STEERING GROUP TO OBJECTIONS FILED TO ENTRY OF FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL was served via electronic ECF notice to those parties receiving such notices and a true and correct copy of the foregoing via regular U.S. Mail delivery, postage prepaid, addressed to those parties listed on the attached Service List this **16th day of September, 2009**.

*/s/ James H. Fierberg*
James H. Fierberg, Esq.

## Service List

AKFCF, Inc.
10432 North Lake Vista Circle
Davie, FL 33328

Noah G. Allison
3191 East Warm Springs Road
Longford Plaza East, Building 13
Las Vegas, NV 89120

Jean Marie L. Atamian
1675 Broadway
New York, NY 10019

Christopher R. Belmonte, Esq.
230 Park Avenue
New York, NY 10169

Jad I. Bergman
1633 Broadway
New York, NY 10019

Bradley Butwin
7 Times Square
New York, NY 10036

Jacqueline Calderin, Esq.
800 Brickell Avenue, Suite 902
Miami, FL 33131

Daniel Cantor
7 Times Square
New York, NY 10036

Candace Carlyon
701 Bridger #850
Las Vegas, NV 89101

Kelly M. Cooper
1301 Atlantic Avenue
Atlantic City, NY 08401

Jeff J. Friedman, Esq.
575 Madison Avenue
New York, NY 10022-2585

David M. Friedman
1633 Broadway
New York, NY10019

Garces Restaurant Group LLC
c/o Robert W. Keeddie III< Esq.
502 Carnegie Center #103
Princeton, NJ 08540

Gregory E. Garman, Esq.
3960 Howard Hughes Parkway
9th Floor
Las Vegas, NV 89109

Phillip A. Geraci
425 Park Avenue
New York, NY 10022

Robert W. Glantz
321 North Clark Street, Suite 800
Chicago, IL 60654

HSH Nordbank AG, NY Branch
c/o Aaron Rubenstein, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

Frederick D. Hyman
1675 Broadway
New York, NY 10019

IKON Financial Services
1738 Bass Road
Post Office box 13708
Macon, GA 31208

Todd Kaplan
Citadel Derivates Group LLC
131 Dearborn Street
Chicago, IL 60603

Mark E. Kasowitz
1633 Broadway
New York, NY 10019

Jack J. Kessler
19950 AW Country Club Drive #101
Aventura, FL 33180

Jason I. Kirschner
1675 Broadway
New York, NY 10019

Joshua T. Klein
2000 Market Street, 10th Floor
Philadelphia, PA 19103

Andrew A. Kress, Esquire
425 Park Avenue
New York, NY 10022

Kutzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

Arthur S. Linker
575 Madison Avenue
New York, NY 10022-2585

Kyle Mathews
333 South Hope Street, 48th Floor
Los Angeles, CA 90071

Josefina Fernandez McEvoy
1800 Century Park East, Suite 300
Los Angeles, CA 90067-1506

Sharon Merrill
Adorno & Yoss
330 East Las Olas Blvd., Suite 1700
Ft. Lauderdale, FL 33301

Jennifer R. Lloyd-Robinson
6750 Via Austi Parkway, Suite 170
Las Vegas, NV 89119

Alan H. Martin
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626

Joshua M. Mester
865 South Figueroa Avenue
Los Angeles, CA 90017

Seth A. Moskowitz
1633 Broadway
New York, NY 10019

Barry E. Mukamal
1 S.E. 3rd Avenue, 9th Floor
Miami, FL 33131

Matthew D. Novello
3201 University Drive #100
Auburn Hills, MI 48326

Anthony L. Paccione
575 Madison Avenue
New York, NY 10022-2585

Matthew D. Parrott
575 Madison Avenue
New York, NY 10022-2585

Bryan J. Pezzillo
6750 Via Austi Parkway Suite 170
Las Vegas, NV 89119

Thomas C. Rice
425 Lexington Avenue
New York, NY 10017

Jonathan Rosenberg
7 Times Square
New York, NY 10036

Alan Rubin
100 Second Street, 34th Floor
Miami, FL 33131

Aaron Rubenstein
425 Park Avenue
New York, NY 10022

Justin S. Stern
425 Lexington Avenue
New York, NY 10017

William Sushon
7 Times Square
New York, NY 10036

Kesha Tanabe
90 South Seventh Street
3300 Wells Fargo Center
Minneapolis, MN 55402

Charles Tatelbaum
Adorno & Yoss
350 East Las Olas Blvd., 17th Floor
Ft. Lauderdale, FL 33301

Michael J. Viscount
1301 Atlantic Avenue
Atlantic City, NJ 08401-7212

Clark T. Whitmore, Esquire
90 South 7th Street, Suite 3300
Minneapolis, MN 55402

Donald H. Williams
612 South 10th Street
Las Vegas, NV 89101

Eric D. Winston
865 South Figueroa Street, 10th Fl.
Los Angeles, CA 90017

David J. Woll
425 Lexington Avenue
New York, NY 10017