**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| -------------------------------------------------------x | Chapter 11 |
| In re:                                              : | |
|                                                     : | Case No. 09-21481-BKC-AJC |
| FONTAINEBLEAU LAS VEGAS                             : | |
| HOLDINGS, LLC, ET AL.,[1]                           : | Jointly Administered |
|                                                     : | |
|     Debtors-in-Possession.                          : | |
|                                                     : | |
| ------------------------------------------------------ x | |

**RESPONSE OF AURELIUS CAPITAL MANAGEMENT, LP
TO REPLY MEMORANDUM OF TERM LENDER STEERING GROUP TO OBJECTIONS
FILED TO ENTRY OF FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL**

As permitted by this Court at the hearing on September 16, 2009, Aurelius Capital Management, LP, on behalf of its managed fund entities which are Prepetition Lenders. ("Aurelius"), by and through its undersigned counsel, submits this Response to Reply Memorandum Of Term Lender Steering Group To Objections Filed To Entry Of Final Order Authorizing Use Of Cash Collateral (D.E. #548)(the "Reply"), and in support thereof respectfully states as follows:

**INTRODUCTION**

The notion that a secured lender should be precluded from challenging the provisions of a proposed final order authorizing the use of that secured lender's cash collateral is misguided and extremely troubling.  If "interim order" has any meaning, it has to be that the relief is granted on an interim, not a final, basis.  Secured creditors retain the right to press

---

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida  33180.

objections at a final hearing, and the Court reserves the right to modify a proposed order to ensure compliance with the Bankruptcy Code.  The Court therefore should disregard the Term Lender Steering Group's ("TSLG") assertion in the Reply that the prior *interim* cash collateral orders entered in these cases preclude this Court from modifying a proposed cash collateral order in response to objections to paragraph 6(c)(ii) raised by Aurelius, in order to ensure that the order conforms to the requirements of the Bankruptcy Code.

## **PROCEDURAL HISTORY**

On September 14, 2009, Aurelius timely filed and served its Objection of Aurelius Capital Management, LP to Debtors' Motion for Final Order Authorizing Use of Cash Collateral. (D.E. #520) (the "Objection").  In the Objection, Aurelius requested that, to the extent that this Court would enter a final order on the Debtors' emergency motion for the use of cash collateral, any such order delete the last sentence of paragraph 6(c)(ii) that had been contained in the interim orders.  The Objection was supported by arguments and case law demonstrating that this paragraph impermissibly permits the reduction of <u>all</u> Term Lenders' secured claims, in the event that the Term Lenders are determined to be undersecured, by the fees paid to the professionals employed by the TLSG, who hold only approximately 27% of the Term Loans, and who cannot, and do not purport to, represent or bind all Term Lenders.

On September 16, 2009, just hours before the Bankruptcy Court convened the final hearing on use of cash collateral, the TSLG filed the Reply, wherein the TSLG does not challenge the merits of the Objection; indeed, they cite no cases for the proposition that there is any authority for what amounts to a taking of the Term Lenders' property interests without any adequate protection.  Instead, they raised a new issue, prompting this Response.  Specifically, the Reply asserts that the four *interim* orders previously entered in these cases authorizing use of

2

cash collateral are actually *final*, non-appealable orders, such that the terms of those orders should be automatically incorporated into a final cash collateral order, notwithstanding otherwise valid objections to those terms – even if those terms are contrary to the Bankruptcy Code.

## **OBJECTION**

In its Reply, the Term Lender Steering Group cites to select provisions of the prior cash collateral orders. *See, e.g.*, Reply at 2-3. However, the Reply fails to reference other provisions of the cash collateral orders that make it clear that the interim orders (the first of which was entered at the start of these cases) are not set in stone, and that the terms of the orders are subject to modification  *See, e.g.* Fourth Interim Cash Collateral Order, dated August 27, 2009, ¶ 10 ("Notwithstanding anything herein to the contrary, this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of … any Prepetition Lender to seek additional adequate protection or adequate protection at any time …."); *id.*, ¶ 11(c) ("Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (i) any of the rights of any of the Prepetition Lenders or the Prepetition Agent under the Bankruptcy Code or under non-bankruptcy law …, (ii) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Agent or any Prepetition Lender, [or] … **(v) any right of any party in interest to object to the terms and conditions of any subsequent request by the Debtors for use of cash collateral ….**") (emphasis added).

The above-quoted passages make clear that the TLSG's position has no merit. The plain language of the cash collateral orders entered in these cases specifies that Prepetition Lenders retain the right to seek adequate protection, regardless of what prior orders stated.  More significantly, the plain language of these orders further provides that the right of any party in

3

interest – a term which indisputably includes secured lenders such as Aurelius – to object to the terms and conditions of any subsequent request to use cash collateral is preserved.

