ORDERED in the Southern District of Florida on_____ **SEP 18 2009**



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

In re:                                          Chapter 11

FONTAINEBLEAU LAS VEGAS
HOLDINGS, LLC, ET AL.,[1]                       Case No. 09-21481-BKC-AJC

              Debtors.                          (Jointly Administered)

_____/

**FIRST INTERIM ORDER (I) AUTHORIZING THE NONCONSENSUAL USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF BANKRUPTCY CODE, (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 363, AND 364, OF THE BANKRUPTCY CODE, AND (III) SCHEDULING FINAL HEARING**

Upon the motion, dated September 14, 2009, of Fontainebleau Las Vegas

Holdings, LLC (the "Company"), Fontainebleau Las Vegas, LLC, and Fontainebleau

_____

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822]. The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

Las Vegas Capital Corp. (collectively, the "Debtors"), as debtors and debtors in possession (each, individually a "Debtor" and, collectively, the "Debtors") [Dkt. No. 528] (the "Motion") for entry of (1) this interim order (the "Order") (a) authorizing the Debtors to use Cash Collateral (as hereinafter defined) pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") on an interim basis and in limited amounts pending a final hearing (the "Final Hearing") on the Motion, (b) granting the Prepetition Agent[2] and the Prepetition Lenders certain liens and other rights pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code with respect to, inter alia, such use of Cash Collateral granted under the Prepetition Credit Agreement (as hereinafter defined), and (c) in accordance with Rule 4001(b)(2), (c)(2) and (d)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting that this Court schedule a Final Hearing and approve notice with respect thereto and (2) an order granting the relief requested in the Motion on a final basis (the "Final Order"); and the Court having considered the Motion and the exhibits attached thereto, including, without limitation, the Budget (as hereinafter defined); and a hearing to consider approval of the Motion on an interim basis having been held and concluded on September 16, 2009, (the "Interim Hearing"); and the Court having received and considered on September 18, 2009 1) an email containing suggested edits to the proposed order from Brett Amron, counsel for Aurelius Capital Management, LP; 2) an email containing suggested provision to be included in proposed order by Paul J. McMahon, counsel for Colasanti Specialty Services, Inc.; 3) an email from Elyssa Kates, Counsel for QTS Logistics, Inc. regarding objections and responses to the cash collateral motion [C.P. 434, C.P. 490 and C.P. 549] consisting of 19 pages; 4) email from James Harris Fierberg, counsel for the Term Lenders Steering Group with proposed orders and attachments consisting of 60 pages; 5) hand-delivery and email from Glenn Moses, counsel for the Official Committee

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

of Unsecured Creditors containing correspondence and an 19-page objection; 6) hand-delivery from Brett Amron, counsel for Aurelius Capital Management containing correspondence and an 8-page response; 7) email from Philip Landau, counsel for the M&M Lienholders with attachments consisting of responses, objections and supporting pleadings consisting of 77 pages, and upon all of the pleadings filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefore,

THE COURT FINDS:

A.      On June 9, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (the "Chapter 11 Cases").

B.      Jurisdiction. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §157(b)(2)(M). This Court has jurisdiction over the Chapter 11 Cases, this proceeding, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue appears proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, subject to determination of one venue issue set for evidentiary hearing on Tuesday, September 22, 2009 at 3:00 p.m.

C.      Notice. Notice of the relief sought by the Motion and the hearing with respect thereto was delivered on September 15, 2009 via electronic mail, facsimile transmission and/or overnight delivery, as the case may be, to the following parties in interest: (a) the Office of the United States Trustee for the Southern District of Florida (the "OUST"); (b) those parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims Against the Debtors, as identified in the Debtors' chapter 11 petitions; (c) counsel to the Prepetition Agent; (d) counsel to those Term Lenders who have made an appearances in the Chapter 11 Cases; (e) counsel to Bank of America, N.A. in all of its capacities under the Prepetition Loan Documents (as defined below) and as an individual Revolving Lender; (f) counsel to the Trustee for the Second Mortgage Notes; (g) counsel

3

for the Official Committee for Unsecured Creditors (the "Committee"); and (h) any party asserting a Lien (as hereafter defined) against any of the Debtors' assets (collectively, the "Interim Notice Parties").  Given the nature of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of the Motion, the relief requested therein and this Order pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and section 102(1) of the Bankruptcy Code, as required by section 363(b) and 364(c) of the Bankruptcy Code, and no further notice of the Motion or this Order is necessary or required.

