UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                                    Chapter 11

FONTAINEBLEAU LAS VEGAS
HOLDINGS, LLC, ET AL.,[1]                               Case No.  09-21481-AJC


             Debtors.                                              (Jointly Administered)
_____/

**MOTION BY DEBTORS FOR AUTHORITY TO
REJECT CERTAIN LEASES ASSOCIATED WITH STAGING SITE**

**(Hearing Requested – October 5, 2009 at 2:00 pm)**

Fontainebleau Las Vegas Holdings, LLC ("Resort Holdings"), Fontainebleau Las Vegas, LLC ("Resort") and Fontainebleau Las Vegas Capital Corp. ("Capital"; and, together with Resort Holdings and Resort, the "Debtors"), by and through undersigned counsel, file this motion (the "Motion"), pursuant to section 365(a) of title 11, United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 6006, and Local Rule 6006-1, for authority for Resort to reject certain leases associated with the Debtors' staging site.  In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida  33180.

**BACKGROUND**

2. On June 9, 2009, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

3. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. No trustee or examiner has been appointed in these cases. An Official Committee of Unsecured Creditors (the "Committee") was appointed on June17, 2009 [D.E. 97].

5. The Chapter 11 Cases are being administered jointly pursuant to the *Order Jointly Administering Debtors' Chapter 11 Cases* [D.E. 10] pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1(B).

6. Until recently, the Debtors were actively engaged in ongoing construction and development of "Fontainebleau Las Vegas," conceived as a signature "Tier A" casino hotel resort with gaming, lodging, convention and entertainment amenities in Las Vegas, Nevada (the "Project").

7. A detailed description of the Debtors' businesses and circumstances leading to the chapter 11 filing is set forth in the *Declaration of Howard C. Karawan in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.E. 5] and is incorporated herein by reference.

**THE LEASES**

8. On or about April 8, 2007, Sahara Las Vegas Corp. (the "Landlord") and Resort, as Tenant, entered into that certain Lease Agreement, as amended on August 17, 2007 (the "Sahara LV Lease"), for the lease of 2601 Las Vegas Boulevard South, Las Vegas, NV 89109, (collectively, the "Premises").

1

9. The Premises consists of 26 acres. During construction of the Project, the Premises was used as the main staging site for materials and equipment that were to be delivered to the Project, and a parking lot for subcontractors and their employees.

10. Pursuant to the terms of the Sahara LV Lease, Resort is obligated to make monthly rental payments of $350,000. The Sahara LV Lease is scheduled to expire on November 8, 2009.

11. To facilitate the management of the materials and equipment located at the Premises, Resort leased two on-site mobile trailers (collectively, the "On-site Trailers") that operated on the Premises. A copy of the On-site Trailer leases are attached as Exhibit A (collectively, the "Trailer Leases").

12. Resort no longer intends to use the Premises or the On-site Trailers as they are not necessary for an effective reorganization of the Debtors' estates.

13. Resort intends to move its materials and equipment from the Premises to the Project with the ultimate goal of vacating the Premises within the next thirty days.[2] The Debtors have submitted a relocation budget to the Court for the costs associated with such relocation, and such request is pending.

**RELIEF REQUESTED**

14. By this Motion, the Debtors seek Court approval for Resort to reject the Sahara LV Lease and the Trailer Leases pursuant to section 365(a) of the Bankruptcy Code as they are not necessary to an effective reorganization of the Debtors' estates.

15. Prepetition, and during the course of the Chapter 11 Cases, Resort used the Premises in connection with the construction of the Project as a staging area for materials,

---

[2] To the extent Resort has not vacated the Premises by October 7, 2009, the relief requested herein requests an extension of time for Resort to reject the Sahara LV Lease to the date Resort vacates the Premises.

2

construction equipment and vehicles, and also placed the On-site Trailers at the Premises as site management facilities and temporary buildings for other uses.  However, since construction of the Project has been put on hold, the Debtors do not require the use of the Premises or the On-site Trailers at this time.

16. If Resort is not allowed to reject the Sahara LV Lease and the Trailer Leases, the monthly lease payments will only serve as an administrative burden on these estates, with no added benefit to the Debtors or their estates.

