## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsbuscourts.gov

In re:

**FONTAINEBLEAU**
**LAS VEGAS HOLDINGS LLC, et. al.,**         **CASE No.: 09-21481-BKC-AJC**

                                                        **Chapter 11**
**Debtors.**                                      **(Jointly Administered)**

_____

### RESPONSE AND OBJECTION OF U.S. BANK N.A., AS INDENTURE TRUSTEE, TO THE M&M LIENHOLDERS' MOTION FOR MODIFICATION OF THE AUTOMATIC STAY(D.E. # 506)

**U.S. BANK NATIONAL ASSOCIATION**, as Indenture Trustee ("U.S. Bank") files this Response and Objection to the M&M Lienholders' Motion For Modification of the Automatic Stay (the "M&M Motion" or the "Motion") (D.E. # 506).  As set forth more fully below, U.S. Bank opposes the M&M Motion because cause does not exist to modify the stay and because modification of the stay would be premature and would complicate and interfere with the administration of the bankruptcy estate, including the negotiation of a sale of the Debtors' assets under 11 U.S.C. § 363.

### JURISDICTION

1.      The Debtors filed voluntary bankruptcy petitions on June 9, 2009, and continue to operate their business and manage their assets as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2.      These matters constitute core proceedings under 28 U.S.C. § 157(b)(2). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157 and 1334(b).  Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

3        U.S. Bank serves as indenture trustee of under an Indenture of Trust dated as of June 6, 2007 relating to the issuance of Debtors' 10 ¼% Second Mortgage Notes due 2015 (the "Second Mortgage Notes") in the aggregate outstanding principal amount of $675 Million.  The Second Mortgage Notes are secured by a perfected junior deed of trust on the Debtors' casino hotel resort project (the "Project") and by certain other collateral interests.

4.        Various mechanics' and materialmen's lien claimants that were subcontractors on the Project (the "M&M Claimants") filed the M&M Motion for limited relief from the automatic stay in order to commence litigation in Nevada to determine the validity, priority and extent of their liens against the Project.

5.        The general contractor for the M&M Claimants, Turnberry West Construction, Inc. ("TWC"), has filed a lawsuit (Adversary Case No. (09-09-01762-BKC-AJC-A)n (the "TWC Lawsuit") in this Court that indirectly addresses the priority and allowability of its claims as general contractor, including amounts owed to the M&M Claimants as subcontractors.  All parties have agreed to the entry of an order abating the TWC Lawsuit.

## ARGUMENT

6.        U.S. Bank objects to the M&M Motion because the "cause" required by 11 U.S.C. § 363(d)(1) for relief for the automatic stay does not exist under the balancing test the Court must use to decide whether to allow relief from stay to pursue litigation against the Debtors outside of the bankruptcy court.  The interests of the Debtors'

2

estates in maintaining the stay far outweigh any hardships to the M&M Claimants, because the bankruptcy filings did not interrupt any existing litigation, their proposed litigation would have no effect on whether they are adequately protected, they will not be irreparably harmed by continuation of the stay and lifting the stay would not promote judicial economy.

7.     U.S. Bank further objects to the Motion because allowing stay relief to permit the M&M Claimants to commence litigation in Nevada is premature at this time and would complicate and undercut ongoing efforts to expedite a consensual sale of the Project under 11 U.S.C. § 363.

<u>**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION**</u>

**I.     "Cause" Does Not Exist for the Initiation of Complex Mechanics' Lien Litigation in Nevada.**

8.     Section 362(d) of the Bankruptcy Code permits courts to modify the automatic stay only for cause.  Whether cause exists must be determined on a case-by-case basis.  *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004)  To determine whether to modify the stay for cause to permit litigation to proceed outside of bankruptcy during a chapter 11 reorganization, courts apply this balancing test:  whether prejudice to either the estate or the debtor from lifting the stay outweighs the hardship to the movant caused by the continuance of the stay.  *In re Katzburg*, 326 B.R. 606, 610 (Bankr. D.S.C. 2004).  Here, the M&M Claimants have neither shown that cause exists for lifting the stay nor that the balancing test would favor lifting the stay.

