

## ORDERED in the Southern District of Florida on October 08, 2009.

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    Chapter 11

FONTAINEBLEAU LAS VEGAS
HOLDINGS, LLC, ET AL.,[1]                 Case No.  09-21481-BKC-AJC


              Debtors.                          (Jointly Administered)
_____/

**INTERIM ORDER (I) AUTHORIZING THE CONSENSUAL USE OF CASH**
**COLLATERAL PURSUANT TO SECTION 363 OF BANKRUPTCY CODE,**
**(II) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED**
**PARTIES PURSUANT TO SECTIONS 361, 362, 363, AND 364, OF**
**BANKRUPTCY CODE, AND (III) SCHEDULING FINAL HEARING**

Upon the motion [Dkt. No. 700], dated October 6, 2009, of Fontainebleau

Las Vegas Holdings, LLC (the "Company"), Fontainebleau Las Vegas, LLC, and

_____
[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

Fontainebleau Las Vegas Capital Corp. (collectively, the "Debtors"), as debtors and debtors in possession (each, individually a "Debtor" and, collectively, the "Debtors") (the "Motion"), for entry of (1) this interim order (the "Order") (a) authorizing the Debtors to use Cash Collateral (as hereinafter defined) pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") on an interim basis and in limited amounts pending a final hearing on the Motion (the "Final Hearing"), (b) granting the Prepetition Agent and the Prepetition Lenders (each as hereinafter defined) certain liens and other rights pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code with respect to, inter alia, such use of Cash Collateral granted under the Prepetition Credit Agreement (as hereinafter defined), and (c) in accordance with Rule 4001(b)(2), (c)(2) and (d)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting that this Court schedule the Final Hearing and approve notice with respect thereto and (2) an order granting the relief requested in the Motion on a final basis (the "Final Order"); and the Court having considered the Motion and the exhibits attached thereto, including, without limitation, the Budget (as hereinafter defined); and a hearing to consider approval of the Motion on an interim basis having been held and concluded on October 8, 2009 (the "Interim Hearing"), and upon all of the pleadings filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

THE COURT FINDS:

A.      On June 9, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  (the "Chapter 11 Cases").

B.      Jurisdiction.  Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §157(b)(2)(M).  This Court has jurisdiction over the Chapter 11 Cases, this proceeding, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  For the purpose of the Motion, venue is proper before this Court

2

pursuant to 28 U.S.C. §§ 1408 and 1409, however, the Court has taken under submission the M&M Lienholders' Motion to Transfer Venue [Dkt. No. 133] and nothing contained herein shall be demmed a waiver or admission by the M&M Lienholders.

      C.    <u>Notice</u>.  Notice of the relief sought by the Motion and the hearing with respect thereto was delivered on October 6, 2009 via electronic mail, facsimile transmission and/or overnight delivery, as the case may be, to the following parties in interest:  (a) the Office of the United States Trustee for the Southern District of Florida (the "<u>OUST</u>"); (b) those parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims Against the Debtors, as identified in the Debtors' chapter 11 petitions; (c) counsel to the Prepetition Agent; (d) counsel to Term Lenders that are members of a steering group (the "<u>Term Lender Steering Group</u>"); (e) counsel to Bank of America, N.A. in all of its capacities under the Prepetition Loan Documents (as defined below) and as an individual Revolving Lender; (f) counsel to the Trustee for the Second Mortgage Notes; (g) counsel for the Official Committee for Unsecured Creditors (the "<u>Committee</u>"); and (h) any party asserting a Lien (as hereafter defined) against any of the Debtors' assets (collectively, the "<u>Interim Notice Parties</u>").  Given the nature of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of the Motion, the relief requested therein and this Order pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and section 102(1) of the Bankruptcy Code, as required by section 363(b) and 364(c) of the Bankruptcy Code, and no further notice of the Motion or this Order is necessary or required.

      D.    <u>Debtors' Stipulations</u>.  Without prejudice to the rights, remedies, and claims of the Committee contained in Paragraph 19 below, or of the Debtors and Prepetition Term Lenders expressly preserved in Paragraph 20 below, or of the M&M Lienholders and Contractor Claimants (collectively the "<u>Consenting Lienholders</u>")

contained in paragraph B above, the Debtors acknowledge, admit, and confirm the following:[2]

(a)    Pursuant to that certain Credit Agreement (as amended, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Prepetition Credit Agreement") dated June 6, 2007 among Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas II, LLC as borrowers, certain lenders (each, or its respective assignees, a "Prepetition Lender" and, collectively, the "Prepetition Lenders") and Bank of America, N.A. as administrative agent for the Prepetition Lenders (in such capacity, or as to any successor acting in such capacity, the "Prepetition Agent" and, together with the Prepetition Lenders, the "Prepetition Secured Parties"), and together with all schedules and exhibits thereto, and guarantees, subordination agreements, deeds of trust, control agreements, guarantee and collateral agreement, intercreditor agreements, indentures, contractor undertakings, notes, instruments, reaffirmations, certificates, and any other agreements and documents delivered pursuant thereto or in connection therewith (collectively, the "Prepetition Loan Documents"), the Prepetition Secured Parties made certain loans, advances, and other financial accommodations, and provided for the issuance of letters of credit, to the Debtors to fund, among other things, the construction and development of the Fontainebleau Hotel and Resort Casino in Las Vegas (the "Project").   The Prepetition Lenders under the Prepetition Credit Agreement include those lenders holding Term Loans (as defined in the Prepetition Credit Agreement) (the "Prepetition Term Lenders"), as well as those lenders who made commitments to provide Revolver Loans (the "Prepetition Revolver Lenders").

(b)    As of the Petition Date, (i) each of the Debtors jointly and severally were indebted and liable to the Prepetition Term Lenders, without defense, counterclaim, or offset of any kind, in respect of loans made by the Prepetition Term

---

[2] For the avoidance of doubt, the acknowledgements and admissions contained in this paragraph D are being made only by the Debtors and not the Consenting Lienholders.

