

**ORDERED in the Southern District of Florida on November 20, 2009.**

_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: FONTAINEBLEAU LAS VEGAS HOLDINGS, LLC, ET AL.[1], <br><br> Debtors. | Chapter 11 <br><br> Case No. 09-21481-BKC-AJC <br><br> (Jointly Administered) |

**ORDER APPROVING SUCCESSOR ADMINISTRATIVE
AGENT AGREEMENT AND SUCCESSOR DISBURSEMENT AGENT AGREEMENT**

Upon the Motion (the "Motion", D.E. #984), dated November 13, 2009, of the above captioned debtors and debtors-in-possession (the "Debtors") for entry of an order approving (i) the Successor Administrative Agent Agreement (the "Successor AA Agreement") among Bank of America, N.A. ("BofA"), as predecessor Administrative Agent (the "Predecessor Administrative Agent"), Wilmington Trust FSB ("Wilmington"), as successor Administrative Agent (the "Successor Administrative Agent"), Fontainebleau Las Vegas, LLC ("FLV"), one of the above-captioned Debtors, and the various lenders and consenting parties signatory thereto

---

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822]. The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

(a) appointing Wilmington as Successor Administrative Agent under that certain Credit Agreement, dated as of June 6, 2007 (as amended, waived or otherwise modified, the "Credit Agreement"), among FLV, as Borrower, the Predecessor Administrative Agent, BofA as Issuing Lender and Swing Line Lender (each as defined in the Credit Agreement), the other lenders parties thereto and the other arrangers, managers and agents parties thereto, and (b) amending and modifying the Credit Agreement and other Loan Documents (as defined in the Credit Agreement), and (ii) the Successor Disbursement Agent Agreement (the "Successor DA Agreement") among BofA, as the Predecessor Disbursement Agent (the "Predecessor Disbursement Agent" and, together with BofA as Predecessor Administrative Agent, the "Predecessor Agent"), Wilmington, as successor Disbursement Agent (the "Successor Disbursement Agent" and, together with Wilmington as Successor Administrative Agent, the "Successor Agent"), FLV, Fontainebleau Las Vegas Holdings, LLC ("Holdings"), one of the above-captioned Debtors, Fontainebleau Las Vegas Capital Corp. ("Capital"), also one of the above-captioned Debtors, Fontainebleau Las Vegas Retail, LLC ("Retail"), the Predecessor Administrative Agent and U.S. Bank National Association, as successor to Wells Fargo Bank, N.A., as trustee (the "Trustee"), (a) appointing Wilmington as Successor Disbursement Agent under that certain Disbursement Agreement, dated as of June 6, 2007 (as amended, waived and otherwise modified, the "Disbursement Agreement"), among Holdings, Capital, Retail, FLV, BofA, as bank agent, the Trustee, Lehman Brothers Holdings Inc., as retail agent (the "Retail Agent") and the Predecessor Disbursement Agent, and (b) amending and modifying the Disbursement Agreement and the Related Documents;[2] and the Court having considered the Motion and the exhibits attached thereto, including, without limitation, each of the Successor AA

---

[2] Capitalized terms used herein but not otherwise defined shall have the meaning given to them in the Motion or the Agreements.

Agreement and the Successor DA Agreement (each an "<u>Agreement</u>" and collectively, the "<u>Agreements</u>"), the objections (the "<u>Objections</u>"), if any, filed to the Motion, and all other papers filed with the Court relating thereto, and due and proper notice of the Motion having been given as set forth in the Motion, and a hearing to consider approval of the Motion having been held on November 18, 2009 at 3:30 p.m. (the "<u>Hearing</u>"); and the Objections, if any, having been overruled for the reasons set forth at the Hearing; and upon all the pleadings filed with the Court and all of the proceedings held before the Court,

        THE COURT FINDS:

        A.    Consideration of this Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b). This Court has jurisdiction over the Chapter 11 cases of the Debtors, this proceeding, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 2002.

        B.    Notice of the relief sought by the Motion was given on November 13, 2009, and notice of the Hearing was given on November 16, 2009 via United States mail, electronic mail, and/or facsimile transmission to the following parties in interest: (a) the United States Trustee for the Southern District of Florida, (b) counsel for the official committee of unsecured creditors, (c) counsel to the Predecessor Administrative Agent and Predecessor Disbursement Agent, (d) counsel to the steering group for certain Term Lenders (as defined in the Credit Agreement) under the Credit Agreement; (e) the Retail Agent; (f) the Term Lenders and Revolving Lenders (as defined in the Credit Agreement) noted in the certificate of service associated with the Motion, (g) counsel to the Successor Administrative Agent and Successor

Disbursement Agent; (h) counsel to the Trustee for the Junior Mortgage Notes (as defined in the Disbursement Agreement); and (i) all persons who have filed a notice of appearance and request for notices under Rule 2002 of the Federal Rules of Bankruptcy Procedure.

