

**ORDERED in the Southern District of Florida on November 24, 2009.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FONTAINEBLEAU LAS VEGAS | ) | |
| HOLDINGS, LLC, et al.,[1] | ) | Case No. 09-21481-BKC-AJC |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |

**ORDER, PURSUANT TO SECTIONS 105, 363 AND 365 OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006:**
**(A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY**
**ALL OF THE DEBTORS' ASSETS; (B) AUTHORIZING THE DEBTORS TO PROVIDE**
**CERTAIN BID PROTECTIONS; (C) SCHEDULING A FINAL HEARING APPROVING**
**THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; AND (D)**
**APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

_____

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

This matter coming before the Court on the motion (as modified, amended, or supplemented, the "Motion")[2] (DE# 993) of Fontainebleau Las Vegas Holdings, LLC (the "Company"), Fontainebleau Las Vegas, LLC ("Resort") and Fontainebleau Las Vegas Capital Corp., as Debtors and Debtors-in-Possession (each individually a "Debtor" and collectively the "Debtors", and each such Debtor's case under Chapter 11 of the Bankruptcy Code, a "Case" and collectively the "Cases") seeking, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 6006-1 of the Local Rules for the United States Bankruptcy Court of the Southern District of Florida (the "Local Bankruptcy Rules"), entry of (i) an order (a) approving bidding procedures attached hereto as Exhibit A (the "Bidding Procedures") for the sale of substantially all of the Debtors' assets (collectively, as defined in the Purchase Agreement, but excluding, for the avoidance of doubt, the Excluded Assets as defined in the Purchase Agreement, the "Purchased Assets") to the Purchaser (as defined below) and (b) scheduling a final hearing on the sale of the Purchased Assets (the "Sale Hearing") and approving the form and manner of notice thereof; and (ii) after the Sale Hearing, an order (the "Sale Order") (a) authorizing the sale of the Purchased Assets, free and clear all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests (including leasehold interests), liabilities and contractual commitments of any kind or nature whatsoever, whether arising before or after the date upon which the Debtors filed the Cases (the "Petition Date"), whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the

---

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion and all Exhibits thereto.

effectiveness of the transfer of the Purchased Assets (collectively, "Claims") to the Successful Bidder (as such term is defined in the Bidding Procedures), (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases constituting part of the Purchased Assets and related procedures and (c) granting certain related relief;  and the Court having conducted a hearing on the Motion on November 23, 2009 (the "Bidding Procedures Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; the Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the Bidding Procedures attached hereto as Exhibit A, (iii) the objections (collectively, the "Objections") to the Motion or certain of the relief sought thereunder were filed as follows (A) the Preliminary Objection of U.S. Bank National Association, as Indenture Trustee [Dkt. No. 1033] (the "US Bank Objection"), and (B) the Joint Objection of M&M Lienholders and Contractor Claimants (the "Statutory Lienholders") [Dkt. No. 1023], as joined in by others [Dkt. Nos. 1025 and 1032] (the "Statutory Lienholders Objection"), (iv) the testimony of witnesses at the Bidding Procedures Hearing, (v) the Sale Notice (as defined below) attached hereto as Exhibit B, (vi) the Publication Notice (as defined below) attached hereto as Exhibit C, (vii) the Assignment Notice (as defined below) attached hereto as Exhibit D, and (viii) the arguments of counsel made, and the evidence proffered or adduced, at the Bidding Procedures Hearing; and it appearing that the relief requested in the Motion is reasonable and in the best interests of the Debtors' bankruptcy estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The Debtors have proved good and sufficient reasons for, and the best interests of their estates, creditors, employees, and other parties in interest and stakeholders will be served by, this Court granting certain of the relief requested in the Motion relating to that certain Asset Purchase Agreement, dated as of November 23, 2009 (the "Purchase Agreement"),[3] by and among Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC, and Fontainebleau Las Vegas Retail, LLC, as Sellers (collectively, "Sellers") and Icahn Nevada Gaming Acquisition LLC, as Purchaser ("Purchaser") which, together with certain ancillary agreements, contemplates a set of related transactions (collectively, the "Sale Transaction") for the sale of the Purchased Assets to the Purchaser and, in connection therewith, the approval of: (1) the Bidding Procedures, including the minimum overbid amount of $1,000,000.00; (2) the procedures described below (the "Contract Procedures") for the determination of the amounts necessary to cure defaults under the Designated Agreements (the "Cure Costs") and to address any other disputes in connection with the assumption and assignment of the Designated Agreements pursuant to section 365 of the Bankruptcy Code; (3) the Break-Up Fee (as defined in the Purchase Agreement) and (4) the form, timing and manner of notice of the proposed sale, the Bidding Procedures, the Contract Procedures and the other matters described herein, including the form of notice of the proposed sale attached hereto as Exhibit B (the "Sale Notice"), the form of publication notice of the sale

