

**ORDERED in the Southern District of Florida on December 04, 2009.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FONTAINEBLEAU LAS VEGAS | ) | |
| HOLDINGS, LLC, <u>et al.</u>,[1] | ) | Case No. 09-21481-BKC-AJC |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |

**ORDER, PURSUANT TO SECTIONS 105, 363 AND 365 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006: (A)
APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF
THE RETAIL DEBTORS' ASSETS; (B) AUTHORIZING THE RETAIL DEBTORS TO
PROVIDE CERTAIN BID PROTECTIONS; (C) SCHEDULING A FINAL HEARING
APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE RETAIL DEBTORS'
ASSETS; AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

_____

[1] The "<u>Debtors</u>" and the last four digits of each of the Debtors' tax identification numbers are: (i) Fontainebleau Las
Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital
Corp. [7822]; (iv) Fontainebleau Las Vegas Retail Parent, LLC [9796], (v) Fontainebleau Las Vegas Retail
Mezzanine, LLC [9458], and (vi) Fontainebleau Las Vegas Retail, LLC [1045].  The Debtors' current mailing
address is 19950 West Country Club Drive, Aventura, Florida 33180.

This matter coming before the Court on the motion (as modified, amended, or supplemented, the "Motion") filed on November 25, 2009 [Dkt. No. 1072],[2] of Fontainebleau Las Vegas Retail Parent, LLC ("Retail Parent"), Fontainebleau Las Vegas Retail Mezzanine, LLC ("Retail Mezzanine") and Fontainebleau Las Vegas Retail, LLC ("Retail"; and, together with Retail Parent and Retail Mezzanine, the "Retail Debtors") as Debtors and Debtors-in-Possession (each individually a "Debtor" and collectively the "Debtors", and each such Debtor's case under Chapter 11 of the Bankruptcy Code, a "Case" and collectively the "Cases") seeking, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 6006-1 of the Local Rules for the United States Bankruptcy Court of the Southern District of Florida (the "Local Bankruptcy Rules"), entry of (i) an order (a) approving bidding procedures attached hereto as Exhibit A (the "Bidding Procedures") for the sale of substantially all of the Retail Debtors' assets (collectively, as defined in the Purchase Agreement, but excluding, for the avoidance of doubt, the Excluded Assets as defined in the Purchase Agreement, the "Purchased Assets") to the Purchaser (as defined below) and (b) scheduling a final hearing on the sale of the Purchased Assets (the "Sale Hearing") and approving the form and manner of notice thereof; and (ii) after the Sale Hearing, an order (the "Sale Order") (a) authorizing the sale of the Purchased Assets, free and clear all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests (including leasehold interests), liabilities and contractual commitments of any kind or nature whatsoever, whether arising before or after the date upon which the Retail

---

[2]    The Motion was originally filed in each of the Retail Debtors' individual cases on November 25, 2009 as Dkt. No. 5 and was redocketed in this case for convenience purposes after the Retail Debtors' cases and this case were jointly administered.

Debtors filed the Cases (the "Petition Date"), whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets (collectively, "Claims") to the Successful Bidder (as such term is defined in the Bidding Procedures), (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases constituting part of the Purchased Assets and related procedures and (c) granting certain related relief; and the Court having conducted a hearing on the Motion on December 2, 2009 (the "Bidding Procedures Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; the Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the Bidding Procedures attached hereto as Exhibit A, (iii) the objections (collectively, the "Objections") to the Motion or certain of the relief sought thereunder were filed as follows(a) the Joint Objection of Lehman Brothers Holdings Inc., as Lender and Agent [Dkt. No. 1109] (the "Lehman Objection"); and (b) the M&M Lienholders' Objection [Dkt. No. 1104], as joined in by others (together with the M&M Lienholders, the "Statutory Lienholders") [Dkt. Nos. 1120 and 1121] (the "Statutory Lienholders Objection"), (iv) the testimony of witnesses at the Bidding Procedures Hearing, (v) the Sale Notice (as defined below) attached hereto as Exhibit B, (vi) the Publication Notice (as defined below) attached hereto as Exhibit C, (vii) the Assignment Notice (as defined below) attached hereto as Exhibit D, and (viii) the arguments of counsel made, and the evidence proffered or adduced, at the Bidding Procedures Hearing; and it appearing that the relief requested in the Motion is reasonable and in the best interests of the Retail Debtors' bankruptcy estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The Retail Debtors have proved good and sufficient reasons for, and the best interests of their estates, creditors, employees, and other parties in interest and stakeholders will be served by, this Court granting certain of the relief requested in the Motion relating to that certain Asset Purchase Agreement, dated as of November 23, 2009 (the "Purchase Agreement"),[3] by and among Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas Capital Corp. (collectively, the "Resort Debtors"), Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC, and Fontainebleau Las Vegas Retail, LLC, as Sellers (collectively, "Sellers") and Icahn Nevada Gaming Acquisition LLC, as Purchaser ("Purchaser") which, together with certain ancillary agreements, contemplates a set of related transactions (collectively, the "Sale Transaction") for the sale of the Purchased Assets to the Purchaser and, in connection therewith, the approval of: (1) the Bidding Procedures, including the minimum overbid amount of $1,000,000.00; (2) the procedures described below (the "Contract Procedures") for the determination of the amounts necessary to cure defaults under the Designated Agreements (the "Cure Costs") and to address any other disputes in connection with the assumption and assignment of the Designated Agreements pursuant to section 365 of the Bankruptcy Code; (3) the Break-Up Fee (as defined in the Purchase Agreement) and (4) the form, timing and manner of notice of the proposed sale, the Bidding Procedures, the Contract Procedures and the other matters described herein, including the form of notice of the proposed sale attached hereto as Exhibit B (the "Sale Notice"), the form

---

[3] A copy of the Purchase Agreement, without its voluminous exhibits and schedules, is attached as Exhibit A to the Motion.

of publication notice of the sale attached hereto as <u>Exhibit C</u> (the "<u>Publication Notice</u>"), and the form of notice of the proposed assumption and assignment of the Designated Agreements attached hereto as <u>Exhibit D</u> (the "<u>Assignment Notice</u>").

C.    Under the Purchase Agreement, Purchaser is entitled to a Break-Up Fee in the circumstances described in Section 8.3 of the Purchase Agreement. Other than the payment of the Break-Up Fee and repayment in cash in full of all amounts owing under the DIP Facility (as defined in the Purchase Agreement), Purchaser is not entitled to any other fees, expenses or compensation in the event that a bidder other than the Purchaser is selected as the Successful Bidder in the auction process described below.  Based upon the statements of counsel for the Purchaser made at the November 23, 2009 hearing on the Resort Debtors' Bidding Procedures Motion, the payment of the Break-Up Fee, as set forth herein, is an essential inducement and condition relating to the Purchaser's entry into, and continuing obligations under, the Purchase Agreement.  The Break-Up Fee (1) if triggered, shall be deemed to be an actual and necessary cost and expense of preserving these estates; (2) is reasonable and appropriate in light of the size and nature of the proposed transaction, the necessity to quickly consummate a sale of the Purchased Assets and the considerable efforts and resources that have been and will be expended by the Purchaser in connection therewith; (3) has been negotiated by the parties and their respective advisors at arms' length and in good faith; and (4) is necessary to ensure that the Purchaser and Sellers will continue to pursue the closing of the Sale Transaction (as defined in the Bidding Procedures).  The Break-Up Fee is reasonable, comparable to similar fees authorized in comparable transactions in this District and is commensurate to the benefit conferred by the Purchaser upon the estates.

D.    The Purchaser and the Retail Debtors are relying on their mutual performance of their obligations set forth in the Purchase Agreement, to the extent these obligations relate to the period prior to the termination of the Purchase Agreement or the Closing Date (as defined in the Purchase Agreement), whichever shall first occur. The Purchaser and the Retail Debtors have entered into the Purchase Agreement expecting all parties to perform these obligations to provide each other with reasonable assurances that they will be in the position to consummate the transactions contemplated by the Purchase Agreement in the event that the Purchaser is selected as the Successful Bidder.

E.    Under the circumstances, the Bidding Procedures constitute a reasonable, sufficient, adequate and proper means to provide potential competing bidders with an opportunity to submit and pursue higher and better offers for all or substantially all of the Purchased Assets.

F.    Under the circumstances (including the present condition of the Debtors' property), the Debtors' estates will suffer immediate and irreparable harm if the relief requested in the Motion is not granted on an expedited basis consistent with the provisions set forth herein and in the Purchase Agreement.

G.    The Debtors have proved good and sufficient reasons for, and the best interests of their estates and stakeholders will be served by, this Court scheduling a Sale Hearing to consider granting the remaining relief requested in the Motion, including approval of the Sale Transaction and the transfer of the Purchased Assets to the Purchaser (or another Successful Bidder) free and clear of all Claims, pursuant to section 363(f) of the Bankruptcy Code.

H.      The Sale Notice is reasonably calculated to provide parties in interest with proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures, the Sale Hearing, the structure of the Sale Transaction and related implications on interested parties.

I.      The Assignment Notice is reasonably calculated to provide all counterparties to the Designated Agreements with proper notice of the potential assumption and assignment of their executory contracts or unexpired leases, any Cure Costs relating thereto and the Contract Procedures.

J.      Publication and recordation of the Publication Notice as set forth herein is reasonably calculated to provide all unknown creditors and lien claimants and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures and the Sale Hearing.

K.      The Motion and this Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

L.      The Sale Transaction does not include the transfer of "Personally Identifiable Information" (as defined in section 101(41A) of the Bankruptcy Code) and the appointment of a consumer privacy ombudsman is not required under section 332 of the Bankruptcy Code.

M.      Due, sufficient and adequate notice of the relief granted herein has been given to parties in interest.

**IT IS ORDERED THAT:**

1.      The Motion is **GRANTED** to the extent set forth herein.

2.      All Objections that have not been withdrawn, waived or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court or the terms of

this Order, are **OVERRULED** without prejudice to objections to the approval of the Sale Transaction, as provided in paragraph 7 of this Order, including, without limitation, under section 363(f) of the Bankruptcy Code.

3.       The Bidding Procedures, which are attached hereto as Exhibit A and incorporated herein by reference, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Purchased Assets.

4.       The failure specifically to include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedure, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

5.       Any person wishing to submit a higher or better offer for the Purchased Assets, or any portion thereof, must do so in accordance with the terms of the Bidding Procedures.

6.       The deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be 5:00 p.m. Pacific Time on January 15, 2010 (the "Bidding Deadline") for all Potential Bidders (as defined in the Bidding Procedures), as further described in the Bidding Procedures.

7.       The deadline for objecting to the approval of the Sale Transaction (other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs), including the sale of the Purchased Assets free and clear of all Claims pursuant to section 363(f) of the Bankruptcy Code, shall be 4:00 p.m. (Eastern Time) on January 15, 2010 (the "Objection Deadline") for all parties in interest; provided, however, that if a determination is made at the Sale Hearing that the Successful Bidder (as defined in the Bidding Procedures) is a bidder other than the Purchaser, parties in interest may object solely to such

determination at the Sale Hearing.  To be considered, any objection to the Sale Transaction (other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs), must (a) comply with the Bankruptcy Rules and the Local Bankruptcy Rules and (b) be made in writing and filed with this Court and served upon all parties in interest either required by, or that have requested notice in these chapter 11 cases pursuant to, the Bankruptcy Code and Bankruptcy Rules, including the following parties (collectively, the "Notice Parties") so as to be received by the Objection Deadline:

>    (i)    Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340, Attn:  Scott L. Baena, Esq. (sbaena@bilzin.com), and Jay M. Sakalo, Esq. (jsakalo@bilzin.com), Counsel for the Debtors;

>    (ii)    Stutman Treister & Glatt P.C., 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067, Attn: Eve H. Karasik, Esq. (ekarasik@stutman.com), Counsel for the Examiner;

>    (iii)    Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of Americas, New York, New York 10020, Attn: Peter D. Wolfson, Esq. (pwolfson@sonnenschein.com) and D. Farrington Yates, Esq. (fyates@sonnenschein.com), Counsel for Purchaser;

>    (iv)    Weil, Gotshal and Manges LLP, 1395 Brickell Avenue, Suite 1200, Miami, Florida  33131, Attn:  Elisa R. Lemmer, Esq. (elisa.lemmer@weil.com), Counsel for Lehman Brothers Holdings, Inc.

