ORDERED in the Southern District of Florida on December 30, 2009



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| FONTAINEBLEAU LAS VEGAS HOLDINGS, LLC, ET AL., | Case No. 09-21481-BKC-AJC |
| Debtors. | (Jointly Administered) |
| _____/ | |

### MEMORANDUM OPINION SUSTAINING THE LIMITED OBJECTION OF BANK OF SCOTLAND TO INVOICES OF HENNIGAN, BENNETT & DORMAN

THIS CAUSE came before the Court on November 5, 2009 at 3:00 p.m. and was continued to November 10, 2009 at 3:30 p.m., upon the *Objection of the Official Committee of Unsecured Creditors to the September 8, 2009 Notice of Invoices of Hennigan, Bennett & Dorman LLP for the Payment of Fees and Reimbursement of Expenses*, dated September 28, 2009 (D.E. 610) (the "Committee Objection"), the *Limited Objection of Bank of Scotland to*

84413198

*Invoices of Hennigan, Bennett & Dorman LLP*, dated November 3, 2009 (D.E. 903) (the "Bank of Scotland Limited Objection"), the *Joinder of HSH Nordbank AG, New York Branch, to the Bank of Scotland Limited Objection*, dated November 3, 2009 (D.E. 907) (the "HSH Nordbank Joinder") and the *Reply of Term Lender Steering Group to the Committee Objection*, dated November 3, 2009 (D.E. 904). This Memorandum Opinion addresses only the issues raised in the Bank of Scotland Limited Objection and the HSH Nordbank Joinder. As set forth in the *Agreed Order Modifying Order Extending Challenge Deadline*, dated November 25, 2009 (D.E. 1059), the Committee has withdrawn the Committee Objection.

The Court has considered the parties' respective positions after careful review of the pleadings, the various cash collateral orders entered in these bankruptcy proceedings and relevant law. For the reasons set forth below, the Bank of Scotland Limited Objection is sustained. Accordingly, to the extent the Court subsequently determines that the Prepetition Lenders[1] are undersecured, any payments with respect to the invoices of Hennigan, Bennett & Dorman LLP ("HBD") from the prepetition retainers established by the Debtors pursuant to the Court's various cash collateral orders, shall be applied to reduce the outstanding principal indebtedness owed to the HBD Term Lenders (defined below). In addition, nothing in this Memorandum Opinion or in any of the cash collateral orders entered in these bankruptcy proceedings modifies or impairs the Prepetition Lenders' rights to enforce any ratable sharing provisions contained in the Prepetition Credit Agreement.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Third Interim Order (i) Authorizing the Debtors to Use Cash Collateral; (ii) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code and (iii) Scheduling Final Hearing*, dated July 31, 2009 (D.E. 359) (the "Third Interim Order").

2

84413198

## BACKGROUND

Bank of Scotland plc ("Bank of Scotland") is a Term Lender and a Revolving Lender under that certain Credit Agreement dated as of June 6, 2007 (the "Prepetition Credit Agreement"), among Fontainebleau Las Vegas, LLC ("FBLV") and Fontainebleau Las Vegas II, LLC as borrowers, Bank of America, N.A. as Administrative Agent, and the Prepetition Lenders. The total principal amount of Term Loans outstanding under the Prepetition Credit Agreement is approximately $1.036 billion. Bank of Scotland holds Term Loans in the aggregate principal amount of $72.5 million. Bank of Scotland is represented in connection with these bankruptcy proceedings and related litigation by the law firms of Katten Muchin Rosenman LLP and Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

HSH Nordbank AG, New York Branch ("HSH Nordbank") is also a Term Lender and a Revolving Lender under the Prepetition Credit Agreement, holding Term Loans in the aggregate principal amount of $24 million. HSH Nordbank is represented in connection with these bankruptcy proceedings and related litigation by the law firms of Kay Scholer LLP and Rice Pugatch Robinson & Schiller, P.A.

