# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 7

FONTAINEBLEAU LAS VEGAS
HOLDINGS, LLC, ET AL.,[1]                    Case No.  09-21481-BKC-AJC

           Debtors.                      (Jointly Administered)

_____/

## MOTION BY BILZIN SUMBERG BAENA PRICE & AXELROD LLP TO WITHDRAW AS COUNSEL OF RECORD FOR THE DEBTORS

Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg"), counsel to the captioned debtors (the "Debtors"),[2] hereby moves for entry of an Order authorizing Bilzin Sumberg to withdraw as general bankruptcy counsel for the Debtors in the captioned bankruptcy cases and discharging Bilzin Sumberg from any further responsibilities as counsel to the Debtors pursuant to Local Rule 2091-1.  The following grounds support this Motion:

1.        On or about June 4, 2009, Fontainebleau Las Vegas Holdings, LLC ("Resort Holdings"), Fontainebleau Las Vegas, LLC ("Resort") and Fontainebleau Las Vegas Capital Corp. ("Capital"; and, together with Resort Holdings and Resort, the "Resort Debtors") retained Bilzin Sumberg pursuant to the terms set forth in the engagement letter attached hereto as Exhibit "A" (the "Resort Engagement Letter") for the exclusive purpose to represent the Resort Debtors in their chapter 11 cases.

---

[1]  The last four digits of each of the Debtors' tax identification numbers are: (i) Fontainebleau Las Vegas Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp. [7822]; (iv) Fontainebleau Las Vegas Retail Parent, LLC [9796], (v) Fontainebleau Las Vegas Retail Mezzanine, LLC [9458], and (vi) Fontainebleau Las Vegas Retail, LLC [1045].  The Debtors' current mailing address is 19950 West Country Club Drive, Aventura, Florida 33180.

[2]  The Debtors are comprised of (i) Fontainebleau Las Vegas Holdings, LLC; (ii) Fontainebleau Las Vegas, LLC; (iii) Fontainebleau Las Vegas Capital Corp.; (iv) Fontainebleau Las Vegas Retail Parent, LLC; (v) Fontainebleau Las Vegas Retail Mezzanine, LLC, and (vi) Fontainebleau Las Vegas Retail, LLC.

2.      In the Resort Engagement Letter, the Resort Debtors acknowledged that Bilzin Sumberg "has not undertaken to represent the [Resort Debtors] if their bankruptcy cases (i) are converted to cases under chapter 7, (ii) if a chapter 11 trustee is appointed, (iii) the venue of the cases is transferred to a district outside the State of Florida or (iv) if an order is entered directing the disgorgement of any payments made to [Bilzin Sumberg] in respect of fees, including any retainer payments.  Accordingly, [Bilzin Sumberg] reserves the right to seek to withdraw as counsel in any of the foregoing events."

3.      On June 9, 2009 (the "Petition Date"), each of the Resort Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4.      On June 30, 2010 the Court entered the Final Order Authorizing the Employment and Retention of Bilzin Sumberg Baena Price & Axelrod LLP as Attorneys for the Debtors *Nunc Pro Tunc* to the Petition Date [D.E. 230] (the "Final Bilzin Resort Order"), which authorized the Resort Debtors to retain Bilzin Sumberg as their counsel in the chapter 11 cases upon the terms set forth in its Amended Application (as defined in the Final Bilzin Resort Order).

5.      On November 25, 2010, debtors Fontainebleau Las Vegas Retail Parent, LLC, Fontainebleau Las Vegas Retail Mezzanine, LLC, and Fontainebleau Las Vegas Retail, LLC (collectively, the "Retail Debtors") retained Bilzin Sumberg pursuant to the terms set forth in the engagement letter attached hereto as Exhibit "B" (the "Retail Engagement Letter" along with the Resort Engagement Letter, collectively, the "Engagement Letters") for the exclusive purpose to represent the Retail Debtors in their chapter 11 cases.

6.      In the Retail Engagement Letter, the Retail Debtors acknowledged that Bilzin Sumberg "has not undertaken to represent the [Retail Debtors] if their bankruptcy cases (i) are converted to cases under chapter 7, (ii) if a chapter 11 trustee is appointed, (iii) the venue of the cases is transferred to a district outside the State of Florida, (iv) if an order is entered directing the disgorgement of any payments made to [Bilzin Sumberg] in respect of fees, including any retainer payments, or (v) if a conflict of interests rises among the [Retail Debtors] and the Resort Debtors.  Accordingly, [Bilzin Sumberg] reserves the right to seek to withdraw as counsel in any of the foregoing events."

7.      On November 25, 2009 (the "Retail Petition Date"), the Retail Debtors filed voluntary petitions for relief under chapter 11 of Bankruptcy Code.

