Form 210A (10/06)

## United States Bankruptcy Court
### Southern District of Florida

In re Fontainebleau Las Vegas Holdings, LLC, et al., Case No. 09-21481-BKC-AJC, Case No. 09-21482-BKC-AJC and Case No. 09-21483-BKC-AJC

## NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY PURSUANT TO FEDERAL ROLE OF BANKRUPTCY PROCEDURE 3001(e)(2)

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. Section 111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

NAME OF TRANSFEREE:

Solus Core Opportunities Master Fund Ltd
c/0 Solus Alternative Asset Management LP
430 Park Avenue, 9th Floor
New York, NY 10022
Attn: Solus Compliance Officer
Telephone: 212.284.4300

NAME OF TRANSFEROR

Morgan Stanley Senior Funding, Inc.
1 Pierrepont Plaza, 7th Floor
Brooklyn, New York 11201
Attention: Vanessa Marling/Darragh Dempsey
Telephone: 718.754.7294/7288



Proof of Claim Descriptions for Claim Numbers 811, 395, 853, 856, 826, 399, 562, 733 and 375:

Proof of Claim, dated October 13, 2009, filed by Carlyle High Yield Partners VI, Ltd. in In re Fontainebleau Las Vegas Holdings, LLC, Case No. 09-21481 (AJC) (Bankr. S.D. Fla.) and the Notice of Transfer filed by Morgan Stanley Senior Funding, Inc., Claim Number 811.

Proof of Claim, dated October 13, 2009, filed by Carlyle High Yield Partners VI, Ltd. in In re Fontainebleau Las Vegas, LLC, Case No. 09-21482 (AJC) (Bankr. S.D. Fla.) and the Notice of Transfer filed by Morgan Stanley Senior Funding, Inc., Claim Number 395.

Proof of Claim, dated October 13, 2009, filed by Carlyle High Yield Partners VI, Ltd. in In re Fontainebleau Las Vegas Capital Corp., Case No. 09-21483 (AJC) (Bankr. S.D.

6629472.1

Fla.) and the Notice of Transfer filed by Morgan Stanley Senior Funding, Inc., <u>Claim Number 853.</u>

Proof of Claim, dated October 13, 2009, filed by Carlyle High Yield Partners VIII, Ltd. in In re Fontainebleau Las Vegas Holdings, LLC, Case No. 09-21481 (AJC) (Bankr. S.D. Fla.) and the Notice of Transfer filed by Morgan Stanley Senior Funding, Inc., <u>Claim Number 856.</u>

Proof of Claim, dated October 13, 2009, filed Carlyle High Yield Partners VIII, Ltd. in In re Fontainebleau Las Vegas, LLC, Case No. 09-21482 (AJC) (Bankr. S.D. Fla.), <u>Claim Number 826.</u>

Proof of Claim, dated October 13, 2009, filed by Carlyle High Yield Partners VIII, Ltd. in In re Fontainebleau Las Vegas Capital Corp., Case No. 09-21483 (AJC) (Bankr. S.D. Fla.) and the Notice of Transfer filed by Morgan Stanley Senior Funding, Inc., <u>Claim Number 399.</u>

Proof of Claim, dated October 13, 2009, filed by Carlyle High Yield Partners X, Ltd. in In re Fontainebleau Las Vegas Holdings, LLC, Case No. 09-21481 (AJC) (Bankr. S.D. Fla.) and the Notice of Transfer filed by Morgan Stanley Senior Funding, Inc., <u>Claim Number 562.</u>

Proof of Claim, dated October 13, 2009, filed by Carlyle High Yield Partners X, Ltd. in In re Fontainebleau Las Vegas, LLC, Case No. 09-21482 (AJC) (Bankr. S.D. Fla.) and the Notice of Transfer filed by Morgan Stanley Senior Funding, Inc., <u>Claim Number 733.</u>

Proof of Claim, dated October 13, 2009, filed by Carlyle High Yield Partners X, Ltd.. in In re Fontainebleau Las Vegas Capital Corp., Case No. 09-21483 (AJC) (Bankr. S.D. Fla.) and the Notice of Transfer filed by Morgan Stanley Senior Funding, Inc., <u>Claim Number 375.</u>

Principal Amount of Claim transferred: $1,000,000.00 (Initial Term Loan), plus interest, fees, expenses and other. For clarity, this amount reflects a transfer of 100% of the total claim amount asserted in the Proof of Claim and 100% of the Initial Term Loan therein.

Principal Amount of Claim transferred: $500,000.00 (Delay Draw Term Loan), plus interest, fees, expenses and other. For clarity, this amount reflects a transfer of 100% of the total claim amount asserted in the Proof of Claim and 100% of the Delay Draw Term Loan therein

Date Claim Filed: October 13, 2009

6629472.1

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

Solus Core Opportunities Master Fund Ltd
By: Solus Alternative Asset Management LP
    Its Investment Advisor

By: _____    Date: ___10/22/2010___

          Chris Bondy

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. Sections 152 & 3571.

6629472.1

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | SOUTHERN DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>Fontainebleau Las Vegas Holdings, LLC | Case Number:<br>09-21481 (AJC) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Carlyle High Yield Partners VI, Ltd.

Name and address where notices should be sent:
Carlyle High Yield Partners VI, Ltd.                   -and-
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022

Sidney P. Levinson
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street
Suite 2900
Los Angeles, CA 90017

Telephone number: 212-813-4900  or  213-694-1200

Name and address where payment should be sent (if different from above):
Carlyle High Yield Partners VI, Ltd.
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022
Telephone number: 212-813-4900  or  213-694-1200

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**     $ See Addendum

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See Addendum
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
        (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☒ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe: See Addendum

Value of Property:$ See Addendum  Annual Interest Rate _____ %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ See Addendum    Basis for perfection:  See Addendum

Amount of Secured Claim: $ See Addendum   Amount Unsecured: $ See Addendum

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 10-9-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Linda Pace, Managing Director, Carlyle Investment Management LLC | FOR COURT USE ONLY<br>RECEIVED<br>OCT 13 2009<br>KURTZMAN CARSON CONSULTANTS |
|---|---|---|



*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*



## ADDENDUM TO PROOF OF CLAIM OF
## CARLYLE HIGH YIELD PARTNERS VI, LTD.

(Fontainebleau Las Vegas Holdings, LLC, Case No. 09-21481)

Carlyle High Yield Partners VI, Ltd. (the "Claimant") is a lender under that certain Credit Agreement dated as of June 6, 2007 (as described more fully below), pursuant to which Fontainebleau Las Vegas, LLC ("FBLV") is a borrower, and Fontainebleau Las Vegas Holdings, LLC ("Debtor") and Fontainebleau Las Vegas Capital Corp. ("Capital") are guarantors of FBLV's obligations under the Credit Agreement ("Guarantors" and, collectively with FBLV, the "Companies"). Claimant is a creditor of the Companies.

The Companies were engaged in the development and construction of Fontainebleau Resort and Casino in Las Vegas, Nevada. They filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 9, 2009 (the "Petition Date"). On June 10, 2009, the Court issued an order permitting joint administration of the Companies' cases under case number 09-21481-BKC-AJC.

### Definitions

A.  "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

B.  "Cash Collateral Orders" means any and all Bankruptcy Court orders authorizing postpetition use of the Lenders' Cash Collateral (as that term is defined in the orders), on either consensual or non-consensual basis, including, without limitation: (i) Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy

Code, and (III) Scheduling Final Hearing, entered on June 11, 2009 (D.E. 49)

("First Interim Order"); (ii) Second Interim Order (I) Authorizing Use of Cash

Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing

Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362,

and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on July

7, 2009 (D.E. 242) ("Second Interim Order"); (iii) Third Interim Order (I)

Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on July 31, 2009 (D.E. 359) and Amended Third Interim Order

(I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on August 7, 2009 (D.E. 389) (collectively, "Third Interim

Order"), (iv) Fourth Interim Order (I) Authorizing Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on August 27,

2009 (D.E. 454) ("Fourth Interim Order"), (v) First Interim Order (I)

Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of

the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured

Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, and (III)

Scheduling Final Hearing, entered on September 18, 2009 (D.E. 565) ("First

Interim Nonconsensual Order"), (vi) Order Supplementing First Interim Order

Authorizing the Nonconsensual Use of Cash Collateral, entered on September 29, 2009 (D.E. 617) ("First Supplemental Nonconsensual Order"), **(vii)** Second Supplemental Order (I) Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, entered on September 30, 2009 (D.E. 647) ( "Second Supplemental Nonconsensual Order").

C.    "Chapter 11 Cases" means the cases commenced by the Companies under the Bankruptcy Code and jointly administered under Case No. 09-21481-AJC.

D.    "Credit Agreement" means that certain Credit Agreement dated June 6, 2007 among Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas II, LLC, as borrowers, Bank of America, N.A., as administrative agent, and certain lenders a party thereto.

E.    "Disbursement Agreement" means that certain Master Disbursement Agreement dated June 6, 2007 by and among Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail, LLC, Bank of America, N.A., as the Bank Agent, Wells Fargo Bank, N.A., as the Trustee, Lehman Brothers Holdings, Inc., as the Retail Agent, and Bank of America, N.A. as the Disbursement Agent.

F.    "Fontainebleau Affiliates" means Turnberry West Construction, Inc., Turnberry Residential Limited Partner, L.P., and Fontainebleau Resorts, LLC.

G.    "Guarantee and Collateral Agreement" means that certain Guarantee and Collateral Agreement dated June 6, 2007 by Fontainebleau Las Vegas, LLC,

3

        Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, and Fontainebleau Las Vegas Capital Corp. in favor of Bank of America, N.A., as agent for the Lenders.

H.      "Lenders" means lenders under the Credit Agreement and the Loan Documents, and their successors in interest.

I.      "Loan Documents" means Credit Agreement together with all schedules and exhibits thereto, including, without limitation, guarantees, guarantee and collateral agreements (including, without limitation, the Guarantee and Collateral Agreement), subordination agreements (including, without limitation, the Subordination Agreement), disbursement agreements (including, without limitation, the Disbursement Agreement), mortgages and deeds of trust, control agreements, security agreements, pledge agreements, intercreditor agreements, indentures, contractor undertakings, notes, instruments, reaffirmations, certificates, and any other agreements and documents delivered pursuant to or in connection with the Credit Agreement.

J.      "Subordination Agreement" means that certain Affiliate Subordination Agreement dated June 6, 2007, by Turnberry West Construction, Inc., Turnberry Residential Limited Partners, L.P., Fontainebleau Resorts, LLC, Fontainebleau Las Vegas II, LLC, Debtor, and FBLV in favor of Bank of America, N.A., as Administrative Agent, and Wells Fargo, N.A., as Trustee.

### The Claims

Claimant is one of the Lenders under the Credit Agreement. It made loans to and for the benefit of FBLV. Under the Guarantee and Collateral Agreement, the Guarantors guaranteed

"jointly and severally, unconditionally and irrevocably… the prompt and complete payment and performance…" of FBLV's obligations under the Credit Agreement. As of the date of this Proof of Claim, the Debtor is obligated and indebted to Claimant, on account of its guarantees, (i) in an amount not less than $1,116,666.66 in respect of the principal amount of Initial Term Loan obligations, as that term is defined in the Credit Agreement, (ii) in an amount not less than $800,000.00 in respect of the principal amount of Delay Draw Term Loan obligations, as that term is defined in the Credit Agreement, (iii) unpaid interest, if any, that accrued prior to the Petition Date, and (iv) unpaid interest, if any, that accrued and continues to accrue after the Petition Date (including interest at any applicable default rate). (Obligations described in this paragraph are collectively referred to as the "Term Loan Indebtedness Guarantees").

The Debtor is further obligated and indebted to Claimant on account of its guarantees of FBLV's obligations pursuant to various provisions of the Loan Documents, including, without limitation, sections 2.19 and 10.5 of the Credit Agreement, section 11.15 of the Disbursement Agreement, and section 8.4 of the Guarantee and Collateral Agreement for all unpaid costs, fees, expenses, indemnities, and charges resulting from and in connection with the enforcement and protection of Claimant's rights under the Credit Agreement, both pre- and post-Petition Date. These costs, fees, expenses, indemnities, and charges have grown and continue to grow, to the extent permitted by law. Any amounts arising after the Petition Date are entitled to administrative priority to the extent provided in 11 U.S.C. §§ 507(a)(1) and 503, or any applicable court orders. (Obligations described in this paragraph, collectively with the Term Loan Indebtedness Guarantees, are referred to herein as the "Indebtedness Guarantees").

The Indebtedness Guarantees are secured by the Collateral, as further described below. Claimant does not have any definite information about the current value of the Collateral and is not aware of any recent appraisals performed to establish the value of the Collateral. Therefore,

this Proof of Claim is filed as a **secured claim to the extent of the value of the Collateral** held by or for the benefit of Claimant as security for the Indebtedness Guarantees, and as an **unsecured claim to the extent there is any deficiency** in the value of the Collateral held by or for the benefit of Claimant when compared to the amount of the Indebtedness Guarantees.

