

**ORDERED in the Southern District of Florida on March 19, 2013.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    CASE NO. 09-21481-BKC-AJC

FONTAINEBLEAU LAS VEGAS
HOLDINGS, LLC, ET AL.,                     CHAPTER 7 (Jointly Administered)

       Debtors.
_____/

**MEMORANDUM DECISION AND ORDER DENYING JMB CAPITAL PARTNERS MASTER FUND, LP AND THE M&M LIENHOLDERS' AMENDED JOINT MOTION TO ENFORCE TERMS OF DISTRICT COURT'S ORDER OF REMAND**

THIS CAUSE came before the Court upon "JMB CAPITAL PARTNERS MASTER

FUND, LP AND THE M&M LIENHOLDERS' _AMENDED_ JOINT MOTION TO ENFORCE

TERMS OF DISTRICT COURT'S ORDER OF REMAND" (the "Amended Motion") [ECF No.

3882] filed on December 4, 2012 by the Lienholders (as that term is defined in the Amended

Motion).[1]  The Court, having considered the Amended Motion, the objections filed by Aurelius Capital Management LP, the Term Lenders and Wilmington Trust[2] along with the exhibits attached thereto, including the transcript of the oral argument before the Eleventh Circuit on December 4, 2012 (the "11th Cir. Tr."),[3] having heard the arguments of counsel at the hearing held on January 22, 2013, and having reviewed the proposed memorandum decisions submitted by the parties and the responses filed thereto, and being otherwise duly advised in the premises, issues the following memorandum decision denying the Amended Motion.

## I.        BACKGROUND

The genesis of this dispute involves the Debtors' use in 2009 of approximately $18 million of the Term Lenders' cash collateral (the "Used Cash Collateral") to fund expenses, including fees of estate professionals and construction-related goods and services, necessary to preserve and sell the Debtors' assets.  This Court entered twelve cash collateral orders (the "Cash Collateral Orders") which, either with the consent of the Term Lenders or (in one instance) over their objection, expressly provided that the Debtors' authority to use the Term Lenders' cash collateral was subject to a number of terms and conditions.  Without those terms and conditions

---

[1]    All terms not otherwise defined herein have the same meanings as defined in the Amended Motion.

[2]    *See* Aurelius Capital Management, LP's (I) Initial Objection to JMB Capital Partners Master Fund, LP and the M&M Lienholders' Amended Joint Motion to Enforce Terms of District Court's Order of Remand and (II) Expedited Request to Continue Hearing ("Aurelius Initial Objection") [ECF No. 3885]; Term Lenders' Objection to Contractors' Amended Joint Motion to Enforce Terms of District Court's Order of Remand ("Term Lenders Objection") [ECF No. 3914]; Aurelius Capital Management, LP's Objection to JMB Capital Partners Master Fund, LP and the M&M Lienholders' Amended Joint Motion to Enforce Terms of District Court's Order of Remand ("Aurelius Objection") [ECF No. 3915]; Joinder of Wilmington Trust, National Association to Objections to Contractors' Amended Joint Motion to Enforce Terms of District Court's Order of Remand ("Wilmington Trust Objection") [ECF No. 3916].

[3]    A copy of that transcript is attached to the Term Lenders Objection as *Exhibit E.*

in place, the Term Lenders would not have consented to and this Court would not have authorized the Debtors' use of the cash collateral.

One important term and condition, contained in all but two of the Cash Collateral Orders, granted the Term Lenders priming liens with priority over the liens asserted by other parties, including the Lienholders. Another important term and condition, included in all of the Cash Collateral Orders without objection by the Lienholders or any other party in interest, provided that the Debtors could not obtain post-petition financing secured by a priming lien unless the Used Cash Collateral was indefeasibly repaid in full and in cash.

In late 2009, in connection with a sale of substantially all of the Debtors' assets to Icahn Nevada Gaming, LLC ("Icahn Nevada"), this Court entered interim and final financing orders (the "Financing Orders") [ECF Nos. 1052, 1401] authorizing the Debtors to borrow in excess of $50 million, of which proceeds in the amount of approximately $18 million were earmarked for repayment of the Used Cash Collateral to the Term Lenders and an additional approximately $8 million were earmarked for payment of the fees and costs of estate professionals for services necessary to consummate the sale to Icahn Nevada. But for the repayment of the Used Cash Collateral to the Term Lenders, the Debtors would have been prohibited, under the terms of the Cash Collateral Orders, from obtaining financing on the terms set forth in the Financing Orders and thereby would have been unable to pay for the services and construction necessary to preserve the assets and consummate the sale.