Just as the plain language of the cash collateral orders belies the TLSG's position, so too does the relevant case law.  The primary case on which the TLSG relies, *In re NetTel Corp., Inc.*, 2008 WL 1932075 (Bankr. D.D.C. 2008), is wholly inapposite.  *NetTel* involved a cash collateral order that was entered shortly before the case was converted to chapter 7, which the court noted had the effect of "terminating the debtor's debtor in possession status and mooting the necessity for the entry of a final order continuing the debtor's authority to use cash collateral." *Id.* at *4.  In *NetTel*, the court thus never convened a final hearing on use of cash collateral.  The fact that the *NetTel* court later treated the cash collateral order as a final order has no application to the present case, where there *will* be a final hearing on use of cash collateral.  Moreover, the issue in *NetTel* was whether a lien on avoidance proceeds granted to secure the actual use of cash bound a chapter 7 trustee.  Here, the issue is between identically situated secured creditors to ensure that they are receiving the same adequate protection.

The two other cases the TLSG cites are likewise inapposite.  *Arlington LF, LLC v. Arlington Hospitality, Inc.*, 2007 WL 3334499 (N.D. Ill. Nov. 9, 2007), does not even address the issue here – whether an interim financing order is considered a final order when the Court is considering entering a final order.  *In re M4 Enters., Inc.*, 183 B.R. 981 (Bankr. N.D. 1995), actually supports Aurelius.  There, the court <u>disregarded</u> an interim cash collateral order's mandate to award postpetition interest because the provision is illegal (as is paragraph 6(c)(ii) here).  Focusing on the interim nature of the orders, *see id.* at 984, the court stated two things that are directly applicable here.  One, because the determination of whether the secured creditor was oversecured had not yet occurred, payment "of postpetition interest at this time is premature

4

since it has not determined that [the creditor] holds an oversecured claim."  Here, paragraph 6(c)(ii) is triggered only when the Term Lenders' claims are determined by this Court to be undersecured, demonstrating the interim nature of the orders.  Two, the court stated: "[t]his Court will <u>not approve such an agreement, however, when it contravenes the Bankruptcy Code</u>, particularly in view of a valid objection made by an interested party."  *Id.* at 985.  Here, Aurelius timely asserted a valid objection, and this Court must not approve a plainly impermissible provision.

A more thoughtful approach to determining whether a cash collateral order is a final order is set forth in *In re 450 S. Burlington Partners LLC*, 2009 WL 2460880 (C.D.Cal.).  The key lesson in *450 S. Burlington Partners* is that an interim cash collateral order *may* be a final order, but only if it is clear that the court intended to make a final determination of an issue.  Thus, where the bankruptcy court did not finally adjudicate the debtor's interest in cash collateral, and there was an ability to revisit adequate protection, the cash collateral order was not final and was not subject to immediate appeal, absent leave of the appellate court.  *Id.* *4.

The *450 S. Burlington Partners* court explained that "[c]ourts have found bankruptcy rulings to be interlocutory where they are "open to reexamination" and open to subsequent challenge.  *Id.* (citing *The Charter Co. v. The Prudential Ins. Co. of Amer. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir.1985)) (bankruptcy court ruling interlocutory where the court advised the parties that its ruling would be open to reexamination).  The court then explained that "the Bankruptcy Court's rulings do not finally adjudicate Appellant's interest in the cash collateral, and they also preserve his ability to seek additional adequate protection for the use of the cash collateral."  *Id.*  The court thus concluded that "because the cash collateral

5

rulings are interim in nature and structured to permit further reexamination by the Bankruptcy Court, the rulings are not final." *Id.*

The facts in the present case parallel those in *450 S. Burlington Partners*.  As noted above, the cash collateral orders entered in the Debtors' cases preserve the rights of secured lenders to seek additional adequate protection.  Moreover, the Debtors' cash collateral orders also preserve the right of *any* party in interest "to object to the terms and conditions of any subsequent request by the Debtors for use of cash collateral."  Fourth Interim Order, ¶ 11(c).  In light of these provisions, there can be no doubt that the prior cash collateral orders entered in these cases do not preclude this court from entertaining and sustaining objections to improper terms in the proposed final order authorizing use of cash collateral.  Accordingly, the Court should sustain Aurelius' objections to the proposed final order, and modify paragraph 6(c)(ii) thereof to delete the final sentence, as described in Aurelius' prior submission to this Court.

*[signature page follows]*

WHEREFORE, Aurelius respectfully requests that the Court enter an Order denying the New Cash Collateral Motion and the Debtors' further use of cash collateral, and granting such other and further relief as is just and proper.

Dated: Miami, Florida
September 17, 2009

    Respectfully submitted,

    QUINN EMANUEL URQUHART,
    OLIVER & HEDGES, LLP
    Susheel Kirpalani
    Scott C. Shelley
    51 Madison Avenue, 22nd Floor
    New York, New York 10010
    Telephone: (212) 849-7199
    Facsimile: (212) 849-7100

    Eric Winston
    865 South Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    Direct: (213) 443-3602
    Fax:  (213) 443-3100


    BAST AMRON LLP
    SunTrust International Center
    One Southeast Third Avenue
    Suite 1440
    Miami, FL 33131
    Telephone:  (305) 379-7904
    Facsimile:   (305) 379-7905
    Email: bamron@bastamron.com

    By: */s/ Brett M. Amron*
        Brett M. Amron, Esq.
        Florida Bar No. 148342

    *Counsel To Aurelius Capital Management, LP*

QE Draft:  9/16/2009 9:47 PM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via the Court's CM/ECF system where available on this the 17th day of September, 2009.

                    By:/s/  Brett M. Amron
                          Brett M. Amron