D.    Cash Collateral.  For purposes of this Order, the following constitute "Cash Collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code:  (a) all funds of the Debtors (including any funds subject to a right of setoff in favor of any Prepetition Lender, any funds on deposit or maintained in any account subject to a control agreement with the Prepetition Agent, and any proceeds of the Prepetition Collateral) as of the Petition Date, including the contents of all of the Accounts identified in Section 2.2 of the Master Disbursement Agreement as to which the Prepetition Agent is listed as pledgee (but excluding funds in Accounts identified in Section 2.2 of the Master Disbursement Agreement as to which only the Retail Agent is pledgee and the Completion Guaranty Proceeds Account (which is the encumbered property of Turnberry Residential Limited Partner, LP)); (b) all cash proceeds of Prepetition Collateral received after the Petition Date.

E.    Prior Cash Collateral Orders.

(a)    On June 11, 2009, this Court entered the Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, and Scheduling Final Hearing [Dkt. No. 49] (the "First Interim Order").

4

(b)     On July 7, 2009, this Court entered the Second Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, and Scheduling Final Hearing [Dkt. No. 242] (the "Second Interim Order").

(c)     On July 31, 2009, this Court entered the *Third Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, and Scheduling Final Hearing* [Dkt No. 359], which order was subsequently amended by the *Amended Third Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, and (III) Scheduling Final Hearing* [Dkt. No. 389] (as amended, the "Third Interim Order").

(d)     On August 27, 2009, this Court entered the *Fourth Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code, and (III) Scheduling Final Hearing* [Dkt No. 454] (the "Fourth Interim Order" and, together with the First Interim Order and the Second Interim Order, and the Third Interim Order, the "Prior Cash Collateral Orders").

(e)     The Prior Cash Collateral Orders remain in full force and effect and shall not be restated herein.

**F.      Prepetition Debt and Adequate Protection Obligations Deemed to Be Postpetition Debt Secured by Senior Lien Under Section 364(d) of the Bankruptcy Code. Under the Prior Cash Collateral Orders, the Prepetition Secured Parties were granted Adequate Protection Obligations, including Adequate Protection Liens and Superpriority Claims, as protection for the use of Cash Collateral**

thereunder. While no creditor has asserted a lien in the Cash Collateral senior to the Prepetition Secured Parties, certain creditors (the "Statutory Lienholders") have asserted the existence of statutory liens with priority over the real property subject to the Prepetition Liens (the "Statutory Liens"). Pursuant to the Third Interim Order and the Fourth Interim Order, the Cash Collateral authorized to be used thereunder was deemed to have been repaid to the Prepetition Secured Parties in satisfaction of payment Obligations under the Prepetition Loan Documents, and further deemed to have been reborrowed by the Debtors as postpetition debt, pursuant to section 364(d) of the Bankruptcy Code, secured by the Adequate Protection Liens granted under the Third Interim Order and/or the Fourth Interim Order, as applicable. Based on the record before this Court, the continued application of such provisions to the Cash Collateral utilized under this Order is likewise appropriate, necessary, and authorized by the Bankruptcy Code.

   G. <u>Findings Regarding the Use of Cash Collateral</u>.

    (a) By the Motion, the Debtors seek the use of Cash Collateral in accordance with the budget (the "Budget") attached thereto as Exhibit "A". However, at the Interim Hearing, the Debtors presented an amended budget, which is attached to this Order (the "Amended Budget"), which supersedes the Budget and whereby the Debtors reduced the amount of Cash Collateral they seek to use.

    (b) Good cause has been shown for the entry of this Order. The Debtors have an immediate and critical need to use the Cash Collateral in order to continue to attempt to effectuate a reorganization of their financial affairs.

    (c) Based on the record presented to the Court at the Interim Hearing, good, adequate and sufficient cause has been shown to justify the immediate grant of the relief requested in the Motion to avoid irreparable harm to the Debtors' estates. The terms of the Debtors' use of the Cash Collateral, as more fully set forth herein, are fair

and reasonable. Entry of this Order is in the best interests of the Debtors' estates and all parties in interest in these Chapter 11 Cases.