## **LEGAL ARGUMENT**

17. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The proposed rejection of the Sahara LV Lease and the Trailer Leases is consistent with the Bankruptcy Code and integral to preserving estate resources.  Accordingly, such rejection is within the ambit of the Debtors' sound business judgment.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Byrd v. Gardinier, Inc. (In re Gardinier, Inc.)*, 831 F.2d 974, 975 fn. 2 (11th Cir. 1987) ("The only limitation on the trustee's discretion is that it is subject to court approval.  However, since courts review a trustee's decision to assume or reject a contract under a traditional 'business judgment' standard, the scope of review in this area is narrow.") (internal citations omitted), *cert. denied*, 488 U.S. 853 (1988); *In re Country Club Estates at Aventura Maint. Ass'n, Inc.*, 227 B.R. 565, 567 (Bankr. S.D. Fla. 1998) ("[W]hen determining whether or not a rejection is appropriate, the trustee or debtor- in-possession must employ the traditional 'business judgment' standard."); *In re Wells*, 227 B.R. 553, 564-65 (Bankr. M.D. Fla. 1998) ("Ordinarily, the decision to assume or reject an executory contract is left entirely to the debtor . . . Subsequently, the Court should give perfunctory approval of the decision subject only to the business judgment rule"); *In re Prime Motor Inns*, 124 B.R. 378, 381

(Bankr. S.D. Fla. 1991); *In re Condo. Ass'n of Plaza Towers S., Inc.*, 43 B.R. 18, 21 (Bankr. S.D. Fla. 1984); *In re S & R Serv., Inc.*, 26 B.R. 865, 868 (Bankr. S.D. Fla. 1983) (holding that the "business judgment test" is the standard governing whether a court should grant a debtor's motion to reject).

18.   To satisfy the business judgment test, a trustee need only show that the rejection will benefit the bankruptcy estate. *See Prime Motor*, 124 B.R. at 381, 383 (finding that the burden or hardship which rejection would impose on other parties to a contract is not a factor to be weighed by the bankruptcy court in ruling on a debtor's motion to reject). Under this standard, rejection is appropriate if the Debtors can demonstrate that rejection will benefit the bankruptcy estate. *See Westship, Inc. v. Trident Shipworks, Inc.*, 247 B.R. 856, 865 (M.D. Fla. 2000).

19.   In applying the "business judgment" standard, courts show great deference to a debtor's decision to reject. *See Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (stating that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). As long as the decision to reject is a reasonable exercise of business judgment, courts should approve the rejection of an executory contract or unexpired lease. *See, e.g., NLRB v. Bildisco and Bildisco,* 465 U.S. 513, 523 (1984); *Group of Institutional Investors v. Chicago M. St. P. & P. R. R. Co.*, 318 U.S. 523 (1943); *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989).

20.   Further, the Court should not substitute its judgment for the Debtors' judgment unless the Debtors' judgment is the product of bad faith, whim, or caprice. *See Prime Motor*, 124

4

B.R. at 381, 383 (*citing Lubrizol Enters., Inc., v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986)).

21. The Debtors have evaluated the Sahara LV Lease and the Trailer Leases in the context of their responsibilities as debtors in possession under the Bankruptcy Code. In the exercise of their business judgment and in light of the facts and circumstances surrounding the Sahara LV Lease and the Trailer Leases, the Debtors have determined that they are not useful for Resort's ongoing operations, and as a result, such leases are more burdensome than beneficial to the estate. The Sahara LV Lease and the Trailer Leases are unnecessary for Resort's current needs.

22. Eliminating the cost of these leases will reduce the potential administrative obligations of the estates, and will permit the Debtors to better maximize the value of the Debtors' estates going forward.

## RESERVATION OF RIGHTS

**23.** Nothing herein is intended to abridge or waive the rights, claims, or defenses of the Debtors under or in respect of any action or claim arising out of the rejection of the Sahara LV Lease or the Trailer Leases, or otherwise.

## NOTICE

24. Notice of this Motion has been provided to all parties on the Master Service List as defined in Local Rule 2002-1(H), and all parties known to be directly affected by the relief requested herein. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit "B", (a) approving the rejection of the Sahara LV Lease as of the date Resort vacates the Premises, (b) approving the rejection of each of the

5

Trailer Leases, and (c) granting such other and further relief as is just and proper.

Dated: September 25, 2009

        **I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

        Respectfully submitted,
BILZIN SUMBERG BAENA PRICE & AXELROD LLP
*Counsel for the Debtors*
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

By: /s/  Scott L. Baena
      Scott L. Baena
      Fla. Bar No. 186445
      sbaena@bilzin.com
      Jay M. Sakalo
      Fla. Bar No. 0156310
      jsakalo@bilzin.com
      Jason Z. Jones
      Fla. Bar No. 186554
      jjones@bilzin.com

**Exhibit A**



## MASTER LEASE AGREEMENT TERMS AND CONDITIONS

This Master Lease Agreement is made between Pac-Van, Inc., herein called the Lessor, and Fontainebleau Las Vegas, LLC herein called the Lessee. Lessor and Lessee enter into this Master Lease Agreement with the understanding that all future rental transactions between Lessor and Lessee will be subject to the terms, provisions, conditions, and covenants of this Master Lease Agreement and the stipulations of the Rental Agreements. The terms and conditions contained on the Rental Agreements become integral parts of this agreement. For purposes of this Master Lease Agreement, the term "leased equipment" may include any items and their contents supplied by Lessor to Lessee.