**A.    The M&M Claimants' Desire to Initiate State Court Litigation is Not Cause to Lift the Stay.**

9.    In support of their Motion, the M&M Claimants rely heavily on cases granting relief from the automatic stay to *continue* litigation that was interrupted by the automatic stay.  In the two unreported cases upon which the M&M Claimants base their argument, *In re: Resort at Summerlin,* Case No. BK-2-00-18878-RJC (Bankr. D. Nev. February 1, 2001) *and In re: Aladdin Gaming LLC,* Case No. BK-S-01-20141-RJC (Bank. D. Nev. July 17, 2002 , stay relief was granted where state court actions had been pending for over a year prior to the filing of the bankruptcy cases, substantial discovery had been conducted and trial dates had been set.  None of these factors are present in this case.  The M&M Claimants have requested relief from the stay to *initiate* litigation as opposed to continue litigation, but have not provided a single reported decision or any other authority where "cause" was found to exist sufficient to allow lifting the stay so that a lawsuit could be commenced against a debtor.  See *In re Telegroup, Inc.*, 237 B.R. 87, 92 (Bankr. D.N.J. 1999) (noting that the *Telegroup* court had been unable to locate any case finding cause to allow for the initiation of a lawsuit postpetiton against the debtor).

**B.    Lack of Adequate Protection is No Basis for Granting the Motion.**

10.    In the their Motion, the M&M Claimants assert that they are entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1) due to a lack of adequate protection of their liens.  In particular, they complain that their lien priority has been primed by this Court's cash collateral orders.  While it is true that both the holders of the Second Mortgage Note and the M&M Claimants have been primed by replacement

4

liens, that is not relevant to whether the M&M Claimants' claims should be litigated in Nevada. The M&M Claimants are free to object to priming liens if they choose. Here, however, they seek relief from the automatic stay solely to determine the amount and priority of their claims under Nevada's lien procedures. The relief sought has no relationship to priming liens or lack of adequate protection.

### C.    Failure to Modify the Stay Would Not Cause Irreparable Harm

11.    In a related argument, the M&M Claimants assert that they have been irreparably harmed by the interim cash collateral orders because those orders have allowed the Term Lenders' liens to prime mechanics' liens. This argument is misplaced for several reasons. To begin with, the amount of cash collateral that was authorized by the orders and used by the Debtors is relatively small in comparison to the lien amounts. Further, the Debtors' use of that cash collateral helped to preserve the value of the Project, which benefits all parties including the mechanics' lienors.

12.    Even more fundamental, however, is the M&M Claimants' assumption that their liens are senior to the Term Lenders' liens and, accordingly their liens are not adequately protected because they are being eroded by the Term Lenders' priming liens. Litigation in Nevada for the limited purpose of determine the validity, priority and extent of the M&M Claimant's mechanics' liens under Nevada law, however, would have no significance as to whether the Term Lenders are entitled to priming liens under the Bankruptcy Code. Therefore, lifting the stay to allow the mechanics' lien claims to be litigated in Nevada would not protect the M&M Claimants from irreparable harm even if that harm did exist.

**D.      Modifying the Stay Would Not Promote Judicial Economy**

13.      Another factor in the balancing test is whether lifting the stay would promote judicial economy.  *In re Katzburg*, 236 B.R. at 610.  The initiation of mechanics' lien litigation in Nevada at this time would not promote judicial economy and instead would be wasteful for several reasons.  First of all, in the interests of judicial economy, the priority issues between the Term Lenders, the M&M Claimants and other creditors should be resolved before 180 claims are litigated in Nevada.  Depending on the outcome of the priority determination, some or all of the M&M Claimants might chose not to pursue their claims.  By lifting the stay, this Court would lose its ability to have any necessary litigation managed in an appropriate way.  The TWC Lawsuit has already been abated by the Court in an effort to prevent an unnecessary waste of resources by prematurely litigating issues.  Lifting the stay would potentially result in duplication between the TWC Lawsuit and other cases in Nevada, which is not economic of judicial resources.