Lenders to the Debtors under the Prepetition Loan Documents in the aggregate principal amount of not less than (A) $1,036,500,000 (plus accrued and unpaid interest thereon) in principal amount of Term Loans, (ii) each of the Debtors were indebted and liable to the Prepetition Term Lenders for unpaid fees, expenses (including any attorneys', accountants', appraisers', construction consultants' and financial advisors' fees that are chargeable or reimbursable under the Prepetition Loan Documents), make-whole amounts, charges and other obligations incurred in connection with such loans and letters of credit as provided in the Prepetition Loan Documents (items (i) and (ii), collectively, and all other Obligations (as such term is defined in the Prepetition Credit Agreement) owed to the Prepetition Term Lenders are hereinafter referred to as the "Prepetition Term Obligations"), and (iii) each Debtor which is a party to a guarantee executed and delivered in respect of the Prepetition Term Obligations was liable to the Prepetition Term Lenders under such guarantee in the aggregate amount of not less than the aggregate amount of the Prepetition Term Obligations.

(c)     Pursuant to the Prepetition Loan Documents, each of the Debtors granted first priority liens on, and continuing pledges and security interests in, the "Resort Collateral" (as defined in the Retail Intercreditor Agreement) to and/or for the benefit of the Prepetition Secured Parties to secure, among other obligations, the Prepetition Term Obligations and any guarantees thereof (collectively, the "Prepetition Liens").

**(d)     The Prepetition Liens are (i) valid, binding, perfected, enforceable first-priority prepetition liens on the Resort Collateral and the personal and real property described in the Prepetition Loan Documents and, subject to section 552 of the Bankruptcy Code, all postpetition proceeds, products, offspring, rents and profits thereof (collectively, the "Prepetition Collateral"), (ii) not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law, and**

**(iii) subject and either *pari passu* or subordinate only to the Adequate Protection Liens (as defined below).  The Prepetition Loan Documents are valid and binding agreements and obligations of the Debtors.**

**(e)    The Prepetition Term Obligations constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with their terms and no objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Term Obligations exists.  The Prepetition Term Obligations, and any amounts previously paid to the Prepetition Agent for the benefit of the Prepetition Term Lenders or to the Prepetition Term Lenders on account thereof or with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.**

**(f)    The Prepetition Agent (on its behalf and on behalf of the Prepetition Lenders) perfected its security interests and Prepetition Liens in and on the Prepetition Collateral by, among other methods, the filing of UCC-1 financing statements, instruments filed in federal, state, and county offices, mortgages, and other required documents against the Debtors and such collateral with the proper federal, state, and county offices for the perfection of such security interests and liens.**

E.    <u>Cash Collateral</u>.  For purposes of this Order, the following constitute "<u>Cash Collateral</u>" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code:  (a) all funds of the Debtors (including any funds subject to a right of setoff in favor of any Prepetition Lender, any funds on deposit or maintained in any account subject to a control agreement with the Prepetition Agent, and any proceeds of the Prepetition Collateral) as of the Petition Date, including the contents of all of the Accounts identified in Section 2.2 of the Master Disbursement Agreement as to which the Prepetition Agent is listed as pledgee (but excluding funds in Accounts identified in

Section 2.2 of the Master Disbursement Agreement as to which only the Retail Agent is pledgee and the Completion Guaranty Proceeds Account (which is the encumbered property of Turnberry Residential Limited Partner, LP)) and (b) all cash proceeds of Prepetition Collateral received after the Petition Date.

      F.   <u>Consent</u>.   The Term Lender Steering Group and the Consenting Lienholders[3] consent to the Debtors' use of the Cash Collateral, solely on the terms and conditions set forth in this Order, and strictly in accordance with the Budget attached hereto as Exhibit "A" (the "<u>Budget</u>"), provided, however, the M&M Lienholders do not consent to the deadline set forth in paragraph 19(b) hereof and such deadline shall be binding on the M&M Lienholders only to the extent that such deadline is binding as a result of any prior order. Aurelius Capital Management, LP ("<u>Aurelius</u>"), a Prepetition Term Lender, consents to the use of cash collateral in accordance with the Budget but does not consent to the provisions of paragraph 6(c) hereof other than the current cash payment of interest at the non-default rates and at the times provided for in the Prepetition Credit Agreement on the Prepetition Term Obligations (whether or not such interest payments are included in the Budget). No Term Lender Steering Group member has objected to entry of this Order. The rights provided herein and other benefits and privileges provided to the Lenders herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent.

      **G.**   **<u>Prepetition Debt and Adequate Protection Obligations Deemed to Be Postpetition Debt Secured by Senior Lien Under Section 364(d) of the Bankruptcy Code</u>. The Prepetition Secured Parties have a senior lien on the Cash Collateral, and have the right under the Prepetition Loan Documents to apply the Cash Collateral to repay the Obligations (subject, however, to the claims, actions and**

---

[3]     The M&M Lienholders and the Contractor Claimants comprise two groups of materialmen claiming to hold first priority liens on the Project aggregating well over 50% of all anticipated mechanic lien claims which are likely to be asserted against the Project.

rights the Debtors may have against the Prepetition Revolver Lenders and the Prepetition Agent that are preserved under Paragraph 20).  In addition, under prior orders of the Court (the "Prior Cash Collateral Orders"),[4] the Prepetition Secured Parties were granted Adequate Protection Obligations, including Adequate Protection Liens and Superpriority Claims, as protection for the use of Cash Collateral thereunder.  While no creditor has asserted a lien in the Cash Collateral senior to the Prepetition Secured Parties, certain creditors have, subsequent to the Petition Date, asserted the existence of statutory liens with priority over the real property subject to the Prepetition Liens.  The Term Lender Steering Group is unwilling to consent to use of their Cash Collateral unless any Cash Collateral used under this Order is deemed to have been repaid to the Prepetition Secured Parties in satisfaction of payment Obligations under the Prepetition Loan Documents, and further deemed to have been reborrowed by the Debtors as postpetition debt, pursuant to section 364(d) of the Bankruptcy Code, secured by the Adequate Protection Liens granted under this Order.  Based on the record before this Court, the provisions under this Order described herein are likewise appropriate, necessary, and authorized by the Bankruptcy Code.[5]

    H.    Good Faith.  Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Order have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates, and creditors. The Term Lender Steering Group and other Term Lenders who consent or do not object to entry of this Order are permitting the use of their Cash Collateral, in good faith, and all Prepetition Term

---

[4]    The Prior Cash Collateral Orders are comprised of Dkt Nos. 49, 242, 389, 454, and 565.