        C.      A reasonable opportunity to object or to be heard regarding the requested relief has been afforded to all interested persons and entities as outlined in the Motion.

        D.      The Debtors have demonstrated a sufficient business justification and the existence of compelling circumstances requiring FLV to enter into each of the Agreements. Such action is an appropriate exercise of the Debtors' reasonable business judgment and is in the best interests of the Debtors, their respective creditors, and their estates.

        E.      The Debtors have full power and authority to execute each of the Agreements and all other documents contemplated thereby. No consents or approvals other than those provided for in the Agreements are required and such consents or approvals have been obtained or, upon entry of this Order, shall be deemed to have been provided.

        F.      The terms of each of the Agreements are fair and reasonable and the transactions contemplated therein are in the best interests of the Debtors' estates.

        G.      The amendments to the Credit Agreement and the Disbursement Agreement and related documents as set forth in the Agreements are necessary in light of the circumstances of these chapter 11 cases, including, but not limited to, (i) the dispute between the Predecessor Administrative Agent, the Term Lenders and the Revolving Lenders described in the Agreements and the Motion, (ii) the delivery by the Predecessor Administrative Agent and the Predecessor Disbursement Agent of a notice of resignation, (iii) the desire of the Debtors, the Lenders and other parties in interest to appoint a Successor Administrative Agent and a Successor Disbursement Agent to administer the Loans and to perform certain other obligations

under the Credit Agreement, the Disbursement Agreement and the other Loan Documents for the benefit of the Debtors, their estates, the Lenders and other parties in interest, and (iv) to ensure that the Successor Administrative Agent and Successor Disbursement Agent can adequately perform their duties for the benefit of the Debtors, their estates, the Lenders and other parties in interest.

H.     The Debtors, certain Term Lenders and certain Revolving Lenders each agree, for different reasons, that the calculation of "Required Lenders," as such term is defined under the Credit Agreement, does not include any Revolving Commitments that are not Revolving Extensions of Credit.

I.     All findings of fact and conclusions of law announced by the Court at the Hearing are incorporated herein.

NOW, THEREFORE, IT IS ORDERED:

1.     The Motion is granted.  Any Objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.  This Order shall constitute findings of fact and conclusions of law, and shall become effective immediately upon its entry.

2.     Notice of the Motion and the Hearing was fair and adequate under the circumstances and complied in all respects with Bankruptcy Code Section 102(1) and Bankruptcy Rule 2002.

3.     Each of the Agreements and all of the terms and conditions thereof are hereby approved.

4.     The Successor AA Agreement constitutes a valid, binding, and effective assignment to the Successor Administrative Agent of the Predecessor Administrative Agent's

rights, interests, powers, privileges and duties under the Credit Agreement, the Disbursement Agreement, and the other Loan Documents.

5. The Successor DA Agreement constitutes a valid, binding and effective assignment to the Successor Disbursement Agent of the Predecessor Disbursement Agent's rights, interests, powers, privileges and duties under the Disbursement Agreement and the Related Documents.

6. Effective as of the Effective Date in the Agreements, Wilmington shall be the Successor Administrative Agent and the Successor Disbursement Agent.

7. The amendments, waivers and modifications to the terms of the Credit Agreement, the Disbursement Agreement, and the other Loan Documents as set forth in the Successor AA Agreement are valid, binding and enforceable.

8. The amendments, waivers and modifications to the terms of the Disbursement Agreement and the Related Documents set forth in the Successor DA Agreement are valid, binding and enforceable.

9. The effectiveness, validity and enforceability of the appointments, amendments and other terms of each of the Agreements shall not be affected by (i) the exclusion of any portion of the Revolving Commitments (as defined in the Credit Agreement) from the calculation of the Required Lenders (as defined in the Credit Agreement) necessary to consent to the assignments and amendments contemplated by the Successor AA Agreement, (ii) the failure of the Retail Agent to execute such Agreements, or (iii) the Disputed Matters (as defined in the Agreements).

10. FLV and the other parties to the Agreements and all of their affiliates, officers, directors, employees and agents are authorized and directed to immediately take such

actions as are necessary to consummate, implement, effectuate and perform the provisions of the Agreements and this Order and the transactions approved hereby, all without further order of the Court.