[3] A copy of the Purchase Agreement, without its voluminous exhibits and schedules, is attached as Exhibit A to the Motion.

4

attached hereto as <u>Exhibit C</u> (the "<u>Publication Notice</u>"), and the form of notice of the proposed assumption and assignment of the Designated Agreements attached hereto as <u>Exhibit D</u> (the "<u>Assignment Notice</u>").

C.      Under the Purchase Agreement, Purchaser is entitled to a Break-Up Fee in the circumstances described in Section 8.3 of the Purchase Agreement. Other than the payment of the Break-Up Fee and repayment in cash in full of all amounts owing under the DIP Facility (as defined in the Purchase Agreement), Purchaser is not entitled to any other fees, expenses or compensation in the event that a bidder other than the Purchaser is selected as the Successful Bidder in the auction process described below.  Based upon the statements of counsel for the Purchaser, the payment of the Break-Up Fee, as set forth herein, is an essential inducement and condition relating to the Purchaser's entry into, and continuing obligations under, the Purchase Agreement. The Break-Up Fee (1) if triggered, shall be deemed to be an actual and necessary cost and expense of preserving these estates; (2) is reasonable and appropriate in light of the size and nature of the proposed transaction, the necessity to quickly consummate a sale of the Purchased Assets and the considerable efforts and resources that have been and will be expended by the Purchaser in connection therewith; (3) has been negotiated by the parties and their respective advisors at arms' length and in good faith; and (4) is necessary to ensure that the Purchaser and Sellers will continue to pursue the closing of the Sale Transaction (as defined in the Bidding Procedures). Based on the unrefuted testimony of Augusto Sasso, the Break-Up Fee is reasonable, comparable to similar fees authorized in comparable transactions in this District and is commensurate to the benefit conferred by the Purchaser upon the estates.

D.      The Purchaser and the Debtors are relying on their mutual performance of their obligations set forth in the Purchase Agreement, to the extent these obligations relate to the

period prior to the termination of the Purchase Agreement or the Closing Date (as defined in the Purchase Agreement), whichever shall first occur. The Purchaser and the Debtors have entered into the Purchase Agreement expecting all parties to perform these obligations to provide each other with reasonable assurances that they will be in the position to consummate the transactions contemplated by the Purchase Agreement in the event that the Purchaser is selected as the Successful Bidder.

E.      Under the circumstances, and based upon the unrefuted testimony of Messrs. Sasso and Truitt, the Bidding Procedures constitute a reasonable, sufficient, adequate and proper means to provide potential competing bidders with an opportunity to submit and pursue higher and better offers for all or substantially all of the Purchased Assets.

F.      Under the circumstances (including the present condition of the Debtors' property), the Debtors' estates will suffer immediate and irreparable harm if the relief requested in the Motion is not granted on an expedited basis consistent with the provisions set forth herein and in the Purchase Agreement.

G.      The Debtors have proved good and sufficient reasons for, and the best interests of their estates and stakeholders will be served by, this Court scheduling a Sale Hearing to consider granting the remaining relief requested in the Motion, including approval of the Sale Transaction and the transfer of the Purchased Assets to the Purchaser (or another Successful Bidder) free and clear of all Claims, pursuant to section 363(f) of the Bankruptcy Code.

H.      The Sale Notice is reasonably calculated to provide parties in interest with proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures, the Sale Hearing, the structure of the Sale Transaction and related implications on interested parties.

I.    The Assignment Notice is reasonably calculated to provide all counterparties to the Designated Agreements with proper notice of the potential assumption and assignment of their executory contracts or unexpired leases, any Cure Costs relating thereto and the Contract Procedures.