The failure of any person or entity to timely file its objection shall be a bar to the assertion, before or at the Sale Hearing or thereafter, of any objection to the Motion, or the consummation and performance of the sale of the Purchased Assets contemplated by the Purchase Agreement or a Marked Agreement (as defined in the Bidding Procedures), if any (including the transfer free and clear of all Claims of each of the Purchased Assets transferred as part of the Sale Transaction).

8.     The Purchaser shall constitute a Qualified Bidder (as defined in the Bidding Procedures) and the bid set forth in the Purchase Agreement shall constitute a Qualified Bid (as defined in the Bidding Procedures), in each case, for all purposes and in all respects with regard to the Bidding Procedures.

9.     As further described in the Bidding Procedures, if more than one Qualified Bid is timely received, the Auction (as defined in the Bidding Procedures) shall be conducted by the Examiner (as defined in the Bidding Procedures) to determine the Successful Bidder, which auction shall be conducted in accordance with the Bidding Procedures.

10.     The Court shall conduct the Sale Hearing on January 27, 2010 at 10:00 a.m. (Eastern Time) at which time the Court will consider approval of the Sale Transaction to the Successful Bidder. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing; provided, however, that the Sale Hearing shall not be deemed to have been held until it is substantially complete.

11.     The Debtors and the Examiner are hereby authorized to conduct the Sale Transaction (or other similar transaction, if the Successful Bidder is a party other than the Purchaser) without the necessity of complying with any state or local bulk transfer laws or requirements.

12.     The Sale Notice and the Publication Notice, substantially in the forms of Exhibit B and Exhibit C to this Order, are hereby approved.

13.     The manner of notice of the proposed sale, the Bidding Procedures and the Sale Hearing as set forth in this paragraph 13 constitutes sufficient and proper notice and is approved in all respects. In particular, no other or further notice of the proposed sale, the Bidding Procedures, and the Sale Hearing shall be required except as follows:

(a)     within two business days after entry of this Order (the "<u>Mailing Deadline</u>"), the Debtors shall serve the Sale Notice by first class mail, postage prepaid upon: (i) the Office of the United States Trustee for the Southern District of Florida; (ii) counsel to the Purchaser; (iii) those parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims Against the Retail Debtors, as identified in the Retail Debtors' Chapter 11 petitions; (iv) the Notice Parties; (v) any party that, in the past year, expressed in writing to the Debtors an interest in acquiring the Included Assets, directly or through a merger or alliance; (vi) Lehman Brothers Holdings Inc. as administrative agent under that certain Loan Agreement, dated as of June 6, 2007, by and between Fontainebleau Las Vegas Retail, LLC, the lenders party thereto and Lehman Brothers Holdings Inc., as administrative agent; (vii) Lehman Brothers Holdings Inc., as administrative agent under that certain Mezzanine Loan Agreement, dated as of June 6, 2007, by and between Retail Holdings, Retail Mezzanine, the lenders party thereto and Lehman Brothers Holdings Inc., as administrative agent; (viii) all parties who are known to assert Claims upon the Included Assets; (ix) the U.S. Treasury; (x) the Securities and Exchange Commission; (xi) the Internal Revenue Service; (xii) all applicable state attorneys general, local environmental enforcement agencies and local regulatory authorities; (xiii) all applicable state and local taxing authorities; (xiv) the Federal Trade Commission; (xv) United States Attorney General/Antitrust Division of Department of Justice; (xvi) the U.S. Environmental Protection Agency; (xvii) United States Attorney's Office; (xviii) the entities set forth in the Master Service List established in these cases; (xix) all entities that have requested notice in these chapter 11 cases under Bankruptcy Rule 2002; and (xx) any other party identified on the creditor matrices in these cases;

(b)    On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall submit the Publication Notice to be recorded in the Clark County, Nevada public records office.

(c)    On the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall cause the Publication Notice to be published on the website of the Debtors' claims and noticing agent, Kurtzman Carson Consultants, www.kccllc.net/fblv.

14.    The manner of notice of the proposed sale, the Bidding Procedures, and the Sale Hearing is approved in all respects. In particular, no other or further notice of the proposed sale, the Bidding Procedures or the Sale Hearing shall be required.

15.    Based on the unrefuted testimony at the Bidding Procedures Hearing, the Break-Up Fee is hereby approved in all respects.  If Purchaser becomes entitled to receive the Break-Up Fee in accordance with the terms of the Purchase Agreement, (a) the Sellers' obligation to pay the Break-Up Fee under the Purchase Agreement shall be a "joint and several" (as defined in the Purchase Agreement) obligation of the Sellers and shall survive termination of the Purchase Agreement; (b) Purchaser shall be, and hereby is, granted an allowed administrative claim in the Cases in an amount equal to the Break-Up Fee, pursuant to section 364(c)(1) of the Bankruptcy Code, which claim shall have priority over and be senior to all other administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code against the Debtors (other than Sellers' obligations pursuant to the DIP Facility and the DIP Order (as defined in the Purchase Agreement), which obligations shall be pari passu with the Sellers' obligation to pay the Break-Up Fee), until such payment is made; (c) such Break-Up Fee shall be payable no later than the third Business Day (as defined in the Purchase Agreement) following a termination of the Purchase Agreement described in Section 8.3(a) of the Purchase Agreement; and (d) the

Debtors are authorized and directed to pay the Break-Up Fee to Purchaser immediately upon its becoming due without further order of this Court.

16.      Other than Purchaser's right to the Break-Up Fee, the Fees (as defined in the DIP Facility) and repayment in full in cash of amounts outstanding under the DIP Facility, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination or other similar fee or payment in connection with the Bidding Procedures or otherwise in connection with the sale of the Purchased Assets.

17.      The following procedures (the "Contract Procedures") shall govern the assumption and assignment of Designated Agreements in connection with the sale of the Purchased Assets to the Successful Bidder:

(a)      Contract Designations. No later than January 20, 2010, the Debtors shall file with the Bankruptcy Court and shall serve on each non-debtor counterparty to an executory contract or unexpired lease with any of the Debtors (each a "Non-Debtor Counterparty") that the Debtors may assume and assign to the Successful Bidder, by overnight delivery service, a notice of assumption and assignment of executory contracts and unexpired leases in substantially the form of the Assignment Notice attached hereto as Exhibit D. The Debtors shall attach to the Assignment Notice a list identifying the Non-Debtor Counterparties to the Designated Agreements and the corresponding Cure Costs under the Designated Agreements as of January 19, 2010 and provide notice of the Section 365 Hearing (as defined below) and Section 365 Objection Deadline (as defined below) in the event any Designated Agreement becomes a Confirmed Agreement; provided that such Assignment Notice shall in no way limit such Non-Debtor Counterparty's entitlement to Cure Costs accruing during the period after January 19, 2010. In addition, the Debtors shall serve a copy of the Assignment Notice on a Non-Debtor

Counterparty's counsel of record in these chapter 11 cases as of the date of the Assignment Notice ("Counsel of Record").

  (b)  <u>Information in Assignment Notice</u>. For each Designated Agreement, on the Assignment Notice, the Debtors shall either (i) indicate the proposed Cure Costs relating to such Designated Agreement or (ii) provide an amount representing the proposed Cure Costs for multiple Designated Agreements with the same Non-Debtor Counterparty, subject, upon request, to providing greater detail to a Non-Debtor Counterparty to identify on a contract-by-contract basis the proposed applicable Cure Costs to the extent reasonably available. On an Assignment Notice, Designated Agreements may be listed individually or in groups of agreements with the Non-Debtor Counterparty, as long as the Non-Debtor Counterparty is provided with sufficient information to identify the contracts to be assumed. The Assignment Notice also may identify any additional proposed terms or conditions of assumption and assignment.

  (c)  <u>Successful Bidder Confirmation Notice</u>. No later than 12:00 p.m. (noon) Eastern time on January 23, 2010 (the "Pre-Closing Deadline"), the Successful Bidder shall send to all applicable Non-Debtor Counterparties a notice indicating those Designated Agreements with respect to which the Successful Bidder has made a final determination to take assignment of a Designated Agreement (a "Confirmation Notice"), subject only to subparagraph (e) below and Cure Costs not being established in an amount greater than the amounts in the Assignment Notice unless otherwise agreed upon in writing by the Successful Bidder. Designated Agreements listed on a Confirmation Notice are referred to as "Confirmed Agreements." The Successful Bidder may serve additional Confirmation Notices at any time through the Pre-Closing Deadline. Until a Designated Agreement is listed on a Confirmation Notice, it shall not

be considered to be either assumed or assigned and shall remain subject to assumption, rejection or redesignation hereunder.

(d)     Section 365 Objections. Objections, if any ("Section 365 Objections"), to the proposed Cure Costs, to the transfer of a deposit, if any, related to a Designated Agreement, or to the proposed assumption and assignment of the Designated Agreements, including, but not limited to, objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of Section 365(c)(1) of the Bankruptcy Code, must be in writing and filed with this Court and served on the Notice Parties so as to be received no later than 3:00 p.m. Eastern time on January 25, 2010 (the "Section 365 Objection Deadline"). Where a Non-Debtor Counterparty to a Designated Agreement files a Section 365 Objection meeting the requirements of this subparagraph (d), objecting to the assumption by the Debtors and assignment to the Successful Bidder of such Designated Agreement (the "Disputed Designation") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "Disputed Cure Costs"), the Debtors, the Successful Bidder and the Non-Debtor Counterparty shall confer in good faith to attempt to resolve any such objection without Court intervention.

(e)     Section 365 Hearing. If any of the Debtors, the Non-Debtor Counterparty or the Successful Bidder determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under Section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by the Bankruptcy Court at an omnibus hearing established for such purpose (a "Section 365 Hearing"), conducted on January 27, 2010,

15

at 10:00 a.m. Eastern Time, as adjourned or continued, if necessary, unless, with respect to the applicable Designated Agreement, the Court, the Debtors, the Successful Bidder and the applicable Non-Debtor Party to the Designated Agreement in dispute agree otherwise. If the Bankruptcy Court determines at a Section 365 Hearing that the Designated Agreement cannot be assumed and assigned, or establishes Cure Costs that the Successful Bidder is not willing to pay, then such executory contract or unexpired lease shall no longer be considered a Designated Agreement.

(f)     <u>Consent to Assumption and Assignment</u>. Any Non-Debtor Counterparty to a Designated Agreement who fails to file timely Section 365 Objection to the proposed Cure Costs, to the transfer of a deposit, if any, related to a Designated Agreement, or the proposed assumption and assignment of a Designated Agreement by the Section 365 Objection Deadline is deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Agreement, and such party shall be forever barred from objecting to the Cure Costs or such assumption and assignment and from asserting any additional cure or other amounts against the Debtors, their estates or the Successful Bidder.