The "Term Lender Steering Group" consists of certain Term Lenders, not including Bank of Scotland and HSH Nordbank, who hold Term Loans in the aggregate principal amount of approximately $254 million. The Term Lender Steering Group and certain additional Term Lenders (collectively, the "HBD Term Lenders") are represented in connection with these bankruptcy proceedings and related litigation by HBD.[2]

---

[2]    A complete list of the HBD Term Lenders is set forth in the *Second Amended Verified Statement of Representation of More Than One Creditor by Hennigan Bennett & Dorman LLP and Akerman Senterfit*, dated October 27, 2009 (the "HBD Rule 2019 Statement"). Due to ongoing claims trading, the composition of the HBD Term Lenders changes periodically.

On June 9, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of Bankruptcy Code. The Court has entered a series of interim cash collateral orders in these bankruptcy proceedings. Each consensual cash collateral order authorized certain post-petition payments (the "Adequate Protection Payments") to the Prepetition Lenders in an effort to provide adequate protection for the Debtors' use of cash collateral, consisting of the payment of ongoing (i) interest due to the Prepetition Lenders under the Prepetition Credit Agreement, (ii) fees and expenses of the Prepetition Agent, and (iii) fees and expenses of the Term Lender Steering Group's professionals, including HBD, from certain retainers transferred to such professionals by the Debtors prior to the Petition Date.[3] Commencing with the Third Interim Order, each such order also provided that the Adequate Protection Payments would be applied to reduce the outstanding principal balance owed to the Prepetition Secured Parties in the event the Court determined that they were undersecured.[4] By way of example, paragraph 6(c) of the Third Interim Order provides, in relevant part, as follows (emphasis added):

> The Debtors shall pay on an ongoing basis (i) to the Prepetition Agent ... the current cash payment of interest at the non-default rates and at the times provided for in the Prepetition Credit Agreement on the Prepetition Term Obligations ... and (ii) from time to time after the Petition Date, the current cash payment of documented fees and expenses incurred after the Petition Date of (1) the Prepetition Agent, (2) Hennigan, Bennett & Dorman LLP ("HBD") and Akerman Senterfitt ("Akerman") as counsel to the members of the Term Lender Steering Group and to other

---

[3] On or about June 3, 2009, the Debtors wired HBD $4.55 million from an account subject to the Prepetition Agent's security interest granted on behalf of all of the Prepetition Lenders, as a retainer for HBD's services on behalf of the HBD Term Lenders, and an additional $1.25 million from the same account to Jeffries & Company for financial advisory services on behalf of the Term Lender Steering Group. (*See Objection of Term Lender Steering Group to Emergency Motion of the Official Committee of Unsecured Creditors for an Order (1) Terminating or Extending Challenge Deadline under Interim Cash Collateral Orders, etc.*, dated November 9, 2009 (D.E. 948), at .)

[4] In the case of the first two interim cash collateral orders, such payments were subject to the budget attached thereto, which did not provide for any payment to HBD. In addition, the non-consensual cash collateral orders did not provide for any payment to HBD.

84413198

> Prepetition Term Lenders) (3) Jefferies & Company ("Jefferies") pursuant to the terms of its engagement letter ... between Jefferies, the Company and HBD, as counsel to the Term Lender Steering Group ... provided, that any such payments authorized under this Paragraph 6(c) shall only be made from any retainers or other funds transferred to such professionals prior to the Petition Date, (whether or not included in the Budget) .... *In the event it is subsequently determined by this Court that the Prepetition Secured Parties are undersecured, then any payments authorized and made under this Paragraph 6(c) (the "Adequate Protection Payments") shall be applied to reduce the outstanding principal balance owed to the Prepetition Secured Parties.*

A substantially identical paragraph 6(c) is set forth in each subsequent consensual cash collateral order. For convenience, the Court will refer herein to this last sentence of paragraph 6(c) of the cash collateral orders as the "Recharacterization Provision."[5]