8.      On March 5, 2010, the Court entered the Final Order Authorizing the Employment and Retention of Bilzin Sumberg Baena Price & Axelrod LLP as Attorneys for the Retail Debtors *Nunc Pro Tunc* to November 25, 2009 [D.E. 1795] (the "Final Bilzin Retail Order"), which authorized the Retail Debtors to retain Bilzin Sumberg as their counsel in the chapter 11 cases upon the terms set forth in the Application (as defined in the Final Bilzin Retail Order).

9.      The Debtors' bankruptcy cases are being administered jointly pursuant to the Order Jointly Administering Debtors' Chapter 11 Cases [D.E. 10] and the Order Jointly Administering Retail Debtors' Chapter 11 Cases [D.E. 1066] pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1(B).

10.      On November 24, 2009, this Court entered an Order approving a stalking horse bid by Icahn Nevada Gaming Acquisition, LLC ("Icahn") to acquire substantially all of the

Resort Debtors' assets and establishing bidding procedures for the sale of such assets. On December 4, 2009, this Court entered a similar Order in respect of the Retail Debtors' assets. *See* D.E. 1049 and 1203 (collectively, the "Bidding Procedures Orders"). Pursuant to the Bidding Procedures Orders, the Court approved a sale process designed to maximize the value of substantially all of the Debtors' assets.

11.     Also on November 24, 2009, this Court entered an Order authorizing the Resort Debtors to enter into a debtor-in-possession financing facility with Icahn to finance, among other things, the Resort Debtors chapter 11 cases through the conclusion of a sale of their assets. On December 4, 2009, this Court entered a similar Order in the Retail Debtors' cases. *See* D.E. 1052 and 1151 (collectively, the "DIP Orders ").

12.     On January 29, 2010, the Court approved a sale of substantially all of the Debtors' assets to Icahn [D.E. 1671].

13.     On February 18, 2010, the Debtors closed the sale transaction with Icahn.

14.     After consultation with the various creditor constituencies, on April 9, 2010, the Debtors filed the *Ex Parte* Motion By Debtor in Possession for Order Converting Case Under Chapter 11 to Case Under Chapter 7 Pursuant to Section 1112(a) [D.E. 1937], which requested that the Court convert the Debtors' chapter 11 bankruptcy cases to cases under chapter 7.

15.     On April 12, 2010, the Court entered the Order Converting Cases Under Chapter 11 to Cases Under Chapter 7 [D.E. 1944] (the "Conversion Order"). The Conversion Order converted the Debtors' bankruptcy cases subject to certain negative notice provisions providing that parties objecting to conversion of the cases may file a motion to vacate within seven days of

the date of the Conversion Order, and if no motion to vacate is filed, the Conversion Order was to become final.

16. On April 19, 2010, the Court entered the Order Determining Order Converting Cases to be a Final Order [D.E. 1969], which deemed the Conversion Order final because no timely motions to vacate were filed.

17. On April 20, 2010, the Office of the U.S. Trustee appointed Soneet Kapila as chapter 7 trustee [D.E. 1973].

## Relief Requested

18. Bilzin Sumberg requests that it be allowed to exercise its right to resign as counsel to the Debtors pursuant to the terms of the terms of the Engagement Letters because, among other things, Bilzin Sumberg cannot be compensated for any services it provides to the Debtors post-conversion. *See Lamie v. U.S. Trustee*, 540 U.S. 526 (2004).

19. Bilzin Sumberg certifies that this Motion has been served on the Debtors at the addresses shown on the attached certificate of service.

**WHEREFORE**, Bilzin Sumberg respectfully requests that the Court consider this Motion, and thereupon enter an Order in the form attached hereto as Exhibit "C": (i) authorizing Bilzin Sumberg to withdraw as counsel to the Debtors and discharging Bilzin Sumberg from providing further services as counsel to the Debtors pursuant to Local Rule 2091-1; and (ii) ordering such other and further relief as the Court may deem just and proper.

Dated: April 23, 2010

Respectfully submitted,

5

**I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).**

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
*Counsel for the Debtors*
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

By: /s/  Scott L. Baena
        Scott L. Baena
        Fla. Bar No. 186445
        sbaena@bilzin.com
        Jay M. Sakalo
        Fla. Bar No. 0156310
        jsakalo@bilzin.com
        Jason Z. Jones
        Fla. Bar No. 186554
        jjones@bilzin.com

# **EXHIBIT A**



Scott L. Baena, Esq.
Tel  305.350.2403
Fax  305.351.2203
sbaena@bilzin.com

June 4, 2009

Fontainebleau Las Vegas, LLC, et al.
19950 West Country Club Drive
Aventura, FL 33180

Attention: Howard C. Karawan
            Chief Restructuring Officer

Dear Howard:

This letter will confirm the terms of the expanded engagement of Bilzin Sumberg Baena Price & Axelrod LLP (the "Firm") by Fontainebleau Las Vegas Holdings, LLC ("Resort Holdings"), Fontainebleau Las Vegas, LLC ("Resort") and Fontainebleau Las Vegas Capital Corp. ("Capital"; and, together with Resort Holdings and Resort, the "Clients"). The purpose of this letter is to inform you of our policies concerning our professional fees and billing arrangements, and to otherwise confirm the general terms and conditions under which the Firm will provide legal services during the course of the representation.