In addition, Claimant asserts claims based upon (a) any breaches by any of the Companies of any representations and warranties under the Loan Documents, including, without limitation, any breaches of representations and warranties set forth in Article 4 of the Credit Agreement, (b) any misrepresentations by any of the Companies, and (c) any events of default under the Loan Documents, including, without limitation, any Events of Default under Section 8 of the Credit Agreement.

## The Collateral

To secure the Indebtedness Guarantees, the Debtor granted to Bank of America, N.A., an administrative agent, for the benefit of the Lenders, including Claimant, pursuant to and as described in the Loan Documents, a first priority lien and security interest in substantially all personal property of the Debtor, including, without limitation, the Debtor's deposit accounts, chattel paper, contracts, documents, equipment, general intangibles, instruments, intellectual property, inventory, investment property, letters of credit, money, bank accounts, insurance policies, permits, books, records and other property or assets (the foregoing collateral generally described in this paragraph, together with all proceeds, products, rents and profits thereof, is referred to collectively as the "Collateral").

The liens and security interests on and in the Collateral are perfected pursuant to, among other things, (i) Uniform Commercial Code financing statements filed in the appropriate offices in the applicable jurisdictions against the Debtor in favor of Bank of America, N.A., as the agent

for the Lenders,  (ii) control agreements executed by the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, with respect to accounts and other types of collateral where perfection by control is required or permitted under the Uniform Commercial Code, and (iii) possession by Bank of America, N.A., as the agent for the Lenders, of instruments, securities, chattel paper and similar documents for which perfection by possession is required or permitted under the Uniform Commercial Code.

The Loan Documents, including those evidencing perfection as described above, are not attached as they are voluminous and copies are in the Debtor's possession, but such documents will be made available upon request.

The foregoing does not purport to describe all of the collateral securing the Indebtedness Guarantees or all documents evidencing the liens and security interests securing the Indebtedness Guarantees, and Claimant reserves the right to amend this Proof of Claim to supplement the foregoing description of the Collateral and documents evidencing the liens and security interests securing the Indebtedness Guarantees.

## Cash Collateral Orders

After the Petition Date, Bankruptcy Court entered numerous Cash Collateral Orders authorizing use of the Lenders' "Cash Collateral" (as such term is defined in the orders) pursuant to Section 363 of the Bankruptcy Code, providing adequate protection, and making certain findings of fact and conclusions of law.  This Proof of Claim incorporates, by reference, all of the Debtor's stipulations and all findings of fact contained in the Cash Collateral Orders.  In addition, all Cash Collateral used by the Debtor under the authority of the Cash Collateral Orders is entitled to superpriority administrative expense status under Section 507(b) of the Bankruptcy Code, and is secured by either *pari passu* or senior liens on the Collateral (for the purposes of

7

this paragraph only, as such term is defined in the Cash Collateral Orders), as provided in each corresponding Cash Collateral Order.

### Subordination Agreement

Pursuant to the Subordination Agreement, Fontainebleau Affiliates subordinated certain claims against Debtor to the claims of administrative agent for the Lenders   Section 2 04(b) of the Subordination Agreement provides that until all of the debt owed to the Lenders is paid in full, "any payments of the Subordinated Obligations to which any Fontainebleau Affiliate would be entitled but for this Article 2 will be made to [administrative agent]."  Therefore, by this Proof of Claim, Claimant asserts its right to a proportional share of any distributions made on account of any Subordinated Obligations (as defined in the Subordination Agreement) that would otherwise be made to Fontainebleau Affiliates on account of any claim they may have made or make against Debtor.

### Reservation of Rights

The filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of any of Claimant's rights against any other entity or person for all or any part of any claim set forth herein; (b) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims or with respect to any objection or other proceeding; (c) a waiver of any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor; (d) an election of remedy which waives or otherwise affects any other remedy of Claimant; (e) a waiver of Claimant's right to file a request for payment of administrative expenses under section 503(b) of the Bankruptcy Code; or (f) a waiver of a right to trial by jury.

8

Claimant reserves the right to amend this Proof of Claim in any way, including without limitation (i) setting forth or changing the basis or the amount of the claim described herein, (ii) further describing said claim, and (iii) providing further evidence relating to said claim.

## Notice

All objections and other notices, pleadings, demands, or documents delivered with respect of this Claim should be delivered to:

Carlyle High Yield Partners VI, Ltd.
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022

-and-

Sidney P. Levinson, Esq.
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017
Tel. (213) 694-1200
Fax: (213) 694-1234
Email: LevinsonS@hbdlawyers.com

9

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | SOUTHERN DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
Fontainebleau Las Vegas, LLC

**Case Number:**
09-21482 (AJC)

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Carlyle High Yield Partners VI, Ltd.

☐ Check this box to indicate that this claim amends a previously filed claim.

**Name and address where notices should be sent:**
Carlyle High Yield Partners VI, Ltd.    -and-
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022

Sidney P. Levinson
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street
Suite 2900
Los Angeles, CA 90017

**Court Claim Number:** _____
*(If known)*

Filed on: _____

**Telephone number:** 212-813-4900 or 213-694-1200

**Name and address where payment should be sent (if different from above):**
Carlyle High Yield Partners VI, Ltd.
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022
**Telephone number:** 212-813-4900 or 213-694-1200

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $ See Addendum

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See Addendum
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:** See Addendum

**Value of Property:** $ See Addendum  **Annual Interest Rate** _____ %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

if any: $ See Addendum  **Basis for perfection:** See Addendum

**Amount of Secured Claim:** $ See Addendum  **Amount Unsecured:** $ See Addendum

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**Date:** 10-9-09

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Linda Pace, Managing Director, Carlyle Investment Management LLC

FOR COURT USE ONLY

RECEIVED
OCT 13 2009
KURTZMAN CARSON CONSULTANTS

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



**ADDENDUM TO PROOF OF CLAIM OF
CARLYLE HIGH YIELD PARTNERS VI, LTD.**

(Fontainebleau Las Vegas, LLC, Case No. 09-21482)

Carlyle High Yield Partners VI, Ltd. (the "Claimant") is a lender under that certain Credit Agreement dated as of June 6, 2007 (as described more fully below), pursuant to which Fontainebleau Las Vegas, LLC ("Debtor") is a borrower, and Fontainebleau Las Vegas Holdings, LLC ("Holdings") and Fontainebleau Las Vegas Capital Corp. ("Capital") are guarantors of the Debtor's obligations under the Credit Agreement ("Guarantors" and, collectively with the Debtor, the "Companies"). Claimant is a creditor of the Companies.

The Companies were engaged in the development and construction of Fontainebleau Resort and Casino in Las Vegas, Nevada. They filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 9, 2009 (the "Petition Date"). On June 10, 2009, the Court issued an order permitting joint administration of the Companies' cases under case number 09-21481-BKC-AJC.

**Definitions**

A.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

B.      "Cash Collateral Orders" means any and all Bankruptcy Court orders authorizing postpetition use of the Lenders' Cash Collateral (as that term is defined in the orders), on either consensual or non-consensual basis, including, without limitation: (i) Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy

Code, and (III) Scheduling Final Hearing, entered on June 11, 2009 (D.E. 49)

("First Interim Order"); (ii) Second Interim Order (I) Authorizing Use of Cash

Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing

Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362,

and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on July

7, 2009 (D.E. 242) ("Second Interim Order"); (iii) Third Interim Order (I)

Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on July 31, 2009 (D.E. 359) and Amended Third Interim Order

(I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on August 7, 2009 (D.E. 389) (collectively, "Third Interim

Order"), (iv) Fourth Interim Order (I) Authorizing Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on August 27,

2009 (D.E. 454) ("Fourth Interim Order"), (v) First Interim Order (I)

Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of

the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured

Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, and (III)

Scheduling Final Hearing, entered on September 18, 2009 (D.E. 565) ("First

Interim Nonconsensual Order"), (vi) Order Supplementing First Interim Order

Authorizing the Nonconsensual Use of Cash Collateral, entered on September 29, 2009 (D.E. 617) ("First Supplemental Nonconsensual Order"), **(vii)** Second Supplemental Order (I) Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, entered on September 30, 2009 (D.E. 647) ( "Second Supplemental Nonconsensual Order").

C.      "Chapter 11 Cases" means the cases commenced by the Companies under the Bankruptcy Code and jointly administered under Case No. 09-21481-AJC.

D.      "Credit Agreement" means that certain Credit Agreement dated June 6,  2007 among Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas II, LLC, as borrowers, Bank of America, N.A., as administrative agent, and certain lenders a party thereto.

E.      "Disbursement Agreement" means that certain Master Disbursement Agreement dated June 6, 2007 by and among Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail, LLC, Bank of America, N.A., as the Bank Agent, Wells Fargo Bank, N.A., as the Trustee, Lehman Brothers Holdings, Inc., as the Retail Agent, and Bank of America, N.A. as the Disbursement Agent.

F.      "Fontainebleau Affiliates" means Turnberry West Construction, Inc., Turnberry Residential Limited Partner, L.P., and Fontainebleau Resorts, LLC.

G.      "Guarantee and Collateral Agreement" means that certain Guarantee and Collateral Agreement dated June 6, 2007 by Fontainebleau Las Vegas, LLC,

3

Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, and Fontainebleau Las Vegas Capital Corp. in favor of Bank of America, N.A., as agent for the Lenders.

H.    "Lenders" means lenders under the Credit Agreement and the Loan Documents, and their successors in interest.

I.    "Loan Documents" means Credit Agreement together with all schedules and exhibits thereto, including, without limitation, guarantees, guarantee and collateral agreements (including, without limitation, the Guarantee and Collateral Agreement), subordination agreements (including, without limitation, the Subordination Agreement), disbursement agreements (including, without limitation, the Disbursement Agreement), mortgages and deeds of trust, control agreements, security agreements, pledge agreements, intercreditor agreements, indentures, contractor undertakings, notes, instruments, reaffirmations, certificates, and any other agreements and documents delivered pursuant to or in connection with the Credit Agreement.

J.    "Subordination Agreement" means that certain Affiliate Subordination Agreement dated June 6, 2007, by Turnberry West Construction, Inc., Turnberry Residential Limited Partners, L.P., Fontainebleau Resorts, LLC, Fontainebleau Las Vegas II, LLC, Holdings, and Debtor in favor of Bank of America, N.A., as Administrative Agent, and Wells Fargo, N.A., as Trustee.


## The Claims

Claimant is one of the Lenders under the Credit Agreement. It made loans to and for the benefit of the Debtor. To evidence these loans, the Debtor executed and delivered to or for the

4

benefit of the Lenders the Initial Term Notes and the Delayed Draw Term Notes (each as more fully described in the Credit Agreement). As of the date of this Proof of Claim, the Debtor is obligated and indebted to Claimant (i) in an amount not less than $1,116,666.66 in respect of the principal amount of Initial Term Loan obligations, as that term is defined in the Credit Agreement, (ii) in an amount not less than $800,000.00 in respect of the principal amount of Delay Draw Term Loan obligations, as that term is defined in the Credit Agreement, (iii) unpaid interest, if any, that accrued prior to the Petition Date, and (iv) unpaid interest, if any, that accrued and continues to accrue after the Petition Date (including interest at any applicable default rate). (Obligations described in this paragraph are collectively referred to as the "Term Loan Indebtedness").

The Debtor is further obligated and indebted to Claimant pursuant to various provisions of the Loan Documents, including, without limitation, sections 2.19 and 10.5 of the Credit Agreement, section 11.15 of the Disbursement Agreement, and section 8.4 of the Guarantee and Collateral Agreement for all unpaid costs, fees, expenses, indemnities, and charges resulting from and in connection with the enforcement and protection of Claimant's rights under the Credit Agreement, both pre- and post-Petition Date. These costs, fees, expenses, indemnities, and charges have grown and continue to grow, to the extent permitted by law. Any amounts arising after the Petition Date are entitled to administrative priority to the extent provided in 11 U.S.C. §§ 507(a)(1) and 503, or any applicable court orders. (Obligations described in this paragraph, collectively with the Term Loan Indebtedness, are referred to herein as the "Indebtedness").

The Indebtedness is secured by the Collateral, as further described below. Claimant does not have any definite information about the current value of the Collateral and is not aware of any recent appraisals performed to establish the value of the Collateral. Therefore, this Proof of

5

Claim is filed as a **secured claim to the extent of the value of the Collateral** held by or for the benefit of Claimant as security for the Indebtedness, and as an **unsecured claim to the extent there is any deficiency** in the value of the Collateral held by or for the benefit of Claimant when compared to the amount of the Indebtedness.

In addition, Claimant asserts claims based upon (a) any breaches by any of the Companies of any representations and warranties under the Loan Documents, including, without limitation, any breaches of representations and warranties set forth in Article 4 of the Credit Agreement, (b) any misrepresentations by any of the Companies, and (c) any events of default under the Loan Documents, including, without limitation, any Events of Default under Section 8 of the Credit Agreement.

## The Collateral

To secure the Indebtedness, the Debtor granted to Bank of America, N.A., an administrative agent, for the benefit of the Lenders, including Claimant, pursuant to and as described in the Loan Documents, a first priority lien and security interest in substantially all assets of the Debtor, including, without limitation, the Debtor's real property, deposit accounts, chattel paper, contracts, documents, equipment, general intangibles, instruments, intellectual property, inventory, investment property, letters of credit, money, bank accounts, insurance policies, permits, books, records and other property or assets (the foregoing collateral generally described in this paragraph, together with all proceeds, products, rents and profits thereof, is referred to collectively as the "Collateral").