The Lienholders appealed from the Financing Orders, as well as certain of the Cash Collateral Orders. However, they did not obtain a stay pending appeal. Nor did they oppose the sale to Icahn Nevada or appeal from the related sale order (the "Sale Order") [ECF No. 1671], which provided for a "credit bid" of the loans provided by the DIP Lender under the Financing Orders.

On July 14, 2010, the District Court issued an order (the "Order"), reversing certain of this Court's Cash Collateral Orders and the Financing Orders. The Order provides in relevant part, at page 67:

> These appeals are **REMANDED** to the bankruptcy court. The bankruptcy court must craft a remedy consistent with this Order. At bottom, the financing orders decreased the value of the Statutory Lienholders' interests in the Project by the amount of the priming lien granted to Icahn Nevada. Under those orders, funds were disbursed to the Term Lenders, the Examiner, and other professionals. Although the bankruptcy court cannot recover all the funds, it may and must recover the funds distributed to the Term Lenders, the Examiner, and the professionals pending a determination of the issue of priority — not to exceed any amount the Statutory Lienholders have requested. Any compensation to which the Examiner and other professionals may be entitled must be made in accordance with law.

[Order, at 67].

The Term Lenders, Aurelius, the Examiner, and a multitude of professionals and other parties impacted by the Order filed timely appeals to the Eleventh Circuit.[4] At the outset of briefing, the Circuit asked for a response to the following "jurisdictional question":

> Whether, on remand, the bankruptcy court must exercise significant judicial activity involving considerable discretion, and, accordingly, whether the district court's order is final and appealable. *See T&B Scottdale Contractors, Inc. v. United States*, 866 F.2d 1372, 1375 (11th Cir. 1989); *In re Miscott Corp.*, 848 F.2d 1190, 1192-93 (11th Cir. 1988); *In re Briglevich*, 847 F.2d 759, 760-61 (11th Cir. 1988); *In re TCL Investors*, 775 F.2d 1516, 1518 (11th Cir. 1985).

[11th Cir. Case No. 10-13716, dated Sep. 2, 2010][5] Ultimately, the Eleventh Circuit issued a memorandum preliminarily concluding that the appeal could proceed, but reserving "[a] final determination regarding jurisdiction [to] the panel to whom this appeal is submitted on the

---

[4]    Appeals were filed by the Term Lenders; Aurelius; Bilzin Sumberg Baena Price & Axelrod LLP; the Examiner and his professionals; the Trustee; Ernst & Young LLP; Fox Rothschild, LLP; Fulbright & Jaworski, L.L.P.; Genovese Joblove & Battista, P.A.; Marcum LLP; Brownstein, Hyatt, Farber Schreck; and Moelis & Company LLC.

[5]    A copy of the jurisdictional question issued by the Circuit is attached to the Term Lenders Objection as *Exhibit B*.

merits." [11th Cir. Case No. 10-13716, dated Jun. 2, 2011][6]  At oral argument before the merits

panel, Judge Tjoflat asked about the meaning of the Order's direction that this Court "may and

must recover the funds distributed to the Term Lenders, the Examiner, and the professionals

pending a determination of the issue of priority" and wondered whether that language "was a

scrivener's error." [11th Cir. Tr. at 27-28].  To date, the Eleventh Circuit has not ruled whether

the District Court's Order is final or issued a decision on the merits.

      During the two-and-a-half years of appellate proceedings following issuance of the

District Court's Order, the Lienholders never filed a motion with this Court or otherwise sought

to enforce the District Court's Order.  Then, just eight days before oral argument to the Eleventh

Circuit, the Lienholders filed a motion seeking "to enforce terms of District Court's order of

remand." [ECF No. 3868] (the "Initial Motion").  In the Initial Motion, the Lienholders sought

relief against not only the Term Lenders, Aurelius and Wilmington Trust, but also the Debtors'

professionals.  Specifically:

- The Lienholders asserted that the Order "is final, unambiguous, and requires this
  Court to order the Term Lenders **_and the professionals_** to disgorge payments they
  received under the Appealed Orders to the Trustee, pending the inevitable finding
  that the Lienholders have first priority in the proceeds from the sale of the
  Project." [Initial Motion at ¶ 20 (emphasis added)].

- The Lienholders requested "entry of an order of the Court directing the Term
  Lenders and Wilmington Trust, as agent for the Term Lenders, to repay
  $16,241,571 in repaid cash collateral to the Trustee, Soneet Kapila.  Further,
  [Lienholders] request the entry of an order directing that all funds paid to estate

---

[6]    A copy of that memorandum is attached to the Term Lenders Objection as *Exhibit D*.

*professionals* from the DIP Financing be re-paid to the Trustee."  [*Id.* at ¶ 22 (emphasis added)].