(d)    The Adequate Protection Obligations provided for hereunder including, without limitation, the Priming Lien in the Collateral granted herein, constitute adequate protection pursuant to section 361 of the Bankruptcy Code of the interests of any of the Prepetition Lenders and Statutory Lienholders who have objected to the Motion or did not consent to the use of Cash Collateral as authorized herein.

IT IS ORDERED:

1.    This Order shall constitute findings of fact and conclusions of law, and shall become effective immediately upon its entry.

2.    The Motion is granted to the extent and as expressly set forth herein. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are overruled on their merits.

3.    Subject to all of the terms and conditions set forth in this Order, the Debtors are authorized, pursuant to section 363(c)(2)(A) (as to those parties who have an interest in the Cash Collateral and who have consented to entry of this Order) and section 363(c)(2)(B) of the Bankruptcy Code, to use the Cash Collateral solely and exclusively in the following amounts (subject to paragraph 5(iv) of this Order) and for the following purposes, from the date hereof until the earliest to occur of (a) the date that this Order or the Final Order (when applicable) ceases to be in full force and effect, or (b) the occurrence and continuation of a "Termination Event" (as hereinafter defined) (the "Interim Cash Collateral Period"):

(a)    ***Payroll and Payroll Taxes*** requested in the aggregate amount of $380,500, to compensate the Debtors' employees are allowed in the amount of $130,000.00 and a hearing is set for Wednesday, September 23, 2009 at 3:00 p.m. at which time the Court will review each individual payroll item to determine how much of the requested amounts should be allowed;

7

(b)    ***Benefits*** in the amount of $90,500 for employment benefits - principally health insurance - provided to the Debtors' present employees, as well as COBRA benefits in respect of the Debtors' former employees;

(c)    ***Employee Expense Reimbursement*** in the aggregate amount of $37,500 to reimburse the Debtors' employees for ordinary and necessary expenses incurred by them on behalf of their employer, including travel on company business;

(d)    ***Office & Operating Supplies*** in the aggregate amount of $7,500 for the purchase of office supplies used in the ordinary course of the Debtors' business operations;

(e)    ***Maintenance Contracts*** in the aggregate amount of $57,125 for vendors providing service and maintenance of power generation equipment, electrical equipment, water systems, generators, and elevators, as well as for pest control, copier machines, and offsite storage of records relating to the Project;

(f)    ***Estate Professional Services***, Kurzman Carson Consultants, the Court Approved Noticing Agent, in the amount of $75,000, as well as the following estate professionals all of whom the Debtors argue are necessary to in reaching agreement for the disposition of the Project, whether under a sale or under a plan, as follows:

(1) Bilzin Sumberg in the amount of $320,000.  The Court deems it necessary for Debtor to have counsel during this critical three week period as appointment of a trustee with no free funds to pay trustee's counsel would likely be a fatal blow to this reorganization but further use of cash collateral for this purpose may require consent.

(2) Investment Bankers in the requested aggregate amount of $192,500.  The Court was not of the impression that this item is required at this time. The Court will further consider this item at the hearing set on September 23, 2009.

(3) Gaming Counsel in the amount of $15,000;

8

(4) Nevada Mechanic Lien Counsel in the amount of $50,000;

(5) Auditors in the amount of $90,000;

(6) LEED Counsel in the amount of $50,000; and

(7) Zoning Counsel in the amount of $5,000.

(g)     **Security Expense** in the aggregate amount of $60,000 to safeguard the Project and the property stored thereon;

(h)     **Professional Services** in the aggregate amount of $44,625 for certain ordinary course consultants to assist the Debtors with various recurring issues, including those regarding permitting and safety issues with the Clark County Building Department and other County agencies;

(i)     **Postage and Freight** in the aggregate amount of $2,250 for postage and freight costs incurred in the ordinary course of the Debtors' business;

(j)     **Telephone Expense** in the aggregate amount of $12,600 for telephone expenses incurred in the ordinary course of the Debtors' business;

(k)     **Warehouse/Office Rent** in the aggregate amount of $44,125 for postpetition monthly rent under an unexpired lease of seven acres of real property inclusive of a 50,000 square foot warehouse (in which the Debtors store materials, furniture, and equipment that is Collateral for the Obligations owed to the Prepetition Secured Parties) and 10,000 square feet of office space (which is occupied by the Debtors' employees);