**RENTAL TERM:** The rental term of each Rental Agreement begins upon initial delivery of the leased equipment to the Lessee's site or upon removal from the Lessor's location by Lessee. After the minimum lease term has expired, the lease will be viewed as month to month until written notice of termination. No rental credits will be taken or allowed for partial period rentals. Lessee cannot cancel a Rental Agreement. Use is deemed to continue until pick-up of the leased equipment. Pick-up of the leased equipment will be performed in a reasonable time (customarily within two weeks) after the leased equipment is made available for pick-up. The Lessee is responsible for rental and other lease liabilities of the leased equipment until such time as the leased equipment is picked-up. Availability of the leased equipment is the responsibility of the Lessee and is at the expense of the Lessee. In the event a pick-up is attempted without proper availability, the Lessee will reimburse the Lessor for the costs incurred in the failed pickup attempt. Availability typically includes but is not limited to site access, disconnection of utilities, vacancy, and return of keys. In the event the leased equipment is returned prior to the minimum stipulated rental term, the Lessee is responsible for all fees and charges set forth for the full term of the lease and no deduction or refund will be claimed or allowed.

**RENTAL RATE AND CHARGES:** Pricing assumes a level and compact site with appropriate accessibility. If Lessor determines these assumptions to be invalid, Lessor may assess additional charges for the time and material costs incurred by the Lessor. For Rental Agreements that are or become month to month, Lessor reserves the right to adjust the rental rate and pricing of end of lease transportation and services upon expiration of the initial rental term. It is further understood and agreed by the parties hereto that any charges against the Lessee by the Lessor for services or work performed on the leased equipment by order of the Lessee or otherwise accruing under this agreement shall be considered as rent due and shall be included in any lien for rent due and unpaid.

**PAYMENT TERMS AND CANCELLATION CHARGES:** Payment terms are in accordance with the Lessor's credit policy. Unpaid balances beyond 10 days may incur penalties, and interest of 21% or the maximum allowed by law if such amount is lower. A down payment may be required for some transactions. In the event a Credit Guarantee Agreement is executed by the Lessee, the terms and conditions of the Credit Guarantee Agreement are hereby integrated into this Master Lease Agreement and are construed as part of all rental transactions between the Lessor and Lessee.

**LESSEE'S INSPECTION & ACCEPTANCE:** There are no warranties that extend beyond the description on the Rental Agreement. Lessee is leasing the leased equipment in the condition delivered to Lessee. The Lessee shall have the right to inspect all leased equipment tendered for delivery before delivery is considered complete. Such inspection may take place only at the place of delivery. If the Lessee rejects any such leased equipment, such leased equipment shall be immediately returned to the Lessor. The Lessee shall not be charged for leased equipment properly rejected as being nonconforming under the requirements of the Rental Agreement. The Lessee may be charged for leased equipment not properly rejected. The expense of this inspection shall be borne by the Lessee.

**CARE & MAINTENANCE:** The Lessee shall, at its own expense and at all times, maintain the leased equipment in good and safe condition, including glass, wiring, plumbing, HVAC installations, and any other system or items leased with the equipment. The Lessee shall also pay all charges for rent, gas, electricity, water, or other utilities in conjunction with the use of the leased equipment. Should the Lessee fail to keep the leased equipment in good and safe condition, the Lessor may consider the Lessee to be in default. The Lessee shall surrender the leased equipment in the same condition as received (less ordinary wear and tear). Lessee shall be responsible for all required repairs, missing equipment, structural or cosmetic damage, lost keys, cleaning fees, and any other costs incurred by Lessee or Lessor to return the leased equipment to its original condition. These costs will be charged upon return of the leased equipment or termination of the Rental Agreement and are due upon demand.

**LOSS AND DAMAGE:** All personal property placed or moved in the leased equipment shall be at the risk of the Lessee or owner thereof. Lessor shall not be liable for any damage to said personal property, or to the Lessee, or any other person arising from any cause whatsoever, including any act of negligence of any co-tenant or occupants of the leased equipment, or damage caused by an act of God (such as tornado, hurricane, lightning, earthquake, hail, wind, rain, or snow). Lessee also assumes and shall bear the entire risk of loss of or damage to the leased equipment or any part of the leased equipment from any cause whatsoever (except ordinary wear and tear) including vandalism from commencement of Rental Agreement to return of the leased equipment to Lessor. No loss or damage to the leased equipment or any part thereof shall impair any obligation of the Lessee under the Rental Agreement, which shall continue in full force and effect, except as provided in this paragraph. In the event of loss or damage of any kind whatsoever to any part of the leased equipment, the Lessee, at the option of the Lessor, shall: (1) place the leased equipment in good repair, or (2) pay the Lessor the market value of the leased equipment as determined by the Lessor's schedule of value and all costs associated with the loss or damage to the leased equipment as determined by Lessor. These costs will be automatically accepted by Lessee and may include, but are not limited to, loss of leasing revenue, recovery and removal costs, transportation, storage, and attorney fees. In the event of a claim (whether or not a lawsuit has been filed) against the Lessee for injuries to any person, the Lessee shall indemnify, defend, and hold harmless the Lessor from liability including, but not limited to, attorney fees and any other consequential damage.