**II.      Allowing Stay Relief To Commence Litigation In Nevada Is Premature And Would Harm Ongoing Efforts To Sell The Project**

15.      Allowing the M&M Claimants to litigate their claims outside of bankruptcy court is premature at this time.  The Court has already decided that it is in the best interest of the estate and all parties to appoint an Examiner to examine, negotiate and supervise a sale of Debtors' assets pursuant to 11 U.S.C. §363.  The M&M Claimants' liens would attach to the proceeds of the sale, at which time the validity, priority and extent of those claims could be litigated.

16.    The very existence of mechanics' lien litigation in Nevada would also complicate and interfere with the § 363 sales process because the proposed state court litigation could directly interfere with any sales transaction emerging from these proceedings.  A buyer, otherwise willing to bid in a bankruptcy setting might be unwilling to contend with numerous state law actions.  Moreover, this court's power to approve Debtors' conveyance of the Project might be limited by competing state law orders.

### III.    The Balancing Test Does Not Support Modification of the Stay

17.    To obtain stay relief, the movant must show that the balance of hardships from not obtaining relief tips significantly in its favor.  *In re Glunk,* 342 B.R. 717, 740 (Bankr. E.D. Pa. 2006).  The balancing of factors employed by bankruptcy courts to evaluate lift stay motions relating to state court litigation against debtors does not support this Motion.  Lifting the stay would gravely hurt the chances for success in these chapter 11 proceedings without providing any meaningful benefit to the M&M Claimants, since no litigation was interrupted by the bankruptcy filings, the Nevada litigation would not have any effect on whether the M&M Claimants are adequately protected or irreparably harmed, and litigating their claims in Nevada would not promote judicial economy.

### <u>CONCLUSION</u>

For all of these reasons set forth above, the M&M Claimants have not shown cause to modify the stay and the balance of hardships favors a continuation of the stay. In addition, allowing stay relief is premature at this time and would detrimental to the desired outcome of an expeditious sale of the Project.

WHEREFORE, U.S. Bank, as Indenture Trustee, respectfully requests that this Court enter an Order Denying the M&M Lienholders' Motion for Modification of the Stay and for such other relief as this Court deems proper.

## <u>CERTIFICATIONS</u>

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true and correct copy of this Response and Objection was furnished on the 6th day of October, 2009 to all persons listed on the attached Service List via electronic notice.

/s/ Tina M. Talarchyk, Esquire
Tina M. Talarchyk, Esquire
Florida Bar No.: 794872
ttalarchyk@ssd.com
**Squire, Sanders & Dempsey L.L.P.**
Counsel for U.S. Bank National
Association as Indenture Trustee
1900 Philips Point West
777 South Flagler Drive
West Palm Beach, Fla.  33401-6198
Telephone: +1.561.650.7261
Facsimile: + 1 561.655.1509

Clark T. Whitmore, Esquire
Minnesota Bar No. 181699
clark.whitmore@maslon.com
**Maslon Edelman Borman & Brand, LLP**
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone: +1.612.672.8335
Facsimile: + 1 612.642.8335

Steven M. Siegfried, Esq.
Vivien Montz, Esq.
Fred Harrington, Esq.
Siegfried, Rivera, Lerner,
De La Torre & Sobel, P.A.
201 Alhambra Circle, Suite 1102
Coral Gables, FL 33134
Telephone: 305-442-3334
Facsimile: 305-443-3292
E-Mail: vmontz@siegfriedlaw.com
E-Mail fharrington@siegfriedlaw.com
E-Mail ssiegfried@siegfriedlaw.com

## SERVICE LIST

sbaena@bilzin.com

mmora@bilzin.com

pbattista@glb-law.com

james.fiierberg@akerman.com

bloomm@gtlaw.com

jc@ecccounsel.com

rpc@ecccounsel.com

rfracasso@shutts.com

tfrancella@wtplaw.com

bnasralla@furrcohen.com

jgassenheimer@bergersingerman.com

michael.goldberg@akerman.com

mmitchell@furrcohen.com

jk@kttlaw.com

kthomas@mcdonaldcarano.com

plandau@sfl-pa.com

rmeacham@mmdpa.com

hmoorefield@swmwas.com

kenneth.noble@kattenlaw.com

crasile@hunton.com

arice.ecf@rprslaw.com

agoldstein@furrcohen.com

singerman@bergersingerman.com

dwells@devinegoodman.com

steven.solomon@gray-robinson.com

ctatelbaun@adorno.com