[5] By consenting to the relief granted pursuant to this Order, the Consenting Lienholders are not waiving any objections previously asserted to any prior Cash Collateral Order or waiving an of the rights asserted in the appeal, 09-22828.

Lenders are entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

       I.      <u>Findings Regarding the Use of Cash Collateral</u>.

      (a)     Good cause has been shown for the entry of this Order. The Debtors have an immediate and critical need to use the Cash Collateral in order to continue to attempt to effectuate a reorganization of their financial affairs.

      (b)     Based on the record presented to the Court at the Interim Hearing, good, adequate and sufficient cause has been shown to justify the immediate grant of the relief requested in the Motion to avoid irreparable harm to the Debtors' estates. The terms of the Debtors' use of the Cash Collateral, as more fully set forth herein, are (i) fair and reasonable, and (ii) constitute reasonably equivalent value and fair consideration for the consent of the Term Lender Steering Group thereto. Entry of this Order is in the best interests of the Debtors' estates and all parties in interest in these Chapter 11 Cases.

      NOW, THEREFORE, IT IS HEREBY ORDERED:

      1.     The Motion is granted. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled without prejudice to the legal issues being raised in connection with subsequent applications for the use of cash collateral provided, that the Court will, based on supplemental briefs that were filed on August 10, 2009 by the Debtors, the Term Lender Steering Group, and the M&M Lienholders (as defined in docket no. 302-1), issue a separate ruling regarding whether it has jurisdiction over the M&M Lienholders to impose the deadline and grant the relief under Paragraph 19(b). This Order shall constitute findings of fact and conclusions of law, and shall become effective immediately upon its entry.

      2.     Subject to all of the terms and conditions set forth in this Order, the Debtors are authorized, pursuant to section 363(c)(2)(A) (as to those Term Lenders that consent to entry of this Order) and (B) of the Bankruptcy Code, to use the Cash Collateral solely and exclusively for the disbursements set forth in the Budget for the period of time

from the date hereof until the earliest to occur of (a) the date that this Order or the Final Order (when applicable) ceases to be in full force and effect or (b) the occurrence and continuation of a "Termination Event." A Termination Event shall constitute any of the following:[6]

     (i)     October 13, 2009 (the "Outside Date");

     (ii)     any Debtor shall fail to comply with any of the terms or conditions of this Order or any Prior Cash Collateral Order;

     (iii)     any Debtor shall seek any modification or extension of this Order without the prior written consent of the Term Lender Steering Group or Consenting Lienholders, or any order shall be entered, other than with the consent of the Term Lender Steering Group, reversing, amending, supplementing, staying, vacating, or otherwise modifying this Order in any material respect or terminating the use of Cash Collateral by the Debtors pursuant to this Order;

     (iv)     the cumulative aggregate cash disbursements exceed 105% of cumulative aggregate amount of cash disbursements projected in the Budget line "Weekly Subtotal" during the term of the Budget;

     (v)     an application shall be filed by any Debtor for the approval of any Superpriority Claim (as defined below) or any lien in any of the Chapter 11 Cases which is *pari passu* with or senior to the Adequate Protection Obligations or Adequate Protection Liens, or there shall be granted any such *pari passu* or senior Superpriority Claim or lien in each case, except any such Superpriority Claim or lien arising hereunder;

     (vi)     Except with respect to the M&M Lienholders' Motion for Relief from Stay [Dkt. No. 506], any order shall be entered granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff other than a security interest, lien or right of setoff of the Prepetition Agent or a Prepetition Lender to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like), possession, set-off or any similar remedy with respect to any assets of any Debtor that constitute Resort Collateral;

     (vii)     except as permitted by any order of this Court and included in the Budget, any Debtor (including all present and future Debtors) shall make any payment in respect of a prepetition claim;

---

[6] Unless otherwise defined herein, terms used in this Paragraph 2 shall have the same meaning(s) ascribed to them under the Prepetition Loan Documents.

(viii)    (A) any of the Chapter 11 Cases shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code or any Debtor shall file a motion or other pleading seeking the dismissal of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code or otherwise; or (B) a trustee under chapter 11 off the Bankruptcy Code, a responsible officer, or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall be appointed or elected in any of the Chapter 11 Cases;

(ix)    except to the extent limited or modified by the terms and provisions of this Order, the Debtors and their affiliates fail to furnish the Prepetition Agent and the Term Lender Steering Group, and their representatives, with any of the Financial Statements and Other Information as required pursuant to Sections 6.1 and 6.2 of the Prepetition Credit Agreement, provided, that if the Debtors are unable to obtain audited financial statements free of any "going concern" exception, or if the Debtors are unable despite best efforts to obtain copies of audited financial statements, such failures shall not constitute a Termination Event;

(x)    the Debtors or their affiliates fail to provide the Term Lender Steering Group, with the reports or with access to properties, personnel and documents required under Paragraphs 7 and 8 of this Order, provided, that the Debtors shall have a period of two business days following receipt of written notice of failure to comply with Paragraphs 7 or 8 of this Order to cure any failure to provide such access or information;

(xi)    the Debtors fail to furnish the Prepetition Agent or the Term Lender Steering Group with prompt written notice of the filing or commencement of any action, suit or proceeding by or before any arbitrator or Governmental Authority (including, without limitation, Clark County, Nevada) against or affecting the Debtors that involves a reasonable possibility of an adverse determination and which, if adversely determined, would reasonably be expected to result in a Material Adverse Effect;