        11.    Pursuant to this Order, effective as of the Effective Date of the Agreements, the Predecessor Agent shall be deemed to have validly assigned to the Successor Agent all of its liens, rights and interests, if any, in (i) the Intellectual Property Security Agreement, (ii) the Deed of Trust, (iii) the Retail Intercreditor Agreement, (iv) the insurance policies and reinsurance agreements listed on Schedule 1 to the Successor AA Agreement, (v) the security interests in the Collateral on behalf of the Secured Parties, (vi) the Payment and Performance Bonds listed on Schedule 1 to the Successor AA Agreement, (vii) the Guarantees, (viii) the Guaranty and Collateral Agreement, (ix) the Project Lenders Intercreditor Agreement, and any other agreements and Collateral as to which the Predecessor Agent maintains, in such capacity, any lien, right or interest under the Loan Documents.  Notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code, or any relevant law or regulation of any jurisdiction, no further notice, filing, possession, control or other act shall be required to effect such assignment.  Any deposit accounts or securities accounts shall, pursuant to this Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104, and 9-106 of the New York Uniform Commercial Code as in effect as of the date hereof in favor of the Successor Agent on behalf of the Secured Parties to the extent of the interest of the Predecessor Agent therein.  Notwithstanding the above, the Successor Agent is hereby authorized, but not required, to file or record such assignments, financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action to evidence, confirm or validate the

assignments hereunder.  The Debtors and the Predecessor Agent shall execute and deliver to the Successor Agent all such agreements, financing statements, instruments, and other documents or take any other action as the Successor Agent may reasonably request to evidence, confirm, or validate, the assignments hereunder.  If the Successor Administrative Agent, in its sole discretion, chooses to require the execution of and/or record (as applicable) such assignments, financing statements, and similar documents pursuant to the Successor AA Agreement, all such assignments, financing statements, and similar documents shall be deemed to have been executed, filed, and/or recorded on the Effective Date.  A certified copy of this Order may, in the discretion of the Successor Agent, be recorded in addition to or in lieu of the assignments or similar instruments.  Each and every federal, state, and local government agency or department and other persons and all filing agents, title agents, title companies, recorders of mortgages, recorder of deeds and other similar persons are hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Successor AA Agreement, the Successor DA Agreement, and this Order, including the entry by this Court of the Order, as evidence of the validity and enforceability on the Effective Date of the assignments herein to or for the benefit of the Successor Administrative Agent and the Secured Parties (as defined in the Credit Agreement).

12. Pursuant to this Order, the Successor AA Agreement, and the Successor DA Agreement, if, and to the extent that the Predecessor Agent has a perfected security interest in the Collateral (as defined in the Credit Agreement), the security interests of the Successor Agent in the Collateral on behalf of the Secured Parties are, and are deemed to be, valid, enforceable, and perfected liens, having the same priority as the liens and security interests of the Predecessor Agent, effective as of the Effective Date, and, notwithstanding any provisions of any

agreement, instrument, document, the Uniform Commercial Code, or any other relevant law or regulation of any jurisdiction, no further notice, filing, possession, control, or other act shall be required to effect such perfection in favor of the Successor Agent on behalf of the Secured Parties.

13. Notwithstanding any other order to the contrary, (a) each of the Successor Administrative Agent and the Successor Disbursement Agent is entitled to the payment by FLV of all its fees, expenses, costs and indemnification amounts payable under or in connection with the Successor AA Agreement, the Credit Agreement, the Loan Documents, the Successor DA Agreement, the Disbursement Agreement and the Related Documents, including without limitation the reasonable costs, fees and expenses of its counsel in connection with the negotiation, drafting, execution, and implementation of the Successor AA Agreement or the Successor DA Agreement, in each case, regardless of when incurred, including without limitation all such fees, expenses, costs and indemnification amounts incurred after the entry of this Order and the appointment of Wilmington as successor Administrative Agent and as successor Disbursement Agent, and (b) the Predecessor Agent is entitled to the payment by FLV of its reasonable fees, expenses and costs incurred in performing its obligations under Section 6 of the Successor AA Agreement and Section 5 of the Successor DA Agreement, provided, that any and all payments to the Successor Administrative Agent and the Successor Disbursement Agent, or the Predecessor Agent made hereunder shall be made from cash collateral or other collateral securing the Loans (as such term is used and defined in the Credit Agreement) under the Credit Agreement. For the avoidance of doubt, upon the entry of this Order, the Debtors are deemed to have consented to allow Wilmington to withdraw funds from any account pledged to Wilmington, as successor Administrative Agent or successor Disbursement Agent in order to