J.    Publication and recordation of the Publication Notice as set forth herein is reasonably calculated to provide all unknown creditors and lien claimants and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures and the Sale Hearing.

K.    The Motion and this Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

L.    The Sale Transaction does not include the transfer of "Personally Identifiable Information" (as defined in section 101(41A) of the Bankruptcy Code) and the appointment of a consumer privacy ombudsman is not required under section 332 of the Bankruptcy Code.

M.    Due, sufficient and adequate notice of the relief granted herein has been given to parties in interest.

**IT IS ORDERED THAT:**

1.    The Motion is **GRANTED** to the extent set forth herein.

2.    All Objections that have not been withdrawn, waived or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court or the terms of this Order, are **OVERRULED** without prejudice to objections to the approval of the Sale Transaction, as provided in paragraph 7 of this Order, including, without limitation, under Section 363(f) of the Bankruptcy Code.

7

3.      The Bidding Procedures, which are attached hereto as Exhibit A and incorporated herein by reference, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Purchased Assets.

4.      The failure specifically to include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedure, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

5.      Any person wishing to submit a higher or better offer for the Purchased Assets, or any portion thereof, must do so in accordance with the terms of the Bidding Procedures.

6.      The deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be 5:00 p.m. Pacific Time on January 15, 2010 (the "Bidding Deadline") for all Potential Bidders (as defined in the Bidding Procedures), as further described in the Bidding Procedures.

7.      The deadline for objecting to the approval of the Sale Transaction (other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs), including the sale of the Purchased Assets free and clear of all Claims pursuant to section 363(f) of the Bankruptcy Code, shall be 4:00 p.m. (Eastern Time) on January 15, 2010 (the "Objection Deadline") for all parties in interest; provided, however, that if a determination is made at the Sale Hearing that the Successful Bidder (as defined in the Bidding Procedures) is a bidder other than the Purchaser, parties in interest may object solely to such determination at the Sale Hearing.  To be considered, any objection to the Sale Transaction (other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs), must (a) comply with the Bankruptcy Rules and the

Local Bankruptcy Rules and (b) be made in writing and filed with this Court and served upon all parties in interest either required by, or that have requested notice in these chapter 11 cases pursuant to, the Bankruptcy Code and Bankruptcy Rules, including the following parties (collectively, the "Notice Parties") so as to be received by the Objection Deadline:

(i)     Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340, Attn: Scott L. Baena, Esq. (sbaena@bilzin.com), and Jay M. Sakalo, Esq. (jsakalo@bilzin.com), Counsel for the Debtors;

(ii)    Stutman Treister & Glatt P.C., 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067, Attn: Eve H. Karasik, Esq. (ekarasik@stutman.com), Counsel for the Examiner;

(iii)   Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of Americas, New York, New York 10020, Attn: Peter D. Wolfson, Esq. (pwolfson@sonnenschein.com) and D. Farrington Yates, Esq. (fyates@sonnenschein.com), Counsel for Purchaser;

(iv)    Hennigan, Bennett & Dorman, LLP, 865 S. Figueroa Avenue, Los Angeles, California 90017, Attn: Bruce Bennett, Esq. (bennettb@hbdlawyers.com) and Sidney P. Levinson, Esq. (levinsons@hbdlawyers.com) and Akerman Senterfitt, One Southeast Third Avenue, 25th Floor, Miami, Florida 33131-1714, Attn: Michael Goldberg, Esq. (michael.goldberg@akerman.com), Co-Counsel for the Term Lender Steering Group;

(v)     Quinn Emanuel Urquhart, Oliver & Hedges, LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, California 90017, Attn: Eric Winston, Esq. (ericwinston@quinnemanuel.com) and Bast Amron LLP, SunTrust International Center, One SE Third Avenue, Suite 1440, Miami, Florida 33131, Attn: Brett Amron, Esq. (bamron@bastamron.com), Co-Counsel for Aurelius Capital Management, LP;