(g)     <u>Resolution of Assumption/Assignment Issues</u>. If the Non-Debtor Counterparty to a Designated Agreement fails to timely assert a Section 365 Objection as described in subparagraph (f) above, or upon the resolution of any timely Section 365 Objection by agreement of the parties or order of the Court approving an assumption and assignment, such Designated Agreement shall be deemed to be assumed by the Debtors and assigned to the Successful Bidder upon the closing of the sale of the Purchased Assets to the Successful Bidder, and the proposed Cure Cost related to such Designated Agreement shall be established and approved in all respects, subject to the conditions set forth in subparagraph (h) below.

16

(h)     <u>Conditions on Assumption and Assignment</u>. The Debtors' decision to assume and assign the Designated Agreements is subject to Court approval and consummation of the Sale Transaction. Accordingly, subject to the satisfaction of conditions in subparagraph (g) above to address any cure or assignment disputes, the Debtors shall be deemed to have assumed and assigned to the Successful Bidder each of the Designated Agreements as of the date of and effective only upon the Closing Date, and absent such closing, each of the Designated Agreements shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code. Assumption and assignment of the Designated Agreements also is subject to the Successful Bidder's rights set forth in subparagraphs (c) and (e) above. The Successful Bidder shall have no rights in and to a particular Designated Agreement until such time as the particular Designated Agreement has been identified by the Successful Agreement as a Confirmed Agreement and is assumed and assigned in accordance with the procedures set forth herein. Once assumed and assigned as a Confirmed Agreement under these Contract Procedures, a Designated Agreement is not subject to rejection under section 365 of the Bankruptcy Code.

(i)     <u>Assurance Package</u>. Each Bid submitted by a Potential Bidder shall identify contracts and leases to be assigned, and the Purchaser and each Qualified Bidder shall submit to the Debtors and the Examiner evidence of their ability to provide adequate assurance of future performance on the Designated Agreements (the "<u>Adequate Assurance Package</u>") on or before January 15, 2010. Upon written request to the Debtors' counsel by a Non-Debtor Party to a Designated Agreement, the Debtors will provide to such party any Adequate Assurance Package provided by the Successful Bidder.

(j)    <u>Cure Payments</u>. Except as otherwise provided in this Order, or as may be agreed to by the parties to a Designated Agreement, the defaults under the Designated Agreements that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Successful Bidder shall pay all Cure Costs relating to an assumed executory contract or unexpired lease within ten days after the later of (i) the Closing Date or (ii) with respect to Disputed Cure Costs, the date the amount thereof is finally determined.

(k)    <u>Rights Pending Assumption or Rejection</u>. Nothing in these Contract Procedures limits, restricts or expands the rights of parties to executory contracts and unexpired leases pending assumption or rejection, including any rights to seek further relief from the Bankruptcy Court (including motions to compel a prompt final decision on assumption or rejection), or the rights of other parties in response to such requests.

(l)    <u>Filing of Final List of Confirmed Agreements</u>. On or before the Pre-Closing Deadline, the Debtors shall file with the Court a final schedule indicating all Confirmed Agreements and the proposed Cure Costs relating to each Confirmed Agreement scheduled therein.

18.    Subject to the Debtors' rights under the Purchase Agreement, the Debtors are authorized to and directed to enter into the Purchase Agreement and comply with their obligations and undertakings pursuant to the Purchase Agreement, including, without limitation, the payment of the Break-Up Fee when and if payable pursuant to the Purchase Agreement.

19.    Unless otherwise expressly set forth herein, all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     The Debtors are authorized and empowered to take such steps as may be necessary to implement and effect the terms and requirements established and relief granted in this Order.

22.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

23.     In the event that (i) any Case shall be converted to a case under chapter 7 of the Bankruptcy Code, (ii) the Bankruptcy Court shall enter an order appointing an interim or permanent trustee in any Case, a responsible officer (other than a professional person employed by the Debtors' restructuring advisor, who may be appointed as a responsible officer in the Cases) or examiner with powers beyond the duty to investigate and report, as set forth in section 1106(a)(3) and (4) of the Bankruptcy Code, or (iii) the venue of any of the Cases shall be transferred to any court other than the Bankruptcy Court for the Southern District of Florida, this Order shall be binding upon the applicable United States Bankruptcy Court or trustee, responsible officer or examiner.

24.     In the event that any Nevada Sales Tax Liabilities (as defined in the Purchase Agreement) are assessed against the Debtors and a proof of claim is filed in the Cases with respect thereto (whether by a taxing authority or a person asserting rights of contribution or indemnity against the Debtors), any person or entity seeking to commence any action to enforce or collect such tax liabilities or related claims, whether against the estate, any asset of the estate (including, without limitation, any insurance policy that covers the employees, officers or

directors of the Debtors), or any person who is or was a director, officer or employee of any Debtor in such person's capacity as such (a "Specified Individual") or any Specified Individual's assets (any such action, an "NSTL Action"), shall, no less than 30 days prior to commencing such NSTL Action, file notice with the Bankruptcy Court describing the NSTL Action sought to be taken and the persons or entities against whom such NSTL Action will be taken.  For the avoidance of doubt, no NSTL Action may be taken against Purchaser (as defined in the Purchase Agreement) or any of its Affiliates (as defined in the Purchase Agreement) or any of their respective Representatives (as defined in the Purchase Agreement) (collectively, "Purchaser Persons"), or with respect to any Purchased Asset (as defined in the Purchase Agreement) or any other asset, property or right of any Purchaser Person, and nothing in this paragraph 24 shall in any way affect any provision of the Purchase Agreement or the Sale Order relating to the Nevada Sales Tax Liabilities or otherwise affect the scope of the Assumed Liabilities (as defined in the Purchase Agreement) or the Excluded Liabilities (as defined in the Purchase Agreement).

25.    The Sellers (i) shall consult with the Examiner throughout the process of resolving any dispute with respect to Remediation Costs (as defined in the Purchase Agreement) pursuant to Sections 2.5(b) and (c) of the Purchase Agreement and (ii) shall not agree to the resolution of any such dispute or deliver a Seller Closing Election Notice (as defined in the Purchase Agreement) without the consent of the Examiner.

26.    In the event that an Excluded Asset (as defined in the Purchase Agreement) or proceeds thereof is used by the Debtors to repay Loans (as defined in the DIP Facility) pursuant to Section 2.07 of the DIP Facility: (a) from and after such repayment until the consummation of the Sale (as defined in the DIP Facility), if ever, any person holding any interest in such Excluded Asset shall be automatically granted a replacement lien on the Collateral (as defined in

the DIP Order) that is senior to all of the Primed Liens (as defined in the DIP Order) but junior in all respects to the liens of the DIP Agent (as defined in the DIP Order) for the benefit of the DIP Secured Parties (as defined in the DIP Order) pursuant to the DIP Order and the other DIP Documents (as defined in the DIP Order) and (b) any right, title or interest of any person in such Excluded Asset or the proceeds thereof shall automatically attach to the proceeds of the Sale, when received by the Debtors, relating to such Excluded Asset pursuant to clause (vi) of the definition of Closing Cash Payment in the Purchase Agreement. Any such right, title or interest in such proceeds of the Sale shall have the same extent, validity, and priority as such right title and interest existed in the related Excluded Asset.

### ###

Submitted by:

Scott L. Baena (Florida Bar No. 186445)
Bilzin Sumberg Baena Price & Axelrod LLP
200 S. Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

Copies to:
Scott L. Baena
*(Attorney Baena shall upon receipt cause a copy of this Order to be served upon all interested parties and a certificate of service to be filed.)*

MIAMI 2000950.3 7650831950

**EXHIBIT A**

**[Bidding Procedures]**

## BIDDING PROCEDURES[1]

By a motion dated November 16, 2009 (as modified, amended, or supplemented, the "Motion") (Dkt. No. 993), Fontainebleau Las Vegas Holdings, LLC (the "Company"), Fontainebleau Las Vegas LLC, and Fontainebleau Las Vegas Capital Corp., as debtors and debtors in possession (collectively, the "Debtors") sought, among other things, approval of the procedures for the sale of substantially all of the Purchased Assets (as defined below). On November 24, 2009, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered its order (the "Sale Procedures Order"), authorizing the Debtors to market the Purchased Assets that they own through the bidding procedures described below (the "Bidding Procedures"), among other things. It is expected that by December 3, 2009, the Bankruptcy Court will enter an order authorizing three of the Debtors' affiliates, Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC and Fontainebleau Las Vegas Retail, LLC, to market the Purchased Assets that they own, if any, through bidding procedures identical to those described below. As part of the Bidding Procedures, the Bankruptcy Court has scheduled a hearing to consider approval of the sale of the Purchased Assets to the Successful Bidder (as defined below), to be conducted on January 27, 2010, at 10:00 a.m. Eastern Time, in Room 1410 at the Bankruptcy Court, Claude Pepper Federal Building, 51 SW 1st Avenue, Miami, Florida 33130 (the "Sale Hearing").

Pursuant to the Order Appointing Examiner to Examine, Negotiate and Supervise § 363 Sale of Assets (the "Examiner Order"), entered by the Bankruptcy Court in the Cases on October 14, 2009 (Dkt. No. 770), the Bankruptcy Court ordered the United States Trustee to appoint an examiner to administer the sale of the Debtors' assets pursuant to the procedures described herein. The United States Trustee has appointed Jeffrey Truitt as such examiner (the "Examiner").

## I.    Stalking Horse Bid

The Asset Purchase Agreement by and among Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC and Fontainebleau Las Vegas Retail, LLC as Sellers (collectively, the "Sellers") and Icahn Nevada Gaming Acquisition LLC, as Purchaser (the "Purchaser"), dated as of November 23, 2009 (collectively with all ancillary documents and agreements, the "Purchase Agreement"), which contemplates a set of related transactions (collectively, the "Sale Transaction") for the sale of the Purchased Assets to the Purchaser in consideration for the Closing-Related Consideration (as defined in the Purchase Agreement), all subject to the terms and conditions set forth in the Purchase Agreement.

---

[1] Capitalized terms not otherwise defined herein shall have the respective meanings given to them in the Motion and all Exhibits thereto.

## II.     **Important Dates for Potential Competing Bidders**

These Bidding Procedures provide for an opportunity for interested parties to qualify and participate in the Auction (as defined below) and submit competing bids for all or substantially all of the Purchased Assets. In connection with these Bidding Procedures:

(a)     the Debtors and the Examiner shall assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and accept Bids (as defined below) until 5:00 p.m., Pacific Time, on January 15, 2010;

(b)     the Examiner shall conduct an auction (the "Auction") among Qualified Bidders (as defined below) on January 21, 2010 to identify the Successful Bid and Back-Up Bid; and

(c)     the Debtors shall seek authority to sell all or substantially all of the Purchased Assets to the Successful Bidder at the Sale Hearing to be conducted by the Bankruptcy Court on January 27, 2010.

## III.    **Assets to Be Sold**

The Debtors seek to sell substantially all of the Debtors' tangible, intangible and operating assets, defined as the "Purchased Assets" in the Purchase Agreement, including the Designated Agreements (as such term is defined in the Sale Procedures Order) (the "Purchased Assets"). For the avoidance of doubt, the Purchased Assets do not include the Excluded Assets (as defined in the Purchase Agreement).

## IV.    **The Bidding Process**

The Examiner shall: (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Purchased Assets; (b) determine whether any person or entity is a Qualified Bidder; (c) receive and evaluate Bids from Qualified Bidders; and (d) administer the Auction.