As set forth in the HBD Rule 2019 Statement, HBD is counsel to the individual HBD Term Lenders in these bankruptcy proceedings and related litigation. HBD does not represent Bank of Scotland, HSH Nordbank or any of the other non-HBD Term Lenders in these proceedings or other related litigation. In fact, the HBD Term Lenders are plaintiffs in an action pending in the United States District Court for the District of Nevada against the various Revolving Lenders under the Prepetition Credit Agreement, including Bank of Scotland and HSH Nordbank (the "Nevada Action"). Plaintiffs in the Nevada Term Lender Action have sued Bank of Scotland, HSH Nordbank and the other Revolving Lenders for, *inter alia*, breach of contract based on their refusal to fund the Revolving Loans.[6]

On September 8, 2009, HBD sent copies of invoices (the "September Invoices") for services rendered on behalf of the HBD Term Lenders to the Debtors, the Official Committee of

---

[5] In addition to the Third Interim Order, the consensual cash collateral orders entered in these bankruptcy proceedings containing the Recharacterization Provision may be found on the Court's docket at the following entries: D.E. 389, D.E. 454, D.E. 730, D.E. 811, D.E. 852, D.E. 901, D.E. 953, and D.E. 987.

[6] Together with its bankruptcy filing, FBLV also commenced an adversary proceeding in this Court against each of the Revolving Lenders asserting similar breach of contract claims as those raised in the Nevada Action (the "Florida Action").

Unsecured Creditors (the "Committee"), and the United States Trustee pursuant to paragraph 6(c) of the fourth interim cash collateral order, entered August 27, 2009. The September Invoices seek payment of fees and expenses incurred during the month of August 2009 in the total amount of $398,839.22.

HBD's fees are separated into various categories, including (i) services rendered on behalf of the Term Lender Steering Group in connection with these bankruptcy proceedings, in the amount of $110,413.89, and (ii) services rendered on behalf of all of the HBD Term Lenders in connection with (a) the Nevada Action and the Florida Action, in the amount of $220,797.00, (b) litigation in New York State court to enforce guarantees granted in favor of the Prepetition Lenders by certain non-Debtors, in the amount of $13,874.00, and (c) litigation commenced against the Prepetition Lenders by various mechanic's lien claimants, in the amount of $21,938.50. Accordingly, during August 2009 alone, at least the amount of $220,797.00 was incurred by HBD on behalf of the HBD Term Lenders pursuing, or assisting FBLV in the pursuit of, claims against the Revolving Lenders, including Bank of Scotland and HSH Nordbank.

On September 28, 2009, the Committee filed the Committee Objection in opposition to payment of the September Invoices asserting, *inter alia*, that (i) a substantial portion of HBD's fees and expenses are unreasonable because they were incurred in connection with litigation in which the Debtors are not parties and (ii) all of the requested fees and expenses are unreasonable because the Prepetition Lenders are undersecured and, therefore, pursuant to section 506(b) of the Bankruptcy Code, the HBD Term Lenders are not entitled to any reimbursement from the Debtors' estates of their post-petition professional fees and expenses.

Given the potential that the Prepetition Lenders are undersecured, any payments made to HBD on account of the September Invoices or, for that matter, any other payments made to HBD during these proceedings, may become subject to the Recharacterization Provision of the cash

6

collateral orders and may be applied to reduce the aggregate outstanding principal balance owed to the Prepetition Lenders by the Debtors. On November 3, 2009, Bank of Scotland filed its Limited Objection to the September Invoices in which it argued that any payments of HBD's fees and expenses authorized to be made from the prepetition retainers must be applied solely to reduce the outstanding principal indebtedness owed to the HBD Term Lenders, in the event the Court subsequently determines that the Prepetition Lenders are undersecured, because such legal fees and expenses were not incurred by or for the benefit of Bank of Scotland. In addition, Bank of Scotland argued that any such payments to HBD, which result in the HBD Term Lenders receiving a greater recovery than the other Prepetition Lenders on account of their claims, must be subject to the ratable sharing provisions of the Prepetition Credit Agreement, including, specifically, Section 2.24 of that agreement.