The Firm will provide general bankruptcy representation in connection with the chapter 11 bankruptcy cases of the Clients; provided, however, it is understood and acknowledged that the Firm has not undertaken to represent the Clients if their bankruptcy cases (i) are converted to cases under chapter 7, (ii) if a chapter 11 trustee is appointed, (iii) the venue of the cases is transferred to a district outside the State of Florida or (iv) if an order is entered directing the disgorgement of any payments made to the Firm in respect of fees, including any retainer payments. Accordingly, the Firm reserves the right to seek to withdraw as counsel in any of the foregoing events.

So there are no misapprehensions, when a law firm represents an entity, the Firm's client is only the entity, not its individual partners, members, managers, shareholders, principals, officers, directors, current or future affiliates. Moreover, in bankruptcy, counsel for a debtor in a chapter 11 case (as well as the debtor's officers and directors) has certain paramount fiduciary duties to the debtors' estate which includes its creditors, as well as its shareholders. We specifically agree that the Firm will not represent Jeffrey Soffer, any member of his immediate family, or any entity that is ultimately owned or controlled by any of the foregoing other than Fontainebleau Resorts LLC (as each of the Clients are member-managed limited liability companies) or any entity it may own or control.

Moreover, special considerations are involved when a lawyer or law firm represents more than one client in common or related matters and it is important that each of the Clients understand and consent to the considerations involved in such joint representation. This letter is intended to confirm that each of the Clients consents to our representing the others, and each waives any conflict of interest that may arise because of our representation of all of the Clients.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

200 S. Biscayne Boulevard, Suite 2500, Miami, FL  33131-5340   Tel 305.374.7580   Fax 305.374.7593        www.bilzin.com

Fontainebleau Las Vegas, LLC
June 4, 2009
Page 2

Also, it should be understood that the Firm is to represent the Clients jointly, rather than separately. This means that we will take directions with respect to this engagement from all of you jointly or from the representative you designate to as the authorized spokesperson for all of you. We will not maintain separate confidences among any of you with respect to information of material import, so that all material information that we receive may be shared with all of the Clients. If a legal proceeding were ever to arise between any of the Clients, we may be subject to being compelled to testify about advice we may give to, or information we may obtain from, any of our Clients.

During our engagement, the Clients will be responsible to provide us with the requisite documentation and factual information to facilitate the Firm's delivery of legal services. The scope of our representation will be limited to the performance of services described above. It will not include an undertaking to represent the Clients or any of their affiliates in any other matter or scope of representation unless and until there is writing, signed by us and by the Clients and such affiliate(s), as the case may be, describing that expanded engagement. In that regard, we understand that the Clients are seeking, and the Firm will offer, legal advice only. The Firm will not make any business, management or operational decisions for or on behalf of the Clients.

Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning this matter or the various courses of action and the results that might be anticipated. Any expressions on our part concerning the outcome of your legal matters are expressions of our best professional judgment, but are not guarantees. Such opinions are necessarily limited by our knowledge of the facts and are based on the state of the law at the time they are expressed.

Before beginning this engagement, the Firm conducted a computerized name check against our client records to determine whether a disqualifying conflict of interest exists as a result of our representation of the Clients and any representations of any of our other clients. While the Firm has certain connections to parties in interest, the Firm is not aware of any matter in which it is involved that creates a conflict of interest with respect to the Client, on the one hand, and any other clients of the Firm, on the other hand, that arises out of this engagement.

In the event the Firm becomes aware that a conflict of interest has arisen, we will notify you of the conflict and our representation may thereafter be terminated unless you and the other source of the conflict agree to waive, in writing, the conflict of interest that has arisen. In the event such a conflict of interest arises, we expect the Clients to assist us in resolving the conflict and obtaining a satisfactory waiver. In all events, all fees and expenses incurred through the date of any termination due to a conflict would be due and payable by the Clients upon receipt of our invoice for such fees and expenses.

Our fees will be based primarily on the amount of time spent on behalf of the Clients. Each lawyer and paraprofessional has an hourly billing rate based generally on experience and special knowledge. The rate multiplied by the time expended on the Clients' behalf will be the basis for determining our professional fee. Our partners' standard billing rates range from $390 to $700 per hour. The billing rate for Scott L. Baena is presently $675 per hour. Associate

 BILZIN SUMBERG BAENA PRICE & AXELROD LLP

*Fontainebleau Las Vegas, LLC*
*June 4, 2009*
*Page 3*

attorneys who generally work with us on matters of this type have billing rates which currently range from $225 per hour to $390 per hour for senior associates. Time devoted by legal assistants is charged at $190 to $205 per hour. Naturally, our rates are adjusted from time to time. We agree that the foregoing rates will not be increased during 2009.