The liens and security interests on and in the Collateral are perfected pursuant to, among other things, (i) Uniform Commercial Code financing statements filed in the appropriate offices in the applicable jurisdictions against the Debtor in favor of Bank of America, N.A., as the agent

for the Lenders, (ii) control agreements executed by the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, with respect to accounts and other types of collateral where perfection by control is required or permitted under the Uniform Commercial Code, (iii) possession by Bank of America, N.A., as the agent for the Lenders, of instruments, securities, chattel paper and similar documents for which perfection by possession is required or permitted under the Uniform Commercial Code. and (iv) recording, in the books and records of the applicable jurisdictions, of mortgages and deeds of trust.

The Loan Documents, including those evidencing perfection as described above, are not attached as they are voluminous and copies are in the Debtor's possession, but such documents will be made available upon request.

The foregoing does not purport to describe all of the collateral securing the Indebtedness or all documents evidencing the liens and security interests securing the Indebtedness, and Claimant reserves the right to amend this Proof of Claim to supplement the foregoing description of the Collateral and documents evidencing the liens and security interests securing the Indebtedness.

### Cash Collateral Orders

After the Petition Date, Bankruptcy Court entered numerous Cash Collateral Orders authorizing use of the Lenders' "Cash Collateral" (as such term is defined in the orders) pursuant to Section 363 of the Bankruptcy Code, providing adequate protection, and making certain findings of fact and conclusions of law. This Proof of Claim incorporates, by reference, all of the Debtor's stipulations and all findings of fact contained in the Cash Collateral Orders. In addition, all Cash Collateral used by the Debtor under the authority of the Cash Collateral Orders is entitled to superpriority administrative expense status under Section 507(b) of the Bankruptcy

7

Code, and is secured by either *pari passu* or senior liens on the Collateral (for the purposes of this paragraph only, as such term is defined in the Cash Collateral Orders), as provided in each corresponding Cash Collateral Order.

## Subordination Agreement

Pursuant to the Subordination Agreement, Fontainebleau Affiliates subordinated certain claims against Debtor to the claims of administrative agent for the Lenders. Section 2.04(b) of the Subordination Agreement provides that until all of the debt owed to the Lenders is paid in full, "any payments of the Subordinated Obligations to which any Fontainebleau Affiliate would be entitled but for this Article 2 will be made to [administrative agent]." Therefore, by this Proof of Claim, Claimant asserts its right to a proportional share of any distributions made on account of any Subordinated Obligations (as defined in the Subordination Agreement) that would otherwise be made to Fontainebleau Affiliates on account of any claim they may have made or make against Debtor.

## Reservation of Rights

The filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of any of Claimant's rights against any other entity or person for all or any part of any claim set forth herein; (b) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims or with respect to any objection or other proceeding; (c) a waiver of any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor; (d) an election of remedy which waives or otherwise affects any other remedy of Claimant; (e) a waiver of Claimant's right to file a request for payment of

8

administrative expenses under section 503(b) of the Bankruptcy Code; or (f) a waiver of a right to trial by jury.

Claimant reserves the right to amend this Proof of Claim in any way, including without limitation (i) setting forth or changing the basis or the amount of the claim described herein, (ii) further describing said claim, and (iii) providing further evidence relating to said claim.

### Notice

All objections and other notices, pleadings, demands, or documents delivered with respect of this Claim should be delivered to:

> Carlyle High Yield Partners VI, Ltd.
> c/o Carlyle Investment Management LLC
> 520 Madison Avenue
> New York, NY 10022
>
> -and-
>
> Sidney P. Levinson, Esq.
> Hennigan, Bennett & Dorman LLP
> 865 South Figueroa Street, Suite 2900
> Los Angeles, CA 90017
> Tel. (213) 694-1200
> Fax: (213) 694-1234
> Email: LevinsonS@hbdlawyers.com

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | SOUTHERN DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>Fontainebleau Las Vegas Capital Corp. | Case Number:<br>09-21483 (AJC) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Carlyle High Yield Partners VI, Ltd.

Name and address where notices should be sent:
Carlyle High Yield Partners VI, Ltd.                    -and-
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022

Sidney P. Levinson
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street
Suite 2900
Los Angeles, CA 90017

Telephone number: 212-813-4900  or  213-694-1200

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):
Carlyle High Yield Partners VI, Ltd.
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022
Telephone number: 212-813-4900  or  213-694-1200

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**    $ See Addendum

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See Addendum
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: See Addendum

Value of Property:$ See Addendum  Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ See Addendum  Basis for perfection: See Addendum

Amount of Secured Claim: $ See Addendum   Amount Unsecured: $ See Addendum

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 10-9-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Linda Pace, Managing Director, Carlyle Investment Management LLC | FOR COURT USE ONLY<br>RECEIVED<br>OCT 13 2009<br>KURTZMAN CARSON CONSULTANTS |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



## ADDENDUM TO PROOF OF CLAIM OF
## CARLYLE HIGH YIELD PARTNERS VI, LTD.

### (Fontainebleau Las Vegas Capital Corp., Case No. 09-21483)

Carlyle High Yield Partners VI, Ltd. (the "Claimant") is a lender under that certain Credit Agreement dated as of June 6, 2007 (as described more fully below), pursuant to which Fontainebleau Las Vegas, LLC ("FBLV") is a borrower, and Fontainebleau Las Vegas Holdings, LLC ("Holdings") and Fontainebleau Las Vegas Capital Corp. ("Debtor") are guarantors of FBLV's obligations under the Credit Agreement ("Guarantors" and, collectively with FBLV, the "Companies"). Claimant is a creditor of the Companies.

The Companies were engaged in the development and construction of Fontainebleau Resort and Casino in Las Vegas, Nevada. They filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 9, 2009 (the "Petition Date"). On June 10, 2009, the Court issued an order permitting joint administration of the Companies' cases under case number 09-21481-BKC-AJC.

### Definitions

A.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

B.      "Cash Collateral Orders" means any and all Bankruptcy Court orders authorizing postpetition use of the Lenders' Cash Collateral (as that term is defined in the orders), on either consensual or non-consensual basis, including, without limitation: (i) Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy

Code, and (III) Scheduling Final Hearing, entered on June 11, 2009 (D.E. 49)

("First Interim Order"); **(ii)** Second Interim Order (I) Authorizing Use of Cash

Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing

Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362,

and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on July

7, 2009 (D.E. 242) ("Second Interim Order"); **(iii)** Third Interim Order (I)

Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on July 31, 2009 (D.E. 359) and Amended Third Interim Order

(I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on August 7, 2009 (D.E. 389) (collectively, "Third Interim

Order"), **(iv)** Fourth Interim Order (I) Authorizing Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on August 27,

2009 (D.E. 454) ("Fourth Interim Order"), **(v)** First Interim Order (I)

Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of

the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured

Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, and (III)

Scheduling Final Hearing, entered on September 18, 2009 (D.E. 565) ("First

Interim Nonconsensual Order"), **(vi)** Order Supplementing First Interim Order

Authorizing the Nonconsensual Use of Cash Collateral, entered on September 29,

2009 (D.E. 617) ("First Supplemental Nonconsensual Order"), **(vii)** Second

Supplemental Order (I) Authorizing the Nonconsensual Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code and (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, entered on September 30, 2009 (D.E. 647) ( "Second

Supplemental Nonconsensual Order").

C.     "Chapter 11 Cases" means the cases commenced by the Companies under the

Bankruptcy Code and jointly administered under Case No. 09-21481-AJC.

D.     "Credit Agreement" means that certain Credit Agreement dated June 6,  2007

among Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas II, LLC, as

borrowers, Bank of America, N.A., as administrative agent, and certain lenders a

party thereto.

E.     "Disbursement Agreement" means that certain Master Disbursement Agreement

dated June 6, 2007 by and among Fontainebleau Las Vegas, LLC, Fontainebleau

Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las

Vegas Capital Corp., Fontainebleau Las Vegas Retail, LLC, Bank of America,

N.A., as the Bank Agent, Wells Fargo Bank, N.A., as the Trustee, Lehman

Brothers Holdings, Inc., as the Retail Agent, and Bank of America, N.A. as the

Disbursement Agent.

F.     "Guarantee and Collateral Agreement" means that certain Guarantee and

Collateral Agreement dated June 6, 2007 by Fontainebleau Las Vegas, LLC,

Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, and

3

Fontainebleau Las Vegas Capital Corp. in favor of Bank of America, N.A., as agent for the Lenders.

G.    "Lenders" means lenders under the Credit Agreement and the Loan Documents, and their successors in interest.

H.    "Loan Documents" means Credit Agreement together with all schedules and exhibits thereto, including, without limitation, guarantees, guarantee and collateral agreements (including, without limitation, the Guarantee and Collateral Agreement), subordination agreements, disbursement agreements (including, without limitation, the Disbursement Agreement), mortgages and deeds of trust, control agreements, security agreements, pledge agreements, intercreditor agreements, indentures, contractor undertakings, notes, instruments, reaffirmations, certificates, and any other agreements and documents delivered pursuant to or in connection with the Credit Agreement.

## The Claims

Claimant is one of the Lenders under the Credit Agreement. It made loans to and for the benefit of FBLV. Under the Guarantee and Collateral Agreement, the Guarantors guaranteed "jointly and severally, unconditionally and irrevocably… the prompt and complete payment and performance…" of FBLV's obligations under the Credit Agreement. As of the date of this Proof of Claim, the Debtor is obligated and indebted to Claimant, on account of its guarantees, (i) in an amount not less than $1,116,666.66 in respect of the principal amount of Initial Term Loan obligations, as that term is defined in the Credit Agreement, (ii) in an amount not less than $800,000.00 in respect of the principal amount of Delay Draw Term Loan obligations, as that term is defined in the Credit Agreement, (iii) unpaid interest, if any, that accrued prior to the

4

Petition Date, and (iv) unpaid interest, if any, that accrued and continues to accrue after the Petition Date (including interest at any applicable default rate).  (Obligations described in this paragraph are collectively referred to as the "Term Loan Indebtedness Guarantees").

The Debtor is further obligated and indebted to Claimant on account of its guarantees of FBLV's obligations pursuant to various provisions of the Loan Documents, including, without limitation, sections 2.19 and 10.5 of the Credit Agreement, section 11.15 of the Disbursement Agreement, and section 8.4 of the Guarantee and Collateral Agreement for all unpaid costs, fees, expenses, indemnities, and charges resulting from and in connection with the enforcement and protection of Claimant's rights under the Credit Agreement, both pre- and post-Petition Date. These costs, fees, expenses, indemnities, and charges have grown and continue to grow, to the extent permitted by law.  Any amounts arising after the Petition Date are entitled to administrative priority to the extent provided in 11 U.S.C. §§ 507(a)(1) and 503, or any applicable court orders.  (Obligations described in this paragraph, collectively with the Term Loan Indebtedness Guarantees, are referred to herein as the "Indebtedness Guarantees").

The Indebtedness Guarantees are secured by the Collateral, as further described below. Claimant does not have any definite information about the current value of the Collateral and is not aware of any recent appraisals performed to establish the value of the Collateral.  Therefore, this Proof of Claim is filed as a **secured claim to the extent of the value of the Collateral** held by or for the benefit of Claimant as security for the Indebtedness Guarantees, and as an **unsecured claim to the extent there is any deficiency** in the value of the Collateral held by or for the benefit of Claimant when compared to the amount of the Indebtedness Guarantees.

In addition, Claimant asserts claims based upon (a) any breaches by any of the Companies of any representations and warranties under the Loan Documents, including, without limitation, any breaches of representations and warranties set forth in Article 4 of the Credit

Agreement, (b) any misrepresentations by any of the Companies, and (c) any events of default under the Loan Documents, including, without limitation, any Events of Default under Section 8 of the Credit Agreement.

### The Collateral

To secure the Indebtedness Guarantees, the Debtor granted to Bank of America, N.A., an administrative agent, for the benefit of the Lenders, including Claimant, pursuant to and as described in the Loan Documents, a first priority lien and security interest in substantially all personal property of the Debtor, including, without limitation, the Debtor's deposit accounts, chattel paper, contracts, documents, equipment, general intangibles, instruments, intellectual property, inventory, investment property, letters of credit, money, bank accounts, insurance policies, permits, books, records and other property or assets (the foregoing collateral generally described in this paragraph, together with all proceeds, products, rents and profits thereof, is referred to collectively as the "Collateral").

The liens and security interests on and in the Collateral are perfected pursuant to, among other things, (i) Uniform Commercial Code financing statements filed in the appropriate offices in the applicable jurisdictions against the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, (ii) control agreements executed by the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, with respect to accounts and other types of collateral where perfection by control is required or permitted under the Uniform Commercial Code, and (iii) possession by Bank of America, N.A., as the agent for the Lenders, of instruments, securities, chattel paper and similar documents for which perfection by possession is required or permitted under the Uniform Commercial Code.

The Loan Documents, including those evidencing perfection as described above, are not attached as they are voluminous and copies are in the Debtor's possession, but such documents will be made available upon request.