- The Lienholders requested that the Court order "the return of funds disbursed to the Term Lenders, ***the Examiner***, and ***the other professionals*** of the bankruptcy estate."  [*Id.* at 1 (emphasis added)].

On the morning of oral argument, the Contractors "amended" the Initial Motion and filed the Amended Motion, which no longer seeks payment from the Examiner or the Professionals and instead seeks enforcement of the District Court's Order solely as against the Term Lenders, Wilmington Trust and other lender parties.  The Lienholders did not explain in the Amended Motion why they had elected to have this Court only compel disgorgement from the Term Lenders and Wilmington Trust.

## II.    DISCUSSION

### A.    This Court Lacks Jurisdiction To Grant The Relief Requested

Based on the appeal to the Eleventh Circuit of the District Court's Order, which remains pending, this Court lacks jurisdiction to hear the Amended Motion.  In the Eleventh Circuit, "[t]he filing of a proper notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the appellate court ***and divests the trial court of its control over those aspects of the case involved in the appeal***."  *In re Walker*, 515 F.3d 1204, 1211 (11th Cir. 2008) (emphasis added) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)); *accord In re Mosley*, 494 F.3d 1320, 1328 (11th Cir. 2007).  "The purpose of the general rule is to avoid the confusion of placing the same matter before two courts at the same time and preserve the integrity of the appeal process."  *Whispering Pines Estates, Inc. v. Flash Island, Inc.*, 369 B.R. 752, 757 (B.A.P. 1st Cir. 2007); *see, e.g.*, *In re Hoopai*, 408 B.R. 839, 841 (Bankr. D. Haw.

2009) (purpose of the rule is to "prevent the confusion that would result from two courts addressing the same issue") (quotations omitted).

The jurisdiction retained by the bankruptcy court or district court upon appeal of an order to the circuit court is narrow, and extends only to "matters that it must undertake 'to implement or enforce the judgment or order.'" *In re Sherman*, 491 F.3d 948, 967 (9th Cir. 2007). There are, under applicable law, at least two clear limitations on a lower court's jurisdiction to grant relief on remand of an order that remains on appeal, both of which apply to the relief sought by the Lienholders. *First*, under well settled law, this Court "may not alter or expand upon the judgment." *Id*. For example, in *In re Seminole Walls & Ceilings Corp.*, 412 B.R. 878 (M.D. Fla. 2008), a case cited by counsel for the Lienholders during the hearing on the Amended Motion,[7] the district court held that the bankruptcy court lacked jurisdiction to modify an order on appeal to remove certain language authorizing liquidation of assets by the trustee and to replace it with a requirement that no sale of the assets could occur without court approval. *Id*. at 884. Counsel for the Lienholders conceded, during the hearing on the Amended Motion, that this Court cannot alter the Order. [1/22/13 Tr., at 9:23-10:1 and 43:3-5].

Here, the Order is unambiguous as to its reach, expressly stating that this Court "may and must recover the funds distributed to the Term Lenders, ***the Examiner, and the professionals*** pending a determination of the issue of priority . . . ." [Order at 67 (emphasis added)]. The relief requested by the Lienholders would alter that Order by effectively removing the Examiner and the professionals from the scope of its language. The Contractors have previously asserted, to the Eleventh Circuit, that "[t]he Order left the Bankruptcy Court no discretion to determine whether fees must be disgorged, ***from whom payments must be disgorged***, or the amount of the

---

[7] *See* Transcript of Hearing Held January 22, 2013 ("1/22/13 Tr.") (ECF No. 3919), at 42:18-43:3.

payments that must be disgorged." [11th Cir. Case No. 10-13723, dated Apr. 11, 2011 (emphasis added)]. Given the foregoing, this Court lacks the jurisdiction to alter the Order while it remains on appeal to the Eleventh Circuit.

*Second*, "it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process." *Whispering Pines*, 369 B.R. at 759. The Amended Motion asks this Court to decide several issues that are pending on appeal before the Eleventh Circuit. The Amended Motion posits that "the District Court's order is final, and has been since July 29, 2010" and therefore relief should be granted. [Amended Motion, at ¶ 15]. But the Eleventh Circuit has expressly questioned – and not yet determined – whether the District Court's Order is final. Asking this Court to decide the very jurisdictional question pending before the Eleventh Circuit would "interfere with or effectively circumvent the appeals process."

Moreover, the requested relief would require this Court to "exercise significant judicial activity involving considerable discretion" regarding matters currently on appeal. At the hearing on the Amended Motion, it became apparent that the requested relief required this Court to exercise some discretion in deciding ***who*** would make the disgorgement of the funds paid in 2009. This Court thereupon questioned the Lienholders: "If the original lender who got the money sold their position and remand or disgorgement was ordered, who makes the disgorgement? The buyer or the original term lender?" [1/22/13 Tr., at 45:16-19]. In response, counsel for the Lienholders stated that "we don't know." [*Id*. at 45:20-22]. To answer that inquiry would require this Court to exercise discretion in fashioning an order, as the District Court did not provide specific guidance on this question.