(l)     **Warehousing Costs** in the aggregate amount of $150,000 for estimated costs of postpetition warehousing costs (a) due to landlords of vendors or vendors who are storing Collateral, and/or (b) costs associated with the delivery of such Collateral to the Debtors' premises;

(m)     **Relocation Expenses** requested in the aggregate amount of $200,000 to relocate Collateral consisting of equipment and other property from the "staging area" to the Project site to avert monthly rental charges in the amount of

$350,000. The relocation expenses consist of, among other things, a temporary water pump for fire control purposes, security fencing, rental of trucks and forklifts, and associated labor. Debtors shall submit a plan for relocation and contracts for estimates of coasts of items in this request and the Court will consider approval of amounts requested within 2 business days of submission.

(n)     ***Storage Expenses*** in the aggregate amount of $32,330 for the monthly rental expense for the warehouse where the Debtors' store Collateral consisting of furniture, fixtures, and equipment to be installed at the Project;

(o)     ***Sales Center Rent Expense*** in the aggregate amount of $90,000 for post-petition rent in respect of the Debtors' sales center which the Debtors advise that a prospective purchaser with whom it is currently in negotiations has specifically requested it will wish to have assumed and assigned to it. This item is approved on Debtor's representation that it increases the value of Debtor's property. It is not likely that further funds will be approved for this purpose in the absence of proof of this representation.

(p)     ***TWC Related Costs*** in the aggregate amount of $262,200 relating to payments to Turnberry West Construction, Inc. ("TWC") the Debtors' general contractor, to maintain and preserve the Project, including:

(1)     ***Salary Expense*** requested in the amount of $113,000 for eleven remaining employees who maintain the Project and/or provide critical services. Five of the employees provide fire watch, electrical monitoring, elevator, security, and water leak monitoring at the Project. The others are responsible for maintaining permitting records, liaising with Clark County officials, subcontractors and prospective investors/lenders regarding completion issues and analyses, as well as construction accounting and recordkeeping is allowed in the amount of $40,000.00 and a hearing is set for Wednesday, September 23, 2009 at 3:00 p.m. at which time the Court will review

10

each individual payroll item to determine how much of the requested amounts should be allowed;

(2)    ***Central Plant/Leak Monitoring Expenses*** in the aggregate amount of $12,000 for costs of operation of the Project power plant and leak monitoring of the water well as required by Clark County;

(3)    ***Fire Watch Expenses*** in the aggregate amount of $17,800 for costs associated with fire safety and prevention at the Project;

(4)    ***Union Benefits Expenses*** in the aggregate amount of $11,400 for costs associated with remaining employees who are union members;

(5)    ***Utilities Expenses*** in the aggregate amount of $90,000 to for utilities at the Project;

(6)    ***Dewatering Pump Expenses*** in the aggregate amount of $15,000 for the removal of excess ground water at the Project to protect the Project and the underground water supply as required by Clark County and the Nevada Department of Environmental Protection; and,

(7)    ***Leasing & Operating Supplies Expenses*** in the aggregate amount of $3,000 relating to supply expenses at the Project site.

(q)    ***Utilities Expenses*** in the aggregate amount of $22,500 for the Debtors' ordinary course utility expenses, including electricity, water, and gas, at locations other than the Project site;

(r)    ***Fees and Permit Expenses*** in the aggregate amount of $3,000 for the maintenance of Clark County fees and permits;

(s)    ***Critical Vendor Payments*** in the aggregate amount of $263,500 for payments (i) to ***Microsoft*** in the amount of $71,000 for the Debtors' accounting and recordkeeping software, as was previously approved by this Court, (ii) for postpetition services to be provided by ***West Chemicals*** in the aggregate amount of $12,500 for chemicals used to maintain the coolers at the Project, (iii) ***Quality Transportation***

11

*Services* in the aggregate amount of $150,000 for monthly warehouse rental charges, (iv) *Petroleum Supplies* in the aggregate amount of $10,000 for fuel necessary to operate the Project generator, and (v) *Z Glass* in the aggregate estimated amount of $20,000 for the replacement of glass windows located at the Project; and

       (t)     **Repairs and Maintenance Expenses** in the aggregate amount of $90,000 for both recurring and non-recurring maintenance expenses at the Project relating to electrical work, pumps, elevators, forklifts, and scaffolding, as well as inspections, site clean up and waste removal.