**INSURANCE:** Lessee, at its own expense, shall insure for risks of loss or damage. Lessee must carry comprehensive general liability insurance insuring both Lessor and Lessee against loss. The general liability insurance amounts must not be less than $1,000,000 bodily injury per person, $1,000,000 bodily injury per occurrence, $1,000,000 property damage per occurrence, and Lessor must be named as an additional insured. Lessee must carry fire, windstorm and extended coverage casualty insurance for the retail value as determined by the Lessor's schedule of value of all equipment leased and Lessor must be named as the loss payee. Lessee shall provide Lessor with a Certificate of Insurance documenting compliance with the insurance requirements as stipulated in this Master Lease Agreement. The Certificate must be received at the Lessor's Corporate Office, 2995 South Harding Street, Indianapolis, Indiana, 46225. The required insurance policy shall be procured with a company acceptable to Lessor. The coverage may not be changed without ten (10) days prior written notice to Lessor.

In the event the Lessee selects on the Rental Agreement the optional general liability or equipment damage waiver or the Lessee fails to deliver the required certificate or policy to the Lessor within 10 days after delivery of the leased equipment, the Lessee will be billed for the costs of the general liability or equipment damage waiver. If the optional general liability or equipment damage waiver is accepted on the executed Rental Agreement, coverage begins upon delivery of the equipment. If the optional general liability or equipment damage waiver is not accepted on the executed Rental Agreement and the Lessee fails to deliver the required certificate or policy, coverage begins upon receipt of payment for waiver charges. Coverage shall only be in effect after commencement of coverage if the Lessee submits payment for the waiver charges within the stated terms of the invoice. If the event the Lessee fails to submit payment within the stated terms, the Lessee acknowledges that coverage may not be in effect at the sole discretion of the Lessor. The general liability waiver waives the Lessee's obligation to carry general liability insurance for the Lessor of up to $150,000 per person per occurrence for death, bodily injury or property damage. The general liability waiver does not protect the Lessee, but does release the Lessee of responsibility to protect Lessor. The general liability waiver is effective only if the Lessee does not violate any other provision of the Master Lease Agreement and Rental Agreement. Lessee will remain liable to Lessor for claims of up to $5,000 and any amount over $150,000 for each occurrence. The equipment damage waiver relieves the Lessee of the financial responsibility to Lessor in excess of $1000 in the event that the leased equipment is lost or damaged due to theft or act of god. The equipment damage waiver is not total damage protection. If the equipment is damaged due to neglect, vandalism, carelessness, or inadequate security, the Lessee is required to pay the cost of repairs regardless of whether the Lessee purchased an equipment damage waiver. The Lessee may cancel the general liability or equipment damage waiver upon thirty (30) days written notice to Lessor and receipt by Lessor of the required insurance certificate.

**USE, ASSIGNMENT & SUBLETTING:** The Lessee shall not assign a Rental Agreement, nor sublet the leased equipment, or any part thereof without the prior written consent of the Lessor nor use the equipment for any unlawful purpose, nor make any alterations therein or additions thereto, without the written consent of the Lessor. All additions, fixtures or improvements that are made by Lessee, shall become the property of Lessor and remain with the leased equipment as a part thereof, and be surrendered with the leased equipment at the termination of the Rental Agreement. Any assignment, subletting or use by the Lessee, which violates the Rental Agreement, may, at the option of the Lessor, result in the immediate termination of the Rental Agreement. Lessor may assign or sell a Rental Agreement and leased equipment to a third party.

**LOCATION:** Lessee shall provide Lessor with fourteen (14) days written notice of intent to relocate the equipment and shall relocate only after receiving written permission from Lessor. Lessee shall advise Lessor of the exact location of the leased equipment upon request by Lessor.

**UTILITIES:** All applications and connections for necessary utility services to the leased equipment shall be made in the name of the Lessee only, and Lessee shall be solely liable for utility charges as they become due, including but not limited to electricity, water, sewer, and telephone services.

**RIGHT TO ADVERTISE:** Lessor shall also have the right to affix signs or stickers of the Lessor to the equipment. Defacing or damage to the signage or stickers is considered damage to the equipment.