(xii)    the Debtors (A) fail to furnish to the Prepetition Agent or Term Lender Steering Group with prompt written notice of any change (x) in any Loan Party's legal name, as reflected in its organization documents, (y) in any Loan Party's jurisdiction of organization or corporate structure and (z) in any Loan Party's identity, Federal Taxpayer Identification Number or organization number, if any, assigned by the jurisdiction of its organization, (B) effect or permit any change referred to in clauses (x) through (z) of the preceding sentence unless all filings have been made, or will have been made within any statutory period, under the Uniform Commercial Code or otherwise that are required in order for the Prepetition Agent to continue at all times following such change to have a valid, legal and perfected security interest in all the Collateral for the benefit of the Prepetition Secured Parties, or (C) fail to provide prompt written notice to the Prepetition Agent in the event of any damage to or destruction of Collateral that

occurs, is uninsured, and either (y) is known to the Debtors and has a fair market value exceeding $100,000 or (z) whether or not known by the Debtors, has a fair market value exceeding $2,500,000;

(xiii)    except as would not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect, the Debtors fail, or fail to cause each of their respective Subsidiaries, to keep and maintain all property in good working order and condition, ordinary wear and tear excepted;

(xiv)    the Debtors (A) fail, or fail to cause each of their respective Subsidiaries, to maintain, with financially sound and reputable insurance companies (x) insurance in such amounts and against such risks as are customarily maintained by companies of established repute engaged in the same or similar businesses operating in the same or similar locations and (y) all insurance required to be maintained pursuant to the Prepetition Loan Documents, or (B) fail to furnish to the Term Lender Steering Group, upon the reasonable request of the Term Lender Steering Group or Prepetition Agent, information in reasonable detail as to the insurance so maintained;

(xv)    the Debtors fail, or fail to cause each of their respective Subsidiaries, to comply with all laws, rules, regulations, and orders of any Governmental Authority applicable to it, its operations or its property, including Clark County, Nevada, except where the failure to do so, individually or in the aggregate, would not reasonably be expected to result in a Material Adverse Effect, provided, that the Debtors shall be entitled to contest in good faith any laws, rules, regulations and order of any Governmental Authority so long as, prior to contesting such matters, the Debtors notify and obtain written consent of the Term Lender Steering Group;

(xvi)    any material provision of this Order shall for any reason cease to be valid and binding or any Debtor shall so assert in any pleading filed in any court; or

(xvii)    the Final Order or a further interim order authorizing the use of Cash Collateral permitted herein substantially in accordance with the terms of this Order or otherwise acceptable to the Term Lender Steering Group and Consenting Lienholders in their sole discretion is not entered within 30 days of the entry of this Order;

provided, however, that the Term Lender Steering Group and the Consenting Lienholders (with respect to paragraphs (iii) and (xvii)) may waive in writing any Termination Event.

3.    The Debtors' authority to use the Cash Collateral shall automatically terminate upon the occurrence of a Termination Event, all without further order or relief from the Court.  Notwithstanding anything herein or the occurrence of a Termination

Event, all of the rights, remedies, benefits, and protections provided to the Prepetition Secured Parties under this Order shall survive such Termination Event.

4.      (a)      From and after the Petition Date, all proceeds of Collateral, including, without limitation, all of the Debtors' existing or future cash and Cash Collateral (collectively, "<u>Lender Funds</u>"), shall not, directly or indirectly, be used to pay expenses of the Debtors or to make debt payments (except as set forth in this Order) or be otherwise disbursed except for those debt payments, expenses and/or disbursements that are expressly permitted under this Order and are consistent with the Budget.

**(b)      No administrative expense claims, including fees and expenses of professionals, that are or have been incurred from the Petition Date through and including the date of any Termination Event (as that term is defined in this Order) shall be charged or assessed against or recovered from the Collateral or attributed to the Prepetition Secured Parties with respect to their interests in the Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through, or on behalf of the Debtors, without the prior written consent of the Term Lender Steering Group, and no such consent shall be implied from any action, inaction, or acquiescence by, either with or without notice to, the Prepetition Agent or Term Lender Steering Group.  Except as set forth herein, the Prepetition Agent or the Term Lender Steering Group have not consented or agreed to the use of Lender Funds subsequent to the Petition Date.  Neither the Prepetition Agent nor the Term Lender Steering Group have consented or agreed to any use of Lender Funds that occurred prior to the Petition Date, except where such consent or agreement was provided in writing.**

(c)      All disbursements to be made under the Budget shall be made from:  i) any of the Accounts identified in Section 2.2 of the Master Disbursement Agreement which constitute Cash Collateral, including without limitation the Bank Proceeds Account; or ii) any DIP Account established pursuant to the final order

authorizing the Debtors to maintain their cash management system entered on June 30, 2009 (Docket No. 277, the "Final Cash Management Order").[7]

(d)     Notwithstanding anything herein to the contrary, but subject to Paragraph 20, no Cash Collateral may be used directly or indirectly by any of the Debtors, any Committee, or any other person or entity to (A) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Term Obligations or the Prepetition Liens, (B) assert or prosecute any Claims and Defenses (as defined below) against any Prepetition Term Lender on account of their Prepetition Term Obligations, or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, (C) prevent, hinder, or otherwise delay the Prepetition Agent's or any Prepetition Lender's assertion, enforcement, or realization on the Cash Collateral, the Adequate Protection Obligations, or the Adequate Protection Liens in accordance with this Order, (D) seek to modify any of the rights granted to the Prepetition Agent or the Prepetition Lenders hereunder, in each of the foregoing cases without such parties' prior written consent, (E) obtain Liens that are senior to, or on parity with the Liens or Adequate Protection Liens of the Prepetition Secured Parties in the Collateral or any portion thereof, and (F) seek or obtain Liens on any Avoidance Actions (as hereafter defined).

5.     The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral (as hereinafter defined) without the prior written consent of the Term Lender Steering Group (and no such consent shall be implied from any other action, inaction, or acquiescence by the Term Lender Steering Group) or an order of this Court.