make any payments authorized by this Order; <u>provided</u>, however, nothing herein is intended, or shall be deemed, to give Wilmington any right to withdraw funds from any Retail Account or to use any other collateral that secures the Retail Facility (each of the foregoing terms as defined in the Master Disbursement Agreement) for any payments made pursuant to the previous sentence in this paragraph 13.  To the extent such payments are not made from cash collateral or other Collateral (as defined in the Credit Agreement), the Successor Administrative Agent and the Successor Disbursement Agent reserve the right to seek allowance of such fees as administrative expenses under 11 U.S.C. § 503(b) (but for the avoidance of doubt, no such party shall have the right to seek to compel payment of such fees from the Debtors from the proceeds of any debtor-in-possession financing), and all parties in interest (including the Debtors) reserve the right to object to allowance of such fees as administrative expenses.  To the extent such payments are not made from cash collateral or other collateral, and not allowed as administrative expenses, any such fees will constitute allowed unsecured claims.

        14.    All collections and proceeds (as defined in the New York Uniform Commercial Code) received in respect of the Collateral (as defined in the Credit Agreement), and all other payments to be applied to the payment of any Obligations (as defined in the Credit Agreement), shall be first applied to the unpaid fees and expenses of the Successor Administrative Agent and the Successor Disbursement Agent on a *pari passu* basis, including without limitation amounts required to be paid to the Successor Administration Agent pursuant to Section 10.5(c) of the Credit Agreement (collectively the "<u>Expenses</u>") and subject to applicable bankruptcy law, the Successor Administration Agent and the Successor Disbursement Agent shall at any time, pursuant to paragraph 13 of this Order, be entitled to apply funds on deposit in any account pledged to the Successor Administrative Agent to the Expenses owing to

the Successor Administrative Agent or the Successor Disbursement Agent.  Notwithstanding the foregoing, neither the Successor Administrative Agent nor the Successor Disbursement Agent shall apply collections, proceeds or any funds on deposit, in each case as contemplated by this clause 14, without first providing five (5) Business Days prior written notice of such application to the Debtors.

15. Until the bankruptcy cases of the Debtors are closed or as otherwise directed by this Court, this Court retains exclusive jurisdiction to (a) enforce and implement the terms and provisions of this Order, each of the Agreements, all amendments or modifications thereto, any waivers, releases and consents thereunder, and of each of the instruments executed in connection therewith, (b) resolve any disputes arising under or related to any of the Agreements, and (c) interpret, implement and enforce the provisions of this Order.

16. To the extent that any provision of this Order is inconsistent with the provisions of any Agreement, any prior order, or any pleading with respect to the Motions, the terms of this Order shall control.

17. The terms and provisions of each of the Agreements, together with the terms and provisions of this Order, (a) shall be binding in all respects upon, and shall inure to the benefit of, the Debtors (and each of their respective affiliates, successors and/or assigns), the Debtors' estates and the Debtors' creditors, the other parties thereto, current and former officers, employees, directors, agents, representatives, attorneys, successors and assigns, and any affected third parties and persons or entities asserting a claim against or interest in the Debtors' estates, notwithstanding any subsequent appointment of any trustee for the Debtors under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding in all respects, and (b) shall not be subject to rejection.

18. Each of the Agreements and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the express terms thereof without further order of the Court.

19. The failure specifically to include any particular provisions of any of the Agreements in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that each of the Agreements are hereby authorized and approved in its entirety, as it may be amended or supplemented in accordance with its terms and this Order.

20. Notwithstanding anything to the contrary in this Order or the Agreements, nothing in this Order or the Agreements shall constitute a release, relinquishment, waiver of, or otherwise impair or affect in any manner any claims, rights, remedies, and defenses that are held or may be asserted by the Debtors, any Term Lender, the Revolving Lenders, the Predecessor Agent or the Successor Agent against any other prepetition party to the Credit Agreement, the Disbursement Agreement or any other Loan Document (including claims, rights, remedies, and defenses that may be asserted by the Debtors and/or the Term Lenders against any prepetition Revolving Lender and/or the Predecessor Administrative Agent).

Submitted by:

Scott L. Baena (Florida Bar No. 186445)
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593


Copies to:
Scott L. Baena
*(Attorney Baena shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service.)*

MIAMI 1994687.4 7650831854