(vi)    Genovese Joblove & Battista, P.A., 100 Southeast 2nd Street, 44th Floor, Miami, Florida 33131, Attn: Paul Battista, Esq. (pbattista@gjb-law.com) and Fox Rothschild, LLP, Midtown Building, Suite 400, 1301 Atlantic Avenue, Atlantic City, New Jersey 08401, Attn: Michael Viscount, Esq. (mviscount@foxrothschild.com), Co-Counsel for the Official Committee of Unsecured Creditors (the "Committee");

9

(vii)    Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Jeffrey Berman, Esq. (bermanj@sewkis.com), Counsel to Wilmington Trust NSB;

(viii)    Sheppard Mullin, 333 South Hope Street, 48th Floor, Los Angeles, CA 90071, Attn: William Scott, IV, Esq. (bscott@sheppardmullin.com) and Hunton & Williams LLP, 1111 Brickell Avenue, Suite 2500, Miami, FL 33131, Attn: Craig Rasile, Esq. (crasile@hunton.com), Counsel to Bank of America, N.A.; and

(ix)    Squire Sanders Dempsey, 1900 Phillips Point West, 777 South Flagler Drive, West Palm Beach, Florida  33401-6198.  Attn: Tina Talarchyk, Esq., (ttalarchyk@ssd.com), Counsel to U.S. Bank, N.A.

The failure of any person or entity to timely file its objection shall be a bar to the assertion, before or at the Sale Hearing or thereafter, of any objection to the Motion, or the consummation and performance of the sale of the Purchased Assets contemplated by the Purchase Agreement or a Marked Agreement (as defined in the Bidding Procedures), if any (including the transfer free and clear of all Claims of each of the Purchased Assets transferred as part of the Sale Transaction).

8.    The Purchaser shall constitute a Qualified Bidder (as defined in the Bidding Procedures) and the bid set forth in the Purchase Agreement shall constitute a Qualified Bid (as defined in the Bidding Procedures), in each case, for all purposes and in all respects with regard to the Bidding Procedures; provided, however, that the Purchaser shall make a deposit of cash or cash equivalents as described in the Bidding Procedures in the amount equal to at least $2,500,000 within one (1) business day following the entry of this Order.

9.    As further described in the Bidding Procedures, if more than one Qualified Bid is timely received, the Auction (as defined in the Bidding Procedures) shall be conducted by the Examiner (as defined in the Bidding Procedures) to determine the Successful Bidder, which auction shall be conducted in accordance with the Bidding Procedures.

10.    The Court shall conduct the Sale Hearing on January 27, 2010 at 10:00 a.m. (Eastern Time) at which time the Court will consider approval of the Sale Transaction to the Successful Bidder. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing; provided, however, that the Sale Hearing shall not be deemed to have been held until it is substantially complete.

11.    The Debtors and the Examiner are hereby authorized to conduct the Sale Transaction (or other similar transaction, if the Successful Bidder is a party other than the Purchaser) without the necessity of complying with any state or local bulk transfer laws or requirements.

12.    The Sale Notice and the Publication Notice, substantially in the forms of Exhibit B and Exhibit C to this Order, are hereby approved.

13.    The manner of notice of the proposed sale, the Bidding Procedures and the Sale Hearing as set forth in this paragraph 13 constitutes sufficient and proper notice and is approved in all respects. In particular, no other or further notice of the proposed sale, the Bidding Procedures, and the Sale Hearing shall be required except as follows:

(a)    within two business days after entry of this Order (the "Mailing Deadline"), the Debtors shall serve the Sale Notice by first-class mail, postage prepaid upon: (i) the Office of the United States Trustee for the Southern District of Florida; (ii) counsel to the Purchaser; (iii) those parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims Against the Debtors, as identified in the Debtors' Chapter 11 petitions; (iv) counsel to the Prepetition Agent (as defined in this Court's prior Cash Collateral Orders, Dkt. Nos. 49, 242, 389, 454, 565, 730, 811, 852, 901, and 953 (collectively, the "Prior Cash Collateral Orders")); (v) counsel to Wilmington Trust, FSB, as successor administrative agent and disbursement agent