Any person or entity who wishes to participate in the bidding process and the Auction must meet the participation requirements for Potential Bidders below and must thereafter submit a Qualified Bid (as defined below) to become a Qualified Bidder. Except as provided by applicable law or court order, neither the Debtors nor the Examiner, the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any person or entity who does not comply with the participation requirements below.

## V.     **Participation Requirements**

To participate in the bidding process and the Auction, each interested person or entity (a "Potential Bidder") must deliver the following documents to the parties described below (the "Participation Materials"):

(a)     an executed confidentiality agreement in form and substance satisfactory to the Examiner;

10322507/V-3

(b)        (i) a statement demonstrating to the Examiner's satisfaction a bona fide interest in purchasing substantially all of the Purchased Assets from the Debtors; or (ii) a statement demonstrating to the Examiner's satisfaction a bona fide interest in purchasing from the Debtors either (x) the Purchased Assets consisting of real property or (y) some or substantially all of the Purchased Assets consisting of personal property;

(c)        written evidence of sufficient funds, a commitment for financing or ability otherwise to consummate a Sale Transaction (such as a current audited financial statement and copies of the Bidder's bank account statements showing available cash), which Sale Transaction may include the purchase from the Debtors of (x) substantially all of the Purchased Assets, (y) the Purchased Assets consisting of real property or (z) some or substantially all of the Purchased Assets consisting of personal property;

(d)        A letter setting forth the identity of the Potential Bidder, the contact information for such Potential Bidder and full disclosure of any of pre-petition or post-petition affiliations that the Potential Bidder has or may have with (i) any of the Debtors, (ii) any of the Debtors' affiliates, (iii) any creditor of any of the Debtors, (iv) any holder of equity securities of any of the Debtors, (v) any of the Debtors' current or former officers, directors or other insiders, and/or (vi) the Examiner; and

(e)        An executed letter acknowledging receipt of a copy of the Bidding Procedures and agreeing to accept and be bound by the provisions contained herein.

The Participation Materials must be transmitted by the Potential Bidder so as to be received no later than 5:00 p.m., Pacific Time, on January 11, 2010 by each of the following parties (the "Participation and Bidding Materials Parties"):

(i)        Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340, Attn:   Scott  L.  Baena,  Esq. (sbaena@bilzin.com), and Jay M. Sakalo, Esq. (jsakalo@bilzin.com), Counsel for the Debtors; and

(ii)        Stutman Treister & Glatt P.C., 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067, Attn: Eve H. Karasik, Esq. (ekarasik@stutman.com), Counsel for the Examiner.

If the Examiner determines that a Potential Bidder has a bona fide interest in the Purchased Assets, or a substantial portion thereof, no later than three business days after the Examiner makes that determination and has received from a Potential Bidder all of the materials required above, and the Examiner will deliver to the Potential Bidder: (a) an electronic copy of the Purchase Agreement; and (b) access information for a confidential electronic data room concerning the Purchased Assets, which shall contain any and all documents furnished by the Debtors to the Purchaser in connection with its due diligence in connection with the Purchase Agreement (the "Data Room").

## VI.    Due Diligence

Until the Bid Deadline (as defined below), the Examiner will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Examiner, in its judgment, determines to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Examiner. The Examiner shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. If the Examiner determines that due diligence material requested by a Potential Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Potential Bidder, the Examiner shall post such materials in the Data Room and provide email notice of such posting to all Potential Bidders, as well as to the Notice Parties (as hereinafter defined), and shall provide such materials to the Purchaser. The Notice Parties shall mean:

(i)    Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340, Attn:  Scott L. Baena, Esq. (sbaena@bilzin.com), and Jay M. Sakalo, Esq. (jsakalo@bilzin.com), Counsel for the Debtors;

(ii)    Stutman Treister & Glatt P.C., 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067, Attn: Eve H. Karasik, Esq. (ekarasik@stutman.com), Counsel for the Examiner;

(iii)    Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of Americas, New York, New York 10020, Attn: Peter D. Wolfson, Esq. (pwolfson@sonnenschein.com) and D. Farrington Yates, Esq. (fyates@sonnenschein.com), Counsel for the Purchaser;

(iv)    Hennigan, Bennett & Dorman, LLP, 865 S. Figueroa Avenue, Los Angeles, California 90017, Attn:  Bruce Bennett, Esq. (bennettb@hbdlawyers.com) and Sidney P. Levinson, Esq. (levinsons@hbdlawyers.com) and Akerman Senterfitt, One Southeast Third Avenue, 25th Floor, Miami, Florida 33131-1714, Attn:  Michael Goldberg, Esq. (michael.goldberg@akerman.com), Co-Counsel for the Term Lender Steering Group;

(v)    Quinn Emanuel Urquhart, Oliver & Hedges, LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, California 90017, Attn: Eric Winston, Esq. (ericwinston@quinnemanuel.com) and Bast Amron LLP, SunTrust International Center, One SE Third Avenue, Suite 1440, Miami, Florida 33131, Attn:  Brett Amron, Esq. (bamron@bastamron.com), Co-Counsel for Aurelius Capital Management, LP.

(vi)    Genovese Joblove & Battista, P.A., 100 Southeast 2nd Street, 44th Floor, Miami, Florida  33131, Attn: Paul Battista, Esq. (pbattista@gjb-law.com) and Fox Rothschild, LLP, Midtown Building, Suite 400, 1301 Atlantic Avenue, Atlantic City, New Jersey 08401, Attn: Michael Viscount, Esq. (mviscount@foxrothschild.com), Co-Counsel for the Official Committee of Unsecured Creditors (the "Committee");

(vii)    Ehrenstein Charbonneau Calderin, 800 Brickell Avenue, Suite 902, Miami, Florida 33131, Attn: Robert Charbonneau, Esq. (rpc@ecclegal.com), Counsel to the Construction Claimants;

(viii)   May, Meacham & Davell, P.A., One Financial Plaza, Suite 2602, Fort Lauderdale, Florida 33394, Attn: Robert Meacham, Esq. (rmeacham@mmdpa.com), Counsel to Lien Claimants;

(ix)    Gordon Silver, 3960 Howard Hughes Pkwy., 9th Floor, Las Vegas, Nevada 89169, Attn: Gregory E. Garman, Esq. (ggarman@gordonsilver.com), and Shraiberg, Ferrara & Landau P.A., 2385 Executive Center Drive, Suite 300, Boca Raton, FL 33431, Attn: Philip J. Landau, Esq.  (plandau@sfl-pa.com), Co-Counsel to the M&M Lienholders;

(x)    Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn: Paul Steven Singerman, Esq. (psingerman@bergersingerman.com), Counsel for Turnberry West Construction, Inc.;

(xi)    Kaye Scholer, LLP, 425 Park Avenue, New York, New York 10022, Attn: Andrew A. Kress, Esq. (akress@kayescholer.com) and Rice Pugatch Robinson & Schiller, P.A., 101 Northeast Third Avenue, Suite 1800, Fort Lauderdale, Florida 33301, Attn: Arthur Halsey Rice, Esq. (arice@rprslaw.com), Co-Counsel to HSH Nordbank, AG, New York Branch;

(xii)    Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., 150 West Flagler Street, Suite 2200, Miami, Florida 33130, Attn: Harold D. Moorefield, Jr., Esq. (hmoorefield@swmwas.com) and Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Kenneth E. Noble, Esq. (kenneth.noble@kattenlaw.com), Co-Counsel to Bank of Scotland;

(xiii)   Tew Cardenas LLP, 1441 Brickell Avenue, 15th Floor, Miami, Florida 33131, Attn: David M. Levine, Esq. (dml@tewlaw.com), Counsel to Fidelity National Title Insurance Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company, Transnation Title Insurance Company, and First American Title Insurance Company;

(xiv)   Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Jeffrey Berman, Esq. (bermanj@sewkis.com) Counsel to Wilmington Trust NSB;

(xv)    Sheppard Mullin, 333 South Hope Street, 48th Floor, Los Angeles, CA 90071, Attn: William Scott, IV, Esq. (bscott@sheppardmullin.com) and Hunton & Williams LLP, 1111 Brickell Avenue, Suite 2500, Miami, FL 33131, Attn: Craig Rasile, Esq. (crasile@hunton.com), Counsel to Bank of America, N.A., and

(xvi)   Squire Sanders Dempsey, 1900 Phillips Point West, 777 South Flagler Drive, West Palm Beach, Florida   33401-6198.   Attn: Tina Talarchyk, Esq., (ttalarchyk@ssd.com),  Counsel to U.S. Bank, N.A.

6

Unless otherwise determined by the Examiner, the availability of additional due diligence to a Potential Bidder will cease on the Bid Deadline. Except as provided above with respect to the copy of the Purchase Agreement provided by the Examiner to the Potential Bidders, and information in the Data Room, neither the Examiner, the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any party.

## VII.   Bid Deadline

A Potential Bidder that desires to make a bid on all or substantially all of the Purchased Assets (a "Bid") shall deliver written and electronic copies of its Bid to the Participation and Bidding Materials Parties so as to be received not later than 5:00 p.m., Pacific Time, on January 15, 2010 (the "Bid Deadline"). For the avoidance of doubt, Bids for either the Purchased Assets consisting of real property or some or substantially all of the Purchased Assets consisting of personal property will only be considered if the Examiner receives a combination of Bids that that together would constitute a bid for all or substantially all of the Purchased Assets.

## VIII.   Bid Requirements

To participate in the Auction, if any, a Qualified Bidder must deliver to the Examiner a written offer, which must provide, at a minimum, the items noted below to be deemed a "Qualified Bid":

(a)     An executed purchase agreement (a "Marked Agreement") in substantially the same form as the Purchase Agreement, pursuant to which the Potential Bidder (i) offers to purchase all or substantially all of the Purchased Assets from the Debtors or (ii) offers to Purchase from the Debtors (x) the Purchased Assets consisting of real property or (y) some or substantially all of the Purchased Assets consisting of personal property (any Bid of the type described in this clause (ii), a "Partial Assets Bid"). Such Marked Agreement shall not contain any conditions to closing based on the ability of the Bidder to obtain financing, the outcome of unperformed due diligence by the Bidder or any other conditions other than those set forth in the Purchase Agreement.  The Bidder shall also provide a marked copy of the Marked Agreement showing any changes to the Purchase Agreement, including changes to reflect the name of the potential bidder and the amount of such Potential Bidder's Bid.

(b)     Subject to the second succeeding paragraph relating to Partial Assets Bids, the purchase price in such Bid is a higher or better offer for the Purchased Assets as compared to the offer of the Purchaser. An offer shall not be considered a higher or better offer unless (x) such Bid provides for net consideration (on a risk-adjusted basis) to the Debtors' estates of at least $1,000,000.00 more than the Bid provided by the Purchaser in the Purchase Agreement, inclusive of the Credit Bid (as defined below) and the amount of the Break Up Fee (such amount, the "Minimum Overbid Amount") and (y) such Bid includes cash consideration paid at the closing of the Sale Transaction at least equal to (i) the Break-Up Fee (as defined in the Purchase Agreement) plus (ii) an amount equal to 105% of the amounts projected, pursuant to the Agreed Budget (as defined in the DIP Facility) to be outstanding pursuant to the DIP Facility

7

at the Stated Maturity Date (as defined in the DIP Facility), plus (without duplication) all other Obligations (including the Exit Fee) projected to be outstanding at the Stated Maturity Date.