During the hearings, the HBD Term Lenders argued that the Recharacterization Provision requires that any payments to HBD made under paragraph 6(c) of the cash collateral orders must be applied to reduce each Prepetition Lenders' claims for principal and not solely those of the HBD Term Lenders. In addition, the HBD Term Lenders argued that many of the positions taken by the Term Lender Steering Group in these bankruptcy proceedings are beneficial to Bank of Scotland and other non- HBD Term Lenders.

## DISCUSSION

The issues raised by the Bank of Scotland Limited Objection requires this Court to interpret paragraph 6(c) of its cash collateral orders. "The Court has the inherent authority to interpret the meaning of terms in the Court's own Orders." In re Greater Miami Neighborhoods, Inc., 2008 WL 4397425, at *1 (Bankr. S.D. Fla. 2008); see Travelers Indemnity Co. v. Bailey, 129 S.Ct. 2195, 2205 (2009) ("Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); In re Optical Technologies, Inc., 425 F.3d 1294, 1300 (11th Cir. 2005)

84413198

(applying clear abuse of discretion standard of review to bankruptcy court's interpretation of its own order "because a court that issued an order is in the best position to interpret it"). Specifically, this Court must determine whether, assuming the Prepetition Lenders are found to be undersecured, legal fees paid to HBD pursuant to paragraph 6(c) of the cash collateral orders should be applied to reduce the outstanding principal indebtedness owed to Prepetition Lenders that are not represented by HBD and are currently being sued by HBD.

Before turning to the text of paragraph 6(c) of the cash collateral orders, a number of undisputed facts must be considered. HBD represents the HBD Term Lenders and obviously does not represent Bank of Scotland or HSH Nordbank, each of whom have retained separate counsel to represent them in these bankruptcy proceedings and in related litigation. Bank of Scotland and HSH Nordbank have no ability to control the actions of the Term Lender Steering Group, they are not privy to discussions held between HBD and the Term Lender Steering Group, and are not consulted in the Term Lender Steering Group's decision making process. And although positions advanced by HBD on behalf of the Term Lender Steering Group in these bankruptcy proceedings may be consistent with those advanced by counsel for Bank of Scotland and HSH Nordbank in certain respects, its representation of the HBD Term Lenders in other respects, including in the related litigation, is clearly adverse to the interests of Bank of Scotland and HSH Nordbank.

HBD is counsel to the HBD Term Lenders as plaintiffs in the Nevada Action in which the HBD Term Lenders are suing Bank of Scotland, HSH Nordbank and the other Revolving Lenders for breach of contract and other claims. HBD is also actively representing the HBD Term Lenders in the Florida Action in which FBLV has asserted similar breach of contract claims against Bank of Scotland, HSH Nordbank and the other Revolving Lenders as those asserted in the Nevada Action. More than half of HBD's fees and expenses for August 2009, at

8

least $220,797.00 out of $398,839.22, appear to have been incurred in connection with the Nevada and Florida Actions.

Assuming the Prepetition Lenders are undersecured and the Recharacterization Provision is implicated, applying the payments received by HBD from its retainer to reduce the outstanding principal balance owed to each Prepetition Lender would result in all Prepetition Lenders sharing in the cost of HBD's services, despite not being represented by HBD. Moreover, in the case of Bank of Scotland and HSH Nordbank, this approach would require each to pay for the privilege of being sued by the HBD Term Lenders. To say the least, such a result would be grossly inequitable.