In addition to our professional fees, the Clients will also be charged for reasonable costs and expenses that we have incurred on its behalf in connection with the matters for which we are being retained. These costs may include long distance telephone charges, postage, delivery charges, overtime word processing, facsimile and photocopy charges and related expenses, reasonable travel expenses (including coach class airfare and moderate accommodations and meals), financing statements, judgment and other lien and corporate searches, and use of service providers, such as experts or graphic artists for purposes of preparing exhibits, as well as deposition costs, process servers, court reporters and witness fees. We also separately bill for computerized legal research and related expenses. In the event it is necessary for us to retain consultants or experts in connection with this engagement, we shall only do so with the Clients' written consent in advance of the engagement. In bankruptcy, the retention of certain other professionals may also require the approval of the bankruptcy court. We agree to bill all such fees and expenses in accordance with the Fontainebleau Outside Counsel Billing Guidelines, a copy of which are attached hereto and incorporated herein.

We will send the Clients a monthly statement via your electronic billing system, Serengeti, showing the fees and costs incurred on their behalf for which the Clients shall be jointly and severally liable. Prior to the commencement of the bankruptcy cases, our fees and expenses are due promptly upon receipt of our invoices. The Firm's willingness _and_ ability to serve as counsel to the Clients in their chapter 11 cases will be adversely affected if the Firm is a creditor at the date of commencement of such cases by virtue of the Clients' failure to pay the Firm's fees and expenses incurred prior to the commencement of the bankruptcy cases. Therefore, we require that all of our fees and expenses relating to services rendered up to the date of commencement of the bankruptcy cases be paid in full prior to the filing of voluntary chapter 11 petitions.

In bankruptcy, the Clients' account balance shall be due and payable upon bankruptcy court approval of fees and costs. Such approval is ordinarily obtained every 120 days from the date of the bankruptcy filing; however, the bankruptcy courts often authorize the interim payment of fees (likely not to exceed 80% of the fees sought) and costs on a monthly or bi-monthly basis. By their acceptance of this retention letter, the Clients authorize the Firm to seek authority from the bankruptcy court for the payment of interim fees and costs as aforesaid.

To begin this engagement, we require a retainer in the amount of $1,000,000. The Clients agree that the $1,000,000 retainer may be applied against our final statement for professional fees and costs, or against such earlier statements as we may deem appropriate. If the Firm applies any portion of the retainer to any such earlier statements, then the Clients agree to replenish the retainer so that the balance is restored to $1,000,000. Any funds remaining from the retainer, after the termination of the Firm's representation of the Clients and our fees and costs are paid in full, will be refunded to the Clients, as applicable.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

*Fontainebleau Las Vegas, LLC*
*June 4, 2009*
*Page 4*

We also require that Fontainebleau Resorts LLC guaranty the payment of our fees and expenses. To this end, we would appreciate Fontainebleau Resorts LLC executing a counterpart of this letter to signify its joint and several liability for our fees and costs.

The Clients may terminate our representation in this engagement at any time for any reason by notifying us in writing. The termination of our services will not affect the Clients' and Fontainebleau Resorts LLC's responsibility for payment of outstanding statements and accrued fees and expenses incurred before termination or in connection with an orderly transition of the matter. If such termination occurs, the Clients' papers and property will be returned promptly upon receipt of payment for outstanding fees and costs. Our own files, including attorney work product, pertaining to the matter, will be retained by us or destroyed. We also may terminate this engagement at any time for any reason, or if the Clients fail to fulfill their obligations under this agreement, including their obligation to pay our fees and expenses, or as may be permitted or required under any applicable standards of professional conduct or rules of court upon such notice as may be required.

If either you or the Firm exercises it right to terminate this engagement, you agree to promptly execute a substitution of counsel or other documentation authorizing the Firm's withdrawal as counsel in any judicial, administrative, or other proceeding in which we have appeared on your behalf.

We are accustomed to using e-mail as a quick and effective means for communication with our clients; however, you should understand that no medium of communication is completely secure. While we have no reason to suppose that our e-mail system is not reasonably secure, there is a risk that e-mail exchanged between us may be intercepted, may be diverted and for technical reasons may never reach its addressee. It may be appropriate to use alternative media to communicate particularly sensitive material and to seek confirmation in other situations that an electronic message has been received. Moreover, although we have implemented measures to protect against our sending or receiving computer viruses and other malicious programs, we cannot guarantee that these will be completely effective.