The foregoing does not purport to describe all of the collateral securing the Indebtedness Guarantees or all documents evidencing the liens and security interests securing the Indebtedness Guarantees, and Claimant reserves the right to amend this Proof of Claim to supplement the foregoing description of the Collateral and documents evidencing the liens and security interests securing the Indebtedness Guarantees.

## Cash Collateral Orders

After the Petition Date, Bankruptcy Court entered numerous Cash Collateral Orders authorizing use of the Lenders' "Cash Collateral" (as such term is defined in the orders) pursuant to Section 363 of the Bankruptcy Code, providing adequate protection, and making certain findings of fact and conclusions of law. This Proof of Claim incorporates, by reference, all of the Debtor's stipulations and all findings of fact contained in the Cash Collateral Orders. In addition, all Cash Collateral used by the Debtor under the authority of the Cash Collateral Orders is entitled to superpriority administrative expense status under Section 507(b) of the Bankruptcy Code, and is secured by either *pari passu* or senior liens on the Collateral (for the purposes of this paragraph only, as such term is defined in the Cash Collateral Orders), as provided in each corresponding Cash Collateral Order.

## Reservation of Rights

The filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of any of Claimant's rights against any other entity or person for all or any part of any

claim set forth herein; (b) a waiver of the right to seek to have the reference withdrawn with

respect to the subject matter of these claims or with respect to any objection or other proceeding;

(c) a waiver of any right to the subordination, in favor of Claimant, of indebtedness or liens held

by other creditors of the Debtor; (d) an election of remedy which waives or otherwise affects any

other remedy of Claimant; (e) a waiver of Claimant's right to file a request for payment of

administrative expenses under section 503(b) of the Bankruptcy Code; or (f) a waiver of a right

to trial by jury.

    Claimant reserves the right to amend this Proof of Claim in any way, including without

limitation (i) setting forth or changing the basis or the amount of the claim described herein, (ii)

further describing said claim, and (iii) providing further evidence relating to said claim.


### Notice

    All objections and other notices, pleadings, demands, or documents delivered with

respect of this Claim should be delivered to:

        Carlyle High Yield Partners VI, Ltd.
        c/o Carlyle Investment Management LLC
        520 Madison Avenue
        New York, NY 10022

        -and-

        Sidney P. Levinson, Esq.
        Hennigan, Bennett & Dorman LLP
        865 South Figueroa Street, Suite 2900
        Los Angeles, CA 90017
        Tel. (213) 694-1200
        Fax: (213) 694-1234
        Email: LevinsonS@hbdlawyers.com

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | SOUTHERN DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>Fontainebleau Las Vegas Holdings, LLC | Case Number:<br>09-21481 (AJC) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Carlyle High Yield Partners VIII, Ltd.

Name and address where notices should be sent:
Carlyle High Yield Partners VIII, Ltd.          -and-          Sidney P. Levinson
c/o Carlyle Investment Management LLC                              Hennigan, Bennett & Dorman LLP
520 Madison Avenue                                                865 South Figueroa Street
New York, NY 10022                                                Suite 2900
                                                                  Los Angeles, CA 90017
Telephone number: 212-813-4900  or  213-694-1200

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):
Carlyle High Yield Partners VIII, Ltd.
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022
Telephone number: 212-813-4900  or  213-694-1200

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**    $ See Addendum

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See Addendum
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☒ Real Estate    ☐ Motor Vehicle    ☒ Other
Describe: See Addendum

Value of Property: $ See Addendum   Annual Interest Rate _____ %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ See Addendum    Basis for perfection: See Addendum

Amount of Secured Claim: $ See Addendum    Amount Unsecured: $ See Addendum

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date: 10-9-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Linda Pace, Managing Director, Carlyle Investment Management LLC | FOR COURT USE ONLY<br><br>RECEIVED<br>OCT 13 2009<br>KURTZMAN CARSON CONSULTANTS |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



COPY

## ADDENDUM TO PROOF OF CLAIM OF
## CARLYLE HIGH YIELD PARTNERS VIII, LTD.

(Fontainebleau Las Vegas Holdings, LLC, Case No. 09-21481)

Carlyle High Yield Partners VIII, Ltd. (the "Claimant") is a lender under that certain Credit Agreement dated as of June 6, 2007 (as described more fully below), pursuant to which Fontainebleau Las Vegas, LLC ("FBLV") is a borrower, and Fontainebleau Las Vegas Holdings, LLC ("Debtor") and Fontainebleau Las Vegas Capital Corp. ("Capital") are guarantors of FBLV's obligations under the Credit Agreement ("Guarantors" and, collectively with FBLV, the "Companies"). Claimant is a creditor of the Companies.

The Companies were engaged in the development and construction of Fontainebleau Resort and Casino in Las Vegas, Nevada. They filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 9, 2009 (the "Petition Date"). On June 10, 2009, the Court issued an order permitting joint administration of the Companies' cases under case number 09-21481-BKC-AJC.

## Definitions

A.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

B.    "Cash Collateral Orders" means any and all Bankruptcy Court orders authorizing postpetition use of the Lenders' Cash Collateral (as that term is defined in the orders), on either consensual or non-consensual basis, including, without limitation: (i) Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy

Code, and (III) Scheduling Final Hearing, entered on June 11, 2009 (D.E. 49)

("First Interim Order");  (ii) Second Interim Order (I) Authorizing Use of Cash

Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing

Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362,

and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on July

7, 2009 (D.E. 242) ("Second Interim Order"); (iii) Third Interim Order (I)

Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on July 31, 2009 (D.E. 359) and Amended Third Interim Order

(I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on August 7, 2009 (D.E. 389) (collectively, "Third Interim

Order"),  (iv) Fourth Interim Order (I) Authorizing Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on August 27,

2009 (D.E. 454) ("Fourth Interim Order"),  (v)  First Interim Order (I)

Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of

the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured

Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, and (III)

Scheduling Final Hearing, entered on September 18, 2009 (D.E. 565) ("First

Interim Nonconsensual Order"),  (vi) Order Supplementing First Interim Order

2

Authorizing the Nonconsensual Use of Cash Collateral, entered on September 29, 2009 (D.E. 617) ("First Supplemental Nonconsensual Order"), **(vii)** Second Supplemental Order (I) Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, entered on September 30, 2009 (D.E. 647) ( "Second Supplemental Nonconsensual Order").

C.    "Chapter 11 Cases" means the cases commenced by the Companies under the Bankruptcy Code and jointly administered under Case No. 09-21481-AJC.

D.    "Credit Agreement" means that certain Credit Agreement dated June 6, 2007 among Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas II, LLC, as borrowers, Bank of America, N.A., as administrative agent, and certain lenders a party thereto.

E.    "Disbursement Agreement" means that certain Master Disbursement Agreement dated June 6, 2007 by and among Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail, LLC, Bank of America, N.A., as the Bank Agent, Wells Fargo Bank, N.A., as the Trustee, Lehman Brothers Holdings, Inc., as the Retail Agent, and Bank of America, N.A. as the Disbursement Agent.

F.    "Fontainebleau Affiliates" means Turnberry West Construction, Inc., Turnberry Residential Limited Partner, L.P., and Fontainebleau Resorts, LLC.

G.    "Guarantee and Collateral Agreement" means that certain Guarantee and Collateral Agreement dated June 6, 2007 by Fontainebleau Las Vegas, LLC,

3

Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, and Fontainebleau Las Vegas Capital Corp. in favor of Bank of America, N.A., as agent for the Lenders.

H.   "Lenders" means lenders under the Credit Agreement and the Loan Documents, and their successors in interest.

I.   "Loan Documents" means Credit Agreement together with all schedules and exhibits thereto, including, without limitation, guarantees, guarantee and collateral agreements (including, without limitation, the Guarantee and Collateral Agreement), subordination agreements (including, without limitation, the Subordination Agreement), disbursement agreements (including, without limitation, the Disbursement Agreement), mortgages and deeds of trust, control agreements, security agreements, pledge agreements, intercreditor agreements, indentures, contractor undertakings, notes, instruments, reaffirmations, certificates, and any other agreements and documents delivered pursuant to or in connection with the Credit Agreement.

J.   "Subordination Agreement" means that certain Affiliate Subordination Agreement dated June 6, 2007, by Turnberry West Construction, Inc., Turnberry Residential Limited Partners, L.P., Fontainebleau Resorts, LLC, Fontainebleau Las Vegas II, LLC, Debtor, and FBLV in favor of Bank of America, N.A., as Administrative Agent, and Wells Fargo, N.A., as Trustee.

### The Claims

Claimant is one of the Lenders under the Credit Agreement.  It made loans to and for the benefit of FBLV.  Under the Guarantee and Collateral Agreement, the Guarantors guaranteed

4

"jointly and severally, unconditionally and irrevocably... the prompt and complete payment and

performance..." of FBLV's obligations under the Credit Agreement. As of the date of this Proof

of Claim, the Debtor is obligated and indebted to Claimant, on account of its guarantees, (i) in an

amount not less than $1,116,666.67 in respect of the principal amount of Initial Term Loan

obligations, as that term is defined in the Credit Agreement, (ii) in an amount not less than

$550,000.00 in respect of the principal amount of Delay Draw Term Loan obligations, as that

term is defined in the Credit Agreement, (iii) unpaid interest, if any, that accrued prior to the

Petition Date, and (iv) unpaid interest, if any, that accrued and continues to accrue after the

Petition Date (including interest at any applicable default rate). (Obligations described in this

paragraph are collectively referred to as the "Term Loan Indebtedness Guarantees").

The Debtor is further obligated and indebted to Claimant on account of its guarantees of

FBLV's obligations pursuant to various provisions of the Loan Documents, including, without

limitation, sections 2.19 and 10.5 of the Credit Agreement, section 11.15 of the Disbursement

Agreement, and section 8.4 of the Guarantee and Collateral Agreement for all unpaid costs, fees,

expenses, indemnities, and charges resulting from and in connection with the enforcement and

protection of Claimant's rights under the Credit Agreement, both pre- and post-Petition Date.

These costs, fees, expenses, indemnities, and charges have grown and continue to grow, to the

extent permitted by law. Any amounts arising after the Petition Date are entitled to

administrative priority to the extent provided in 11 U.S.C. §§ 507(a)(1) and 503, or any

applicable court orders. (Obligations described in this paragraph, collectively with the Term

Loan Indebtedness Guarantees, are referred to herein as the "Indebtedness Guarantees").

The Indebtedness Guarantees are secured by the Collateral, as further described below.

Claimant does not have any definite information about the current value of the Collateral and is

not aware of any recent appraisals performed to establish the value of the Collateral. Therefore,

5

this Proof of Claim is filed as a **secured claim to the extent of the value of the Collateral** held by or for the benefit of Claimant as security for the Indebtedness Guarantees, and as an **unsecured claim to the extent there is any deficiency** in the value of the Collateral held by or for the benefit of Claimant when compared to the amount of the Indebtedness Guarantees.

In addition, Claimant asserts claims based upon (a) any breaches by any of the Companies of any representations and warranties under the Loan Documents, including, without limitation, any breaches of representations and warranties set forth in Article 4 of the Credit Agreement, (b) any misrepresentations by any of the Companies, and (c) any events of default under the Loan Documents, including, without limitation, any Events of Default under Section 8 of the Credit Agreement.

### The Collateral

To secure the Indebtedness Guarantees, the Debtor granted to Bank of America, N.A., an administrative agent, for the benefit of the Lenders, including Claimant, pursuant to and as described in the Loan Documents, a first priority lien and security interest in substantially all personal property of the Debtor, including, without limitation, the Debtor's deposit accounts, chattel paper, contracts, documents, equipment, general intangibles, instruments, intellectual property, inventory, investment property, letters of credit, money, bank accounts, insurance policies, permits, books, records and other property or assets (the foregoing collateral generally described in this paragraph, together with all proceeds, products, rents and profits thereof, is referred to collectively as the "Collateral").

The liens and security interests on and in the Collateral are perfected pursuant to, among other things, (i) Uniform Commercial Code financing statements filed in the appropriate offices in the applicable jurisdictions against the Debtor in favor of Bank of America, N.A., as the agent

6

for the Lenders,  (ii) control agreements executed by the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, with respect to accounts and other types of collateral where perfection by control is required or permitted under the Uniform Commercial Code, and (iii) possession by Bank of America, N.A., as the agent for the Lenders, of instruments, securities, chattel paper and similar documents for which perfection by possession is required or permitted under the Uniform Commercial Code.

The Loan Documents, including those evidencing perfection as described above, are not attached as they are voluminous and copies are in the Debtor's possession, but such documents will be made available upon request.

The foregoing does not purport to describe all of the collateral securing the Indebtedness Guarantees or all documents evidencing the liens and security interests securing the Indebtedness Guarantees, and Claimant reserves the right to amend this Proof of Claim to supplement the foregoing description of the Collateral and documents evidencing the liens and security interests securing the Indebtedness Guarantees.