Another issue on appeal is whether the District Court had jurisdiction or authority to order disgorgement, as it is argued that it is the province of the bankruptcy court, as the trier of fact, to determine whether the equitable remedy of disgorgement is appropriate under the facts and circumstances of the case.  [*See* 11th Cir. Tr. at 27-30]  Were this Court to hear and determine the Amended Motion, it effectively would be deciding that very issue now pending before the Eleventh Circuit, to wit, whether the District Court usurped the Court's authority in dictating disgorgement.  *See Hoopai*, 408 B.R. at 841 (bankruptcy court lacked jurisdiction to reduce "the amount of a supersedeas bond in the face of an appeal about the proper disposition of the bond . . . because the amount of the surety's liability is one of the aspects of the case involved in the appeal") (quotations omitted).  Accordingly, because issues regarding the nature, extent, scope and propriety of the District Court's Order and its disgorgement directive are now pending before the Eleventh Circuit, this Court has no jurisdiction to hear and determine the Amended Motion, particularly where the Contractors are seeking selective enforcement against some but not all of the parties allegedly subject to disgorgement.

**B.      In The Alternative, If This Court Has Jurisdiction And Discretion To Alter The Order, Then It Has Discretion To Deny The Amended Motion Until After The Eleventh Circuit Has Ruled.**

In the alternative, if this Court were to accept the argument of the Lienholders that this Court has both the jurisdiction and the discretion to enforce the Order only against the Term Lenders, Aurelius and Wilmington Trust and not against the Examiner and the professionals, then this Court chooses to exercise its discretion to deny the Amended Motion until after the Eleventh Circuit has decided the pending appeal.  This is the appropriate course of action for a number of reasons.

*First*, granting the Amended Motion – whether now, after the Eleventh Circuit rules, or at any time prior to a final determination on the priority of the statutory liens asserted by the

Lienholders – may prejudice the Debtors' estates and creditors.  Ordering the Term Lenders, Aurelius and Wilmington Trust to disgorge funds to the Trustee may require the Trustee to incur the cost to obtain a bond on account of such funds, which could exceed the cost of any interest that would accrue on such funds.  Moreover, the Trustee might argue he is entitled to compensation for any such funds distributed by him, depleting the funds available for creditors.

*Second*, the Lienholders have presented no evidence that, if the Order is affirmed and they prevail in establishing the priority of their statutory liens, they will be somehow less able than is now the case to pursue recovery from the Term Lenders, Aurelius or Wilmington Trust to recover the funds, none of which have been shown to be financially unable to comply with any order of disgorgement.  The fact that the Lienholders waited for two and one-half years to seek enforcement of the Order further confirms the lack of prejudice to Lienholders that would result if the Amended Motion were denied at this time.

*Third*, like all federal trial courts, this Court has inherent power to manage its own docket and rule on the Amended Motion when this Court believes it is in the best interests of all affected to do so.  *See Wilson v. Farley*, 203 Fed App'x 239, 250 (11th Cir. 2006); *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1171-72 & n.7 (11th Cir. 2004); *Austin v. Global Connection*, 303 Fed. App'x 750, 753 (11th Cir. 2008) (per curiam).  Nothing in the Order indicates a date certain by which this Court must act.  Waiting to see how the Eleventh Circuit resolves the appeal from the Order, and how the District Court addresses that decision on remand, is well within this Court's discretion under both its inherent powers and the terms of the Order.  Indeed, if the Order is reversed there should be no dispute that the Term Lenders, Aurelius, Wilmington Trust, the Examiner, and the professionals will be entitled to retain all of the funds they received.  But even if the Eleventh Circuit affirms the Order, both the lenders and the professionals may have defenses or arguments to raise.  There are other plausible outcomes,

but until the Eleventh Circuit provides guidance, a prudent course is to defer consideration of the

Motion.  Based upon the foregoing, it is

        **ORDERED AND ADJUDGED** that the Amended Motion is **DENIED** without

prejudice to renewal when the Order entered on appeal by the Eleventh Circuit Court of Appeals

becomes final.

###

Submitted by:
Sidney P. Levinson, Esq.
Jones Day
555 South Flower Street
50th Floor
Los Angeles, California 90017
Telephone 213.489.3939
Facsimile 213.243.2539
Email: slevinson@jonesday.com

Attorney Levinson shall serve a conformed copy of this Order to all interested parties and file a
Certificate of Service.