4.     In the event any of the foregoing approved expenditures are inconsistent with the Amended Budget, the foregoing shall govern and limit the Debtors' authority to use Cash Collateral.

5.     As used herein, "Termination Event" shall constitute any of the following:[3]

       (i)     October 5, 2009 (the "Outside Date");

       (ii)     any Debtor shall fail to comply with any of the terms or conditions of this Order;

       (iii)     the occurrence of a Termination Event under the Prior Cash Collateral Orders (other than by virtue of the occurrence of the Outside Date provided therein);

       (iv)     the cumulative aggregate cash disbursements exceed 105% of cumulative aggregate amount of cash disbursements authorized by this Order during the Interim Cash Collateral Period;

provided, however, that neither the filing of the Motion, the entry of this Order, nor any of the provisions hereof shall constitute a Termination Event under any of the Prior Cash Collateral Orders.

---

[3] Unless otherwise defined herein, terms used in this Paragraph 5 shall have the same meaning(s) ascribed to them under the Prepetition Loan Documents.

6. The Debtors' authority to use Cash Collateral hereunder shall be terminated upon the occurrence of a Termination Event. Notice of a Termination Event shall be set for hearing and heard by the Court on 24-hours notice and upon establishment thereof the Court will enter an order of termination. Notwithstanding anything herein or the occurrence of a Termination Event, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under this Order shall survive such Termination Event.

7. (a) From and after the Petition Date, all proceeds of Collateral, including, without limitation, all of the Debtors' existing or future cash and Cash Collateral (collectively, "Lender Funds"), shall not, directly or indirectly, be used to pay expenses of the Debtors or to make debt payments (except as set forth in this Order) or be otherwise disbursed except for those debt payments, expenses and/or disbursements that are expressly permitted under this Order and are consistent with the Budget.

**(b) No administrative expense claims, including fees and expenses of professionals, that are incurred during the Interim Cash Collateral Period shall be charged or assessed against or recovered from the Collateral or attributed to the Prepetition Secured Parties with respect to their interest in the Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise, by, through, or on behalf of the Debtors.**

(c) All disbursements to be made under the Budget shall be made solely from the DIP Account.

(d) Notwithstanding anything herein to the contrary, no Cash Collateral may be used directly or indirectly by any of the Debtors, any Committee, or any other person or entity to (A) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Term Obligations or the Prepetition Liens, (B) assert or prosecute any Claims and Defenses (as defined below) against any Prepetition Term Lender on account of their Prepetition Term Obligations, or

13

their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, (C) prevent, hinder, or otherwise delay the Prepetition Agent's or any Prepetition Lender's assertion, enforcement, or realization on the Cash Collateral, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with this Order, (D) seek to modify any of the rights granted to the Prepetition Agent or the Prepetition Lenders hereunder, in each of the foregoing cases without such parties' prior written consent (provided, however, that neither the filing of the Motion nor the entry of this Order shall implicate this provision), (E) obtain Liens that are senior to, or on parity with the Liens or Adequate Protection Liens of the Prepetition Secured Parties in the Collateral or any portion thereof, and (F) seek or obtain Liens on any Avoidance Actions (as hereafter defined).

8.      The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral (as hereinafter defined) without an order of this Court.

9.      The Prepetition Secured Parties are entitled, under sections 363(e) and/or 364(d)(1)(B) of the Bankruptcy Code, to adequate protection of their interest in the Cash Collateral, for and equal in amount to the amount of Cash Collateral utilized pursuant to this Order, and the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Cash Collateral during the Interim Cash Collateral Period (the "Adequate Protection Obligations") for which each of the Debtors shall be jointly and severally obligated).  The following protections constitute adequate protection pursuant to section 361 of the Bankruptcy Code of the interests of the Prepetition Secured Parties in the Cash Collateral.