**ORDINANCES, STATUTES & OWNERSHIP:** The Lessee shall promptly execute and comply with all statutes, ordinances, rules, orders, regulations, and requirements of any governmental entity applicable to the leased equipment, and with the correction, prevention, and abatement of nuisances or other grievances, in, upon, or connected to the leased equipment. Lessee's obligation to comply with all statutes, ordinances, rules, orders, and regulations includes Lessee's liability for any permit fees, taxes, fines, or other costs associated with Lessee's compliance. The equipment and any part thereof is and shall remain the property of the Lessor and the Lessee shall have no right, title or interest therein or thereto except as provided in the Rental Agreement. Lessee shall provide notice to Lessor of any attachment or other judicial process affecting the leased equipment and Lessee shall defend such claim at the expense of Lessee on behalf of Lessor.

**DISCLAIMER OF IMPLIED WARRANTIES:** Lessor disclaims any warranty of merchantability with respect to the leased equipment. Lessor disclaims any warranty of fitness for any particular purpose whatsoever with respect to the leased equipment, and Lessee acknowledges that he is not relying on the Lessor's skill or judgment to select or furnish leased equipment suitable for any particular purpose. Lessee is responsible for verifying that the leased equipment is appropriate for Lessee's use. In the case of custom equipment, the Lessee is responsible for providing verified: (a) floor plan(s), (b) specifications, and (c) finish selections. Lessor disclaims any warranties against interference or infringement.

**DEFAULT AND EVICTION:** The prompt payment of rent and other charges for leased equipment, and the faithful observance of the terms and conditions printed upon this Master Lease Agreement and the Rental Agreement, are the conditions upon which the equipment rental transactions are made and accepted. Any failure on the part of the Lessee to comply with these terms and conditions (including abandonment or suffering the rent to be in arrears) shall, at the option of the Lessor, cause default of this contract and all of the rights of the Lessee hereunder. Upon such default, the Lessor or his agents shall have the right to access and enter the leased equipment and remove all persons therefrom forcibly or otherwise, and take possession of the equipment. The Lessee accepts responsibility for any and all damage occasioned by such taking of possession, whether for default or any other reasonable need. Any personal property in the leased equipment may be disposed of at the sole discretion of Lessor. Also, upon default, Lessee expressly waives any and all notice required by law and any legal proceedings to remove Lessee from occupancy or recover possession of the leased equipment. Any said taking of possession shall not constitute a termination of the Master Lease Agreement unless the Lessor expressly notifies the Lessee in writing. Notwithstanding any said repossession, or any other action which Lessor shall take, Lessee shall be and remain liable for the full performance of its obligations to be performed under the Master Lease Agreement.

Page 2 of 3

11/05/2007  16:21    7025588⋅⋅    PAC-VAN INC    PAGE 05/05

**SECURITY INTEREST:** Lessee hereby pledges and assigns to the Lessor all furniture, fixtures, leased equipment and chattels of Lessee, which shall or may be brought or put in or on the leased equipment as security for the payment of rent and other charges in the event of default. Lessee agrees that said security interest might be enforced by distress, foreclosure, or otherwise at the election of Lessor.

**RIGHT TO ENTER:** The Lessor, or any of its agents, shall have the right to enter the leased equipment during all reasonable hours to examine the same to make such repairs, additions or alterations as may be deemed necessary for the safety, comfort, or preservation thereof, and to remove placards, signs, fixtures, alterations, or additions that do not conform to the Master Lease Agreement.

**BANKRUPTCY:** If the Lessee becomes insolvent or bankruptcy proceedings are begun by or against the Lessee before the return of the leased equipment, the Lessee is deemed to be in default and the Lessor is hereby irrevocably authorized at its option to cancel this Master Lease Agreements. Lessor may elect to accept rent from Lessee's receiver, trustee, or other judicial officer without affecting Lessor's rights as contained in this Master Lease Agreement, but no receiver, trustee or other judicial officer shall have any right, title to, or interest in the leased equipment.

**ATTORNEY FEES AND FORUM SELECTION:** With respect to any claim or dispute arising under or in connection with this Master Lease Agreement or any Rental Agreement hereunder, or with respect to any proceedings to enforce this Master Lease Agreement or any Rental Agreement in connection herewith, (a) the prevailing party shall be entitled to recover all expenses in connection therewith, including reasonable attorney's fees, from the non-prevailing party, and (b) any such claim or matter may be filed and adjudicated in any state or federal court situated in Marion County, Indiana, and Lessee hereby consents and submits to personal jurisdiction over Lessee in any such court in Marion County, Indiana.