6.     The Prepetition Secured Parties are entitled, under sections 363(e) and/or 364(d)(1)(B) of the Bankruptcy Code, to adequate protection of their interest in the

---

[7] The terms "Bank Accounts" and "DIP Account" have the meaning used in the Final Cash Management Order.

Prepetition Collateral, including the Cash Collateral, for and equal in amount to the amount of Cash Collateral used pursuant to this Order, and the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral pursuant to this Order, including any such diminution resulting from (a) the use of Cash Collateral, (b) the sale, lease, or use by the Debtors (or other decline in value) of the Prepetition Collateral, and (c) the imposition of the automatic stay under section 362 of the Bankruptcy Code (the aggregate amount of such diminution, which shall expressly include, among other things, the aggregate amount of the Cash Collateral used by the Debtors pursuant to this Order (the "<u>Adequate Protection Obligations</u>"),[8] for which each of the Debtors shall be jointly and severally obligated).  The Term Lender Steering Group contends that the Debtors have not offered, and cannot offer, adequate protection for their use of Cash Collateral, and the Debtors dispute such contention.  The Term Lender Steering Group has, however, consented to the Debtors' use of Cash Collateral, subject to and expressly conditioned upon the granting of the following protections.

**(a)     <u>Adequate Protection Liens</u>.  To secure the Adequate Protection Obligations, the Prepetition Secured Parties are hereby granted, effective and perfected as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements, a valid and perfected replacement security interest in, and lien on the Collateral (the "<u>Adequate Protection Liens</u>"), which Adequate Protection Liens shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to any liens (as that term is defined in section 101(37) of the Bankruptcy Code) ("<u>Liens</u>") on the Collateral including, without limitation, any statutory Liens that may exist under Nevada law, with respect to the use of Cash Collateral**

---

[8] The capitalized terms "Adequate Protection Obligations" and "Adequate Protection Liens" are used in this Order for convenience only, and those terms or any other reference to adequate protection in this Order do not constitute a finding or otherwise imply that the protections and liens granted to the Prepetition Secured Parties constitute adequate protection under sections 361, 362, 363, or 364 of the Bankruptcy Code.

authorized by this Order.  In addition, U.S. Bank National Association, in its capacity as successor indenture trustee under the Second Mortgage Indenture (the "Trustee") is hereby granted, effective and perfected as of the Petition Date, and without the necessity of the execution by Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements, a valid and perfected replacement security interest in and lien on the Collateral  (other than the Bank Proceeds Account and any DIP Account) that is subordinated  in all respects to the Liens securing the Prepetition Term Obligations and the Adequate Protection Obligations and which is subject in all respects to the rights of the Prepetition Agent and Term Lenders  (including the subordination by the Trustee and the Second Mortgage Holders) under the Intercreditor Agreement (Project Lenders), dated June 6, 2007 between the Trustee and the Prepetition Agent.  For purposes of this Order, the term "Collateral" shall include, without limitation, all prepetition and postpetition assets and properties (tangible, intangible, real, personal, and mixed) of each of the Debtors of any kind or nature, whether now existing or newly acquired or arising, and wherever located, including, without limitation, all Collateral (as such term is defined in the Prepetition Loan Documents), all accounts, accounts receivable, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licenses therefor, intellectual property, general intangibles, payment intangibles, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, vehicles, real property (including all facilities), fixtures, leases, all of the issued and outstanding Capital Stock entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and all of the issued and outstanding Capital Stock not entitled to vote (within the meaning of Treas. Reg. Section 1.956¬2(c)(2)) of each Subsidiary of the Company, all of the Capital Stock of all other Persons that are not Subsidiaries directly owned by the Company, money, investment property, deposit accounts, securities accounts, books and

records, all commercial tort claims and all other causes of action (including any judgment and recovery upon such judgment obtained by the Debtors on account of such commercial tort claims and other causes of action) excluding the proceeds of all Avoidance Actions (as hereafter defined), all Cash Collateral (as defined in this Interim Order), and all cash and non-cash proceeds, rents, products, substitutions, accessions and profits of all of the foregoing.

(b)    **Superpriority Claim**.    The Prepetition Secured Parties are hereby granted in each of the Debtors' Chapter 11 Cases an allowed, superpriority administrative expense claim (the "Superpriority Claim") under section 507(b) of the Bankruptcy Code with respect to the Adequate Protection Obligations under subparagraphs (a) and (c) of this Paragraph 6.  The Superpriority Claim shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code, or otherwise (whether incurred in any of the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto), which Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including the proceeds of any Avoidance Actions).

(c)    **Payments**.    The Debtors shall pay on an ongoing basis (i) to the Prepetition Agent (or in the absence of any Prepetition Agent, the Prepetition Lenders), the current cash payment of interest at the non-default rates and at the times provided for in the Prepetition Credit Agreement on the Prepetition Term Obligations (whether or not such interest payments are included in the Budget), and (ii) from time to time after the Petition Date, the current cash payment of documented fees and expenses incurred after the Petition Date of (1) the Prepetition

17

Agent, (2) Hennigan, Bennett & Dorman LLP ("HBD") and Akerman Senterfitt ("Akerman") as counsel to the members of the Term Lender Steering Group and to other Prepetition Term Lenders) (3) Jefferies & Company ("Jefferies") pursuant to the terms of its engagement letter, with an effective date of April 23, 2009, between Jefferies, the Company and HBD, as counsel to the Term Lender Steering Group; all of the amounts to be paid without further motion, fee application, or order of the Court, provided, that any such payments authorized under this Paragraph 6(c) shall only be made from any retainers or other funds transferred to such professionals prior to the Petition Date, whether or not included in the Budget), further provided, that the Prepetition Agent, HBD, Akerman or Jefferies shall provide such documentation to the Debtors, the OUST, and the Committee, each of whom shall be entitled to file, within twenty (20) days of receipt of such documentation, an objection to any payments that such party contends were not reasonable in amount, with any such timely objection to be determined by this Court, and further provided, that any objections not filed with the Court as provided hereunder are forever waived.  In the event it is subsequently determined by this Court that the Prepetition Secured Parties are undersecured, then any payments authorized and made under this Paragraph 6(c) (the "Adequate Protection Payments") shall be applied to reduce the outstanding principal balance owed to the Prepetition Secured Parties.