11

under the Prepetition Loan Documents (as defined in the Prior Cash Collateral Orders); (vi) counsel to the Term Lender Steering Group as defined in the Prior Cash Collateral Orders; (vii) counsel to Aurelius Capital Management, LP; (viii) the Notice Parties; (ix) counsel to the Trustee for the $675 million of 10.25% Second Mortgage Notes Due 2015; (x) counsel to Fidelity National Title Insurance Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company, Transnation Title Insurance Company, and First American Title Insurance Company; (xi) counsel to the Examiner; (xii) any party that, in the past year, expressed in writing to the Debtors an interest in acquiring the Included Assets, directly or through a merger or alliance; (xiii) Lehman Brothers Holdings Inc. as administrative agent under that certain Loan Agreement, dated as of June 6, 2007, by and between Fontainebleau Las Vegas Retail, LLC, the lenders party thereto and Lehman Brothers Holdings Inc., as administrative agent; (xiv) Lehman Brothers Holdings Inc., as administrative agent under that certain Mezzanine Loan Agreement, dated as of June 6, 2007, by and between Retail Holdings, Retail Mezzanine, the lenders party thereto and Lehman Brothers Holdings Inc., as administrative agent; (xv) all parties who are known to assert Claims (including liens) upon the Included Assets; (xvi) the U.S. Treasury; (xvii) the Securities and Exchange Commission; (xviii) the Internal Revenue Service; (xix) all applicable state attorneys general, local environmental enforcement agencies and local regulatory authorities; (xx) all applicable state and local taxing authorities; (xxi) the Federal Trade Commission; (xxii) United States Attorney General/Antitrust Division of Department of Justice; (xxiii) the U.S. Environmental Protection Agency; (xxiv) United States Attorney's Office; (xxv) counsel to the Committee; (xxvi) known creditors of the Retail Entities; (xxvii) counsel to Bank of America, N.A. in all of its capacities under the Prepetition Loan Documents and as an individual Prepetition Revolving Lender (as those terms

12

are defined in the Prior Cash Collateral Orders); (xxviii) the entities set forth in the Master Service List established in these cases; (xxix) all entities that have requested notice in these chapter 11 cases under Bankruptcy Rule 2002; and (xxx) any other party identified on the creditor matrix in these cases;

        (b)      On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall submit the Publication Notice to be recorded in the Clark County, Nevada public records office and published one time in the Wall Street Journal and the Las Vegas Review-Journal.

        (c)      On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall cause the Publication Notice to be published on the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants, www.kccllc.net/fblv.

     14.      The manner of notice of the proposed sale, the Bidding Procedures, and the Sale Hearing is approved in all respects. In particular, no other or further notice of the proposed sale, the Bidding Procedures or the Sale Hearing shall be required.

     15.      Based on the unrefuted testimony at the Bidding Procedures Hearing, the Break-Up Fee is hereby approved in all respects.  If Purchaser becomes entitled to receive the Break-Up Fee in accordance with the terms of the Purchase Agreement, (a) the Sellers' obligation to pay the Break-Up Fee under the Purchase Agreement shall be a "joint and several" (as defined in the Purchase Agreement) obligation of the Sellers and shall survive termination of the Purchase Agreement; (b) Purchaser shall be, and hereby is, granted an allowed administrative claim in the Cases in an amount equal to the Break-Up Fee, pursuant to section 364(c)(1) of the Bankruptcy Code, which claim shall have priority over and be senior to all other administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code against the Debtors (other than Sellers' obligations pursuant to the DIP Facility and the DIP Order (as defined in the

Purchase Agreement), which obligations shall be pari passu with the Sellers' obligation to pay the Break-Up Fee), until such payment is made; (c) such Break-Up Fee shall be payable no later than the third Business Day (as defined in the Purchase Agreement) following a termination of the Purchase Agreement described in Section 8.3(a) of the Purchase Agreement; and (d) the Debtors are authorized and directed to pay the Break-Up Fee to Purchaser immediately upon its becoming due without further order of this Court.

16.     Other than Purchaser's right to the Break-Up Fee, the Fees (as defined in the DIP Facility) and repayment in full in cash of amounts outstanding under the DIP Facility, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination or other similar fee or payment in connection with the Bidding Procedures or otherwise in connection with the sale of the Purchased Assets.