(c)    A deposit of cash or cash equivalents in the amount equal to at least $2,500,000 (the "Deposit"). The Deposit shall be tendered by cashier's check and/or wire transfer into a segregated bank account established by Debtors' counsel. A Potential Bidder shall forfeit its Deposit if it is the Successful Bidder or Back-Up Bidder (as defined below) and (i) modifies or withdraws its Bid without the Examiner's consent before the consummation of the Sale Transaction with such Potential Bidder or (ii) breaches the terms of the agreement pursuant to which the Bidder has agreed to purchase the Purchased Assets or a portion thereof. A Potential Bidder's Deposit shall be returned (i) if such Potential Bidder is determined by the Examiner not to be a Qualified Bidder, promptly upon the making of such determination, (ii) if such Potential Bidder is not the Successful Bidder or the Back-Up Bidder, promptly after the conclusion of the Auction, (iii) if such Potential Bidder is the Back-Up Bidder and the Sale Transaction is consummated with the Successful Bidder, promptly upon the consummation of the Sale Transaction with the Successful Bidder or (iv) if such Potential Bidder is the Successful Bidder or the Back-Up Bidder and the asset purchase agreement into which it and the Debtors have entered is terminated in circumstances that would give rise to payment of the Break-Up Fee pursuant to section 8.3(a) of the Purchase Agreement, without giving effect to the proviso in clause (y)(ii) thereof, promptly upon such termination;

(d)    The Bid is received by the Examiner by the Bid Deadline;

(e)    The Bid does not entitle the Potential Bidder to any break-up fee, termination fee or similar type of payment or reimbursement;

(f)    A statement that the Bid is irrevocable and binding until the closing of the sale of the Purchased Assets if the applicable bidder is the Successful Bidder or the Back-Up Bidder;

(g)    Evidence satisfactory to the Examiner of the Potential Bidder's (i) financial ability to close the Sale Transactions described in its Marked Agreement, which may include the most recent audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring some or all of the Purchased Assets, current audited financial statements of the equity holder(s) of the Potential Bidder, and such other financial disclosure acceptable to, and requested by, the Examiner, and (ii) ability to consummate such Sale Transaction on or prior to the date contemplated by and on terms and conditions no less favorable to the Debtors than those set forth in the Purchase Agreement; and

(h)    The Bid is accompanied by a list of any executory contracts and unexpired leases that are to be assumed and/or assigned under such Bid and a demonstration of the Potential Bidder's commitment, subject to the terms of the Purchase Agreement, to pay Cure Costs and provide adequate assurance of future performance under any such executory contracts or unexpired leases to be assumed and/or assigned pursuant to such Bid.

A Potential Bidder shall accompany its Bid with: (i) written evidence of available cash or a commitment for financing necessary to consummate its obligations pursuant to its Bid if selected as the Successful Bidder and such other evidence of ability to consummate the Sale Transaction as the Examiner may reasonably request; (ii) a copy of a board resolution or similar

document demonstrating the authority of the Potential Bidder to make a binding and irrevocable Bid on the terms proposed; and (iii) any pertinent factual information regarding the Potential Bidder's operations that would assist the Examiner in its analysis of issues arising with respect to any applicable antitrust laws or other aspects of the Bid.

Notwithstanding anything to the contrary set forth herein, a Partial Assets Bid shall not be considered a Qualified Bid unless (i) such Partial Assets Bid complies with all of the requirements of a Qualified Bid set forth herein (except that a Partial Assets Bid shall be deemed to satisfy clause (b) above if such Bid, when combined with other Partial Assets Bid(s) for the remaining portion of the Purchased Assets, would constitute a bid that satisfies the conditions set forth in clause (b)) and (ii) the Examiner receives other Partial Assets Bid(s) that when combined such Partial Assets Bid, represents a bid for all or substantially all of the Purchased Assets.

The Purchaser's Bid includes a credit bid (the "Credit Bid") described in clause (iii) of the definition of "Closing-Related Consideration" in the Purchase Agreement. The Credit Bid shall be valued, for all purposes hereof, as an amount (the "Credit Bid Amount") equal to (a) the aggregate amount of Obligations (as defined in the DIP Facility) outstanding as of the date of the Auction (which Obligations, for the avoidance of doubt, include the Exit Fee (as defined in the DIP Facility)), plus (b) the aggregate additional amount of Obligations projected to be outstanding under the DIP Facility on the Stated Maturity Date, after giving effect to the deemed amendment of the Agreed Budget by the Budget Amendment (as defined below). At least five (5) Business Days prior to the date of the Auction, the Sellers shall deliver to the Purchaser and the Examiner a revision of the Agreed Budget (the "Budget Amendment") reflecting their projection of the amounts of Loans to be incurred and that shall be outstanding from the date of the Auction through the Stated Maturity Date. The Budget Amendment shall in no circumstances (i) cause the principal amount of Loans projected by the Agreed Budget (after giving effect to the Budget Amendment) to be incurred and outstanding between the date of the Auction and the Stated Maturity Date to exceed 105% of the Loans contemplated by the Agreed Budget (without giving effect to the Budget Amendment) to be incurred and outstanding during such period, (ii) result in the aggregate principal amount of Loans outstanding as of the close of business on Friday of any week during such period to exceed the product of (x) 105% and (y) the projected aggregate principal amount of Loans outstanding set forth in the Agreed Budget (without giving effect to the Budget Amendment) for such date, (iii) reduce the projected amount of cash disbursements set forth in the Agreed Budget (without giving effect to the Budget Amendment) with respect to project stabilization, security, repairs, service contracts for preventative maintenance and fire inspection and prevention or (iv) reduce the amount of interest or fees projected to be payable to the lenders under the DIP Facility to an amount that is less than is reasonably likely to accrue and/or be payable during such period.

Subject to satisfaction of the requirements set forth above, a Bid (other than the Purchaser's Bid) that includes a credit bid as a portion of the purchase price shall be considered to be a Qualified Bid only if a court of competent jurisdiction has, as of the date of the submission of such Bid to the Examiner, entered a final, non-appealable order, determining the validity, priority, and extent of the claims and liens that form the underlying basis of the credit bid; provided, that the Examiner shall have the sole and absolute discretion to establish additional conditions in order for a Bid (other than the Purchaser's Bid) that includes a credit bid to be considered a Qualified Bid.

A Bid received from a Potential Bidder will be considered a "Qualified Bid" only if it meets the above requirements. Each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder."  For purposes hereof and notwithstanding anything to the contrary provided herein, the Purchaser is a Qualified Bidder and the Purchase Agreement executed by the Purchaser and the Bid contained therein is a Qualified Bid; provided, however, that the Purchaser makes the Deposit within one (1) business day following the entry of the Sale Procedures Order. The Purchaser's Deposit shall be returned to the Purchaser (i) if the Purchaser not the Successful Bidder or Back-Up Bidder, promptly after the conclusion of the Auction, (ii) if the Purchaser is the Back-Up Bidder and the Sale Transaction is consummated with the Successful Bidder, promptly upon the consummation of the Sale Transaction with the Successful Bidder or (iii) if the Purchaser is the Successful Bidder and the Purchase Agreement is terminated in circumstances that would give rise to payment of the Break-Up Fee pursuant to section 8.3(a) of the Purchase Agreement, without giving effect to the proviso in clause (y)(ii) thereof, promptly upon such termination.

A Qualified Bid will be valued based upon the following factors: (a) the purported amount of the Qualified Bid, including any benefit to the Debtors' bankruptcy estates from any assumption of liabilities of the Debtors; (b) the ability to close the proposed Sale Transaction without delay and within the time frames contemplated by the Purchase Agreement; (c) the ability to obtain all necessary antitrust or other regulatory approvals for the proposed transaction; and (d) any other factors the Examiner may deem relevant.

As soon as reasonably practicable following the Bid Deadline but in no event later than 5:00 p.m. Pacific time on January 16, 2010, the Examiner shall distribute a copy of each Bid received by the Bid Deadline to the Notice Parties by e-mail, hand delivery or overnight courier.

By 5:00 p.m. Pacific time on January 19, 2010, the Examiner shall (a) notify the Notice Parties of which Bids, if any, it has determined are Qualified Bids and (b) shall provide copies of such Qualified Bids to each of the other Qualified Bidders. Any disputes as to whether a Potential Bidder is a Qualified Bidder shall be resolved by the Bankruptcy Court prior to the Auction.

The Examiner reserves the right to reject any Bid if such Bid:

(i)     is on terms that are materially more burdensome or conditional than the terms of the Purchase Agreement;

(ii)     requires any indemnification of such Qualified Bidder on terms that are materially more burdensome than the terms of the Purchase Agreement; or

(iii)     includes a noncash instrument or similar consideration that is not freely marketable.

Any Bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid.

10

## IX.    The Auction

In the event that the Examiner receives one or more Qualified Bids (other than the Bid of the Purchaser), the Examiner will hold an auction (the "Auction") on January 21, 2010, commencing at 9:00 a.m. Eastern time at the offices of Bilzin Sumberg Baena Price & Axelrod LLP at 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340, for consideration of the Qualified Bids, each as may be increased at such Auction. Bidding will start at the highest Qualified Bid and will continue with minimum bid increments of $1,000,000, subject to the right of the Purchaser to credit the Break-Up Fee and the Credit Bid to its bid at each round of bidding.  At the beginning of the Auction, Examiner will disclose which Qualified Bidders have informed the Examiner of their intent to participate in the Auction.  The Auction may be adjourned as the Examiner deems appropriate. Reasonable notice of such adjournment and the time and place for resumption of the Auction shall be given to all entities that submitted a Qualified Bid.

The Auction shall run in accordance with the following procedures:

(a)    Only the Examiner, the Sellers, representatives of the creditor constituencies of the Sellers, the Purchaser and any other Qualified Bidder that has timely submitted a Qualified Bid, in each case along with their representatives, shall attend the Auction in person, and only the Purchaser and such other Qualified Bidders will be entitled to make any subsequent bids at the Auction.

(b)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale by the Debtors of the Purchased Assets; provided, however, that any Qualified Bidder that submits a Partial Assets Bid shall be permitted to work with other Qualified Bidders to submit a joint bid for all or substantially all of the Purchased Assets.

(c)    By 12:00 p.m. (Noon) Eastern time on January 20, 2010, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Examiner whether it intends to attend the Auction; provided that, in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back-Up Bidder at the conclusion of the Auction.  By 12:00 p.m. (Noon) Eastern time on January 20, 2010, the Examiner will notify the Purchaser and all Qualified Bidders of which Qualified Bid the Examiner believes, in its reasonable judgment, is the highest or best offer (the "Starting Bid").

(d)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e)     At the Auction, the Examiner may employ and announce additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or any other applicable court entered in connection herewith and (ii) disclosed to each Qualified Bidder at the Auction.

(f)     Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent Bid or combination of Bids is submitted by a Qualified Bidder(s) that (i) improves upon such Qualified Bidder's or Qualified Bidders' immediately prior Qualified Bid (such Bid or combination of Bids, a "Subsequent Bid") and (ii) the Examiner determines that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental Bid or combination of Bids at the Auction shall provide net value to the estate of at least U.S.$1,000,000 over the Starting Bid or the Leading Bid, as the case may be. After the first round of bidding and between each subsequent round of bidding, the Examiner shall announce the Bid or combination of Bids that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. For the avoidance of doubt, in evaluating the value of any Bid by the Purchaser, the Examiner shall include the amount of the Break-Up Fee and the Credit Bid in such Bid.