Contrary to the arguments of the HBD Term Lenders, the Court does not interpret paragraph 6(c) of the cash collateral orders as requiring that payments made to HBD be applied to reduce each Prepetition Lenders' claims for principal. The Recharacterization Provision provides that "any payments authorized and made under this Paragraph 6(c) ... shall be applied to reduce the outstanding principal balance owed to the Prepetition Secured Parties." This provision generally addresses the effect of a determination that the Prepetition Lenders are undersecured upon the Debtors' aggregate principal indebtedness owed to the Prepetition Lenders. There is no question that if such a determination is made, all payments made to HBD for its post-petition fees and expenses will reduce the Debtors' aggregate principal indebtedness to the Prepetition Lenders dollar-for-dollar. However, the Recharacterization Provision does not provide that such payments must be applied to reduce each Prepetition Lenders' claims for principal equally, *pro rata*, or in any other manner.[7] The orders were not intended to set forth

---

[7] With respect to two of the three categories of Adequate Protection Payments authorized by paragraph 6(c) – the payment of ongoing interest due to the Prepetition Lenders and the fees and expenses of the Prepetition Agent (*see supra*, at 3) – the parties do not dispute that, if the Recharacterization Provision is implicated, each Prepetition Lender's claim for principal should be reduced *pro rata* by the amount of such payments. This may explain why the Recharacterization Provision may have been drafted broadly.

9

the relative rights and obligations of the Prepetition Lenders against one another. Consistent with the original purpose of paragraph 6(c) of the cash collateral orders, nothing therein adversely effects the rights of the Debtors to receive a reduction of their principal indebtedness owed to the Prepetition Lenders in the event the Recharacterization Provision is implicated.

The Recharacterization Provision does not, however, mandate that payments received by HBD for services rendered on behalf of the HBD Term Lenders be applied against each Prepetition Lenders' claims for principal. Given the compelling equitable considerations in this case, the Court believes the subject provision intended that all payments to HBD from the prepetition retainer established by the Debtors should be applied to reduce the outstanding principal indebtedness held solely by the HBD Term Lenders, if the Lenders are subsequently determined to be undersecured.

As a result, the HBD Term Lenders will be deemed to have received payment on account of their claims for principal equal to the payments made to HBD. But unless the Prepetition Lenders receive a full recovery – a doubtful result if they are also undersecured – the HBD Term Lenders will receive a greater recovery on account of their claims than the other Prepetition Lenders. The Prepetition Credit Agreement contains a sharing provision (Section 2.24) which addresses such a situation. For the purpose of clarity, nothing in this Memorandum Opinion or in any of the cash collateral orders entered in these bankruptcy proceedings modifies or impairs the Prepetition Lenders' rights to enforce the Prepetition Credit Agreement, including the sharing provision, against other Prepetition Lenders or the Prepetition Agent. Accordingly, it is

**ORDERED AND ADJUDGED** that the Bank of Scotland Limited Objection is SUSTAINED; and, to the extent the Court subsequently determines that the Prepetition Lenders are undersecured, any payments made on the invoices of Hennigan, Bennett & Dorman LLP ("HBD") from the prepetition retainers established by the Debtors pursuant to the Court's

10

84413198

various cash collateral orders, shall be applied to reduce the outstanding principal indebtedness held solely by the HBD Term Lenders. In addition, nothing in this Memorandum Opinion or in any of the cash collateral orders entered in these bankruptcy proceedings modifies or impairs the Prepetition Lenders' rights to enforce any ratable sharing provisions contained in the Prepetition Credit Agreement.

### #

**Submitted by:**

Harold D. Moorefield, Jr., Esq.
Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.
Local Counsel for Bank of Scotland plc
Museum Tower, 2200, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone No.: 305-789-3467
Facsimile No.: 305-789-2643

And

Kenneth E. Noble, Esq.
Matthew W. Olsen, Esq.
Katten Muchin Rosenman LLP
Counsel for Bank of Scotland plc
575 Madison Avenue
New York, NY 10022-2585
Telephone No.: 212-940-6419
Facsimile No.: 212-894-5653

**Copies to:**
Harold D. Moorefield, Jr., Esq.

(Attorney Moorefield shall upon receipt serve a copy of this Memorandum Opinion upon all interested parties and file a certificate of service.)