Although we periodically notify former clients and other friends of the Firm of significant changes in the law once we have completed the matter for which we have been engaged, we do not do so as a matter of course. Therefore, after this matter is concluded, we will have no obligation to advise the Clients of subsequent changes in the law or other matters of fact or law that may affect it. Unless you engage us after the conclusion of this matter to provide additional advice on the issues arising from the matter, the Firm shall have no continuing obligation to advise to you with respect to future legal developments.

If the arrangements described in this letter are satisfactory and meet with the Clients' approval, please sign and date the copy of this letter return it to us together with the $1,000,000 retainer discussed above.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

*Fontainebleau Las Vegas, LLC*
*June 4, 2009*
*Page 5*

Naturally, we are most grateful and very enthusiastic about this engagement.

Sincerely,

Bilzin Sumberg Baena Price & Axelrod LLP

By: SCOTT L. BAENA, P.A., a Partner

By: _____
Scott L. Baena, President

AGREED AND ACCEPTED THIS
9th DAY OF JUNE, 2009

FONTAINEBLEAU LAS VEGAS HOLDINGS, LLC

By:    Fontainebleau Resort Properties I, LLC,
its managing member

By:    Fontainebleau Resort Holdings, LLC,
its managing member

By:    Fontainebleau Resorts, LLC,
its managing member

By: _____
Howard C. Karawan
Chief Restructuring Officer

*Fontainebleau Las Vegas, LLC*
*June 4, 2009*
*Page 6*

FONTAINEBLEAU LAS VEGAS, LLC

By:  Fontainebleau Las Vegas Holdings, LLC,
     its managing member

By:  Fontainebleau Resort Properties I, LLC,
     its managing member

By:  Fontainebleau Resort Holdings, LLC,
     its managing member

By:  Fontainebleau Resorts, LLC,
     its managing member

By: _____
     Howard C. Karawan
     Chief Restructuring Officer

FONTAINEBLEAU LAS VEGAS CAPITAL CORP.

By: _____
     Howard C. Karawan
     Chief Restructuring Officer

FONTAINEBLEAU RESORTS, LLC (as Guarantor)

By: _____
     Howard C. Karawan
     Chief Restructuring Officer

MIAMI 1847799.1 7650831854

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

# **EXHIBIT B**



Scott L. Baena, Esq.
Tel  305.350.2403
Fax  305.351.2203
sbaena@bilzin.com

November 25, 2009

Fontainebleau Las Vegas Retail, LLC, et al.
19950 West Country Club Drive
Aventura, FL 33180

**Attention: Howard C. Karawan**
             **Chief Restructuring Officer**

Dear Howard:

This letter will confirm the terms of the expanded engagement of Bilzin Sumberg Baena Price & Axelrod LLP (the "Firm") by Fontainebleau Retail Parent, LLC ("Retail Parent"), Fontainebleau Las Vegas Retail Mezzanine, LLC ("Retail Mezzanine") and Fontainebleau Las Vegas Retail, LLC ("Retail"; and, together with Retail Parent and Retail Mezzanine, the "Clients"). The purpose of this letter is to inform you of our policies concerning our professional fees and billing arrangements, and to otherwise confirm the general terms and conditions under which the Firm will provide legal services during the course of the representation.

The Firm will provide general bankruptcy representation in connection with the chapter 11 cases of the Clients; provided, however, it is understood and acknowledged that the Firm has not undertaken to represent the Clients if their bankruptcy cases (i) are converted to cases under chapter 7, (ii) if a chapter 11 trustee is appointed, (iii) the venue of the cases is transferred to a district outside the State of Florida, (iv) if an order is entered directing the disgorgement of any payments made to the Firm in respect of fees, including any retainer payments, or (v) if a conflict of interest arises among the Clients and the Resort Debtors (defined below). Accordingly, the Firm reserves the right to seek to withdraw as counsel in any of the foregoing events.

So there are no misapprehensions, when a law firm represents an entity, the Firm's client is only the entity, not its individual partners, members, managers, shareholders, principals, officers, directors, current or future affiliates. Moreover, in bankruptcy, counsel for a debtor in a chapter 11 case (as well as the debtor's officers and directors) has certain paramount fiduciary duties to the debtors' estate which includes its creditors, as well as its shareholders. We specifically agree that the Firm will not represent Jeffrey Soffer, any member of his immediate family, or any entity that is ultimately owned or controlled by any of the foregoing other than Board of Managers of Fontainebleau Resorts LLC with respect to its role as the Manager of the Clients (as each of the Clients are member-managed limited liability companies) or any entity it may own or control.

Moreover, special considerations are involved when a lawyer or law firm represents more than one client in common or related matters and it is important that each of the Clients

understand and consent to the considerations involved in such joint representation.  This letter is intended to confirm that each of the Clients consents to our representing the others, and each waives any conflict of interest that may arise because of our representation of all of the Clients.