## Cash Collateral Orders

After the Petition Date, Bankruptcy Court entered numerous Cash Collateral Orders authorizing use of the Lenders' "Cash Collateral" (as such term is defined in the orders) pursuant to Section 363 of the Bankruptcy Code, providing adequate protection, and making certain findings of fact and conclusions of law.  This Proof of Claim incorporates, by reference, all of the Debtor's stipulations and all findings of fact contained in the Cash Collateral Orders.  In addition, all Cash Collateral used by the Debtor under the authority of the Cash Collateral Orders is entitled to superpriority administrative expense status under Section 507(b) of the Bankruptcy Code, and is secured by either *pari passu* or senior liens on the Collateral (for the purposes of

this paragraph only, as such term is defined in the Cash Collateral Orders), as provided in each corresponding Cash Collateral Order.

## Subordination Agreement

Pursuant to the Subordination Agreement, Fontainebleau Affiliates subordinated certain claims against Debtor to the claims of administrative agent for the Lenders. Section 2.04(b) of the Subordination Agreement provides that until all of the debt owed to the Lenders is paid in full, "any payments of the Subordinated Obligations to which any Fontainebleau Affiliate would be entitled but for this Article 2 will be made to [administrative agent]." Therefore, by this Proof of Claim, Claimant asserts its right to a proportional share of any distributions made on account of any Subordinated Obligations (as defined in the Subordination Agreement) that would otherwise be made to Fontainebleau Affiliates on account of any claim they may have made or make against Debtor.

## Reservation of Rights

The filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of any of Claimant's rights against any other entity or person for all or any part of any claim set forth herein; (b) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims or with respect to any objection or other proceeding; (c) a waiver of any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor; (d) an election of remedy which waives or otherwise affects any other remedy of Claimant; (e) a waiver of Claimant's right to file a request for payment of administrative expenses under section 503(b) of the Bankruptcy Code; or (f) a waiver of a right to trial by jury.

8

Claimant reserves the right to amend this Proof of Claim in any way, including without limitation (i) setting forth or changing the basis or the amount of the claim described herein, (ii) further describing said claim, and (iii) providing further evidence relating to said claim.

## Notice

All objections and other notices, pleadings, demands, or documents delivered with respect of this Claim should be delivered to:

> Carlyle High Yield Partners VIII, Ltd.
> c/o Carlyle Investment Management LLC
> 520 Madison Avenue
> New York, NY 10022
>
> -and-
>
> Sidney P. Levinson, Esq.
> Hennigan, Bennett & Dorman LLP
> 865 South Figueroa Street, Suite 2900
> Los Angeles, CA 90017
> Tel. (213) 694-1200
> Fax: (213) 694-1234
> Email: LevinsonS@hbdlawyers.com

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | SOUTHERN DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>Fontainebleau Las Vegas, LLC | Case Number:<br>09-21482 (AJC) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**Carlyle High Yield Partners VIII, Ltd.**

Name and address where notices should be sent:
Carlyle High Yield Partners VIII, Ltd.           -and-
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022

Telephone number: 212-813-4900  or  213-694-1200

Sidney P. Levinson
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street
Suite 2900
Los Angeles, CA 90017

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):
Carlyle High Yield Partners VIII, Ltd.
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022
Telephone number: 212-813-4900  or  213-694-1200

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**          $ See Addendum

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**  See Addendum
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☒ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: See Addendum

Value of Property: $ See Addendum   Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ See Addendum   Basis for perfection:  See Addendum

Amount of Secured Claim: $ See Addendum   Amount Unsecured: $ See Addendum

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 10-9-09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Linda Pace, Managing Director, Carlyle Investment Management LLC | FOR COURT USE ONLY<br>RECEIVED<br>OCT 13 2009<br>KURTZMAN CARSON CONSULTANTS |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



**ADDENDUM TO PROOF OF CLAIM OF
CARLYLE HIGH YIELD PARTNERS VIII, LTD.**

(Fontainebleau Las Vegas, LLC, Case No. 09-21482)

Carlyle High Yield Partners VIII, Ltd. (the "Claimant") is a lender under that certain Credit Agreement dated as of June 6, 2007 (as described more fully below), pursuant to which Fontainebleau Las Vegas, LLC ("Debtor") is a borrower, and Fontainebleau Las Vegas Holdings, LLC ("Holdings") and Fontainebleau Las Vegas Capital Corp. ("Capital") are guarantors of the Debtor's obligations under the Credit Agreement ("Guarantors" and, collectively with the Debtor, the "Companies"). Claimant is a creditor of the Companies.

The Companies were engaged in the development and construction of Fontainebleau Resort and Casino in Las Vegas, Nevada. They filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 9, 2009 (the "Petition Date"). On June 10, 2009, the Court issued an order permitting joint administration of the Companies' cases under case number 09-21481-BKC-AJC.

**Definitions**

A.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

B.    "Cash Collateral Orders" means any and all Bankruptcy Court orders authorizing postpetition use of the Lenders' Cash Collateral (as that term is defined in the orders), on either consensual or non-consensual basis, including, without limitation: (i) Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy

Code, and (III) Scheduling Final Hearing, entered on June 11, 2009 (D.E. 49)

("First Interim Order"); **(ii)** Second Interim Order (I) Authorizing Use of Cash

Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing

Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362,

and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on July

7, 2009 (D.E. 242) ("Second Interim Order"); **(iii)** Third Interim Order (I)

Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on July 31, 2009 (D.E. 359) and Amended Third Interim Order

(I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on August 7, 2009 (D.E. 389) (collectively, "Third Interim

Order"), **(iv)** Fourth Interim Order (I) Authorizing Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on August 27,

2009 (D.E. 454) ("Fourth Interim Order"), **(v)** First Interim Order (I)

Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of

the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured

Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, and (III)

Scheduling Final Hearing, entered on September 18, 2009 (D.E. 565) ("First

Interim Nonconsensual Order"), **(vi)** Order Supplementing First Interim Order

Authorizing the Nonconsensual Use of Cash Collateral, entered on September 29, 2009 (D.E. 617) ("First Supplemental Nonconsensual Order"), **(vii)** Second Supplemental Order (I) Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, entered on September 30, 2009 (D.E. 647) ( "Second Supplemental Nonconsensual Order").

C.   "Chapter 11 Cases" means the cases commenced by the Companies under the Bankruptcy Code and jointly administered under Case No. 09-21481-AJC.

D.   "Credit Agreement" means that certain Credit Agreement dated June 6, 2007 among Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas II, LLC, as borrowers, Bank of America, N.A., as administrative agent, and certain lenders a party thereto.

E.   "Disbursement Agreement" means that certain Master Disbursement Agreement dated June 6, 2007 by and among Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail, LLC, Bank of America, N.A., as the Bank Agent, Wells Fargo Bank, N.A., as the Trustee, Lehman Brothers Holdings, Inc., as the Retail Agent, and Bank of America, N.A. as the Disbursement Agent.

F.   "Fontainebleau Affiliates" means Turnberry West Construction, Inc., Turnberry Residential Limited Partner, L.P., and Fontainebleau Resorts, LLC.

G.   "Guarantee and Collateral Agreement" means that certain Guarantee and Collateral Agreement dated June 6, 2007 by Fontainebleau Las Vegas, LLC,

3

Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, and Fontainebleau Las Vegas Capital Corp. in favor of Bank of America, N.A., as agent for the Lenders.

H.    "Lenders" means lenders under the Credit Agreement and the Loan Documents, and their successors in interest.

I      "Loan Documents" means Credit Agreement together with all schedules and exhibits thereto, including, without limitation, guarantees, guarantee and collateral agreements (including, without limitation, the Guarantee and Collateral Agreement), subordination agreements (including, without limitation, the Subordination Agreement), disbursement agreements (including, without limitation, the Disbursement Agreement), mortgages and deeds of trust, control agreements, security agreements, pledge agreements, intercreditor agreements, indentures, contractor undertakings, notes, instruments, reaffirmations, certificates, and any other agreements and documents delivered pursuant to or in connection with the Credit Agreement.

J.     "Subordination Agreement" means that certain Affiliate Subordination Agreement dated June 6, 2007, by Turnberry West Construction, Inc., Turnberry Residential Limited Partners, L.P., Fontainebleau Resorts, LLC, Fontainebleau Las Vegas II, LLC, Holdings, and Debtor in favor of Bank of America, N.A., as Administrative Agent, and Wells Fargo, N.A., as Trustee.

## The Claims

Claimant is one of the Lenders under the Credit Agreement.  It made loans to and for the benefit of the Debtor.  To evidence these loans, the Debtor executed and delivered to or for the

4

benefit of the Lenders the Initial Term Notes and the Delayed Draw Term Notes (each as more fully described in the Credit Agreement). As of the date of this Proof of Claim, the Debtor is obligated and indebted to Claimant (i) in an amount not less than $1,116,666.67 in respect of the principal amount of Initial Term Loan obligations, as that term is defined in the Credit Agreement, (ii) in an amount not less than $550,000.00 in respect of the principal amount of Delay Draw Term Loan obligations, as that term is defined in the Credit Agreement, (iii) unpaid interest, if any, that accrued prior to the Petition Date, and (iv) unpaid interest, if any, that accrued and continues to accrue after the Petition Date (including interest at any applicable default rate). (Obligations described in this paragraph are collectively referred to as the "Term Loan Indebtedness").

The Debtor is further obligated and indebted to Claimant pursuant to various provisions of the Loan Documents, including, without limitation, sections 2.19 and 10.5 of the Credit Agreement, section 11.15 of the Disbursement Agreement, and section 8.4 of the Guarantee and Collateral Agreement for all unpaid costs, fees, expenses, indemnities, and charges resulting from and in connection with the enforcement and protection of Claimant's rights under the Credit Agreement, both pre- and post-Petition Date. These costs, fees, expenses, indemnities, and charges have grown and continue to grow, to the extent permitted by law. Any amounts arising after the Petition Date are entitled to administrative priority to the extent provided in 11 U.S.C. §§ 507(a)(1) and 503, or any applicable court orders. (Obligations described in this paragraph, collectively with the Term Loan Indebtedness, are referred to herein as the "Indebtedness").

The Indebtedness is secured by the Collateral, as further described below. Claimant does not have any definite information about the current value of the Collateral and is not aware of any recent appraisals performed to establish the value of the Collateral. Therefore, this Proof of

5

Claim is filed as a **secured claim to the extent of the value of the Collateral** held by or for the benefit of Claimant as security for the Indebtedness, and as an **unsecured claim to the extent there is any deficiency** in the value of the Collateral held by or for the benefit of Claimant when compared to the amount of the Indebtedness.

In addition, Claimant asserts claims based upon (a) any breaches by any of the Companies of any representations and warranties under the Loan Documents, including, without limitation, any breaches of representations and warranties set forth in Article 4 of the Credit Agreement, (b) any misrepresentations by any of the Companies, and (c) any events of default under the Loan Documents, including, without limitation, any Events of Default under Section 8 of the Credit Agreement.

## The Collateral

To secure the Indebtedness, the Debtor granted to Bank of America, N.A., an administrative agent, for the benefit of the Lenders, including Claimant, pursuant to and as described in the Loan Documents, a first priority lien and security interest in substantially all assets of the Debtor, including, without limitation, the Debtor's real property, deposit accounts, chattel paper, contracts, documents, equipment, general intangibles, instruments, intellectual property, inventory, investment property, letters of credit, money, bank accounts, insurance policies, permits, books, records and other property or assets (the foregoing collateral generally described in this paragraph, together with all proceeds, products, rents and profits thereof, is referred to collectively as the "Collateral").

The liens and security interests on and in the Collateral are perfected pursuant to, among other things. (i) Uniform Commercial Code financing statements filed in the appropriate offices in the applicable jurisdictions against the Debtor in favor of Bank of America, N.A., as the agent

for the Lenders,  (ii) control agreements executed by the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, with respect to accounts and other types of collateral where perfection by control is required or permitted under the Uniform Commercial Code, (iii) possession by Bank of America, N.A., as the agent for the Lenders, of instruments, securities, chattel paper and similar documents for which perfection by possession is required or permitted under the Uniform Commercial Code, and (iv) recording, in the books and records of the applicable jurisdictions, of mortgages and deeds of trust.

The Loan Documents, including those evidencing perfection as described above, are not attached as they are voluminous and copies are in the Debtor's possession, but such documents will be made available upon request.

The foregoing does not purport to describe all of the collateral securing the Indebtedness or all documents evidencing the liens and security interests securing the Indebtedness, and Claimant reserves the right to amend this Proof of Claim to supplement the foregoing description of the Collateral and documents evidencing the liens and security interests securing the Indebtedness.

### Cash Collateral Orders

After the Petition Date, Bankruptcy Court entered numerous Cash Collateral Orders authorizing use of the Lenders' "Cash Collateral" (as such term is defined in the orders) pursuant to Section 363 of the Bankruptcy Code, providing adequate protection, and making certain findings of fact and conclusions of law.  This Proof of Claim incorporates, by reference, all of the Debtor's stipulations and all findings of fact contained in the Cash Collateral Orders.  In addition, all Cash Collateral used by the Debtor under the authority of the Cash Collateral Orders is entitled to superpriority administrative expense status under Section 507(b) of the Bankruptcy

Code, and is secured by either *pari passu* or senior liens on the Collateral (for the purposes of this paragraph only, as such term is defined in the Cash Collateral Orders), as provided in each corresponding Cash Collateral Order.