**(a)      Adequate Protection Liens.  To secure the Adequate Protection Obligations, the Prepetition Secured Parties are granted, effective and perfected as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements, a valid and perfected replacement security interest in, and lien on the**

14

Collateral (the "Adequate Protection Liens"), which Adequate Protection Liens shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to any liens (as that term is defined in section 101(37) of the Bankruptcy Code) ("Liens") on the Collateral including, without limitation, any Statutory Liens, provided, that any Adequate Protection Liens resulting from use of Cash Collateral under the First Interim Order and Second Interim Order shall not have priority under section 364(d) and shall instead have the priority set forth in those respective orders. In addition, U. S. Bank National Association, in its capacity as successor indenture trustee under the Second Mortgage Indenture (the "Trustee") is hereby granted, effective and perfected as of the Petition Date, and without the necessity of the execution by Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements, a valid and perfected replacement security interest in and lien on the Collateral  (other than the Bank Proceeds Account and any DIP Account as such term is defined in the Final Cash Management Order) that is subordinated  in all respects to the Liens securing the Prepetition Term Obligations and the Adequate Protection Obligations and which is subject in all respects to the rights of the Prepetition Agent and Term Lenders (including the subordination by the Trustee and the Second Mortgage Holders) under the Intercreditor Agreement (Project Lenders), dated June 6, 2007 between the Trustee and the Prepetition Agent.  For purposes of this Order, the term "Collateral" shall include, without limitation, all prepetition and postpetition assets and properties (tangible, intangible, real, personal, and mixed) of each of the Debtors of any kind or nature, whether now existing or newly acquired or arising, and wherever located, including, without limitation, all Collateral (as such term is defined in the Prepetition Loan Documents), all accounts, accounts receivable, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, intellectual property, general

intangibles, payment intangibles, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, vehicles, real property (including all facilities), fixtures, leases, all of the issued and outstanding Capital Stock entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and all of the issued and outstanding Capital Stock not entitled to vote (within the meaning of Treas. Reg. Section 1.956¬2(c)(2)) of each Subsidiary of the Company, all of the Capital Stock of all other Persons that are not Subsidiaries directly owned by the Company, money, investment property, deposit accounts, securities accounts, books and records, all commercial tort claims and all other causes of action (including any judgment and recovery upon such judgment obtained by the Debtors on account of such commercial tort claims and other causes of action) excluding the proceeds of all Avoidance Actions (as hereafter defined), all Cash Collateral (as defined in this Interim Order), and all cash and non-cash proceeds, rents, products, substitutions, accessions and profits of all of the foregoing.

(b)    Superpriority Claim.    The Prepetition Secured Parties are granted, in each of the Debtors' Chapter 11 Cases, an allowed superpriority administrative expense claim (the "Superpriority Claim") under section 507(b) of the Bankruptcy Code with respect to the Adequate Protection Obligations under subparagraphs (a) and (c) of this Paragraph 6. The Superpriority Claim shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code, or otherwise (whether incurred in any of the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto), which Superpriority Claim shall be payable from and have recourse to all

**prepetition and postpetition property of the Debtors and all proceeds thereof (including the proceeds of any Avoidance Actions).**

      10.    The Debtors shall prepare and furnish to the Prepetition Agent, the Term Lenders and Statutory Lienholders requesting the same, and the Committee, the following: (a) a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Amended Budget and approved in this Order, on a line-by-line basis showing any variance (the "Budget Reconciliation"). Such Budget Reconciliation shall be provided so as actually to be received within three (3) Business Days following the end of each prior week; (b) within four (4) business days after the end of each week, an updated rolling 4-week forecast of cash receipts and disbursements for the Debtors for the next succeeding 4 weeks, substantially in the form of the Amended Budget, and (c) within four (4) business days after the end of each week, a certificate signed by the Company's chief financial officer (the "CFO") certifying that no Termination Event has occurred.

      11.    Notwithstanding anything herein to the contrary, this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Agent or any Prepetition Lender to seek additional protection or adequate protection at any time, including prior to a Termination Event, and for the Debtors or the Committee to oppose any such request.

      12.    (a)    This Order and the Budget shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms. No obligation, payment, transfer, or grant of security under this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

      (b)    The failure or delay by the Prepetition Agent or any Prepetition Lender to exercise its rights and remedies under this Order shall not constitute a waiver

of any of the rights of the Prepetition Agent or any such Prepetition Lender hereunder or otherwise, and any single or partial exercise of such rights and remedies against any of the Debtors or the Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other Debtors and/or Collateral.