**PERSONAL LIABILITY:** ~~The individual executing this Master Lease Agreement on behalf of the Lessee, even if an officer or director of a corporation or a member of a limited liability company, agrees to be personally responsible for all moneys owed in conjunction with the Rental Agreements.~~

**ASSIGNMENT:** This Master Lease Agreement shall bind the Lessor and its assigns or successors, and the heirs, assigns, administrators, legal representatives, executors or successors as the case may be, of the Lessee.

**TIME OF THE ESSENCE:** It is understood and agreed between the parties that time is of the essence of the Master Lease Agreement and this applies to all terms and conditions contained herein.

**SENDING OF NOTICES:** For the purpose of any notice required, Lessor represents that its principle place of business is located at 2995 South Harding Street, Indianapolis, Indiana 46225, and Lessee represents that its principle place of business is located at the address set forth below. Notice mailed to the office of Lessor or Lessee shall constitute sufficient notice to comply with the terms of this Master Lease Agreement.

**MODIFICATION OR RESCISSION:** This Master Lease Agreement may not be modified or rescinded in any manner except by the written agreement of both Lessor and Lessee.

**LEGAL CONSTRUCTION:** In case any one or more of the provisions contained in this Master Lease Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this Master Lease Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

I hereby have read, understand, and agree to all of the terms and conditions of this Master Lease Agreement.

Company Name: Fontainebleau Las Vegas, LLC
Street Address: 2827 Paradise Rd.
City, State, Zip: Las Vegas, NV 89109
Officer, Owner, or Partner Signature: [signed]
Printed Name: R.C. White
Title: VP Const
Date: 11/7/07

Page 3 of 3

11/05/2007  16:21   7025586         PAC-VAN INC                              PAGE  02/05

## Innovative Space Solutions
### Providing Quality, Service & Convenience



www.pacvan.com
(800) 546-1050

Pac-Van, Inc. - Las Vegas, NV
4680 Industry Center Drive
Las Vegas, NV 89115
Phone No.: (702) 558-8435
Fax No.: (702) 558-8436

Rental Agreement No.:        SQ-228064
Rental Agreement Date:        06/18/07
Rental Agreement Expires:     07/18/07
Rep:                          PATSY ROUMANOS
Email:

*TRAILER 8' LEASE*

**Billing Information**
FONTA1
Fontainbleau *Las Vegas, LLC*
R C White
2827 Paradise Road
Las Vegas, NV 89109

Phone: (702) 495-8210
Fax: (702) 495-8211
Master Lease Date:

**Shipping Information**
PO #
Fontainbleau *Las Vegas, LLC*
Mike Buglione
2755 Las Vegas Blvd
Las Vegas, NV 89109

Phone: (702) 496-9916  Fax:
Tax Status: TAXABLE
Insurance Certification: Not On File

### Monthly Charges

| Description | Quantity | Rate | Total Fee |
|---|---|---|---|
| Pac-Van Modular Building | 1 | 2,490.00 | 2,490.00 |
| Pac-Van Steps 103 | 1 | 0.00 | 0.00 |

This Rental Agreement is based on a minimum lease of 36 months beginning on 05/15/07.
(1) Rate quoted is subject to availability.

### One Time Charges

| Delivery & Installation | | | | Removal & Return | | | |
|---|---|---|---|---|---|---|---|
| Description | Quantity | Rate | Total Fee | Description | Quantity | Rate | Total Fee |
| Delivery | 1 | 940.00 | 940.00 | Pick-Up | 1 | 940.00 | 940.00 |
| Set-up | 1 | 5,850.00 | 5,850.00 | Teardown | 1 | 5,850.00 | 5,850.00 |
| Tie-down | 1 | 1,250.00 | 1,250.00 | Remove Tie-Downs | 1 | 800.00 | 800.00 |
| Skirting Option | 1 | 3,375.00 | 3,375.00 | Remove Skirting | 1 | 400.00 | 400.00 |

(1) Pricing assumes level, compact and accessible site.
(2) Transportation and site services may be subject to permitting, weather delays, transportation restrictions or fuel surcharges.
(3) Back-end services are quoted at a lock-in rate assuming prompt payment upon initial invoice and completion of services within lease term. Actual pricing may vary if services are either not paid in full with initial invoice or are incurred beyond stipulated lease term.

(1) This Rental Agreement is subject to the terms and conditions of the Master Lease Agreement.
(2) Lessee is responsible for securing any and all building permits, licenses or approvals necessary for use of the leased equipment, performing normal preventative maintenance, and returning the leased equipment in the same condition as received (less normal wear and tear). Additional charges will be incurred if cleaning and/or repairs are needed to return leased equipment to original condition.
(3) Lessee is required to either provide an acceptable insurance certificate or pay Lessor's insurance waiver fee (if eligible).
(4) In addition to the above prices, Lessee shall also pay Lessor any sales and use taxes, personal property taxes, and/or any other fees or taxes imposed by any governmental entity or taxing authority related to the leased equipment or its use.
(5) Agreement is contingent upon final acceptance and credit approval by Pac-Van, Inc.