7.      The Debtors shall prepare and furnish to the Prepetition Agent the Term Lender Steering Group, the Committee, the Consenting Lienholders, and Aurelius, in form and substance reasonably satisfactory to the Prepetition Agent and Term Lender Steering Group, a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Budget, on a line-by-line basis showing any variance to the proposed corresponding line item of the Budget (the "Budget Reconciliation"). Such Budget Reconciliation shall be provided to the Term Lender

Steering Group so as actually to be received within three (3) Business Days following the end of each prior week.

8.      The Debtors shall provide the following information to the Prepetition Agent, Term Lender Steering Group, the Committee, the Consenting Lienholders and Aurelius:  (i)  within four (4) business days after the end of each week, an updated rolling 4-week forecast of cash receipts and disbursements for the Debtors for the next succeeding 4 weeks, substantially in the form of the Budget, provided, that if requested by the Term Lender Steering Group, the Debtors shall, as soon as reasonably practicable, provide an updated rolling 13-week forecast; (ii) within four (4) business days after the end of each week, a certificate signed by the Company's chief financial officer (the "CFO") certifying that no Termination Event has occurred; (iii) as and when the same are prepared, any updated construction budget, cost-to-complete projection, or stabilization budget prepared by the Debtors, including any projected monthly balance sheet, income statement and statement of cash flows for the period from June 1, 2009 up to and including December 31, 2009 (the "Development Plan"); (iv) by no later than the end of each calendar month, a summary of the preceding month's operating results, including, without limitation, a schedule of expenditures; and (v) a monthly report, dated as of the fifteenth (15th) of each calendar month, and provided on the first (1st) business day consistent with the reporting obligations set forth in clause (i) above, setting forth all trade accounts payable exceeding $50,000 incurred since the Petition Date.

9.      Upon reasonable notice and at such reasonable times during normal business hours and otherwise as may reasonably be requested, the Debtors shall permit any representatives designated by the Term Lender Steering Group to visit and inspect any of their properties, to inspect, copy, and take extracts from their construction, financial, accounting records, and to discuss their affairs, finances, and accounts with their officers, financial advisors, and independent public accountants.  Such inspection rights shall include access by the Term Lender Steering Group and their representatives

19

to:  1) the Project site and any off-site storage locations; 2) the personnel of the Debtors and, to the extent the Debtors can make them available, their contractors, subcontractors, vendors and suppliers; and 3) all records and files of the Debtors pertaining to the Collateral, including, without limitation, any non-privileged documents relating to the construction of the Project ("Construction Documents") such as (for illustration purposes) any draw requests with supporting information, payment applications, contract drawings (including any revised drawings), project specifications, cost reports, project correspondence, logs (*i.e.*, for RFI, change orders, ASI and sketches, and construction changes), schedules *(i.e.*, baseline, monthly updates, and recovery schedules), project meeting minutes and action item lists, contracts related to the Project (including with developer, contractor, subcontractors, vendors, equipment suppliers, design and FF&E consultants), purchase orders, liens and claims filed against the Project.  In addition to the above, the Term Lender Steering Group shall receive, when and as generated or received by the Debtors, any drawings or other Construction Documents that are generated using the Cash Collateral authorized to be paid under the Budget.

10.    Nothing in this Order shall be deemed to constitute a finding or an admission of any party that, in the absence of the consent of the Term Lender Steering Group, the Adequate Protection Obligations, Adequate Protection Payments, and Adequate Protection Liens as provided for under this Order would constitute adequate protection of the Prepetition Agent or the Prepetition Lenders so as to authorize the use of Cash Collateral without their consent.  Notwithstanding anything herein to the contrary, this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Agent, the Term Lender Steering Group or any Prepetition Lender to seek additional protection or adequate protection at any time, including prior to a Termination Event, and for the Debtors, the Committee, the Consenting Lienholders, or Aurelius to oppose any such request.

11.    (a)    This Order and the Budget shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms.  No obligation, payment, transfer, or grant of security under this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

(b)    The failure or delay by the Prepetition Agent or any Prepetition Lender to exercise its rights and remedies under this Order shall not constitute a waiver of any of the rights of the Prepetition Agent or any such Prepetition Lender hereunder or otherwise, and any single or partial exercise of such rights and remedies against any of the Debtors or the Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other Debtors and/or Collateral.

(c)    Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (i) any of the rights of any of the Prepetition Lenders or the Prepetition Agent under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the Prepetition Secured Parties to (A) request termination or modification of the automatic stay of section 362 of the Bankruptcy Code, (B) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers), or (C) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (ii) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Agent or any Prepetition Lender, (iii) the rights of the Debtors to oppose any requests made in accordance with clauses (i)(A), (B) and (C) above, (iv) upon a Termination Event, the right of the Debtors to request approval of this Court for use of Cash Collateral, subject to the right of the Prepetition Secured Parties to object and the

need for the Debtors to obtain Court approval (and meet all applicable legal standards) prior to any further use of Cash Collateral after the Termination Event, and (v) any right of any party in interest to object to the terms and conditions of any subsequent request by the Debtors for use of cash collateral, including without limitation any request to condition such future use on the granting of an Adequate Protection Lien with priority under section 364(d) of the Bankruptcy Code.

(d)     **The provisions of this Order shall be binding upon and inure to the benefit of each of the Prepetition Agent, the Prepetition Lenders, and the Debtors and their respective successors and assigns (including any estate representative, chapter 7 trustee, or other trustee or fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).**

(e)     The Adequate Protection Liens shall not be (i) subject or junior to any Lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, or (ii) subordinated to or made *pari passu* with any other Lien, whether under section 364(d) of the Bankruptcy Code or otherwise. No Lien having a priority superior to or *pari passu* with those granted by this Order with respect to the Adequate Protection Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in this Order of the Adequate Protection Obligations.  No claim having a priority superior to or *pari passu* with the Superpriority Claims granted by this Order with respect to the Adequate Protection Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction in the manner provided in this Order of the Adequate Protection Obligations.