17.     The following procedures (the "Contract Procedures") shall govern the assumption and assignment of Designated Agreements in connection with the sale of the Purchased Assets to the Successful Bidder:

(a)     Contract Designations. No later than January 20, 2010, the Debtors shall file with the Bankruptcy Court and shall serve on each non-debtor counterparty to an executory contract or unexpired lease with any of the Debtors (each a "Non-Debtor Counterparty") that the Debtors may assume and assign to the Successful Bidder, by overnight delivery service, a notice of assumption and assignment of executory contracts and unexpired leases in substantially the form of the Assignment Notice attached hereto as Exhibit D. The Debtors shall attach to the Assignment Notice a list identifying the Non-Debtor Counterparties to the Designated Agreements and the corresponding Cure Costs under the Designated Agreements as of January 19, 2010 and provide notice of the Section 365 Hearing (as defined below) and Section 365

14

Objection Deadline (as defined below) in the event any Designated Agreement becomes a Confirmed Agreement; provided that such Assignment Notice shall in no way limit such Non-Debtor Counterparty's entitlement to Cure Costs accruing during the period after January 19, 2010. In addition, the Debtors shall serve a copy of the Assignment Notice on a Non-Debtor Counterparty's counsel of record in these chapter 11 cases as of the date of the Assignment Notice ("Counsel of Record").

       (b)     Information in Assignment Notice. For each Designated Agreement, on the Assignment Notice, the Debtors shall either (i) indicate the proposed Cure Costs relating to such Designated Agreement or (ii) provide an amount representing the proposed Cure Costs for multiple Designated Agreements with the same Non-Debtor Counterparty, subject, upon request, to providing greater detail to a Non-Debtor Counterparty to identify on a contract-by-contract basis the proposed applicable Cure Costs to the extent reasonably available. On an Assignment Notice, Designated Agreements may be listed individually or in groups of agreements with the Non-Debtor Counterparty, as long as the Non-Debtor Counterparty is provided with sufficient information to identify the contracts to be assumed. The Assignment Notice also may identify any additional proposed terms or conditions of assumption and assignment.

       (c)     Successful Bidder Confirmation Notice. No later than 12:00 p.m. (noon) Eastern time on January 23, 2010 (the "Pre-Closing Deadline"), the Successful Bidder shall send to all applicable Non-Debtor Counterparties a notice indicating those Designated Agreements with respect to which the Successful Bidder has made a final determination to take assignment of a Designated Agreement (a "Confirmation Notice"), subject only to subparagraph (e) below and Cure Costs not being established in an amount greater than the amounts in the Assignment Notice unless otherwise agreed upon in writing by the Successful Bidder. Designated

15

Agreements listed on a Confirmation Notice are referred to as "Confirmed Agreements." The Successful Bidder may serve additional Confirmation Notices at any time through the Pre-Closing Deadline. Until a Designated Agreement is listed on a Confirmation Notice, it shall not be considered to be either assumed or assigned and shall remain subject to assumption, rejection or redesignation hereunder.

        (d)    Section 365 Objections. Objections, if any ("Section 365 Objections"), to the proposed Cure Costs, to the transfer of a deposit, if any, related to a Designated Agreement, or to the proposed assumption and assignment of the Designated Agreements, including, but not limited to, objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of Section 365(c)(1) of the Bankruptcy Code, must be in writing and filed with this Court and served on the Notice Parties so as to be received no later than 3:00 p.m. Eastern time on January 25, 2010 (the "Section 365 Objection Deadline"). Where a Non-Debtor Counterparty to a Designated Agreement files a Section 365 Objection meeting the requirements of this subparagraph (d), objecting to the assumption by the Debtors and assignment to the Successful Bidder of such Designated Agreement (the "Disputed Designation") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "Disputed Cure Costs"), the Debtors, the Successful Bidder and the Non-Debtor Counterparty shall confer in good faith to attempt to resolve any such objection without Court intervention.

        (e)    Section 365 Hearing. If any of the Debtors, the Non-Debtor Counterparty or the Successful Bidder determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed

16

Designation and/or the amount to be paid under Section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by the Bankruptcy Court at an omnibus hearing established for such purpose (a "Section 365 Hearing"), conducted on January 27, 2010, at 10:00 a.m. Eastern Time, as adjourned or continued, if necessary, unless, with respect to the applicable Designated Agreement, the Court, the Debtors, the Successful Bidder and the applicable Non-Debtor Party to the Designated Agreement in dispute agree otherwise. If the Bankruptcy Court determines at a Section 365 Hearing that the Designated Agreement cannot be assumed and assigned, or establishes Cure Costs that the Successful Bidder is not willing to pay, then such executory contract or unexpired lease shall no longer be considered a Designated Agreement.