## X.     **The Successful Bid**

Immediately at the conclusion of the Auction, the Examiner shall (a) determine, consistent with the Bidding Procedures, which Bid(s) constitute the highest or best Bid(s) (such Bid, the "Successful Bid") and (b) communicate to the Debtors, the Purchaser, the Notice Parties and the other Qualified Bidders the identity of the Successful Bidder(s) and the details of the Successful Bid(s). If no Qualified Bids are received other than the Purchase Agreement, the Purchase Agreement shall be designated as the Successful Bid, and there shall be no Auction. The bidder(s) making the Successful Bid(s) is referred to as the "Successful Bidder." The determination of the Successful Bid by the Examiner at the conclusion of the Auction shall be final subject to approval by the Bankruptcy Court.

## XI.    **The Back-Up Bid**

After determining which Qualified Bid or combination of Qualified Bids is the Successful Bid(s), the Examiner shall (a) determine which of the Qualified Bid or combination of Qualified Bids constitutes the next highest or best Qualified Bid(s) for the Purchased Assets and (b) communicate to the Debtors, the Purchaser, the other Qualified Bidders, and the other Notice Parties the identity of such Qualified Bidder(s) (a "Potential Back-Up Bidder(s)") and the details of such Qualified Bid(s) (a "Potential Back-Up Bid(s)").

In the event that the Potential Back-Up Bidder(s) agrees that (a) its/their Back-Up Bid(s) will remain irrevocable and (b) the Debtors may retain its/their Deposit, until the closing and effectiveness of the Sale Transactions, then such Potential Back-Up Bidder(s) shall be

considered the "Back-Up Bidder(s)" and its/their Potential Back-Up Bid(s) shall be considered the "Back-Up Bid(s)". In the event of the failure by the Successful Bidder(s) to timely consummate the Sale Transaction, the Back-up Bidder(s) shall be deemed the Successful Bidder(s) without further order of the Court, and shall proceed to close the transactions contemplated by its/their Bid(s) no later than three (3) business days following the Examiner's tender of a notice to the Back-up Bidder(s), unless otherwise ordered by the Bankruptcy Court.

The Debtors shall be entitled to the Deposit of any Successful Bidder in circumstances described in the third sentence clause (c) of Section VIII above, and in such circumstances, such Deposit shall be deemed forfeited by such defaulting Successful Bidder, and shall not be credited against the purchase price for the benefit of any Back-up Bidder. Similarly, in the event that any Back-up Bidder in circumstances described in the third sentence clause (c) of Section VIII above, the Debtors shall be entitled to the Deposit of said party, and such Deposit shall be deemed forfeited. The Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder and/or Back-up Bidder as the case may be.

If the Qualified Bidder(s) initially identified as the Potential Back-Up Bidder(s) do/es not agree to become the Back-Up Bidder(s), then such Potential Back-Up Bidder(s) shall be entitled to its/their Deposit(s) and the Examiner (and the Bankruptcy Court, to the extent there is a dispute), may identify the next highest or otherwise best Bid(s) as the Potential Back-Up Bid(s), and may continue to do so until Potential Back-Up Bidder(s) agree to become the Back-Up Bidder(s).

## XII.    **The Sale Hearing**

The Successful Bid will be presented to the Bankruptcy Court for approval at the Sale Hearing. If no other Qualified Bid is received by the Examiner, and the Purchaser's original Purchase Agreement is the Successful Bid, then the Debtors will seek entry of an order at the Sale Hearing authorizing and approving the Sale Transaction, including the sale of the Purchased Assets to the Purchaser, pursuant to the terms and conditions set forth in the Purchase Agreement. If a different Bid is the Successful Bid, then the Debtors anticipate that they will seek the entry of an order, modified as necessary to reflect the terms of the Successful Bid, authorizing and approving the sale of the applicable Purchased Assets to the Successful Bidder. The Sale Hearing may be adjourned or rescheduled without notice, other than by an announcement of such adjournment at the Sale Hearing.

Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on all matters relating to the proposed sale, and parties shall be prepared to present their evidence in support of or in opposition to the proposed sale at the Sale Hearing; *provided*, however, that issues relating to the assumption and assignment of executory contracts and unexpired leases shall be addressed on the schedule established by the Contract Procedures (as defined in the Sale Procedures Order).

## XIII.    **"As Is, Where Is"**

The Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Examiner, the Debtors, their agents or their estates, except to the extent expressly set forth in the Purchase Agreement or the Marked

10322507/V-3

Agreement corresponding to the Successful Bid, as the case may be. Except as otherwise provided in the Successful Bid or such other Bid that may ultimately be consummated for the sale of the Purchased Assets or a substantial portion thereof, all of the Debtors' right, title and interest in and to the Purchased Assets shall be sold free and clear of all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities, leasehold interests and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to the Successful Bidder, all as more specifically set forth and defined in the Sale Motion and the proposed order approving the Sale Transaction (as so defined therein, "Claims") as set forth in the Purchase Agreement and the Sale Order, with such Claims to attach to the net proceeds of the sale with the same validity and priority as such Claims applied against the Purchased Assets.

## XIV.  **Bankruptcy Court Jurisdiction**

Any and all disputes related or pertaining to or resulting or arising from the Bid Procedures, the Auction, the Sale Transaction, the conduct of Examiner, and/or the conduct of the Debtors,  in connection therewith shall be adjudicated solely by the Bankruptcy Court.  The submission of a Bid shall constitute an express consent by the Bidder to the exclusive jurisdiction of the Bankruptcy Court for all such matters.

10322507/V-3

**EXHIBIT B**

**[Form of Sale Notice]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FONTAINEBLEAU LAS VEGAS | ) | |
| HOLDINGS, LLC, et al.,[1] | ) | Case No. 09-21481-BKC-AJC |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF PROPOSED SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS, FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES AND SCHEDULING
FINAL SALE HEARING RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On June 9, 2009 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). On November 16, 2009, the Debtors filed a motion (the "Sale Motion") with the Bankruptcy Court seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims, interests and encumbrances (the "Sale Transaction"); (b) approval of certain procedures (the "Bidding Procedures") for the solicitation of bids with respect to the Sale Transaction; (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the Sale Transaction; and (d) scheduling of a final hearing with the Bankruptcy Court for approval of the Sale Transaction (the "Sale Hearing").

2.      The Asset Purchase Agreement by and among Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC and Fontainebleau Las Vegas Retail, LLC as Sellers (collectively, the "Sellers") and Icahn Nevada Gaming Acquisition LLC, as Purchaser (the "Purchaser"), dated as of November 23, 2009 (collectively with all ancillary documents and agreements, the "Purchase Agreement"), contemplates a set of related transactions for the sale of the Purchased Assets (as defined in the Purchase Agreement) to the Purchaser, subject to higher or better offers made pursuant to the Bidding Procedures.

---

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

3.      A hearing on the Sale Motion was held before the Bankruptcy Court on November 23, 2009, after which the Bankruptcy Court entered an order, among other things, approving the Bidding Procedures set forth in the Sale Motion (the "Sale Procedures Order") (DE# 1049).

4.      Copies of the Sale Procedures Order and the Bidding Procedures (attached to the Sale Procedures Order as Exhibit A) are attached hereto as Annex 1. The Sale Procedures Order establishes the Bidding Procedures that govern the manner in which the Purchased Assets are to be sold. All bids must comply with the Bidding Procedures and be submitted so as to be received not later than 5:00 p.m., Pacific Time, on January 15, 2010.

5.      The Sale Hearing currently is scheduled to be conducted on January 27, 2010 at 10:00 a.m. (Eastern Time) at the United States Bankruptcy Court for the Southern District of Florida, Claude Pepper Federal Building, 51 SW 1st Avenue, Room 1410, Miami, Florida 33130, before the Honorable A. Jay Cristol, United States Bankruptcy Judge, to consider the approval of the Purchase Agreement or any higher or better offer by a Successful Bidder (as defined in the Bidding Procedures). If the Purchaser is the Successful Bidder, the Debtors anticipate seeking entry of a Sale Order on the terms described in the Sale Procedures Order and the Purchase Agreement (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

6.      A copy of the Sale Procedures Order (including the Bidding Procedures), the Sale Motion, the Purchase Agreement (without certain commercially sensitive attachments) and the proposed Sale Order may be obtained at www.kccllc.net/fblv.

7.      **OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES TO THE PURCHASER OR ANOTHER SUCCESSFUL BIDDER (EACH, AN "OBJECTION"), MUST BE MADE IN WRITING, FILED WITH THE BANKRUPTCY COURT, AND SERVED SO AS TO BE ACTUALLY RECEIVED BY 4:00 P.M. (EASTERN TIME) ON JANUARY 15, 2010; PROVIDED, HOWEVER, THAT IF A DETERMINATION IS MADE AT THE SALE HEARING THAT THE SUCCESSFUL BIDDER IS A BIDDER OTHER THAN THE PURCHASER, PARTIES IN INTEREST MAY OBJECT SOLELY TO SUCH DETERMINATION AT THE SALE HEARING.**

8.      **ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH PARAGRAPH 7 ABOVE ON EACH OF THE FOLLOWING PARTIES:**

(i)      Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340, Attn:  Scott L. Baena, Esq. (sbaena@bilzin.com), and Jay M. Sakalo, Esq. (jsakalo@bilzin.com), Counsel for the Debtors;

(ii)      Stutman Treister & Glatt P.C., 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067, Attn: Eve H. Karasik, Esq. (ekarasik@stutman.com), Counsel for the Examiner;

(iii)    Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of Americas, New York, New York 10020, Attn: Peter D. Wolfson, Esq. (pwolfson@sonnenschein.com) and D. Farrington Yates, Esq. (fyates@sonnenschein.com), Counsel for the Purchaser;

(iv)    Hennigan, Bennett & Dorman, LLP, 865 S. Figueroa Avenue, Los Angeles, California 90017, Attn:  Bruce Bennett, Esq. (bennettb@hbdlawyers.com) and Sidney P. Levinson, Esq. (levinsons@hbdlawyers.com) and Akerman Senterfitt, One Southeast Third Avenue, 25th Floor, Miami, Florida 33131-1714, Attn:  Michael Goldberg, Esq. (michael.goldberg@akerman.com), Co-Counsel for the Term Lender Steering Group;

(v)    Quinn Emanuel Urquhart, Oliver & Hedges, LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, California 90017, Attn: Eric Winston, Esq. (ericwinston@quinnemanuel.com) and Bast Amron LLP, SunTrust International Center, One SE Third Avenue, Suite 1440, Miami, Florida 33131, Attn:  Brett Amron, Esq. (bamron@bastamron.com), Co-Counsel for Aurelius Capital Management, LP;

(vi)    Genovese Joblove & Battista, P.A., 100 Southeast 2nd Street, 44th Floor, Miami, Florida  33131, Attn: Paul Battista, Esq. (pbattista@gjb-law.com) and Fox Rothschild, LLP, Midtown Building, Suite 400, 1301 Atlantic Avenue, Atlantic City, New Jersey 08401, Attn: Michael Viscount, Esq. (mviscount@foxrothschild.com), Co-Counsel for the Official Committee of Unsecured Creditors (the "Committee");

(vii)    Tew Cardenas LLP, 1441 Brickell Avenue, 15th Floor, Miami, Florida  33131, Attn: David M. Levine, Esq. (dml@tewlaw.com), Counsel to Fidelity National Title Insurance Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company, Transnation Title Insurance Company, and First American Title Insurance Company

(viii)    Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Jeffrey Berman, Esq. (bermanj@sewkis.com), Counsel to Wilmington Trust NSB;

(ix)    Sheppard Mullin, 333 South Hope Street, 48th Floor, Los Angeles, CA 90071, Attn: William Scott, IV, Esq. (bscott@sheppardmullin.com) and Hunton & Williams LLP, 1111 Brickell Avenue, Suite 2500, Miami, FL 33131, Attn: Craig Rasile, Esq. (crasile@hunton.com), Counsel to Bank of America, N.A.; and

(x)    Squire Sanders Dempsey, 1900 Phillips Point West, 777 South Flagler Drive, West Palm Beach, Florida  33401-6198, Attn: Tina Talarchyk, Esq., (ttalarchyk@ssd.com), Counsel to U.S. Bank, N.A.