Also, it should be understood that the Firm is to represent the Clients jointly, rather than separately.  This means that we will take directions with respect to this engagement from all of you jointly or from the representative you designate as the authorized spokesperson for all of you.  We will not maintain separate confidences among any of you with respect to information of material import, so that all material information that we receive may be shared with all of the Clients.  If a legal proceeding were ever to arise between any of the Clients, we may be subject to being compelled to testify about advice we may give to, or information we may obtain from, any of our Clients.

During our engagement, the Clients will be responsible to provide us with the requisite documentation and factual information to facilitate the Firm's delivery of legal services.  The scope of our representation will be limited to the performance of services described above.  It will not include an undertaking to represent the Clients or any of their affiliates in any other matter or scope of representation unless and until there is a writing, signed by us and by the Clients and such affiliate(s), as the case may be, describing that expanded engagement.  In that regard, we understand that the Clients are seeking, and the Firm will offer, legal advice only.  The Firm will not make any business, management or operational decisions for or on behalf of the Clients.

Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning this matter or the various courses of action and the results that might be anticipated.  Any expressions on our part concerning the outcome of your legal matters are expressions of our best professional judgment, but are not guarantees.  Such opinions are necessarily limited by our knowledge of the facts and are based on the state of the law at the time they are expressed.

Before beginning this engagement, the Firm conducted a computerized name check against our client records to determine whether a disqualifying conflict of interest exists as a result of our representation of the Clients and any representations of any of our other clients.  Except as set forth in the below paragraph, while the Firm has certain connections to parties in interest, the Firm is not aware of any matter in which it is involved that creates a conflict of interest with respect to the Client, on the one hand, and any other clients of the Firm, on the other hand, that arises out of this engagement.

As you know, the Firm is currently engaged as general bankruptcy counsel to Fontainebleau Las Vegas Holdings, LLC, as well as its wholly owned subsidiaries, Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas Capital Corp. (collectively, the "Resort Debtors").  We anticipate that certain conflicts of interest may arise among the Clients and the Resort Debtors in their respective chapter 11 cases.  For instance, a conflict of interest may arise as a result of the anticipated need to allocate sale proceeds between the Clients and the Resort Debtors as a result of the sale of these entities' assets to a single purchaser.

*Fontainebleau Las Vegas Retail, LLC*
*November 25, 2009*
*Page 3*

Further, a conflict of interest may arise in respect of the disposition of (a) that certain master lease by and between Fontainebleau Las Vegas Retail, LLC, as Lessor, and Fontainebleau Las Vegas, LLC, as Lessee, dated as of June 6, 2007, and (b) that certain Construction, Operation and Reciprocal Easement Agreement by and between Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas II, LLC and Fontainebleau Las Vegas Retail, LLC, dated as of June 6, 2007. Additional disputes between the Clients and the Resort Debtors may also give rise to potential conflicts of interest.

In the event that the Firm becomes aware of a conflict of interest, we will notify you of the conflict and our representation. A conflict of interest resulting from a dispute between the Clients and the Resort Debtors cannot be waived. In circumstances in which a conflict of interest results from the Firm's current representation of an unaffiliated third party in an unrelated matter, the conflict of interest may be waived in writing by both the Clients and the third party. In the event such a conflict of interest arises, we expect the Clients to assist us in resolving the conflict and obtaining a satisfactory waiver. In all events, all fees and expenses incurred through the date of any termination due to a conflict would be due and payable by the Clients upon receipt of our invoice for such fees and expenses.

Our fees will be based primarily on the amount of time spent on behalf of the Clients. Each lawyer and paraprofessional has an hourly billing rate based generally on experience and special knowledge. The rate multiplied by the time expended on the Clients' behalf will be the basis for determining our professional fee. Our partners' standard billing rates range from $390 to $700 per hour. The billing rate for Scott L. Baena is presently $675 per hour. Associate attorneys who generally work with us on matters of this type have billing rates which currently range from $225 per hour to $390 per hour for senior associates. Time devoted by legal assistants is charged at $190 to $205 per hour. Naturally, our rates are adjusted from time to time. We agree that the foregoing rates will not be increased during 2009.

In addition to our professional fees, the Clients will also be charged for reasonable costs and expenses that we have incurred on its behalf in connection with the matters for which we are being retained. These costs may include long distance telephone charges, postage, delivery charges, overtime word processing, facsimile and photocopy charges and related expenses, reasonable travel expenses (including coach class airfare and moderate accommodations and meals), financing statements, judgment and other lien and corporate searches, and use of service providers, such as experts or graphic artists for purposes of preparing exhibits, as well as deposition costs, process servers, court reporters and witness fees. We also separately bill for computerized legal research and related expenses. In the event it is necessary for us to retain consultants or experts in connection with this engagement, we shall only do so with the Clients' written consent in advance of the engagement. In bankruptcy, the retention of certain other professionals may also require the approval of the bankruptcy court. We agree to bill all such fees and expenses in accordance with the Fontainebleau Outside Counsel Billing Guidelines.