## Subordination Agreement

Pursuant to the Subordination Agreement, Fontainebleau Affiliates subordinated certain claims against Debtor to the claims of administrative agent for the Lenders. Section 2.04(b) of the Subordination Agreement provides that until all of the debt owed to the Lenders is paid in full, "any payments of the Subordinated Obligations to which any Fontainebleau Affiliate would be entitled but for this Article 2 will be made to [administrative agent]." Therefore, by this Proof of Claim, Claimant asserts its right to a proportional share of any distributions made on account of any Subordinated Obligations (as defined in the Subordination Agreement) that would otherwise be made to Fontainebleau Affiliates on account of any claim they may have made or make against Debtor.

## Reservation of Rights

The filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of any of Claimant's rights against any other entity or person for all or any part of any claim set forth herein; (b) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims or with respect to any objection or other proceeding; (c) a waiver of any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor; (d) an election of remedy which waives or otherwise affects any other remedy of Claimant; (e) a waiver of Claimant's right to file a request for payment of

8

administrative expenses under section 503(b) of the Bankruptcy Code; or (f) a waiver of a right to trial by jury.

Claimant reserves the right to amend this Proof of Claim in any way, including without limitation (i) setting forth or changing the basis or the amount of the claim described herein, (ii) further describing said claim, and (iii) providing further evidence relating to said claim.

### Notice

All objections and other notices, pleadings, demands, or documents delivered with respect of this Claim should be delivered to:

> Carlyle High Yield Partners VIII, Ltd.
> c/o Carlyle Investment Management LLC
> 520 Madison Avenue
> New York, NY 10022
>
> -and-
>
> Sidney P. Levinson, Esq.
> Hennigan, Bennett & Dorman LLP
> 865 South Figueroa Street, Suite 2900
> Los Angeles, CA 90017
> Tel. (213) 694-1200
> Fax: (213) 694-1234
> Email: LevinsonS@hbdlawyers.com

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT    SOUTHERN DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Fontainebleau Las Vegas Capital Corp. | Case Number:<br>09-21483 (AJC) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Carlyle High Yield Partners VIII, Ltd.

Name and address where notices should be sent:
Carlyle High Yield Partners VIII, Ltd.                    -and-          Sidney P. Levinson
c/o Carlyle Investment Management LLC                                   Hennigan, Bennett & Dorman LLP
520 Madison Avenue                                                      865 South Figueroa Street
New York, NY 10022                                                     Suite 2900
                                                                       Los Angeles, CA 90017
Telephone number: 212-813-4900   or  213-694-1200

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):
Carlyle High Yield Partners VIII, Ltd.
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022
Telephone number: 212-813-4900   or   213-694-1200

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**                    $ See Addendum

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See Addendum
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☒ Real Estate   ☐ Motor Vehicle   ☒ Other
Describe: See Addendum

Value of Property:$ See Addendum   Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ See Addendum   Basis for perfection: See Addendum

Amount of Secured Claim: $ See Addendum   Amount Unsecured: $ See Addendum

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(_____).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date: 10-9-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY<br>RECEIVED<br>OCT 13 2009<br>KURTZMAN CARSON CONSULTANTS |
|---|---|---|

Linda Pace, Managing Director, Carlyle Investment Management LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



# ADDENDUM TO PROOF OF CLAIM OF
# CARLYLE HIGH YIELD PARTNERS VIII, LTD.

(Fontainebleau Las Vegas Capital Corp., Case No. 09-21483)

Carlyle High Yield Partners VIII, Ltd. (the "Claimant") is a lender under that certain Credit Agreement dated as of June 6, 2007 (as described more fully below), pursuant to which Fontainebleau Las Vegas, LLC ("FBLV") is a borrower, and Fontainebleau Las Vegas Holdings, LLC ("Holdings") and Fontainebleau Las Vegas Capital Corp. ("Debtor") are guarantors of FBLV's obligations under the Credit Agreement ("Guarantors" and, collectively with FBLV, the "Companies"). Claimant is a creditor of the Companies.

The Companies were engaged in the development and construction of Fontainebleau Resort and Casino in Las Vegas, Nevada. They filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 9, 2009 (the "Petition Date"). On June 10, 2009, the Court issued an order permitting joint administration of the Companies' cases under case number 09-21481-BKC-AJC.

## Definitions

A.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

B.    "Cash Collateral Orders" means any and all Bankruptcy Court orders authorizing postpetition use of the Lenders' Cash Collateral (as that term is defined in the orders), on either consensual or non-consensual basis, including, without limitation: (i) Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy

Code, and (III) Scheduling Final Hearing, entered on June 11, 2009 (D.E. 49)

("First Interim Order"); **(ii)** Second Interim Order (I) Authorizing Use of Cash

Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing

Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362,

and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on July

7, 2009 (D.E. 242) ("Second Interim Order"); **(iii)** Third Interim Order (I)

Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on July 31, 2009 (D.E. 359) and Amended Third Interim Order

(I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on August 7, 2009 (D.E. 389) (collectively, "Third Interim

Order"), **(iv)** Fourth Interim Order (I) Authorizing Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on August 27,

2009 (D.E. 454) ("Fourth Interim Order"), **(v)** First Interim Order (I)

Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of

the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured

Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, and (III)

Scheduling Final Hearing, entered on September 18, 2009 (D.E. 565) ("First

Interim Nonconsensual Order"), **(vi)** Order Supplementing First Interim Order

2

Authorizing the Nonconsensual Use of Cash Collateral, entered on September 29, 2009 (D.E. 617) ("First Supplemental Nonconsensual Order"), **(vii)** Second Supplemental Order (I) Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, entered on September 30, 2009 (D.E. 647) ( "Second Supplemental Nonconsensual Order").

C.    "Chapter 11 Cases" means the cases commenced by the Companies under the Bankruptcy Code and jointly administered under Case No. 09-21481-AJC.

D.    "Credit Agreement" means that certain Credit Agreement dated June 6, 2007 among Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas II, LLC, as borrowers, Bank of America, N.A., as administrative agent, and certain lenders a party thereto.

E.    "Disbursement Agreement" means that certain Master Disbursement Agreement dated June 6, 2007 by and among Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail, LLC, Bank of America, N.A., as the Bank Agent, Wells Fargo Bank, N.A., as the Trustee, Lehman Brothers Holdings, Inc., as the Retail Agent, and Bank of America, N.A. as the Disbursement Agent.

F.    "Guarantee and Collateral Agreement" means that certain Guarantee and Collateral Agreement dated June 6, 2007 by Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, and

3

Fontainebleau Las Vegas Capital Corp. in favor of Bank of America, N.A., as agent for the Lenders.

G.     "Lenders" means lenders under the Credit Agreement and the Loan Documents, and their successors in interest.

H.     "Loan Documents" means Credit Agreement together with all schedules and exhibits thereto, including, without limitation, guarantees, guarantee and collateral agreements (including, without limitation, the Guarantee and Collateral Agreement), subordination agreements, disbursement agreements (including, without limitation, the Disbursement Agreement), mortgages and deeds of trust, control agreements, security agreements, pledge agreements, intercreditor agreements, indentures, contractor undertakings, notes, instruments, reaffirmations, certificates, and any other agreements and documents delivered pursuant to or in connection with the Credit Agreement.

## The Claims

Claimant is one of the Lenders under the Credit Agreement. It made loans to and for the benefit of FBLV. Under the Guarantee and Collateral Agreement, the Guarantors guaranteed "jointly and severally, unconditionally and irrevocably… the prompt and complete payment and performance…" of FBLV's obligations under the Credit Agreement. As of the date of this Proof of Claim, the Debtor is obligated and indebted to Claimant, on account of its guarantees, (i) in an amount not less than $1,116,666.67 in respect of the principal amount of Initial Term Loan obligations, as that term is defined in the Credit Agreement, (ii) in an amount not less than $550,000.00 in respect of the principal amount of Delay Draw Term Loan obligations, as that term is defined in the Credit Agreement, (iii) unpaid interest, if any, that accrued prior to the

4

Petition Date, and (iv) unpaid interest, if any, that accrued and continues to accrue after the Petition Date (including interest at any applicable default rate). (Obligations described in this paragraph are collectively referred to as the "Term Loan Indebtedness Guarantees").

The Debtor is further obligated and indebted to Claimant on account of its guarantees of FBLV's obligations pursuant to various provisions of the Loan Documents, including, without limitation, sections 2.19 and 10.5 of the Credit Agreement, section 11.15 of the Disbursement Agreement, and section 8.4 of the Guarantee and Collateral Agreement for all unpaid costs, fees, expenses, indemnities, and charges resulting from and in connection with the enforcement and protection of Claimant's rights under the Credit Agreement, both pre- and post-Petition Date. These costs, fees, expenses, indemnities, and charges have grown and continue to grow, to the extent permitted by law. Any amounts arising after the Petition Date are entitled to administrative priority to the extent provided in 11 U.S.C. §§ 507(a)(1) and 503, or any applicable court orders. (Obligations described in this paragraph, collectively with the Term Loan Indebtedness Guarantees, are referred to herein as the "Indebtedness Guarantees").

The Indebtedness Guarantees are secured by the Collateral, as further described below. Claimant does not have any definite information about the current value of the Collateral and is not aware of any recent appraisals performed to establish the value of the Collateral. Therefore, this Proof of Claim is filed as a **secured claim to the extent of the value of the Collateral** held by or for the benefit of Claimant as security for the Indebtedness Guarantees, and as an **unsecured claim to the extent there is any deficiency** in the value of the Collateral held by or for the benefit of Claimant when compared to the amount of the Indebtedness Guarantees.

In addition, Claimant asserts claims based upon (a) any breaches by any of the Companies of any representations and warranties under the Loan Documents, including, without limitation, any breaches of representations and warranties set forth in Article 4 of the Credit

Agreement, (b) any misrepresentations by any of the Companies, and (c) any events of default under the Loan Documents, including, without limitation, any Events of Default under Section 8 of the Credit Agreement.

## The Collateral

To secure the Indebtedness Guarantees, the Debtor granted to Bank of America, N.A., an administrative agent, for the benefit of the Lenders, including Claimant, pursuant to and as described in the Loan Documents, a first priority lien and security interest in substantially all personal property of the Debtor, including, without limitation, the Debtor's deposit accounts, chattel paper, contracts, documents, equipment, general intangibles, instruments, intellectual property, inventory, investment property, letters of credit, money, bank accounts, insurance policies, permits, books, records and other property or assets (the foregoing collateral generally described in this paragraph, together with all proceeds, products, rents and profits thereof, is referred to collectively as the "Collateral").

The liens and security interests on and in the Collateral are perfected pursuant to, among other things, (i) Uniform Commercial Code financing statements filed in the appropriate offices in the applicable jurisdictions against the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, (ii) control agreements executed by the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, with respect to accounts and other types of collateral where perfection by control is required or permitted under the Uniform Commercial Code, and (iii) possession by Bank of America, N.A., as the agent for the Lenders, of instruments, securities, chattel paper and similar documents for which perfection by possession is required or permitted under the Uniform Commercial Code.

The Loan Documents, including those evidencing perfection as described above, are not attached as they are voluminous and copies are in the Debtor's possession, but such documents will be made available upon request.

The foregoing does not purport to describe all of the collateral securing the Indebtedness Guarantees or all documents evidencing the liens and security interests securing the Indebtedness Guarantees, and Claimant reserves the right to amend this Proof of Claim to supplement the foregoing description of the Collateral and documents evidencing the liens and security interests securing the Indebtedness Guarantees.

## Cash Collateral Orders

After the Petition Date, Bankruptcy Court entered numerous Cash Collateral Orders authorizing use of the Lenders' "Cash Collateral" (as such term is defined in the orders) pursuant to Section 363 of the Bankruptcy Code, providing adequate protection, and making certain findings of fact and conclusions of law. This Proof of Claim incorporates, by reference, all of the Debtor's stipulations and all findings of fact contained in the Cash Collateral Orders. In addition, all Cash Collateral used by the Debtor under the authority of the Cash Collateral Orders is entitled to superpriority administrative expense status under Section 507(b) of the Bankruptcy Code, and is secured by either *pari passu* or senior liens on the Collateral (for the purposes of this paragraph only, as such term is defined in the Cash Collateral Orders), as provided in each corresponding Cash Collateral Order.

## Reservation of Rights

The filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of any of Claimant's rights against any other entity or person for all or any part of any

claim set forth herein; (b) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims or with respect to any objection or other proceeding; (c) a waiver of any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor; (d) an election of remedy which waives or otherwise affects any other remedy of Claimant; (e) a waiver of Claimant's right to file a request for payment of administrative expenses under section 503(b) of the Bankruptcy Code; or (f) a waiver of a right to trial by jury.

Claimant reserves the right to amend this Proof of Claim in any way, including without limitation (i) setting forth or changing the basis or the amount of the claim described herein, (ii) further describing said claim, and (iii) providing further evidence relating to said claim.