(c)     Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (i) any of the rights of any of the Prepetition Lenders or the Prepetition Agent under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the Prepetition Secured Parties to (A) request termination or modification of the automatic stay of section 362 of the Bankruptcy Code, (B) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers), or (C) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (ii) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Agent or any Prepetition Lender, (iii) the rights of the Debtors to oppose any requests made in accordance with clauses (i)(A), (B) and (C) above, (iv) upon a Termination Event, the right of the Debtors to request approval of this Court for use of Cash Collateral, subject to the right of the Prepetition Secured Parties to object and the need for the Debtors to obtain Court approval (and meet all applicable legal standards) prior to any further use of Cash Collateral after the Termination Event, and (v) any right of any party in interest to object to the terms and conditions of any subsequent request by the Debtors for use of cash collateral, including without limitation any request to condition such future use on the granting of an Adequate Protection Lien with priority under section 364(d) of the Bankruptcy Code.

18

(d)    **The provisions of this Order shall be binding upon and inure to the benefit of each of the Prepetition Agent, the Prepetition Lenders, and the Debtors.**

(e)    The Adequate Protection Liens shall not be (i) subject or junior to any Lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, or (ii) subordinated to or made *pari passu* with any other Lien, whether under section 364(d) of the Bankruptcy Code or otherwise. No Lien having a priority superior to or *pari passu* with those granted by this Order with respect to the Adequate Protection Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in this Order of the Adequate Protection Obligations. No claim having a priority superior to or *pari passu* with the Superpriority Claims granted by this Order with respect to the Adequate Protection Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in this Order of the Adequate Protection Obligations.

13.    (a)    On the date of any sale, lease, transfer, license, or other disposition of property outside the ordinary course of business of any Debtor that constitutes Collateral, the Debtors shall escrow and not be permitted to use any of the gross proceeds resulting therefrom, subject to (i) subparagraph (c) of this Paragraph 13, or (ii) the entry of an order of the Bankruptcy Court authorizing such use or payment to the Prepetition Agent (or, in the absence of any Prepetition Agent, directly to the Prepetition Lenders). Upon such disposition of property, any Liens on the Collateral shall automatically attach to the gross proceeds of such Collateral and constitute valid, enforceable and perfected Liens, without the need for further order of this Court or any act to effect perfection.

(b)    In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, the Debtors are authorized and directed to pay to the Prepetition Agent, for the benefit of the Prepetition Agent and the Prepetition

19

Lenders (or, in the absence of any Prepetition Agent, directly to the Prepetition Lenders), 100% of any insurance proceeds, condemnation award, or similar payment within two (2) business days of receipt thereof.

(c)    Any proceeds and payments received by the Debtors pursuant to this Paragraph 9 shall be delivered to the Prepetition Agent (or in the absence of any Prepetition Agent, directly to the Prepetition Lenders) to be applied to the Adequate Protection Obligations without any need for further order of this Court, and in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any such collateral or otherwise. Any proceeds or payments in excess of the Adequate Protection Obligations shall be held in escrow by the Debtors absent further order of this Court.

14.    **Pursuant to this Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection, and all liens on any deposit accounts or securities accounts shall, pursuant to this Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the New York Uniform Commercial Code as in effect as of the date hereof in favor of the Prepetition Secured Parties)**; provided, however, that the Prepetition Agent and the Prepetition Lenders are authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens granted to them hereunder. The Debtors shall execute and deliver to the Prepetition Agent all such agreements, financing statements, instruments, and other documents as the Prepetition Agent may reasonably request to evidence,

20

confirm, validate, or perfect the Liens granted pursuant hereto (other than mortgages). If Prepetition Agent shall, in its sole discretion, choose to require the execution of and/or file (as applicable) such financing statements, control agreements, notices of Liens, and other similar instruments and documents, all such financing statements, control agreements, notices of Liens, or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded at the time and on the date of the Petition Date. A certified copy of this Order may, in the discretion of the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments. Each and every federal, state, and local government agency or department may accept the entry by this Court of this Order as evidence of the validity, enforceability, and perfection on the Petition Date of the Adequate Protection Liens granted herein to or for the benefit of the Prepetition Lenders and the Prepetition Agent.