**Sign →**
**Here →**

Signature: *R.C. White*
Printed: R. C. WHITE
Title: *VP Const*
Date: 11/7/07

Signature:
Printed: PATSY ROUMANOS
Title: SALES REPRESENTATIVE
Date:

## Innovative Space Solutions
### Providing Quality, Service & Convenience

www.pacvan.com

(800) 546-1050

| | |
|---|---|
| Pac-Van, Inc. - Las Vegas, NV | |
| 4680 Industry Center Drive | |
| Las Vegas, NV 89115 | |
| Phone No.: (702) 558-8435 | |
| Fax No.: (702) 558-8436 | |

| | |
|---|---|
| Rental Agreement No.: | SQ-242952 |
| Rental Agreement Date: | 11/09/07 |
| Rental Agreement Expires: | 12/09/07 |
| Rep: | PATSY ROUMANOS |
| Email: | |

*TRAILER #8 ADDITION*

**Billing Information**
FONTA1
Fontainbleau
2827 Paradise Road
Las Vegas, NV 89109

Phone: (702) 495-8210
Fax: (702) 495-8211
Master Lease Date:

**Shipping Information**
PO #
Fontainbleau
Mike Buglione
2755 Las Vegas Blvd
Las Vegas, NV 89109

Phone: (702) 496-9916 Fax:
Tax Status: TAXABLE
Insurance Certification: Not On File

### Monthly Charges

| Description | Quantity | Rate | Total Fee |
|---|---|---|---|
| Pac-Van Modular Building | 1 | 975.00 | 975.00 |
| Pac-Van Steps 103 | 1 | 0.00 | 0.00 |

This Rental Agreement is based on a minimum lease of 24 months beginning on 11/12/07.

(1) Rate quoted is subject to availability.

### One Time Charges

| Delivery & Installation | | | | Removal & Return | | | |
|---|---|---|---|---|---|---|---|
| Description | Quantity | Rate | Total Fee | Description | Quantity | Rate | Total Fee |
| Delivery | 1 | 490.00 | 490.00 | Pick-Up | 1 | 490.00 | 490.00 |
| Set-up | 1 | 1,950.00 | 1,950.00 | Teardown | 1 | 1,950.00 | 1,950.00 |
| Tie-down | 1 | 600.00 | 600.00 | Remove Tie-Downs | 1 | 300.00 | 300.00 |
| Optional Skirting | 1 | 2,800.00 | 2,800.00 | Remove Skirting | 1 | 500.00 | 500.00 |
| State Inspection | 1 | 275.00 | 275.00 | | | | |

(1) Pricing assumes level, compact and accessible site.
(2) Transportation and site services may be subject to permitting, weather delays, transportation restrictions or fuel surcharges.
(3) Back-end services are quoted at a lock-in rate assuming prompt payment upon initial invoice and completion of services within lease term. Actual pricing may vary if services are either not paid in full with initial invoice or are incurred beyond stipulated lease term.

(1) This Rental Agreement is subject to the terms and conditions of the Master Lease Agreement.
(2) Lessee is responsible for securing any and all building permits, licenses or approvals necessary for use of the leased equipment, performing normal
preventative maintenance, and returning the leased equipment in the same condition as received (less normal wear and tear). Additional charges will be incurred if cleaning and/or repairs are needed to return leased equipment to original condition.

(3) Lessee is required to either provide an acceptable insurance certificate or pay Lessor's insurance waiver fee (if eligible).
(4) In addition to the above prices, Lessee shall also pay Lessor any sales and use taxes, personal property taxes, and/or any other fees or taxes imposed by any governmental entity or taxing authority related to the leased equipment or its use.
(5) Agreement is contingent upon final acceptance and credit approval by Pac-Van, Inc.

**Sign ->**
**Here ->**

Signature: _[signed]_
Printed: _[handwritten]_
Title: _VP [handwritten]_
Date: _11/9/07_

Signature: _____
Printed: PATSY ROUMANOS
Title: SALES REPRESENTATIVE
Date: _____



ModSpace
**Modular Space Corporation**

## OPERATING LEASE RENEWAL ADDENDUM

### CUSTOMER & LEASE INFORMATION:

| | | | |
|---|---|---|---|
| Customer Name: | Fontainebleau Las Vegas, LLC | Expired Lease Number: | 391216 |
| Account ID: | 807261 | Delivery Location: | Las Vegas, NV |
| Contact Name: | Darleen | Contact Number: | 702 495 7301 |
| Unit Number | 646113 | Email | dghirardi@fontainebleau.com |