12.     **The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Prepetition Agent and the Prepetition Lenders to exercise, upon the occurrence and during the**

continuation of a Termination Event, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order of or application to this Court:  (a) terminate the Debtors' use of Cash Collateral; (b) declare all Adequate Protection Obligations to be immediately due and payable; and (c) take any other actions or exercise any other rights or remedies permitted under this Order or applicable law to effect the repayment and satisfaction of the Adequate Protection Obligations; provided, however, that any Prepetition Lender or Prepetition Agent, as applicable, shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail, or otherwise) to the OUST, counsel to the Debtors, counsel to the Prepetition Agent, counsel to the Term Lender Steering Group, counsel to the Consenting Lienholders, counsel to Aurelius, and counsel to any Committee prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses (a) or (b) above (to the extent they might be deemed remedies in respect of the Collateral) and other than with respect to freezing any deposit accounts or securities accounts, provided, that such a freeze shall be as only to items drawn on such deposit accounts from and after the giving of such notice).  The rights and remedies of the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have.

13.    If the Prepetition Agent or the Prepetition Lenders shall at any time exercise any of their respective rights and remedies hereunder or under applicable law in order to effect payment or satisfaction of the Adequate Protection Obligations or to receive any amounts or remittances due hereunder, including, without limitation, foreclosing upon and selling all or a portion of the Collateral, the Prepetition Agent and the Prepetition Lenders shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Collateral as the Prepetition Agent or the Prepetition Lenders

**shall elect in their sole discretion, subject to the provision by the applicable parties of the written notice as provided in the preceding paragraph. No holder of a Lien shall be entitled to object on the basis of the existence of any such Lien to the exercise by the Prepetition Agent or the Prepetition Lenders of their respective rights and remedies under this Order or other applicable law to effect satisfaction of the Adequate Protection Obligations or to receive any amounts or remittances due hereunder, provided that the Prepetition Agent or the Prepetition Lenders, as applicable, have complied with applicable law. Subject to the rights set forth in Paragraph 19 hereof, the Prepetition Agent and the Prepetition Lenders shall be entitled to apply the payments or proceeds of the Collateral in accordance with the provisions of this Order, and in no event shall any of such parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.**

14.     (a)     On the date of any sale, lease, transfer, license, or other disposition of property outside the ordinary course of business of any Debtor that constitutes Collateral, the Debtors shall escrow and not be permitted to use any of the gross proceeds resulting therefrom, subject to (i) subparagraph (c) of this Paragraph 14, or (ii) the entry of an order of the Bankruptcy Court authorizing such use or payment to the Prepetition Agent (or, in the absence of any Prepetition Agent, directly to the Prepetition Lenders). Upon such disposition of property, any Liens on the Collateral shall automatically attach to the gross proceeds of such Collateral and constitute valid, enforceable and perfected Liens, without the need for further order of this Court or any act to effect perfection.

(b)     In the event of any casualty, condemnation, or similar event with respect to property that constitutes Collateral, the Debtors are authorized and directed to pay to the Prepetition Agent, for the benefit of the Prepetition Agent and the Prepetition Lenders (or, in the absence of any Prepetition Agent, directly to the Prepetition Lenders),

100% of any insurance proceeds, condemnation award, or similar payment within two (2) business days of receipt thereof.

(c)    Any proceeds and payments received by the Debtors pursuant to this Paragraph 14 shall be delivered to the Prepetition Agent (or in the absence of any Prepetition Agent, directly to the Prepetition Lenders) to be applied to the Adequate Protection Obligations without any need for further order of this Court, and in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any such collateral or otherwise.  Any proceeds or payments in excess of the Adequate Protection Obligations shall be held in escrow by the Debtors absent further order of this Court.

15.    **Pursuant to this Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection, and all liens on any deposit accounts or securities accounts shall, pursuant to this Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the New York Uniform Commercial Code as in effect as of the date hereof in favor of the Prepetition Secured Parties)**; provided, however, that the Prepetition Agent and the Prepetition Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens granted to them hereunder. The Debtors shall execute and deliver to the Prepetition Agent all such agreements, financing statements, instruments, and other documents as the Prepetition Agent may reasonably request to evidence, confirm, validate, or perfect the Liens granted pursuant hereto (other than mortgages).  If

the Term Lender Steering Group or Prepetition Agent shall, in their sole discretion, choose to require the execution of and/or file (as applicable) such financing statements, control agreements, notices of Liens, and other similar instruments and documents, all such financing statements, control agreements, notices of Liens, or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded at the time and on the date of the Petition Date. A certified copy of this Order may, in the discretion of the Term Lender Steering Group or the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments. Each and every federal, state, and local government agency or department may accept the entry by this Court of this Order as evidence of the validity, enforceability, and perfection on the Petition Date of the Adequate Protection Liens granted herein to or for the benefit of the Prepetition Lenders and the Prepetition Agent.

16.      Based on the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the use of Cash Collateral contemplated by this Order, in the event that any or all of the provisions of this Order, are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacation shall affect the validity, enforceability, or priority of any Adequate Protection Lien or claim authorized or created hereby or thereby or any Adequate Protection Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment, or vacation, any Adequate Protection Obligations incurred and any claim or Adequate Protection Lien granted to the Prepetition Secured Parties hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges, and benefits, including the Liens and priorities granted herein

and therein, with respect to any such Adequate Protection Obligations and Adequate Protection Liens.