    (f)  Consent to Assumption and Assignment. Any Non-Debtor Counterparty to a Designated Agreement who fails to file timely Section 365 Objection to the proposed Cure Costs, to the transfer of a deposit, if any, related to a Designated Agreement, or the proposed assumption and assignment of a Designated Agreement by the Section 365 Objection Deadline is deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Agreement, and such party shall be forever barred from objecting to the Cure Costs or such assumption and assignment and from asserting any additional cure or other amounts against the Debtors, their estates or the Successful Bidder.

    (g)  Resolution of Assumption/Assignment Issues. If the Non-Debtor Counterparty to a Designated Agreement fails to timely assert a Section 365 Objection as described in subparagraph (f) above, or upon the resolution of any timely Section 365 Objection by agreement of the parties or order of the Court approving an assumption and assignment, such Designated Agreement shall be deemed to be assumed by the Debtors and assigned to the

17

Successful Bidder upon the closing of the sale of the Purchased Assets to the Successful Bidder, and the proposed Cure Cost related to such Designated Agreement shall be established and approved in all respects, subject to the conditions set forth in subparagraph (h) below.

(h)    <u>Conditions on Assumption and Assignment</u>. The Debtors' decision to assume and assign the Designated Agreements is subject to Court approval and consummation of the Sale Transaction. Accordingly, subject to the satisfaction of conditions in subparagraph (g) above to address any cure or assignment disputes, the Debtors shall be deemed to have assumed and assigned to the Successful Bidder each of the Designated Agreements as of the date of and effective only upon the Closing Date, and absent such closing, each of the Designated Agreements shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code. Assumption and assignment of the Designated Agreements also is subject to the Successful Bidder's rights set forth in subparagraphs (c) and (e) above. The Successful Bidder shall have no rights in and to a particular Designated Agreement until such time as the particular Designated Agreement has been identified by the Successful Agreement as a Confirmed Agreement and is assumed and assigned in accordance with the procedures set forth herein. Once assumed and assigned as a Confirmed Agreement under these Contract Procedures, a Designated Agreement is not subject to rejection under section 365 of the Bankruptcy Code.

(i)    <u>Assurance Package</u>. Each Bid submitted by a Potential Bidder shall identify contracts and leases to be assigned, and the Purchaser and each Qualified Bidder shall submit to the Debtors and the Examiner evidence of their ability to provide adequate assurance of future performance on the Designated Agreements (the "<u>Adequate Assurance Package</u>") on or before January 15, 2010. Upon written request to the Debtors' counsel by a Non-Debtor Party to

a Designated Agreement, the Debtors will provide to such party any Adequate Assurance Package provided by the Successful Bidder.

(j)    <u>Cure Payments</u>. Except as otherwise provided in this Order, or as may be agreed to by the parties to a Designated Agreement, the defaults under the Designated Agreements that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Successful Bidder shall pay all Cure Costs relating to an assumed executory contract or unexpired lease within ten days after the later of (i) the Closing Date or (ii) with respect to Disputed Cure Costs, the date the amount thereof is finally determined.

(k)    <u>Rights Pending Assumption or Rejection</u>. Nothing in these Contract Procedures limits, restricts or expands the rights of parties to executory contracts and unexpired leases pending assumption or rejection, including any rights to seek further relief from the Bankruptcy Court (including motions to compel a prompt final decision on assumption or rejection), or the rights of other parties in response to such requests.

(l)    <u>Filing of Final List of Confirmed Agreements</u>. On or before the Pre-Closing Deadline, the Debtors shall file with the Court a final schedule indicating all Confirmed Agreements and the proposed Cure Costs relating to each Confirmed Agreement scheduled therein.

18.    Subject to the Debtors' rights under the Purchase Agreement, the Debtors are authorized to and directed to enter into the Purchase Agreement and comply with their obligations and undertakings pursuant to the Purchase Agreement, including, without limitation, the payment of the Break-Up Fee when and if payable pursuant to the Purchase Agreement.