9.    The Sale Order, if approved, shall authorize the assumption and assignment of various executory contracts and unexpired leases that are the property of the Debtors (collectively, the "Designated Agreements"). In accordance with the Sale Procedures Order, additional individual notices setting forth the specific Designated Agreements (or groups thereof) to be assumed by the Debtors and assigned to the Purchaser and the proposed cure amounts for such contracts will be given to all counterparties to Designated Agreements.

10.     The failure of any person or entity to file an Objection on or before the applicable Objection Deadline shall be deemed a consent to the Sale Transaction contemplating the sale of the Purchased Assets to the Purchaser or another Successful Bidder and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bidding Procedures, the Sale Motion, the Auction, the sale of the Purchased Assets, the Debtors' consummation and performance of the Purchase Agreement or other agreement with a different Successful Bidder (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all liens, claims and encumbrances).

12.     This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order, the Bidding Procedures and the Purchase Agreement, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: **November 24, 2009**

BY ORDER OF THE COURT

## <u>ANNEX 1</u>

**[Bidding Procedures Order with Exhibits B through E thereto intentionally omitted]**

**EXHIBIT C**
**[Form of Publication Notice]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FONTAINEBLEAU LAS VEGAS | ) | |
| HOLDINGS, LLC, et al.,[1] | ) | Case No. 09-21481-BKC-AJC |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES AND SCHEDULING FINAL SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On June 9, 2009 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). On May 3, 2009, the Debtors filed a motion with the Bankruptcy Court (the "Sale Motion") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims, interests and encumbrances (the "Sale Transaction"); (b) approval of certain procedures (the "Bidding Procedures") for the solicitation of bids with respect to the Sale Transaction; (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the Sale Transaction; and (d) scheduling of a final hearing with the Bankruptcy Court for approval of the Sale Transaction (the "Sale Hearing").

2.      The Asset Purchase Agreement by and among Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC and Fontainebleau Las Vegas Retail, LLC as Sellers (collectively, the "Sellers") and Icahn Nevada Gaming Acquisition LLC, as Purchaser (the "Purchaser"), dated as of November 23, 2009 (collectively with all ancillary documents and agreements, the "Purchase Agreement"), contemplates a set of related transactions for the sale of the Purchased Assets (as defined in the Purchase Agreement) to the Purchaser, subject to higher or better offers made pursuant to the Bidding Procedures.

---

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtor's current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

3.     A hearing on the Bidding Procedures was held before the Bankruptcy Court on November 23, 2009, after which the Bankruptcy Court entered an order, among other things, approving the Bidding Procedures Relief [Docket No. 1049] (the "Sale Procedures Order"). The Sale Procedures Order establishes the Bidding Procedures that govern the manner in which the Purchased Assets are to be sold. All bids must comply with the Bidding Procedures and be submitted so as to be received not later than 5:00 p.m., Pacific Time, on January 15, 2010.

4.     The Sale Hearing currently is scheduled to be conducted on January 27, 2010 at 10:00 a.m. (Eastern Time) at the United States Bankruptcy Court for the Southern District of Florida, Claude Pepper Federal Building, 51 SW 1st Avenue, Room 1410, Miami, Florida 33130, before the Honorable A. Jay Cristol, United States Bankruptcy Judge, to consider the approval of the Purchase Agreement or any higher or better offer by a Successful Bidder (as defined in the Bidding Procedures). If the Purchaser is the Successful Bidder, the Debtors anticipate seeking entry of a Sale Order, on the terms described in the Sale Procedures Order and the Purchase Agreement (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

5.     A copy of the Sale Procedures Order (including the Bidding Procedures), the Sale Motion and the Purchase Agreement (without certain commercially sensitive attachments) may be obtained at www.kccllc.net/fblv.

6.     **OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES TO THE PURCHASER OR ANOTHER SUCCESSFUL BIDDER (EACH, AN "OBJECTION"), MUST BE MADE IN WRITING, FILED WITH THE BANKRUPTCY COURT, AND SERVED SO AS TO BE ACTUALLY RECEIVED BY 4:00 P.M. (EASTERN TIME) ON JANUARY 15, 2010; PROVIDED, HOWEVER, THAT IF A DETERMINATION IS MADE AT THE SALE HEARING THAT THE SUCCESSFUL BIDDER IS A BIDDER OTHER THAN THE PURCHASER, PARTIES IN INTEREST MAY OBJECT SOLELY TO SUCH DETERMINATION AT THE SALE HEARING.**

7.     **ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH PARAGRAPH 6 ABOVE ON EACH OF THE FOLLOWING PARTIES:**

(i)     Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340, Attn:  Scott L. Baena, Esq. (sbaena@bilzin.com), and Jay M. Sakalo, Esq. (jsakalo@bilzin.com), Counsel for the Debtors;

(ii)     Stutman Treister & Glatt P.C., 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067, Attn: Eve H. Karasik, Esq. (ekarasik@stutman.com), Counsel for the Examiner;

(iii)    Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of Americas, New York, New York 10020, Attn: Peter D. Wolfson, Esq. (pwolfson@sonnenschein.com) and D. Farrington Yates, Esq. (fyates@sonnenschein.com), Counsel for the Purchaser;

(iv)    Hennigan, Bennett & Dorman, LLP, 865 S. Figueroa Avenue, Los Angeles, California 90017, Attn:  Bruce Bennett, Esq. (bennettb@hbdlawyers.com) and Sidney P. Levinson, Esq. (levinsons@hbdlawyers.com) and Akerman Senterfitt, One Southeast Third Avenue, 25th Floor, Miami, Florida 33131-1714, Attn:  Michael Goldberg, Esq. (michael.goldberg@akerman.com), Co-Counsel for the Term Lender Steering Group;

(v)    Quinn Emanuel Urquhart, Oliver & Hedges, LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, California 90017, Attn:  Eric Winston, Esq. (ericwinston@quinnemanuel.com) and Bast Amron LLP, SunTrust International Center, One SE Third Avenue, Suite 1440, Miami, Florida 33131, Attn:  Brett Amron, Esq. (bamron@bastamron.com), Co-Counsel for Aurelius Capital Management, LP.

(vi)    Genovese Joblove & Battista, P.A., 100 Southeast 2nd Street, 44th Floor, Miami, Florida  33131, Attn: Paul Battista, Esq. (pbattista@gjb-law.com) and Fox Rothschild, LLP, Midtown Building, Suite 400, 1301 Atlantic Avenue, Atlantic City, New Jersey 08401, Attn: Michael Viscount, Esq. (mviscount@foxrothschild.com), Co-Counsel for the Official Committee of Unsecured Creditors (the "Committee");

(vii)    Tew Cardenas LLP, 1441 Brickell Avenue, 15th Floor, Miami, Florida  33131, Attn: David M. Levine, Esq. (dml@tewlaw.com), Counsel to Fidelity National Title Insurance Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company, Transnation Title Insurance Company, and First American Title Insurance Company

(viii)    Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004, Attn: Jeffrey Berman, Esq. (bermanj@sewkis.com) ,Counsel to Wilmington Trust NSB;

(ix)    Sheppard Mullin, 333 South Hope Street, 48th Floor, Los Angeles, CA 90071, Attn: William Scott, IV, Esq. (bscott@sheppardmullin.com) and Hunton & Williams LLP, 1111 Brickell Avenue, Suite 2500, Miami, FL 33131, Attn: Craig Rasile, Esq. (crasile@hunton.com), Counsel to Bank of America, N.A.; and

(x)    Squire Sanders Dempsey, 1900 Phillips Point West, 777 South Flagler Drive, West Palm Beach, Florida  33401-6198, Attn: Tina Talarchyk, Esq., (ttalarchyk@ssd.com), Counsel to U.S. Bank, N.A.

8.    The Purchase Agreement contemplates, and the Sale Order, if approved, shall authorize the assumption and assignment of certain executory contracts and unexpired leases that are the property of the Debtors (collectively, the "Designated Agreements"). In accordance with the Sale Procedures Order, additional individual notices setting forth the specific Designated Agreements (or groups thereof) to be assumed by the Debtors and assigned to the Purchaser and

the proposed cure amounts for such contracts will be given to all counterparties to Designated Agreements.

9.      The failure of any person or entity to file an Objection on or before the applicable Objection Deadline shall be deemed a consent to the Sale Transaction contemplating the sale of the Purchased Assets to the Purchaser or another Successful Bidder and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bidding Procedures, the Sale Motion, the Auction, the sale of the Purchased Assets or the Debtors' consummation and performance of the Purchase Agreement or other agreement with a different Successful Bidder (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all liens, claims and encumbrances).

10.      This Notice is subject to the full terms and conditions of the Sale Motion, the Sale Procedures Order, the Bidding Procedures, and the Purchase Agreement, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: **November 24, 2009**

BY ORDER OF THE COURT

**EXHIBIT D**

**[Form of Assignment Notice]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FONTAINEBLEAU LAS VEGAS | ) | |
| HOLDINGS, LLC, et al.,[1] | ) | Case No. 09-21481-BKC-AJC |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |

**NOTICE OF (I) DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES
AND (II) CURE COSTS RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    On November 16, 2009, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims and encumbrances; (b) approval of certain procedures (the "Bidding Procedures" and the Order of the Bankruptcy Court relating to the Bidding Procedures, the "Bidding Procedures Order") for the solicitation of bids with respect to the Sale Transaction; (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the Sale Transaction; and (d) scheduling of a final hearing with the Bankruptcy Court for approval of the Sale Transaction (the "Sale Hearing").

2.    The Asset Purchase Agreement by and among Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC and Fontainebleau Las Vegas Retail, LLC as Sellers (collectively, the "Sellers") and Icahn Nevada Gaming Acquisition LLC, as Purchaser (the "Purchaser"), dated as of November 23, 2009 (collectively with all ancillary documents and agreements, the "Purchase Agreement"), contemplates a set of related transactions for the sale of the Purchased Assets (as defined in the Purchase Agreement) to the Purchaser, subject to higher or better offers made pursuant to the Bidding Procedures.

---

[1] The last four digits of each Debtor's tax identification number are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

3.      This Notice is provided to inform you of the Debtors' intent to assume and assign to the Purchaser or other Successful Bidder (as defined in the Bidding Procedures) certain executory contracts and/or unexpired leases, including the transfer of any deposits related to such executory contracts and/or unexpired leases. The following procedures (the "Contract Procedures") govern the assumption and assignment of these agreements in connection with the sale of the Purchased Assets to the Successful Bidder:[2]

(a)      Contract Designations. The Sale Order, if approved, shall authorize the assumption and assignment to the Successful Bidder of certain executory contract(s) and unexpired lease(s). Attached hereto as **Exhibit A** is a list of certain executory contracts and unexpired leases that the Debtors may assume and assign to the Successful Bidder (collectively, the "Designated Agreements" and, each, a "Designated Agreement"), pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code").