We will send the Clients a monthly statement via your electronic billing system, Serengeti, showing the fees and costs incurred on their behalf for which the Clients shall be

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

*Fontainebleau Las Vegas Retail, LLC*
*November 25, 2009*
*Page 4*

jointly and severally liable. Prior to the commencement of the bankruptcy cases, our fees and expenses are due promptly upon receipt of our invoices. The Firm's willingness <u>and</u> ability to serve as counsel to the Clients in their chapter 11 cases will be adversely affected if the Firm is a creditor at the date of commencement of such cases by virtue of the Clients' failure to pay the Firm's fees and expenses incurred prior to the commencement of the bankruptcy cases. Therefore, we require that all of our fees and expenses relating to services rendered up to the date of commencement of the bankruptcy cases be paid in full prior to the filing of voluntary chapter 11 petitions.

In bankruptcy, the Clients' account balance shall be due and payable upon bankruptcy court approval of fees and costs. Such approval is ordinarily obtained every 120 days from the date of the bankruptcy filing; however, the bankruptcy courts often authorize the interim payment of fees (likely not to exceed 80% of the fees sought) and costs on a monthly or bi-monthly basis. By their acceptance of this retention letter, the Clients authorize the Firm to seek authority from the bankruptcy court for the payment of interim fees and costs as aforesaid.

To begin this engagement, we require a retainer in the amount of $42,247. The Clients agree that the $42,247 retainer may be applied against our final statement for professional fees and costs, or against such earlier statements as we may deem appropriate. Any funds remaining from the retainer, after the termination of the Firm's representation of the Clients and our fees and costs are paid in full, will be refunded to the Clients, as applicable.

The Clients may terminate our representation in this engagement at any time for any reason by notifying us in writing. The termination of our services will not affect the Clients' responsibility for payment of outstanding statements and accrued fees and expenses incurred before termination or in connection with an orderly transition of the matter. If such termination occurs, the Clients' papers and property will be returned promptly upon receipt of payment for outstanding fees and costs. Our own files, including attorney work product, pertaining to the matter, will be retained by us or destroyed. We also may terminate this engagement at any time for any reason, or if the Clients fail to fulfill their obligations under this agreement, including their obligation to pay our fees and expenses, or as may be permitted or required under any applicable standards of professional conduct or rules of court upon such notice as may be required.

If either you or the Firm exercises it right to terminate this engagement, you agree to promptly execute a substitution of counsel or other documentation authorizing the Firm's withdrawal as counsel in any judicial, administrative, or other proceeding in which we have appeared on your behalf.

We are accustomed to using e-mail as a quick and effective means for communication with our clients; however, you should understand that no medium of communication is completely secure. While we have no reason to suppose that our e-mail system is not reasonably secure, there is a risk that e-mail exchanged between us may be intercepted, may be diverted and for technical reasons may never reach its addressee. It may be appropriate to use alternative media to communicate particularly sensitive material and to seek confirmation in

*Fontainebleau Las Vegas Retail, LLC*
*November 25, 2009*
*Page 5*

other situations that an electronic message has been received. Moreover, although we have implemented measures to protect against our sending or receiving computer viruses and other malicious programs, we cannot guarantee that these will be completely effective.

Although we periodically notify former clients and other friends of the Firm of significant changes in the law once we have completed the matter for which we have been engaged, we do not do so as a matter of course. Therefore, after this matter is concluded, we will have no obligation to advise the Clients of subsequent changes in the law or other matters of fact or law that may affect it. Unless you engage us after the conclusion of this matter to provide additional advice on the issues arising from the matter, the Firm shall have no continuing obligation to advise to you with respect to future legal developments

If the arrangements described in this letter are satisfactory and meet with the Clients' approval, please sign and date the copy of this letter return it to us together with the $42,247 retainer discussed above.

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

*Fontainebleau Las Vegas Retail, LLC*
*November 25, 2009*
*Page 6*

Naturally, we are most grateful and very enthusiastic about this engagement.

Sincerely,

Bilzin Sumberg Baena Price & Axelrod LLP

By: SCOTT L. BAENA, P.A., a Partner

By: _____

Scott L. Baena, President

AGREED AND ACCEPTED THIS
_____ DAY OF NOVEMBER, 2009

FONTAINEBLEAU LAS VEGAS RETAIL PARENT, LLC

By:    Fontainebleau Resort Holdings, LLC,
       its managing member

By:    Fontainebleau Resorts, LLC,
       its managing member

By: _____
       Howard C. Karawan
       Chief Restructuring Officer

FONTAINEBLEAU LAS VEGAS RETAIL MEZZANINE, LLC

By:    Fontainebleau Las Vegas Retail Parent, LLC,
       its managing member

By:    Fontainebleau Resort Holdings, LLC,
       its managing member

By:    Fontainebleau Resorts, LLC,
       its managing member

By: _____
       Howard C. Karawan

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

*Fontainebleau Las Vegas Retail, LLC*
*November 25, 2009*
*Page 6*

Naturally, we are most grateful and very enthusiastic about this engagement.