### Notice

All objections and other notices, pleadings, demands, or documents delivered with respect of this Claim should be delivered to:

>
> Carlyle High Yield Partners VIII, Ltd.
> c/o Carlyle Investment Management LLC
> 520 Madison Avenue
> New York, NY 10022
>
> -and-
>
> Sidney P. Levinson, Esq.
> Hennigan, Bennett & Dorman LLP
> 865 South Figueroa Street, Suite 2900
> Los Angeles, CA 90017
> Tel. (213) 694-1200
> Fax: (213) 694-1234
> Email: LevinsonS@hbdlawyers.com

8

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | SOUTHERN DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
Fontainebleau Las Vegas, LLC

**Case Number:**
09-21482 (AJC)

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Carlyle High Yield Partners X, Ltd.

☐ Check this box to indicate that this claim amends a previously filed claim.

**Name and address where notices should be sent:**
Carlyle High Yield Partners X, Ltd.              -and-
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022

Sidney P. Levinson
Hennigan, Bennett & Dorman LLP
865 South Figueroa Street
Suite 2900
Los Angeles, CA 90017

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Telephone number: 212-813-4900  or  213-694-1200

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**Name and address where payment should be sent** (if different from above):
Carlyle High Yield Partners X, Ltd.
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022
Telephone number: 212-813-4900  or  213-694-1200

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**      $ See Addendum

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See Addendum
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**  ☒ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:** See Addendum

**Value of Property:** $ See Addendum   **Annual Interest Rate** _____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**
if any: $ See Addendum   **Basis for perfection:** See Addendum

**Amount of Secured Claim:** $ See Addendum   **Amount Unsecured:** $ See Addendum

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Date:** 10-9-09

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Linda Pace, Managing Director, Carlyle Investment Management LLC

FOR COURT USE ONLY

RECEIVED
OCT 13 2009
KURTZMAN CARSON CONSULTANTS



*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

### ADDENDUM TO PROOF OF CLAIM OF
### CARLYLE HIGH YIELD PARTNERS X, LTD.

(Fontainebleau Las Vegas, LLC, Case No. 09-21482)

Carlyle High Yield Partners X, Ltd. (the "Claimant") is a lender under that certain Credit Agreement dated as of June 6, 2007 (as described more fully below), pursuant to which Fontainebleau Las Vegas, LLC ("Debtor") is a borrower, and Fontainebleau Las Vegas Holdings, LLC ("Holdings") and Fontainebleau Las Vegas Capital Corp. ("Capital") are guarantors of the Debtor's obligations under the Credit Agreement ("Guarantors" and, collectively with the Debtor, the "Companies"). Claimant is a creditor of the Companies.

The Companies were engaged in the development and construction of Fontainebleau Resort and Casino in Las Vegas, Nevada. They filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 9, 2009 (the "Petition Date"). On June 10, 2009, the Court issued an order permitting joint administration of the Companies' cases under case number 09-21481-BKC-AJC.

### Definitions

A.  "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

B.  "Cash Collateral Orders" means any and all Bankruptcy Court orders authorizing postpetition use of the Lenders' Cash Collateral (as that term is defined in the orders), on either consensual or non-consensual basis, including, without limitation: (i) Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy

Code, and (III) Scheduling Final Hearing, entered on June 11, 2009 (D.E. 49)

("First Interim Order"); **(ii)** Second Interim Order (I) Authorizing Use of Cash

Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing

Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362,

and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on July

7, 2009 (D.E. 242) ("Second Interim Order"); **(iii)** Third Interim Order (I)

Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on July 31, 2009 (D.E. 359) and Amended Third Interim Order

(I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on August 7, 2009 (D.E. 389) (collectively, "Third Interim

Order"), **(iv)** Fourth Interim Order (I) Authorizing Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on August 27,

2009 (D.E. 454) ("Fourth Interim Order"), **(v)** First Interim Order (I)

Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of

the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured

Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, and (III)

Scheduling Final Hearing, entered on September 18, 2009 (D.E. 565) ("First

Interim Nonconsensual Order"), **(vi)** Order Supplementing First Interim Order

2

Authorizing the Nonconsensual Use of Cash Collateral, entered on September 29, 2009 (D.E. 617) ("First Supplemental Nonconsensual Order"), (vii) Second Supplemental Order (I) Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, entered on September 30, 2009 (D.E. 647) ( "Second Supplemental Nonconsensual Order").

C.    "Chapter 11 Cases" means the cases commenced by the Companies under the Bankruptcy Code and jointly administered under Case No. 09-21481-AJC.

D.    "Credit Agreement" means that certain Credit Agreement dated June 6,  2007 among Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas II, LLC, as borrowers, Bank of America, N.A., as administrative agent, and certain lenders a party thereto.

E.    "Disbursement Agreement" means that certain Master Disbursement Agreement dated June 6, 2007 by and among Fontainebleau Las Vegas, LLC, Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las Vegas Capital Corp., Fontainebleau Las Vegas Retail, LLC, Bank of America, N.A., as the Bank Agent, Wells Fargo Bank, N.A., as the Trustee, Lehman Brothers Holdings, Inc., as the Retail Agent, and Bank of America, N.A. as the Disbursement Agent.

F.    "Fontainebleau Affiliates" means Turnberry West Construction, Inc., Turnberry Residential Limited Partner, L.P., and Fontainebleau Resorts, LLC.

G.    "Guarantee and Collateral Agreement" means that certain Guarantee and Collateral Agreement dated June 6, 2007 by Fontainebleau Las Vegas, LLC,

Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, and Fontainebleau Las Vegas Capital Corp. in favor of Bank of America, N.A., as agent for the Lenders.

H.   "Lenders" means lenders under the Credit Agreement and the Loan Documents, and their successors in interest.

I.   "Loan Documents" means Credit Agreement together with all schedules and exhibits thereto, including, without limitation, guarantees, guarantee and collateral agreements (including, without limitation, the Guarantee and Collateral Agreement), subordination agreements (including, without limitation, the Subordination Agreement), disbursement agreements (including, without limitation, the Disbursement Agreement), mortgages and deeds of trust, control agreements, security agreements, pledge agreements, intercreditor agreements, indentures, contractor undertakings, notes, instruments, reaffirmations, certificates, and any other agreements and documents delivered pursuant to or in connection with the Credit Agreement.

J.   "Subordination Agreement" means that certain Affiliate Subordination Agreement dated June 6, 2007, by Turnberry West Construction, Inc., Turnberry Residential Limited Partners, L.P., Fontainebleau Resorts, LLC, Fontainebleau Las Vegas II, LLC, Holdings, and Debtor in favor of Bank of America, N.A., as Administrative Agent, and Wells Fargo, N.A., as Trustee.


**The Claims**

Claimant is one of the Lenders under the Credit Agreement.  It made loans to and for the benefit of the Debtor.  To evidence these loans, the Debtor executed and delivered to or for the

4

benefit of the Lenders the Initial Term Notes and the Delayed Draw Term Notes (each as more fully described in the Credit Agreement). As of the date of this Proof of Claim, the Debtor is obligated and indebted to Claimant (i) in an amount not less than $1,333,333.33 in respect of the principal amount of Initial Term Loan obligations, as that term is defined in the Credit Agreement, (ii) in an amount not less than $616,666.67 in respect of the principal amount of Delay Draw Term Loan obligations, as that term is defined in the Credit Agreement, (iii) unpaid interest, if any, that accrued prior to the Petition Date, and (iv) unpaid interest, if any, that accrued and continues to accrue after the Petition Date (including interest at any applicable default rate). (Obligations described in this paragraph are collectively referred to as the "Term Loan Indebtedness").

The Debtor is further obligated and indebted to Claimant pursuant to various provisions of the Loan Documents, including, without limitation, sections 2.19 and 10.5 of the Credit Agreement, section 11.15 of the Disbursement Agreement, and section 8.4 of the Guarantee and Collateral Agreement for all unpaid costs, fees, expenses, indemnities, and charges resulting from and in connection with the enforcement and protection of Claimant's rights under the Credit Agreement, both pre- and post-Petition Date. These costs, fees, expenses, indemnities, and charges have grown and continue to grow, to the extent permitted by law. Any amounts arising after the Petition Date are entitled to administrative priority to the extent provided in 11 U.S.C. §§ 507(a)(1) and 503, or any applicable court orders. (Obligations described in this paragraph, collectively with the Term Loan Indebtedness, are referred to herein as the "Indebtedness").

The Indebtedness is secured by the Collateral, as further described below. Claimant does not have any definite information about the current value of the Collateral and is not aware of any recent appraisals performed to establish the value of the Collateral. Therefore, this Proof of

5

Claim is filed as a **secured claim to the extent of the value of the Collateral** held by or for the benefit of Claimant as security for the Indebtedness, and as an **unsecured claim to the extent there is any deficiency** in the value of the Collateral held by or for the benefit of Claimant when compared to the amount of the Indebtedness.

In addition, Claimant asserts claims based upon (a) any breaches by any of the Companies of any representations and warranties under the Loan Documents, including, without limitation, any breaches of representations and warranties set forth in Article 4 of the Credit Agreement, (b) any misrepresentations by any of the Companies, and (c) any events of default under the Loan Documents, including, without limitation, any Events of Default under Section 8 of the Credit Agreement.

## The Collateral

To secure the Indebtedness, the Debtor granted to Bank of America, N.A., an administrative agent, for the benefit of the Lenders, including Claimant, pursuant to and as described in the Loan Documents, a first priority lien and security interest in substantially all assets of the Debtor, including, without limitation, the Debtor's real property, deposit accounts, chattel paper, contracts, documents, equipment, general intangibles, instruments, intellectual property, inventory, investment property, letters of credit, money, bank accounts, insurance policies, permits, books, records and other property or assets (the foregoing collateral generally described in this paragraph, together with all proceeds, products, rents and profits thereof, is referred to collectively as the "Collateral").

The liens and security interests on and in the Collateral are perfected pursuant to, among other things, (i) Uniform Commercial Code financing statements filed in the appropriate offices in the applicable jurisdictions against the Debtor in favor of Bank of America, N.A., as the agent

6

for the Lenders,  (ii) control agreements executed by the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, with respect to accounts and other types of collateral where perfection by control is required or permitted under the Uniform Commercial Code, (iii) possession by Bank of America, N.A., as the agent for the Lenders, of instruments, securities, chattel paper and similar documents for which perfection by possession is required or permitted under the Uniform Commercial Code, and (iv) recording in the books and records of the applicable jurisdictions, of mortgages and deeds of trust.

The Loan Documents, including those evidencing perfection as described above, are not attached as they are voluminous and copies are in the Debtor's possession, but such documents will be made available upon request.

The foregoing does not purport to describe all of the collateral securing the Indebtedness or all documents evidencing the liens and security interests securing the Indebtedness, and Claimant reserves the right to amend this Proof of Claim to supplement the foregoing description of the Collateral and documents evidencing the liens and security interests securing the Indebtedness.

### Cash Collateral Orders

After the Petition Date, Bankruptcy Court entered numerous Cash Collateral Orders authorizing use of the Lenders' "Cash Collateral" (as such term is defined in the orders) pursuant to Section 363 of the Bankruptcy Code, providing adequate protection, and making certain findings of fact and conclusions of law.  This Proof of Claim incorporates, by reference, all of the Debtor's stipulations and all findings of fact contained in the Cash Collateral Orders.  In addition, all Cash Collateral used by the Debtor under the authority of the Cash Collateral Orders is entitled to superpriority administrative expense status under Section 507(b) of the Bankruptcy

7

Code, and is secured by either *pari passu* or senior liens on the Collateral (for the purposes of this paragraph only, as such term is defined in the Cash Collateral Orders), as provided in each corresponding Cash Collateral Order.

## Subordination Agreement

Pursuant to the Subordination Agreement, Fontainebleau Affiliates subordinated certain claims against Debtor to the claims of administrative agent for the Lenders. Section 2.04(b) of the Subordination Agreement provides that until all of the debt owed to the Lenders is paid in full, "any payments of the Subordinated Obligations to which any Fontainebleau Affiliate would be entitled but for this Article 2 will be made to [administrative agent]." Therefore, by this Proof of Claim, Claimant asserts its right to a proportional share of any distributions made on account of any Subordinated Obligations (as defined in the Subordination Agreement) that would otherwise be made to Fontainebleau Affiliates on account of any claim they may have made or make against Debtor.

## Reservation of Rights

The filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of any of Claimant's rights against any other entity or person for all or any part of any claim set forth herein; (b) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims or with respect to any objection or other proceeding; (c) a waiver of any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor; (d) an election of remedy which waives or otherwise affects any other remedy of Claimant; (e) a waiver of Claimant's right to file a request for payment of

administrative expenses under section 503(b) of the Bankruptcy Code; or (f) a waiver of a right to trial by jury.

Claimant reserves the right to amend this Proof of Claim in any way, including without limitation (i) setting forth or changing the basis or the amount of the claim described herein, (ii) further describing said claim, and (iii) providing further evidence relating to said claim.

### Notice

All objections and other notices, pleadings, demands, or documents delivered with respect of this Claim should be delivered to:

> Carlyle High Yield Partners X, Ltd.
> c/o Carlyle Investment Management LLC
> 520 Madison Avenue
> New York, NY 10022
>
> -and-
>
> Sidney P. Levinson, Esq.
> Hennigan, Bennett & Dorman LLP
> 865 South Figueroa Street, Suite 2900
> Los Angeles, CA 90017
> Tel. (213) 694-1200
> Fax: (213) 694-1234
> Email: LevinsonS@hbdlawyers.com

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | SOUTHERN DISTRICT OF FLORIDA | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>Fontainebleau Las Vegas Capital Corp. | Case Number:<br>09-21483 (AJC) |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Carlyle High Yield Partners X, Ltd.