15.    Based on the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the use of Cash Collateral contemplated by this Order, in the event that any or all of the provisions of this Order, are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacation shall affect the validity, enforceability, or priority of any Adequate Protection Lien or claim authorized or created hereby or thereby or any Adequate Protection Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment, or vacation, any Adequate Protection Obligations incurred and any claim or Adequate Protection Lien granted to the Prepetition Secured Parties hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges, and benefits, including the Liens and priorities granted herein

21

and therein, with respect to any such Adequate Protection Obligations and Adequate Protection Liens.

16.     The Debtors are authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages, and financing statements).

17.     (a)     The provisions of this Order, including the obligations of the Debtors in respect of the Adequate Protection Obligations, and the claims and Adequate Protection Liens granted to or for the benefit of the Prepetition Secured Parties pursuant to this Order, and any actions taken pursuant to this Order shall not be discharged by and shall survive the entry of an order (i) confirming a chapter 11 plan in any of the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors waive such discharge) or (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.  Under no circumstances shall any chapter 11 plan, including, without limitation, the Plan, in any of the Chapter 11 Cases be confirmed or become effective unless such chapter 11 plan provides that the Adequate Protection Obligations shall be paid in full in cash and satisfied in the manner provided for in this Order on or before the effective date of such chapter 11 plan.

(b)     Until all of the Adequate Protection Obligations shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Order, no Debtor shall seek an order dismissing any of the Chapter 11 Cases. If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and Liens granted pursuant to this Order and any subsequent order to or for the benefit of the Prepetition Agent and/or the Prepetition Lenders shall continue in full force and effect and shall maintain their perfection and priorities as provided in this Order and subsequent orders until all obligations in respect

22

thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Order (and that such claims and Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and Liens.

18.     The provisions of this Order, the Superpriority Claim, the Adequate Protection Obligations, the Adequate Protection Liens, the Adequate Protection Payments, and any and all rights, remedies, privileges, and benefits in favor of the Prepetition Secured Parties provided or acknowledged in this Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Order pursuant to Bankruptcy Rules 6004(h) and 7062.

19.     Notwithstanding anything herein to the contrary, nothing in any provision of this Order shall constitute a release, relinquishment, waiver of, or otherwise impair or affect in any manner: a) any claims, rights and remedies, including Claims and Defenses, that are held or may be asserted by any Prepetition Term Lender against any of the Prepetition Secured Parties (including claims, rights and remedies that may be asserted against any Prepetition Revolving Lender (including rights against a Prepetition Revolving Lender that may affect its interest in the Prepetition Term Loan) or against the Prepetition Agent) (the "Intra-Lender Rights"); and b) any claims, rights and remedies, including Claims and Defenses, held by the Debtors and their affiliates against any Prepetition Revolving Lender or Prepetition Agent. For greater certainty, all such claims, rights and remedies of the Prepetition Term Lenders and the Debtors and their affiliates, including Intra-Lender Rights and Claims and Defenses, are expressly preserved.

20. A final hearing on the Motion shall be held on October 1, 2009 at 3:30 p.m. to consider entry of a Final Order. Objections to entry of the Final Order shall be filed with the Court no later than 4:30 p.m., two (2) business days prior to the hearing date, which objections shall be served so that the same are received by hand delivery or electronic mail on or before such date and time by: a) Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340, Attn: Scott L. Baena, Esq. (sbaena@bilzin.com); b) Hennigan, Bennett & Dorman, LLP, 865 S. Figueroa Avenue, Los Angeles, California 90017, Attn: Bruce Bennett, Esq. (bennettb@hbdlawyers.com) and Sidney P. Levinson, Esq. (levinsons@hbdlawyers.com) and Akerman Senterfitt, One Southeast Third Avenue, 25th Floor, Miami, Florida 33131-1714, Attn: Michael Goldberg, Esq. (michael.goldberg@akerman.com), Co-Counsel for certain of the Term Lenders, and (c) Quinn Emauel Urquhart Oliver & Hedges, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010, Attn: Susheel Kirpilani, Esq. (skirpilani@quinnemanuel.com) and Bast Amron LLP, SunTrust International Center, One Southeast Third Avenue, Suite 1440, Miami, FL 33131, Attn: Brett Amron, Esq., Co-Counsel for Aurelius Capital Management LP (bamron@bastamron.com ).


# # #

Submitted by:

Scott L. Baena (Florida Bar No. 186445)
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

Copies to:
Scott L. Baena
*(Attorney Baena shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service.)*