### NEW LEASE NUMBER

Please indicate your lease renewal term and rate preference by selecting a standard term below or writing in your custom term, initialing your selection below, signing and faxing this form to ModSpace at

| Initials | TERM OPTION | MONTHLY LEASE RATE |
|---|---|---|
| | Month to Month | 578.00 |
| | 2 months | 450.00 |
| | 3 months | 450.00 |

This Addendum will serve to amend the terms, conditions and provisions of the above referenced Lease Agreement including all exhibits, attachments and modifications previously made (the "Lease") by and between Fontainebleau Las Vegas, LLC ("Customer") and Modular Space Corporation, d/b/a ModSpace ("ModSpace") and Modular Space ("MS"). Now, therefore, in consideration of the Equipment, the Lease and other good and valuable consideration the sufficiency of which is hereby acknowledged the parties hereby agree to the following:

1. ModSpace and Customer hereby agree to extend the term of the Lease commencing 30 days after the printed date on this letter (the "Revised Commencement Date") for the number of months selected above, and Customer agrees to pay Modspace the corresponding Rent indicated above. The absence of, or Customer's failure to issue, a renewal purchase order will not eliminate or alter the Customer's obligations under the Lease or this Addendum.

2. The rates for tear down and return freight previously agreed to in the expired lease agreement 391216 are no longer applicable, and all future tear down and return freight charges will be billed at the prevailing rate at the time of final lease termination.

3. The undersigned represents that they are fully authorized to enter into this Addendum with ModSpace.

4. Except as expressly set forth herein, all other terms, conditions and provisions of the Lease will remain the same. In the event of any conflict between the terms, conditions and provisions of the Lease and this Addendum, then this Addendum shall prevail.

5. To keep from being charged an additional 94.50 per month I will need an insurance document in the name of Fontainebleau Las Vegas, LLC showing ModSpace as loss payee just as you have done with the prior entity.

### ACCEPTANCE:

Fontainebleau Las Vegas, LLC

By: X_____
        Authorized Signature

_____
Print Name

_____
Title               Date

_____
Email

ModSpace

By: X_____
        Authorized Signature

_____
Print Name

_____
Title               Date

**Exhibit B**

Case 09-21481-AJC    Doc 602    Filed 09/25/09    Page 16 of 19

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                          Chapter 11

FONTAINEBLEAU LAS VEGAS
HOLDINGS, LLC, ET AL.,[1]                      Case No.  09-21481-AJC


            Debtors.                                   (Jointly Administered)
_____/

### ORDER GRANTING MOTION BY DEBTORS FOR AUTHORITY TO REJECT CERTAIN LEASES ASSOCIATED WITH STAGING SITE

THIS CAUSE having come before the Court for hearing on _____ at ___ p.m. upon the Motion By Debtors for Authority to Reject Certain Leases Associated With Staging Site (the "Motion") pursuant to 11 U.S.C. § 365(a), Federal Rule of Bankruptcy Procedure 6006, and Local Rule 6006-1, pursuant to which the Debtors seek authority to reject that certain Sahara

---

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida  33180.

2

LV Lease[2] and Trailer Leases associated with the Debtors' staging site, and having found that due and proper notice of the Motion was given by the Debtors in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Local Rules of this Court; and that no other or further notice of the Motion is necessary; and the Court having reviewed the Motion; having heard arguments of counsel; having found that the rejection of the Sahara LV Lease and each of the Trailer Leases is an exercise of the Debtors' sound business judgment and is in the best interest of the Debtors' estates and creditors; and it appearing that no parties in interest have filed any objections to the Motion; and being otherwise duly advised in the premises, it is

**ORDERED** that:

1. The Motion is GRANTED.

2. The Sahara LV Lease is deemed rejected as of the date the Debtors vacate the Premises.

3. Each of the Trailer Leases set forth on Exhibit A to the Motion are deemed rejected.

4. The Court reserves jurisdiction to interpret this Order and to resolve any objection interposed to any proof of claim filed by Landlord with respect to its rejection damages or requests for payment of administrative claims.

5. Nothing herein is intended to abridge or waive the rights, claims, or defenses of the Debtors under or in respect of the Sahara LV Lease or the Trailer Leases as a result of the rejection authorized herein or otherwise.

---

[2] Any capitalized term not defined herein shall have the same meaning ascribed in the Motion.

6. **PURSUANT TO LOCAL RULE 6006-1, ANY PROOF OF CLAIM FOR DAMAGES ARISING FROM THE REJECTION EFFECTUATED BY THIS ORDER MUST BE FILED WITH THE COURT WITHIN 30 DAYS AFTER ENTRY OF THIS ORDER.**

###

Submitted by:

Scott L. Baena (Florida Bar No. 186445)
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

Copies to:
Scott L. Baena
*(Attorney Baena shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service.)*