17.    The Debtors are authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages, and financing statements).

18.    (a)    The provisions of this Order, including the obligations of the Debtors in respect of the Adequate Protection Obligations, and the claims and Adequate Protection Liens granted to or for the benefit of the Prepetition Secured Parties pursuant to this Order, and any actions taken pursuant to this Order shall not be discharged by and shall survive the entry of an order (i) confirming a chapter 11 plan in any of the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such discharge) or (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.  Under no circumstances shall any chapter 11 plan, including, without limitation, the Plan, in any of the Chapter 11 Cases be confirmed or become effective unless such chapter 11 plan provides that the Adequate Protection Obligations shall be paid in full in cash and satisfied in the manner provided for in this Order on or before the effective date of such chapter 11 plan.

(b)    Until all of the Adequate Protection Obligations shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Order, no Debtor shall seek an order dismissing any of the Chapter 11 Cases. If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and Liens granted pursuant to this Order and any subsequent order to or for the benefit of the Prepetition Agent and/or the Prepetition Lenders shall continue in full force and effect and shall maintain their perfection and priorities as provided in this Order and subsequent orders until all obligations in respect

thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in this Order (and that such claims and Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and Liens.

19.      (a)      **With a full reservation and no release, waiver, or discharge of any rights of any Committee, or other party in interest as provided in the following subparagraph, each Debtor and each of its affiliates in its individual capacity hereby forever releases, waives, and discharges the Prepetition Agent and each Prepetition Term Lender (whether in its prepetition or postpetition capacity), together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "Released Parties"), from any and all claims and/or defenses as to the extent, validity, priority, or perfection of the Prepetition Liens or the Prepetition Term Obligations, or any actions, claims, or defenses under chapter 5 of the Bankruptcy Code ("Avoidance Actions") (all such claims, defenses, and other actions described in this Paragraph 19 are collectively defined as the "Claims and Defenses").   Notwithstanding the foregoing, the Prepetition Term Lenders and Turnberry West Construction, Inc. ("Turnberry") but not the Debtors, have agreed that the releases, waivers and discharges of the Prepetition Agent and each Prepetition Term Lender contained in this Paragraph 19(a) shall not apply to any Claims and Defenses that have been asserted in a complaint filed against the Prepetition Agent or Prepetition Term Lenders by Turnberry in this Court on July 14, 2009.  Nothing contained in this subparagraph shall affect the rights of any Committee or any other party in interest to undertake any action with respect to, including, without limitation, any investigation or prosecution of, Claims and Defenses that is permitted in subparagraph (b) of this Paragraph 19.**

(b)     Notwithstanding anything contained herein to the contrary, the extent, validity, priority, perfection, and enforceability of the Prepetition Term Obligations, the Prepetition Liens, and all acknowledgments, admissions, and confirmations of the Debtors and their affiliates above, are for all purposes subject to the rights of any party in interest (including any trustee elected or appointed in these Chapter 11 Cases), other than any Debtor or any of its respective affiliates (except as provided in subparagraph (a) of this paragraph 19), to file a complaint pursuant to Bankruptcy Rule 7001 seeking to undertake any action with respect to Claims and Defenses; provided, however, that any such complaint must be filed in this Court on or before October 15, 2009 (or, for the Committee, November 15, 2009 which is 150 days after appointment of the Committee),  or any subsequent date that may be agreed to in writing by the Term Lender Steering Group with respect to the time to file any such complaint relating to the Prepetition Term Obligations and/or the Prepetition Liens, and provided further, that any party in interest which asserts a statutory lien with priority over the Prepetition Liens may, in lieu of filing a complaint, file, on or before October 13, 2009 (which is the general bar date for the filing of proofs of claim), a proof of claim setting forth the amount of the statutory lien which such party in interest claims has priority over the Prepetition Liens.  If no such complaint or proof of claim is timely filed (or such timely filed complaint or proof of claim does not result in a final and non-appealable order of this Court that is inconsistent with subparagraph (a) of this Paragraph 19), then any and all Claims and Defenses against any of the Released Parties shall be, without further notice to or order of the Court, deemed to have been forever relinquished, released, and waived as to such Committee and other person or entity, and if such complaint or proof of claim is timely filed on or before such date, any and all Claims and Defenses against any of the Released Parties shall be deemed, immediately and without further action, to have been forever relinquished, released, and waived as to such Committee and other

person or entity, except with respect to Claims and Defenses that are expressly asserted in such complaint or proof of claim.

(c)    Nothing in this Order shall confer standing upon the Committee or any other person or entity to bring, assert, commence, continue, prosecute, or litigate the Claims and Defenses against any Released Party.

(d)    For avoidance of doubt, to the extent Paragraph 19 and Paragraph 20 are inconsistent in any respect, Paragraph 20 shall govern.

20.    Notwithstanding anything to the contrary, nothing in Paragraph 19 or in any other provision of this Order shall constitute a release, relinquishment, waiver of, or otherwise impair or affect in any manner:  a) any claims, rights and remedies, including Claims and Defenses, that are held or may be asserted by any Prepetition Term Lender against any of the Prepetition Secured Parties (including claims, rights and remedies that may be asserted against any Prepetition Revolving Lender (including rights against a Prepetition Revolving Lender that may affect its interest in the Prepetition Term Loan) or against the Prepetition Agent) (the "Intra-Lender Rights"); and b) any claims, rights and remedies, including Claims and Defenses, held by the Debtors and their affiliates against any Prepetition Revolving Lender or Prepetition Agent.  For greater certainty, all such claims, rights and remedies of the Prepetition Term Lenders and the Debtors and their affiliates, including Intra-Lender Rights and Claims and Defenses, are expressly preserved.

21.    The provisions of this Order, the Superpriority Claim, the Adequate Protection Obligations, the Adequate Protection Liens, the Adequate Protection Payments, and any and all rights, remedies, privileges, and benefits in favor of the Prepetition Secured Parties provided or acknowledged in this Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Order pursuant to Bankruptcy Rules 6004(h) and 7062.

# # #

<u>Submitted by:</u>

Scott L. Baena (Florida Bar No. 186445)
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

<u>Copies to:</u>
Scott L. Baena
*(Attorney Baena shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service.)*