19.    Unless otherwise expressly set forth herein, all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     The Debtors are authorized and empowered to take such steps as may be necessary to implement and effect the terms and requirements established and relief granted in this Order.

22.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

23.     In the event that (i) any Case shall be converted to a case under chapter 7 of the Bankruptcy Code, (ii) the Bankruptcy Court shall enter an order appointing an interim or permanent trustee in any Case, a responsible officer (other than a professional person employed by the Debtors' restructuring advisor, who may be appointed as a responsible officer in the Cases) or examiner with powers beyond the duty to investigate and report, as set forth in section 1106(a)(3) and (4) of the Bankruptcy Code, or (iii) the venue of any of the Cases shall be transferred to any court other than the Bankruptcy Court for the Southern District of Florida, this Order shall be binding upon the applicable United States Bankruptcy Court or trustee, responsible officer or examiner.

24.     In the event that any Nevada Sales Tax Liabilities (as defined in the Purchase Agreement) are assessed against the Debtors and a proof of claim is filed in the Cases with respect thereto (whether by a taxing authority or a person asserting rights of contribution or indemnity against the Debtors), any person or entity seeking to commence any action to enforce or collect such tax liabilities or related claims, whether against the estate, any asset of the estate (including, without limitation, any insurance policy that covers the employees, officers or

20

directors of the Debtors), or any person who is or was a director, officer or employee of any Debtor in such person's capacity as such (a "Specified Individual") or any Specified Individual's assets (any such action, an "NSTL Action"), shall, no less than 30 days prior to commencing such NSTL Action, file notice with the Bankruptcy Court describing the NSTL Action sought to be taken and the persons or entities against whom such NSTL Action will be taken.  For the avoidance of doubt, no NSTL Action may be taken against Purchaser (as defined in the Purchase Agreement) or any of its Affiliates (as defined in the Purchase Agreement) or any of their respective Representatives (as defined in the Purchase Agreement) (collectively, "Purchaser Persons"), or with respect to any Purchased Asset (as defined in the Purchase Agreement) or any other asset, property or right of any Purchaser Person, and nothing in this paragraph 24 shall in any way affect any provision of the Purchase Agreement or the Sale Order relating to the Nevada Sales Tax Liabilities or otherwise affect the scope of the Assumed Liabilities (as defined in the Purchase Agreement) or the Excluded Liabilities (as defined in the Purchase Agreement).

25.    The Sellers (i) shall consult with the Examiner throughout the process of resolving any dispute with respect to Remediation Costs (as defined in the Purchase Agreement) pursuant to Sections 2.5(b) and (c) of the Purchase Agreement and (ii) shall not agree to the resolution of any such dispute or deliver a Seller Closing Election Notice (as defined in the Purchase Agreement) without the consent of the Examiner.

26.    In the event that an Excluded Asset (as defined in the Purchase Agreement) or proceeds thereof is used by the Debtors to repay Loans (as defined in the DIP Facility) pursuant to Section 2.07 of the DIP Facility: (a) from and after such repayment until the consummation of the Sale (as defined in the DIP Facility), if ever, any person holding any interest in such Excluded Asset shall be automatically granted a replacement lien on the Collateral (as defined in

21

the DIP Order) that is senior to all of the Primed Liens (as defined in the DIP Order) but junior in all respects to the liens of the DIP Agent (as defined in the DIP Order) for the benefit of the DIP Secured Parties (as defined in the DIP Order) pursuant to the DIP Order and the other DIP Documents (as defined in the DIP Order) and (b) any right, title or interest of any person in such Excluded Asset or the proceeds thereof shall automatically attach to the proceeds of the Sale, when received by the Debtors, relating to such Excluded Asset pursuant to clause (vi) of the definition of Closing Cash Payment in the Purchase Agreement. Any such right, title or interest in such proceeds of the Sale shall have the same extent, validity, and priority as such right title and interest existed in the related Excluded Asset.

###

Submitted by:

Scott L. Baena (Florida Bar No. 186445)
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

Copies to:
Scott L. Baena
*(Attorney Baena shall upon receipt cause a copy of this Order to be served upon all interested parties and a certificate of service to be filed.)*

MIAMI 1998155.3 7650831854