(b)      Cure Costs. The Debtors have listed on **Exhibit A** annexed hereto the amounts that the Debtors believe must be paid to cure all prepetition defaults under the Designated Agreements as of January 19, 2010, in accordance with section 365(b) of the Bankruptcy Code (in each instance, the "Cure Costs"). Cure Costs may be listed on **Exhibit A** on an agreement-by-agreement basis or in the aggregate for multiple related Designated Agreements.

(c)      Agreement to Assumption and Assignment. If you agree with the Cure Costs indicated on **Exhibit A**, and otherwise do not object to the Debtors' assumption and assignment of your lease or contract, you are not required take any further action.

(d)      Successful Bidder Confirmation Notice. No later than 12:00 p.m. (noon) Eastern time on January 23, 2010 (the "Pre-Closing Deadline"), the Successful Bidder shall send to all applicable Non-Debtor Counterparties a notice indicating those Designated Agreements with respect to which the Successful Bidder has made a final determination to take assignment of a Designated Agreement (a "Confirmation Notice"), subject only to subparagraph (f) below and Cure Costs not being established in an amount greater than the amounts in the Assignment Notice unless otherwise agreed upon in writing by the Successful Bidder. Designated Agreements listed on a Confirmation Notice are referred to as "Confirmed Agreements." The Successful Bidder may send Confirmation Notices at any time through the Pre-Closing Deadline. Until a Designated Agreement is listed on a Confirmation Notice, it shall not be considered to be either assumed or assigned and shall remain subject to assumption, rejection or redesignation hereunder.

(e)      Section 365 Objections. Objections, if any, to the proposed assumption and assignment of the Designated Agreements, including, but not limited to, objections related to adequate assurance of future performance, or objections relating to whether applicable law

---

[2] This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order and the Contract Procedures set forth in the Bidding Procedures Order, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

excuses the non-debtor counterparty to such Designated Agreement (the "Non-Debtor Counterparty") from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code, or to the proposed Cure Costs (a "Section 365 Objection"), must be made in writing and filed with the Bankruptcy Court so as to be **received no later than 3:00 p.m. (noon) Eastern Time on January 25, 2010** (the "Section 365 Objection Deadline") by the Bankruptcy Court and the following parties:

(i)     Bilzin Sumberg Baena Price & Axelrod LLP, 200 South Biscayne Boulevard, Suite 2500, Miami, Florida 33131-5340, Attn:  Scott L. Baena, Esq. (sbaena@bilzin.com), and Jay M. Sakalo, Esq. (jsakalo@bilzin.com), Counsel for the Debtors;

(ii)     Stutman Treister & Glatt P.C., 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067, Attn: Eve H. Karasik, Esq. (ekarasik@stutman.com), Counsel for the Examiner;

(iii)     Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of Americas, New York, New York 10020, Attn: Peter D. Wolfson, Esq. (pwolfson@sonnenschein.com) and D. Farrington Yates, Esq. (fyates@sonnenschein.com), Counsel for the Purchaser;

(iv)     Hennigan, Bennett & Dorman, LLP, 865 S. Figueroa Avenue, Los Angeles, California 90017, Attn:  Bruce Bennett, Esq. (bennettb@hbdlawyers.com) and Sidney P. Levinson, Esq. (levinsons@hbdlawyers.com) and Akerman Senterfitt, One Southeast Third Avenue, 25th Floor, Miami, Florida 33131-1714, Attn:  Michael Goldberg, Esq. (michael.goldberg@akerman.com), Co-Counsel for the Term Lender Steering Group;

(v)     Quinn Emanuel Urquhart, Oliver & Hedges, LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, California 90017, Attn: Eric Winston, Esq. (ericwinston@quinnemanuel.com) and Bast Amron LLP, SunTrust International Center, One SE Third Avenue, Suite 1440, Miami, Florida 33131, Attn:  Brett Amron, Esq. (bamron@bastamron.com), Co-Counsel for Aurelius Capital Management, LP;

(vi)     Genovese Joblove & Battista, P.A., 100 Southeast 2nd Street, 44th Floor, Miami, Florida 33131, Attn: Paul Battista, Esq. (pbattista@gjb-law.com) and Fox Rothschild, LLP, Midtown Building, Suite 400, 1301 Atlantic Avenue, Atlantic City, New Jersey 08401, Attn: Michael Viscount, Esq. (mviscount@foxrothschild.com), Co-Counsel for the Official Committee of Unsecured Creditors (the "Committee");

(vii)     Tew Cardenas LLP, 1441 Brickell Avenue, 15th Floor, Miami, Florida  33131, Attn: David M. Levine, Esq. (dml@tewlaw.com), Counsel to Fidelity National Title Insurance Company, Lawyers Title Insurance Corporation, Commonwealth Land Title Insurance Company, Transnation Title Insurance Company, and First American Title Insurance Company

(viii)     Seward & Kissel LLP**,** One Battery Park Plaza, New York, NY 10004, Attn: Jeffrey Berman, Esq. (bermanj@sewkis.com), Counsel to Wilmington Trust NSB;

(ix)    Sheppard Mullin, 333 South Hope Street, 48th Floor, Los Angeles, CA 90071, Attn: William Scott, IV, Esq. (bscott@sheppardmullin.com) and Hunton & Williams LLP, 1111 Brickell Avenue, Suite 2500, Miami, FL 33131, Attn: Craig Rasile, Esq. (crasile@hunton.com), Counsel to Bank of America, N.A.; and

(x)    Squire Sanders Dempsey, 1900 Phillips Point West, 777 South Flagler Drive, West Palm Beach, Florida 33401-6198, Attn: Tina Talarchyk, Esq., (ttalarchyk@ssd.com), Counsel to U.S. Bank, N.A.

(f)    Resolution of Objections; Section 365 Hearing. Upon the filing of a Section 365 Objection (i) challenging the ability of the Debtors to assume or assign the Designated Agreement (a "Disputed Designation") or (ii) asserting a cure amount higher than the proposed Cure Costs indicated on **Exhibit A** annexed hereto (the "Disputed Cure Costs"), (i) the Debtors, (ii) the Successful Bidder and (iii) the objecting Non-Debtor Counterparty shall confer in good faith to attempt to resolve any such objection without Bankruptcy Court intervention. If any of (i) the Debtors, (ii) the Non-Debtor Counterparty or (iii) the Successful Bidder determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by the Bankruptcy Court at an omnibus hearing established for such purpose on the date specified in the immediately following sentence (the "Section 365 Hearing"), unless the (i) Debtors, (ii) the Successful Bidder and (iii) the Non-Debtor Counterparty to the Designated Agreement in dispute agree otherwise. Unless otherwise agreed by the parties, the Section 365 Hearing to consider objection relating to the Designated Agreement shall be conducted on **January 27, 2010 at 10:00 a.m., Eastern Time**, as adjourned or continued, if necessary, at the United States Bankruptcy Court for the Southern District of Florida, Claude Pepper Federal Building, 51 SW 1st Avenue, Room 1410, Miami, Florida 33130, before the Honorable A. Jay Cristol, United States Bankruptcy Judge. If the Bankruptcy Court determines at a Section 365 Hearing that the Designated Agreement cannot be assumed and assigned, or establishes Cure Costs that the Successful Bidder is not willing to pay, then such executory contract or unexpired lease shall no longer be considered a Designated Agreement.

(g)    Failure to Object; Consent to Assumption and Assignment. Unless a Section 365 Objection is filed and served before the Section 365 Objection Deadline with respect to a Designated Agreement, all parties shall be deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Agreement, and such party shall be forever barred from objecting to the Cure Costs or such assumption and assignment and from asserting any additional cure or other amounts against the Debtors, their estates or the Successful Bidder.

(h)    Resolution of Assumption/Assignment Issues. If the Non-Debtor Counterparty to a Designated Agreement fails to timely assert a Section 365 Objection as described in paragraph (e) above, or upon the resolution of any timely Section 365 Objection by agreement of the parties or order of the Bankruptcy Court approving an assumption and assignment, such Designated Agreement shall be deemed to be assumed by the Debtors and assigned to the Successful Bidder as of the closing of the sale of the Purchased Assets to the

Successful Bidder, and the proposed Cure Cost related to such Designated Agreement shall be established and approved in all respects, in each case subject to the conditions set forth in paragraph (i) below.

(i)    <u>Conditions on Assumption and Assignment</u>. Please read **Exhibit A** carefully. In some cases, **Exhibit A** identifies additional terms or conditions of assumption and assignment with respect to a particular Designated Agreement. The Debtors' decision to assume and assign the Designated Agreements is subject to Bankruptcy Court approval and consummation of the Sale Transaction. Accordingly, subject to the satisfaction of conditions in paragraphs (f) and (h) above, the Debtors shall be deemed to have assumed and assigned to the Successful Bidder each of the Designated Agreements as of the date of and effective only upon the closing of a sale of the Purchased Assets to such Successful Bidder, and absent such closing, each of the Designated Agreements shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code. Assumption and assignment of the Designated Agreements also is subject to the Successful Bidder's rights set forth in paragraphs (f), (g) and (h) above. The Successful Bidder shall have no rights in and to a particular Designated Agreement until such time as the particular Designated Agreement has been identified by the Successful Bidder as a Confirmed Agreement and is assumed and assigned in accordance with the procedures set forth herein. Once assumed and assigned as a Confirmed Agreement under these Contract Procedures, a Designated Agreement is not subject to rejection under section 365 of the Bankruptcy Code.

(j)    <u>Cure Payments</u>. Except as otherwise provided in this Notice, or as may be agreed to by the parties to a Designated Agreement, the defaults under the Designated Agreements that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Successful Bidder shall pay all Cure Costs relating to an assumed executory contract or unexpired lease within ten days after the later of (i) the Closing Date and (ii) the date on which such executory contract or unexpired lease is deemed assumed and assigned, in accordance with paragraph (i) of these Contract Procedures or (iii) with respect to Dispute Cure Costs, the date the amount thereof is finally determined.

(k)    <u>Rights Pending Assumption or Rejection</u>. Nothing in these Contract Procedures limits, restricts or expands the rights of parties to executory contracts and unexpired leases pending assumption or rejection, including any rights to seek further relief from the Bankruptcy Court (including motions to compel a prompt final decision on assumption or rejection), or the rights of other parties in response to such requests.

(l)    <u>Filing of Final List of Confirmed Agreements</u>. As soon as reasonably practicable after the Pre-Closing Deadline, the Debtors shall file with the Court a final schedule indicating all Confirmed Agreements and the proposed Cure Costs relating to each Confirmed Agreement scheduled therein.

4.    The inclusion of any document on the list of Designated Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto being expressly reserved.

5.      Any Section 365 Objection shall not constitute an objection to the relief generally requested in the Sale Motion (e.g., the sale of the Purchased Assets by the Debtors to the Successful Bidder free and clear of claims, liens and encumbrances). Parties wishing to object to the other relief requested in the Sale Motion must file and serve a separate objection, stating with particularity such party's grounds for objection, in accordance with the objection procedures approved and set forth in the Bidding Procedures Order.

6.      Questions or inquiries relating to this Notice may be directed to counsel for the Debtors, Jason Z. Jones, Esq. (jjones@bilzin.com) or Jeffrey I. Snyder, Esq. (jsnyder@bilzin.com), c/o Bilzin Sumberg Baena Price & Axelrod LLP, 200 S. Biscayne Boulevard, Suite 2500, Miami, Florida 33131, Telephone: 305-374-7580, Facsimile: 305-374-7593.

Dated: **November 24, 2009**

BY ORDER OF THE COURT

**EXHIBIT A**

**[Schedule of Designated Agreements and Proposed Cure Costs]**