Sincerely,

Bilzin Sumberg Baena Price & Axelrod LLP

By: SCOTT L. BAENA, P.A., a Partner

By: _____
        Scott L. Baena, President

AGREED AND ACCEPTED THIS
_____ DAY OF NOVEMBER, 2009

FONTAINEBLEAU LAS VEGAS RETAIL PARENT, LLC

By:   Fontainebleau Resort Holdings, LLC,
       its managing member

By:   Fontainebleau Resorts, LLC,
       its managing member

By: _____
       Howard C. Karawan
       Chief Restructuring Officer

FONTAINEBLEAU LAS VEGAS RETAIL MEZZANINE, LLC

By:   Fontainebleau Las Vegas Retail Parent, LLC,
       its managing member

By:   Fontainebleau Resort Holdings, LLC,
       its managing member

By:   Fontainebleau Resorts, LLC,
       its managing member

By: _____
       Howard C. Karawan

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

*Fontainebleau Las Vegas Retail, LLC*
*November 25, 2009*
*Page 7*

Chief Restructuring Officer

FONTAINEBLEAU LAS VEGAS RETAIL, LLC

By:   Fontainebleau Las Vegas Retail Mezzanine, LLC,
      its managing member

By:   Fontainebleau Las Vegas Retail Parent, LLC,
      its managing member

By:   Fontainebleau Resort Holdings, LLC,
      its managing member

By:   Fontainebleau Resorts, LLC,
      its managing member

By:   _____
      Howard C. Karawan
      Chief Restructuring Officer

MIAMI 1845614.3 7650831854

 BILZIN SUMBERG BAENA PRICE & AXELROD LLP

# **EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    Chapter 11

FONTAINEBLEAU LAS VEGAS
HOLDINGS, LLC, ET AL.[1]

                                                          Case No.  09-21481-BKC-AJC


                        Debtors.                          (Jointly Administered)
_____/

**[PROPOSED] ORDER GRANTING MOTION BY BILZIN SUMBERG BAENA PRICE**
**& AXELROD LLP TO WITHDRAW AS COUNSEL OF RECORD TO THE DEBTORS**

THIS MATTER came before the Court upon the Motion By Bilzin Sumberg Baena Price

& Axelrod LLP To Withdraw As Counsel of Record to the Debtors (the "Motion") filed by

Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg").  The Court, having considered

---

[1]  The last four digits of each of the Debtors' tax identification numbers are: (i) Fontainebleau Las Vegas
Holdings, LLC [9337]; (ii) Fontainebleau Las Vegas, LLC [9332]; and (iii) Fontainebleau Las Vegas Capital Corp.
[7822]; (iv) Fontainebleau Las Vegas Retail Parent, LLC [9796], (v) Fontainebleau Las Vegas Retail Mezzanine,
LLC [9458], and (vi) Fontainebleau Las Vegas Retail, LLC [1045].  The Debtors' current mailing address is 19950
West Country Club Drive, Aventura, Florida 33180.

the Motion, the representations of counsel and being otherwise fully advised in the premises, finds good cause to grant the Motion.  Accordingly, it is

ORDERED as follows:

1.      The Motion is GRANTED.

2.      Bilzin Sumberg is authorized to withdraw as counsel to the captioned debtors[2] (collectively, the "Debtors") and discharged from providing further services as bankruptcy counsel to the Debtors in the captioned bankruptcy cases.

# # #

SUBMITTED BY:
Scott L. Baena, Esq.
BILZIN SUMBERG BAENA PRICE & AXELROD LLP
200 S. Biscayne Blvd.
Suite, 2500
Miami, Florida 33131
Tel: (305) 374-7580
Fax: (305) 374-7593


Copies to:

Scott L. Baena, Esq., is directed to mail a copy of this Order to all interested parties immediately upon receipt of this Order and shall file a certificate of service with the Clerk of the Court.

---

[2] The Debtors are comprised of (i) Fontainebleau Las Vegas Holdings, LLC; (ii) Fontainebleau Las Vegas, LLC; (iii) Fontainebleau Las Vegas Capital Corp.; (iv) Fontainebleau Las Vegas Retail Parent, LLC, (v) Fontainebleau Las Vegas Retail Mezzanine, LLC, and (vi) Fontainebleau Las Vegas Retail, LLC.