Name and address where notices should be sent:
Carlyle High Yield Partners X, Ltd.              -and-      Sidney P. Levinson
c/o Carlyle Investment Management LLC                       Hennigan, Bennett & Dorman LLP
520 Madison Avenue                                          865 South Figueroa Street
New York, NY 10022                                          Suite 2900
                                                            Los Angeles, CA 90017

Telephone number: 212-813-4900   or  213-694-1200

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):
Carlyle High Yield Partners X, Ltd.
c/o Carlyle Investment Management LLC
520 Madison Avenue
New York, NY 10022
Telephone number: 212-813-4900  or  213-694-1200

COPY

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**       $ See Addendum _____

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See Addendum
   (See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:  ☒ Real Estate   ☐ Motor Vehicle   ☒ Other

   Describe: See Addendum

   Value of Property:$ See Addendum   Annual Interest Rate _____%

   Amount of arrearage and other charges as of time case filed included in secured claim,

   if any: $ See Addendum ____   Basis for perfection: See Addendum

   Amount of Secured Claim: $ See Addendum ____   Amount Unsecured: $ See Addendum

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(____).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date: 10-9-09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Linda Pace, Managing Director, Carlyle Investment Management LLC | FOR COURT USE ONLY<br>**RECEIVED**<br>OCT 13 2009<br>KURTZMAN CARSON CONSULTANTS |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ADDENDUM TO PROOF OF CLAIM OF
## CARLYLE HIGH YIELD PARTNERS X, LTD.

(Fontainebleau Las Vegas Capital Corp., Case No. 09-21483)

Carlyle High Yield Partners X, Ltd. (the "Claimant") is a lender under that certain Credit Agreement dated as of June 6, 2007 (as described more fully below), pursuant to which Fontainebleau Las Vegas, LLC ("FBLV") is a borrower, and Fontainebleau Las Vegas Holdings, LLC ("Holdings") and Fontainebleau Las Vegas Capital Corp. ("Debtor") are guarantors of FBLV's obligations under the Credit Agreement ("Guarantors" and, collectively with FBLV, the "Companies"). Claimant is a creditor of the Companies.

The Companies were engaged in the development and construction of Fontainebleau Resort and Casino in Las Vegas, Nevada. They filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 9, 2009 (the "Petition Date"). On June 10, 2009, the Court issued an order permitting joint administration of the Companies' cases under case number 09-21481-BKC-AJC.

### Definitions

A.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

B.      "Cash Collateral Orders" means any and all Bankruptcy Court orders authorizing postpetition use of the Lenders' Cash Collateral (as that term is defined in the orders), on either consensual or non-consensual basis, including, without limitation: (i) Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy

Code, and (III) Scheduling Final Hearing, entered on June 11, 2009 (D.E. 49)

("First Interim Order");  (ii) Second Interim Order (I) Authorizing Use of Cash

Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing

Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362,

and 363, of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on July

7, 2009 (D.E. 242) ("Second Interim Order"); (iii) Third Interim Order (I)

Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on July 31, 2009 (D.E. 359) and Amended Third Interim Order

(I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy

Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant

to Sections 361, 362, and 363, of Bankruptcy Code, and (III) Scheduling Final

Hearing, entered on August 7, 2009 (D.E. 389) (collectively, "Third Interim

Order"),  (iv) Fourth Interim Order (I) Authorizing Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, and (III) Scheduling Final Hearing, entered on August 27,

2009 (D.E. 454) ("Fourth Interim Order"),  (v)  First Interim Order (I)

Authorizing the Nonconsensual Use of Cash Collateral Pursuant to Section 363 of

the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured

Parties Pursuant to Sections 361, 362, and 363, of Bankruptcy Code, and (III)

Scheduling Final Hearing, entered on September 18, 2009 (D.E. 565) ("First

Interim Nonconsensual Order"),  (vi) Order Supplementing First Interim Order

2

Authorizing the Nonconsensual Use of Cash Collateral, entered on September 29,

2009 (D.E. 617) ("First Supplemental Nonconsensual Order"), **(vii)** Second

Supplemental Order (I) Authorizing the Nonconsensual Use of Cash Collateral

Pursuant to Section 363 of the Bankruptcy Code and (II) Providing Adequate

Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, and 363,

of Bankruptcy Code, entered on September 30, 2009 (D.E. 647) ( "Second

Supplemental Nonconsensual Order").

C.      "Chapter 11 Cases" means the cases commenced by the Companies under the

Bankruptcy Code and jointly administered under Case No. 09-21481-AJC.

D.      "Credit Agreement" means that certain Credit Agreement dated June 6,  2007

among Fontainebleau Las Vegas, LLC and Fontainebleau Las Vegas II, LLC, as

borrowers, Bank of America, N.A., as administrative agent, and certain lenders a

party thereto.

E.      "Disbursement Agreement" means that certain Master Disbursement Agreement

dated June 6, 2007 by and among Fontainebleau Las Vegas, LLC, Fontainebleau

Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, Fontainebleau Las

Vegas Capital Corp., Fontainebleau Las Vegas Retail, LLC, Bank of America,

N.A., as the Bank Agent, Wells Fargo Bank, N.A., as the Trustee, Lehman

Brothers Holdings, Inc., as the Retail Agent, and Bank of America, N.A. as the

Disbursement Agent.

F.      "Guarantee and Collateral Agreement" means that certain Guarantee and

Collateral Agreement dated June 6, 2007 by Fontainebleau Las Vegas, LLC,

Fontainebleau Las Vegas II, LLC, Fontainebleau Las Vegas Holdings, LLC, and

3

Fontainebleau Las Vegas Capital Corp. in favor of Bank of America, N.A., as agent for the Lenders.

G.    "Lenders" means lenders under the Credit Agreement and the Loan Documents, and their successors in interest.

H.    "Loan Documents" means Credit Agreement together with all schedules and exhibits thereto, including, without limitation, guarantees, guarantee and collateral agreements (including, without limitation, the Guarantee and Collateral Agreement), subordination agreements, disbursement agreements (including, without limitation, the Disbursement Agreement), mortgages and deeds of trust, control agreements, security agreements, pledge agreements, intercreditor agreements, indentures, contractor undertakings, notes, instruments, reaffirmations, certificates, and any other agreements and documents delivered pursuant to or in connection with the Credit Agreement.

## The Claims

Claimant is one of the Lenders under the Credit Agreement. It made loans to and for the benefit of FBLV. Under the Guarantee and Collateral Agreement, the Guarantors guaranteed "jointly and severally, unconditionally and irrevocably... the prompt and complete payment and performance..." of FBLV's obligations under the Credit Agreement. As of the date of this Proof of Claim, the Debtor is obligated and indebted to Claimant, on account of its guarantees, (i) in an amount not less than $1,333,333.33 in respect of the principal amount of Initial Term Loan obligations, as that term is defined in the Credit Agreement, (ii) in an amount not less than $616,666.67 in respect of the principal amount of Delay Draw Term Loan obligations, as that term is defined in the Credit Agreement, (iii) unpaid interest, if any, that accrued prior to the

4

Petition Date, and (iv) unpaid interest, if any, that accrued and continues to accrue after the Petition Date (including interest at any applicable default rate).  (Obligations described in this paragraph are collectively referred to as the "Term Loan Indebtedness Guarantees").

The Debtor is further obligated and indebted to Claimant on account of its guarantees of FBLV's obligations pursuant to various provisions of the Loan Documents, including, without limitation, sections 2.19 and 10.5 of the Credit Agreement, section 11.15 of the Disbursement Agreement, and section 8.4 of the Guarantee and Collateral Agreement for all unpaid costs, fees, expenses, indemnities, and charges resulting from and in connection with the enforcement and protection of Claimant's rights under the Credit Agreement, both pre- and post-Petition Date. These costs, fees, expenses, indemnities, and charges have grown and continue to grow, to the extent permitted by law.  Any amounts arising after the Petition Date are entitled to administrative priority to the extent provided in 11 U.S.C. §§ 507(a)(1) and 503, or any applicable court orders.  (Obligations described in this paragraph, collectively with the Term Loan Indebtedness Guarantees, are referred to herein as the "Indebtedness Guarantees").

The Indebtedness Guarantees are secured by the Collateral, as further described below. Claimant does not have any definite information about the current value of the Collateral and is not aware of any recent appraisals performed to establish the value of the Collateral.  Therefore, this Proof of Claim is filed as a **secured claim to the extent of the value of the Collateral** held by or for the benefit of Claimant as security for the Indebtedness Guarantees, and as an **unsecured claim to the extent there is any deficiency** in the value of the Collateral held by or for the benefit of Claimant when compared to the amount of the Indebtedness Guarantees.

In addition, Claimant asserts claims based upon (a) any breaches by any of the Companies of any representations and warranties under the Loan Documents, including, without limitation, any breaches of representations and warranties set forth in Article 4 of the Credit

5

Agreement, (b) any misrepresentations by any of the Companies, and (c) any events of default under the Loan Documents, including, without limitation, any Events of Default under Section 8 of the Credit Agreement.

## The Collateral

To secure the Indebtedness Guarantees, the Debtor granted to Bank of America, N.A., an administrative agent, for the benefit of the Lenders, including Claimant, pursuant to and as described in the Loan Documents, a first priority lien and security interest in substantially all personal property of the Debtor, including, without limitation, the Debtor's deposit accounts, chattel paper, contracts, documents, equipment, general intangibles, instruments, intellectual property, inventory, investment property, letters of credit, money, bank accounts, insurance policies, permits, books, records and other property or assets (the foregoing collateral generally described in this paragraph, together with all proceeds, products, rents and profits thereof, is referred to collectively as the "Collateral").

The liens and security interests on and in the Collateral are perfected pursuant to, among other things, (i) Uniform Commercial Code financing statements filed in the appropriate offices in the applicable jurisdictions against the Debtor in favor of Bank of America, N.A., as the agent for the Lenders,  (ii) control agreements executed by the Debtor in favor of Bank of America, N.A., as the agent for the Lenders, with respect to accounts and other types of collateral where perfection by control is required or permitted under the Uniform Commercial Code, and (iii) possession by Bank of America, N.A., as the agent for the Lenders, of instruments, securities, chattel paper and similar documents for which perfection by possession is required or permitted under the Uniform Commercial Code.

6

The Loan Documents, including those evidencing perfection as described above, are not attached as they are voluminous and copies are in the Debtor's possession, but such documents will be made available upon request.

The foregoing does not purport to describe all of the collateral securing the Indebtedness Guarantees or all documents evidencing the liens and security interests securing the Indebtedness Guarantees, and Claimant reserves the right to amend this Proof of Claim to supplement the foregoing description of the Collateral and documents evidencing the liens and security interests securing the Indebtedness Guarantees.

## Cash Collateral Orders

After the Petition Date, Bankruptcy Court entered numerous Cash Collateral Orders authorizing use of the Lenders' "Cash Collateral" (as such term is defined in the orders) pursuant to Section 363 of the Bankruptcy Code, providing adequate protection, and making certain findings of fact and conclusions of law. This Proof of Claim incorporates, by reference, all of the Debtor's stipulations and all findings of fact contained in the Cash Collateral Orders. In addition, all Cash Collateral used by the Debtor under the authority of the Cash Collateral Orders is entitled to superpriority administrative expense status under Section 507(b) of the Bankruptcy Code, and is secured by either *pari passu* or senior liens on the Collateral (for the purposes of this paragraph only, as such term is defined in the Cash Collateral Orders), as provided in each corresponding Cash Collateral Order.

## Reservation of Rights

The filing of this Proof of Claim is not and should not be construed to be (a) a waiver or release of any of Claimant's rights against any other entity or person for all or any part of any

7

claim set forth herein; (b) a waiver of the right to seek to have the reference withdrawn with respect to the subject matter of these claims or with respect to any objection or other proceeding; (c) a waiver of any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor; (d) an election of remedy which waives or otherwise affects any other remedy of Claimant; (e) a waiver of Claimant's right to file a request for payment of administrative expenses under section 503(b) of the Bankruptcy Code; or (f) a waiver of a right to trial by jury.

Claimant reserves the right to amend this Proof of Claim in any way, including without limitation (i) setting forth or changing the basis or the amount of the claim described herein, (ii) further describing said claim, and (iii) providing further evidence relating to said claim.

### Notice

All objections and other notices, pleadings, demands, or documents delivered with respect of this Claim should be delivered to:

    Carlyle High Yield Partners X, Ltd.
    c/o Carlyle Investment Management LLC
    520 Madison Avenue
    New York, NY 10022

    -and-

    Sidney P. Levinson, Esq.
    Hennigan, Bennett & Dorman LLP
    865 South Figueroa Street, Suite 2900
    Los Angeles, CA 90017
    Tel. (213) 694-1200
    Fax: (213) 694-1234
    Email: LevinsonS@hbdlawyers.com