UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.usgourts.gov

In re:

FONTAINEBLEAU LAS VEGAS                    CASE NO. 09-21481-BKC-AJC
HOLDINGS, LLC, *et al*.,                   CHAPTER 7
                                           (Jointly Administered)

           Debtors.

_____/


**TERM LENDERS' MEMORANDUM OF LAW
REGARDING THIS COURT'S POWER AND AUTHORITY TO
ENTER THE BAR ORDER SOUGHT BY CHAPTER 7 TRUSTEE (ECF No. 4470]**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND .......................................................................................... 7

    A.    The Nevada Action ........................................................................ 7

    B.    The Remand Motion And Trustee's Admission and Judge King's Finding That the Term Lenders' Claims Are Not Property of the Estate .......................... 9

    C.    The Trustee Action ...................................................................... 12

    D.    The Comprehensive Settlement Agreement and Entry of Consensual Bar Orders ........................................................................ 14

    E.    Settlement Efforts Regarding the Claims Asserted in the Nevada Action and the Trustee Action ........................................................ 15

III.   ARGUMENT ............................................................................................. 16

    A.    The Eleventh Circuit Has Never Authorized a Bar Order Enjoining the Pursuit of "Truly Independent Claims" Such As Those Held by the Term Lenders ........................................................................................ 16

    B.    A Trustee Cannot Enjoin a Claim That It Lacks Standing to Pursue and That Does Not Seek to Recover Property of the Estate ......................... 24

    C.    In a Chapter 7 Proceeding, a Bankruptcy Court Does Not Have the Authority to Enter a Bar Order In "Unusual Circumstances" That Otherwise Is Available in a Chapter 11 Proceeding ............................. 32

    D.    Even if the Dow Corning Factors Were Applicable in Chapter 7, the Trustee Cannot Meet That Showing ................................................. 34

IV.   CONCLUSION ........................................................................................... 37

# TABLE OF AUTHORITIES

**Page**

CASES

*AAL High Yield Bond Fund v. Deloitte & Touche LLP*,
    361 F.3d 1305 (11th Cir. 2004) ...................................................................... passim

*America Capital Corp. v. Marlin* (*In re America Capital Corp.*),
    Case No. 06-126445-AJC, Adv. Pro. No. 07-01587-AJC, 2011 Bankr. LEXIS 1799
    (Bankr. S.D. Fla. May 3, 2011).........................................................................5, 21

*Apps v. Morrison* (*In re Superior Homes & Invs., LLC*),
    Case No. 6:11-CV-1575-Orl-36 (M.D. Fla. Sept. 20, 2012) ("*Superior Homes I*"),
    *aff'd*, 521 Fed. Appx. 895 (11th Cir. 2013) ("*Superior Homes II*")................................ passim

*Behrmann v. Nat'l Heritage Found., Inc.*,
    663 F.3d 704 (4th Cir. 2011) ...................................................................34

*Berman v. Smith*,
    No. 13-81150-CIV, 2014 WL 1745361 (S.D. Fla. May 1, 2014)...................................5, 26, 27

*Caplin v. Marine Midland Grace Trust Co. of N.Y.*,
    406 U.S. 416 (1972)...........................................................................29

*Class Five Nevada Claimants (00-2516) v. Dow Corning Corp.* (*In re Dow Corning
    Corp.*),
    280 F.3d 648 (6th Cir. 2002) .................................................................. passim

*Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network,
    Inc.*),
    416 F.3d 136 (2d Cir. 2005).................................................................23, 34

*Gerber v. MTC Elec. Techs. Co.*,
    329 F.3d 297 (2d Cir. 2003) (Sotomayor, J.)......................................................19

*Gillman v. Cont'l Airlines* (*In re Cont'l Airlines*),
    203 F.3d 203 (3d Cir. 2000).................................................................6, 34

*Highland Capital Mgmt., LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petroleum,
    Inc.*),
    522 F.3d 575 (5th Cir. 2008) .................................................................25, 30

*In re Am. Family Enters.*,
    256 B.R. 377 (D.N.J. 2000) ...................................................................36

*In re Cello Energy, LLC*,
    Case Nos. 10-04877-MAM-11, 10-04931-MAM-11, 10-04930-MAM-11, 2012
    Bankr. LEXIS 1533 (Bankr. S.D. Ala. Apr. 10, 2012) ............................................34

*In re CHS Elecs., Inc.*,
    261 B.R. 538 (Bankr. S.D. Fla. 2002) ....................................................................30

*In re GunnAllen Fin., Inc.*,
    443 B.R. 908 (Bankr. M.D. Fla. 2011) ...................................................................36

*In re HealthSouth Corp. Sec. Litig.*,
    572 F.3d 854 (11th Cir. 2009) ....................................................................... passim

*In re Ingersoll, Inc.*,
    562 F.3d 856 (7th Cir. 2009) ...................................................................................34

*In re Laminate Kingdom, LLC*,
    Case No. 07-10279-BKC-AJC, 2011 Bankr. LEXIS 4773 (Bankr. S.D. Fla. Dec. 5,
    2011) ........................................................................................................................34

*In re Laminate Kingdom LLC*,
    No. 07-10279-BKC-AJC, 2008 Bankr. LEXIS 1594 (Bankr. S.D. Fla. Mar. 13, 2008).........30

*In re Optical Technologies, Inc.*,
    216 B.R. 989 (Bankr. M.D. Fla. 1997) ...................................................................35

*In re Rothstein Rosenfeldt Adler*,
    2010 Bankr. LEXIS 3001 ........................................................................................26

*In re Rothstein Rosenfeldt Adler, P.A.*,
    Case No. 09-34791-BKC-RBR, 2010 Bankr. LEXIS 3001 (Bankr. S.D. Fla. Sep. 16,
    2010) ...................................................................................................5, 21, 27, 31

*In re SL Liquidating, Inc.*,
    428 B.R. 799 (Bankr. S.D. Ohio 2010)....................................................................34

*In re Specialty Equip. Cos.*,
    3 F.3d 1043 (7th Cir. 1993) .....................................................................................23

*In re United States Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ............................................................................2, 17

*In re Van Diepen*,
    263 Fed. Appx ....................................................................................................4, 27

*In re Wool Growers Cent. Storage Co.*,
    371 B.R. 768 (Bankr. N.D. Tex 2007)......................................................................36

*In re World Health Alternatives, Inc.*,
    369 B.R. 805 (Bankr. D. Del. 2007) ........................................................................30

*In re Xenerga, Inc.*,
    449 B.R. 594 (Bankr. M.D. Fla. 2011) ...........................................................................20, 21

*In re Zwirn*,
    362 B.R. 536 (Bankr. S.D. Fla. 2007) (Cristol, J.) ...................................................4, 25, 27, 31

*Kapila v. Turnberry Associates et al.*,
    Adv. No. 11-02105-BKC-AJC-A (Bankr. S.D. Fla.)..............................................................13

*MacArthur v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*),
    837 F.2d 89 (2d Cir. 1988)....................................................................................6, 7, 36, 37

*Marshall v. Picard* (*In re Bernard Madoff Investor Securities, Inc.*),
    740 F.3d 81 (2d Cir. 2014)....................................................................................................28

*Medkser v. Feingold*,
    307 Fed. Appx. 262 (11th Cir. 2008)...................................................................3, 20, 29, 30

*Menard-Sanford v. Mabey* (*In re A.H. Robins Co.*),
    880 F.2d 694 (4th Cir. 1989) ...........................................................................................6, 36

*Munford v. Munford, Inc.* (*In re Munford, Inc.*),
    97 F.3d 449 (11th Cir. 1996) ...........................................................................3, 17, 23

*National Heritage Found., Inc. v. Highbourne Found.*,
    No. 13-1608, 2014 U.S. App. LEXIS 12144 (4th Cir. Jun. 27, 2014)....................................2

*Oceanic Villas, Inc. v. Godson*,
    148 Fla. 454 (1941)..............................................................................................................35

*Papas v. Buchwald Capital Advisors, LLC* (*In re Greektown Holdings, LLC*),
    728 F.3d 567 (6th Cir. 2013) ...................................................................................6, 18, 19, 33

*Picard v. JPMorgan Chase & Co.* (*In re Bernard L. Madoff Investment Securities LLC*),
    721 F.3d 54 (2d Cir. 2013)..............................................................................................28, 29

*Romagosa v. Thomas* (*In re Van Diepen*),
    236 Fed. Appx. 498 (11th Cir. 2007)........................................................................... passim

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990)........................................................................................17

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    429 B.R. 423 (Bankr. S.D.N.Y. 2010)..................................................................................25

*TBG, Inc. v. Bendis*,
    36 F.3d 916 (10th Cir. 1994) ...............................................................................................19

*Underwriters at Lloyd's, London v. Chancellor Corp.* (*In re Adley*),
    333 B.R. 587 (Bankr. D. Mass. 2005) ..................................................................................32

*Walsh v. Hefren-Tillotson, Inc. (In re Devon Capital Mgmt., Inc.),*
 261 B.R. 619 (Bankr. W.D. Pa. 2001) ....................................................................33


**S**TATUTES

11 U.S.C. § 544 .........................................................................................................4, 25

11 U.S.C. § 1141 .........................................................................................................32

28 U.S.C. § 1334(b) ....................................................................................................22

Cal. Civ. Code § 1668 .................................................................................................35

Fair Labor Standards Act .....................................................................................4, 24, 25


**R**ULES

Fed. R. Bankr. P. 9019 ..................................................................................................1

The Term Lenders[1] submit this memorandum demonstrating that this Court lacks the power or authority to enter the "bar order" requested by the Trustee in his 9019 Motion.[2]  [ECF No. 4470].  Through that bar order, the Trustee improperly seeks to release and discharge the Term Lenders' personal, independent claims against non-debtors (the "Nevada Defendants") that:  (a) have been pending in Nevada state court for more than three years and have been diligently prosecuted (at a cost of millions of dollars) by the Term Lenders; (b) are based upon specific misrepresentations made to the Term Lenders (of facts known to the Nevada Defendants); (c) allege direct damages suffered by the Term Lenders in excess of $1 billion; and (d) are scheduled for trial in January 2015. No court has ever issued a bar order under these or similar circumstances.

## I.    INTRODUCTION

Through the improper and unprecedented proposed bar order, the Trustee seeks to release and discharge the Term Lenders' valuable and independent claim that has been fully developed through years of effort by the Term Lenders.  The Term Lenders believe that the settling defendants and their insurers were willing to agree to the proposed settlement with the Trustee only because the Trustee was willing to attempt to include releases of the Term Lenders' claims.  Thus, the Trustee is attempting to seize the Term Lenders' property to facilitate settlement of the estate's less valuable claims by unlawfully relinquishing the Term Lender's personal claims.

Based upon the undisputed facts, this Court is not empowered or authorized to enter a bar order under the terms proposed by the Trustee.  Such authority is lacking for at least four

---

[1] The Term Lenders are listed in Exhibit D to the Joint Motion to Approve the Comprehensive Settlement Agreement (ECF 4129, Ex. D).

[2] The 9019 Motion refers to the "Motion of Chapter 7 Trustee, Soneet R. Kapila, for (I) for Approval of a Settlement and Compromise of Certain Director, Officer and Manager Litigation Pursuant to Fed. R. Bankr. P. 9019, and (II) For Entry of Bar Order Related Thereto" (ECF 4470).  Capitalized terms not otherwise defined herein have the meaning used in the Term Lenders Preliminary Objection to the 9019 Motion, filed July 2, 2014 (ECF 4479).

reasons:  1) under Eleventh Circuit law, the claims of the Term Lenders are "truly independent claims," which have never been determined to be subject to any bar order injunction over an affected party's objection; 2) a bankruptcy court cannot enjoin claims that the trustee does not have standing to pursue and that do not otherwise seek to recover property of the estate; 3) a bankruptcy court does not have any power in chapter 7, even if "unusual circumstances" exist, to approve a bar order over the objection of an affected party; and 4) even if the bar order sought here was proposed in a chapter 11 case in another circuit, the bar order would be denied because it would not meet the substantive factors considered by other circuits, as summarized in *Class Five Nevada Claimants (00-2516) v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 280 F.3d 648, 658 (6th Cir. 2002), and considered just two weeks ago in *National Heritage Found., Inc. v. Highbourne Found.*, No. 13-1608, 2014 U.S. App. LEXIS 12144 (4th Cir. Jun. 27, 2014), by the Fourth Circuit in determining that "unusual circumstances" did not exist to justify enjoining non-consenting creditor's claim against a non-debtor.

1.    The Eleventh Circuit repeatedly has questioned whether "truly independent claims" against non-debtors can ever be enjoined in bankruptcy in the absence of consent by the party to be enjoined.  *E.g.*, *In re United States Oil & Gas Litig.*, 967 F.2d 489, 496 n.5 (11th Cir. 1992); *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1311-12 (11th Cir. 2004); *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 865 (11th Cir. 2009).  In its most recent published decision on the subject, the Eleventh Circuit reaffirmed that it "might be *per se* inappropriate to bar" such claims.  *In re HealthSouth*, 572 F.3d at 865.  This Court should not grant relief that the Eleventh Circuit has been reluctant to endorse.

In *AAL High Yield Bond Fund*, the Eleventh Circuit defined "truly independent claims" to mean "*e.g.*, claims which are not based on the claimants' liability to the instant plaintiffs or claims based on damages completely separate from the instant damages."  *AAL High Yield Bond*

*Fund*, 361 F.3d at 1311. The Term Lenders' claims, for fraud and negligent misrepresentation, are independent based on both criteria. Indisputedly, the Term Lenders' claims are not for contribution or indemnity, or otherwise based on any liability of the Term Lenders to the Trustee. Indeed, no one has ever claimed that the Term Lenders are liable to the Trustee. Thus, cases such as *In re United States Oil & Gas*, *In re HealthSouth*, and *Munford v. Munford, Inc.* (*In re Munford, Inc.*), 97 F.3d 449, 455 (11th Cir. 1996), all of which involved claims for contribution or indemnity or were otherwise in substance based on the objecting party's liability to the plaintiff, are readily distinguishable and provide no authority for entry of the bar order requested by the Trustee.

In addition, the claims asserted by the Term Lenders in the Nevada Action are for damages that, by the Trustee's own admission, are "distinct" from the damages sought by the Trustee. *See* Exhibit K (ECF 4479),[3] at 10 (damages sought in Trustee Action "are damages clearly suffered by the *Debtors*, which are distinct from the injuries suffered by the creditors") [ECF No. 4479] The Trustee concedes that he "is not bringing claims for damages suffered by the creditors; rather, the Trustee is bringing claims for damages suffered by the *Debtors* as a result of FBR and the other D&O Defendants' breaches of fiduciary duties." *Id.* at 4. The Eleventh Circuit has recognized that claims for intentional misrepresentation involved "direct injuries sustained by these plaintiffs based [on] their own reliance," where there is "not an injury to the corporation" but rather to plaintiffs, meaning that the suit could be brought as a direct action. *E.g., Medkser v. Feingold*, 307 Fed. Appx. 262, 265 (11th Cir. 2008).

---

[3] The exhibits referred to herein are attached to the Term Lenders' Preliminary Objection filed July 2, 2014 (ECF 4479).

Because the Term Lenders' claims are "truly independent claims," no authority exists, in the Eleventh Circuit or elsewhere, to enter a bar order enjoining the prosecution of such claims in this chapter 7 case over the Term Lenders' objection.

2.      In any event, the Eleventh Circuit severely restricts this court's authority to enter a bar order, other than in limited circumstances where the injunction applies to claims that the Trustee has standing to pursue or prevents non-debtors from recovering property of the estate.

In *Romagosa v. Thomas* (*In re Van Diepen*), 236 Fed. Appx. 498 (11th Cir. 2007), involving a settlement by the trustee of fraudulent transfer claims, the court affirmed a bar order that enjoined a creditor from pursuing state law fraudulent transfer claims against the same transferees.  The Eleventh Circuit premised its decision on the Trustee's power under 11 U.S.C. § 544 "to avoid the transfer of property of the debtor that is voidable under state law," and its finding that any money recovered from those claims would be "trust property."  *Id*. at 501-02. The court in *Van Diepen* favorably cited this Court's decision in *In re Zwirn*, 362 B.R. 536 (Bankr. S.D. Fla. 2007) (Cristol, J.), in which this Court concluded that "fraudulently transferred property constitutes property of the debtor's estate, pursuant to § 541(a)(1), because the debtor retains an equitable interest in such property."  *Id.* at 538.

But, the Eleventh Circuit also held that "the bankruptcy court only had . . . authority to enjoin Romagosa from pursuing claims that the Trustee had standing to pursue on behalf of the [debtor] for the benefit of all the [debtor's] creditors."  *In re Van Diepen*, 263 Fed. Appx. at 502 n.6.  In addition, the Eleventh Circuit held that the bankruptcy court "did ***not*** have the authority" to bar Romagosa from pursuing independent claims "personally" against the transferee for breach of contract and violation of the Fair Labor Standards Act, based on the Eleventh Circuit's opinion that any money recovered on those claims "would not be trust property."  *Id*. at 502 (emphasis added).  Other courts, including this one, have concurred in that reasoning.  *E.g.*,

*America Capital Corp. v. Marlin* (*In re America Capital Corp.*), Case No. 06-126445-AJC, Adv. Pro. No. 07-01587-AJC, 2011 Bankr. LEXIS 1799, at *4-5, *12-13 (Bankr. S.D. Fla. May 3, 2011) (holding that a liquidating agent "**simply does not have the power or authority to compromise or dispose of**" claims that were personally owned and not derivative of the debtor "through any agreement to which [the owners of those personal claims] were not parties."). *Id.* (emphasis added).

As more fully discussed below, many of the recent unpublished decisions cited by the Trustee in the 9019 Motion involved bar orders sought under circumstances similar to those in *Van Diepen*, where the trustee or estate representative was pursuing fraudulent transfer claims to recover property of the estate and the claims to be enjoined were, in substance and effect, ultimately seeking recovery of that same property. *E.g.*, *Apps v. Morrison* (*In re Superior Homes & Invs., LLC*), Case No. 6:11-CV-1575-Orl-36 (M.D. Fla. Sept. 20, 2012) ("*Superior Homes I*") (unpublished), *aff'd*, 521 Fed. Appx. 895 (11th Cir. 2013) ("*Superior Homes II*"); *Berman v. Smith*, No. 13-81150-CIV, 2014 WL 1745361 (S.D. Fla. May 1, 2014); *In re Rothstein Rosenfeldt Adler, P.A.*, Case No. 09-34791-BKC-RBR, 2010 Bankr. LEXIS 3001 (Bankr. S.D. Fla. Sep. 16, 2010).  In contrast, the Term Lenders are not seeking the recovery of any property that is property of the estate or that was property of the debtor that was fraudulent transferred to another.  Rather, the Term Lenders' claims are for fraud and negligent misrepresentation and seek damages that are not only "distinct," but also recoverable from assets that are not property of the estate, including the proceeds of insurance policies that are funding more than 95% of the Settlement Agreement.

3.      Nor do the existence of any unusual circumstances justify entry of the bar order. In a chapter 7 proceeding, a bankruptcy court lacks any authority, which is otherwise available in chapter 11 proceedings, to enter a bar order upon a showing of "unusual circumstances."  The

decisions allowing the use of bar orders under such circumstances are inapplicable to a chapter 7 proceeding. *Van Diepen*, 236 Fed. Appx. at 503 (11th Cir. 2007). Moreover, the unpublished decision in *Superior Homes I*, which held the distinction between chapter 7 and chapter 11 to be "insignificant," is inapposite because that Court focused on whether "related to" subject matter jurisdiction existed, rather than the power and authority that existed to grant a bar order.[4]

      4.      Even if this were a chapter 11 reorganization case and not a chapter 7 liquidation, this Court would not have authority to grant the requested bar order. In *Dow Corning*, the Sixth Circuit summarized the factors considered in various circuits to determine whether "unusual circumstances" exist such that "a bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor." *In re Dow Corning*, 280 F.3d at 658 (citing *MacArthur v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 837 F.2d 89, 93-94 (2d Cir. 1988), *Menard-Sanford v. Mabey* (*In re A.H. Robins Co.*), 880 F.2d 694, 701 (4th Cir. 1989), *Gillman v. Cont'l Airlines* (*In re Cont'l Airlines*), 203 F.3d 203, 211 (3d Cir. 2000)). Borrowing from decisions in the Second, Third, Fourth and Sixth Circuits the Court in *In re Dow Corning* held that "when the following seven factors are present, the bankruptcy court may enjoin a non-consenting creditor's claim against a non-debtor":

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted

---

[4] The Term Lenders assert that this Court lacks subject matter jurisdiction to grant a bar order, but acknowledge that the approach used in the Eleventh Circuit is less stringent than other circuits, because it considers the nexus between the other proceeding and the *settlement agreement* rather than the nexus between the other proceeding and the bankruptcy case. *See Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567 (6th Cir. 2013) (declining to follow Eleventh Circuit approach). Notably, as discussed below, many courts conflate the test for subject matter jurisdiction with the more stringent standard governing a bankruptcy court's power to enter a bar date order.

to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

In re Dow Corning, 280 F.3d at 658.

As was the case in *Dow Corning* and the decision two weeks ago in *National Heritage Foundation* and other cases, the party requesting the bar order – here, the Trustee – cannot make the showing required to such an order.  Among the more glaring defects in the Trustee's proposed bar order is the failure to provide any mechanism, such as a segregated $770 million settlement fund of the kind created in *Johns-Manville*, to pay for all, or substantially all, of the Term Lenders' claims that the Trustee seeks to enjoin or otherwise provide the Term Lenders with an opportunity to recover their claims against the defendants in full.  Instead, the Term Lenders will receive no payment for their independent claims and no opportunity to recover such claims.  Also missing is any showing that a bar order is essential for any reorganization which cannot occur in this chapter 7 liquidation case.  The vigorous opposition by the Term Lenders, whose claims constitute a substantial percentage of the persons who would be barred, also weighs against any bar order.

Accordingly, for all of the above reasons, this Court should conclude that it lacks the power and authority to enter the bar order that is being sought by the Trustee under the 9019 Motion and ultimately deny the 9019 Motion in its entirety.

## II.    BACKGROUND

### A.    The Nevada Action.

Fontainebleau Las Vegas, LLC and certain affiliated entities (the "Debtors") were borrowers or guarantors under a $1.8 billion credit facility dated June 7, 2007 (the "Credit Agreement") intended to be used for the development and construction of Fontainebleau Resort

and Casino in Las Vegas, Nevada (the "Project").  The Term Lenders (or their predecessors) were lenders under the Credit Facility, who along with others advanced more than $1 billion to the Debtors in reliance upon false and misleading representations made by Defendants regarding the cost to complete the Project.

The Nevada Defendants accomplished their scheme, in part, through false certifications to the Term Lenders in connection with monthly draw requests and through a fraudulent set of books that hid the true progress, scope and cost of the project.  Had the Nevada Defendants revealed the truth, loans would not have been made and funding would have ceased.  Instead, the Term Lenders continued to disburse funds unwittingly into a woefully under-funded project.

As set forth in the Nevada complaint, the fraud was conceived by Jeffrey Soffer and was described in a memorandum written by Roger McElfresh, the former president and chief operating officer of TWC, and produced from the files of TWC, which provides a summary of the fraud that was perpetrated against the Term Lenders:

> The deception of [Defendant] FBR [Fontainebleau Resorts LLC] began when the Project budget and schedule was developed by [Defendant] TWC Inc and presented to FBR management for approval.  [Defendants] Jeff Soffer, Sonny Kotite, Glen[n] Scha[e]ffer and other FBR senior management who insisted budget and schedule must meet cost and schedule guidelines that would satisfy financial support and funding for the Project.  Despite months of rebuttal and supporting documentation *FBR insisted that TWC Inc must manipulate the cost and schedule estimates and projections to meet the guidelines dictated by Jeff Soffer, Sonny Kotite and Glen[n] Scha[e]ffer*.
>
> *   *   *
>
> *During monthly Draw reviews conducted by Inspection Valuation International Inc. on behalf of the Lenders, FBR repeatedly misrepresented cost and schedule information*.  This charade began in August 2007 and continued until January 2009.  TWC Inc repeatedly warned FBR that the farce was ill advised and that IVI was growing suspicious of the apparent misrepresentations.  *FBR insisted that additional investors and other sources of funding was forthcoming and directed TWC Inc to with hold cost and schedule information from the Lenders*.  FBR informed TWC Inc that they would inform the Lenders of

the cost and schedule issues only after the expended funding reached a
point that would make it difficult for the Lenders to stop funding.

9019 Motion, Ex. D, at 1 (emphasis added).

In March 2011, the Term Lenders commenced the Nevada Action to recover damages

caused by the Nevada Defendants' alleged fraud and negligent misrepresentations, which

induced the Term Lenders (and the predecessors–in–interest) to loan and advance hundreds of

millions of dollars, most of which has not been repaid and which has continued to accrue interest

and fees.  Following multiple rounds of motions to dismiss and motions for summary judgment,

the Term Lenders' surviving claims include three counts for fraud and/or aiding and abetting

fraud (Counts I, II and III), one count for negligent misrepresentation (Count IV), and one count

for conspiracy to commit fraud (Count V).  9019 Motion, Ex. D, ¶¶ 245-286.  The Term Lenders

seek damages in the Nevada Action that, including pre-judgment interest, exceed $1 billion, and

reflect the direct losses to the Term Lenders resulting from Nevada Defendants' fraud and

negligent misrepresentations.

Discovery has been underway in the Nevada Action for more than a year and a half.

Expert witness reports were due July 17, 2014 and, presumably, are nearly completed.  Trial was

set to begin on January 27, 2015.  Last week, the Nevada state court granted a motion to stay the

Nevada action for 90 days pending the outcome of the 9019 Motion.  It did not yet move the trial

date.

**B.      The Remand Motion And Trustee's Admission and Judge King's Finding
         That the Term Lenders' Claims Are Not Property of the Estate.**

Shortly after the filing of the Nevada Action, certain Nevada Defendants not sued by the

Trustee, known as the "Crown Defendants," removed the Nevada Action to the Nevada

Bankruptcy Court, arguing that this Court had jurisdiction and should adjudicate the Nevada

Action.  The Nevada Defendants filed a motion to remand the Nevada Action back to the Nevada

state court.  *See* Exhibit A (ECF 4479).[5]  The remand proceedings provide valuable insight as to

the independent nature of the Term Lenders' claims and the Trustee's overreaching in seeking

the bar order.

Notably, the Nevada Defendants who now hope to be protected by the proposed bar

order, took the position in the remand proceedings in front of Bankruptcy Judge King, that the

Nevada Action was "remote" from the Debtors' bankruptcy case.  *Id.* at 11:20-21.  The Nevada

Defendants admitted: "[t]he State Court Action is remote from the main bankruptcy case

administered in Miami, Florida.  Given the fact that [the Term Lenders] are nondebtors making

state law claims against nondebtor Defendants, ***Plaintiffs' claims are clearly remote from the***

***main bankruptcy cases of the Debtors***, and accordingly this factor favors remand."  *Id.* at 11:20-

24.  (Underline in original, bold and italics added).

The Nevada Defendants did not change their position even after the Trustee filed his own

lawsuit against them in this Court, insisting that "the Trustee's Action does not connect the

[Nevada] Action to the main bankruptcy case":

> The happenstance of the Trustee's Action does not change the fact that
> this action remains remote from the main bankruptcy case.  The main
> bankruptcy case proceeded for two years before the Trustee filed his latest
> complaint.  The main bankruptcy case involves the liquidation of the
> assets of the debtor for the benefit of all the creditors.  ***This action, by***
> ***contrast, involves the claims of specific creditors against non-debtors.  A***
> ***recovery by the Plaintiffs here will not benefit the debtors' estates***.

Exhibit B (ECF 4479), at 8:16-24 (emphasis added).  Responding to arguments by the

Crown Defendants that there were "overlapping underlying facts" in the Nevada Action and the

Trustee Action, the Nevada Defendants correctly explained that "historical facts do not establish

that this action is related to the main bankruptcy case, nor is relatedness created by the fortuitous

---

[5] The Term Lenders filed a separate motion to remand the Nevada Action back to Nevada state court.  The motions
for remand filed by the Term Lenders and Defendants are referred to herein as the "Remand Motions."

fact that the Trustee chose to file its adversary complaint in the main bankruptcy case. Whatever

relation exists between the [Nevada] Action and the main bankruptcy case *is too remote* to deny

remand." *Id*. at 8:24-9:2 (emphasis added). In the Nevada Defendants' own words:

> The complaint centers on the contention that Plaintiffs suffered damages
> as a result of alleged misrepresentations made by non-debtors to them, the
> Term Lenders. *No misrepresentations were made to the debtors. The*
> *outcome of the fraud claims does not "alter the debtor's rights,*
> *liabilities, options or freedom of action. . ." in the bankruptcy because*
> *the debtors are not a party to the State Court Action.*

*Id*. at 5:1-6 (emphasis added).

The Trustee also appeared at the hearing on the Remand Motions in support of the

remand. Counsel for the Trustee, David Cimo, Esq., advised Judge King that "We agree with

you that we do not think property of the Estate is involved. . . ." Exhibit C (ECF 4479), at 21:22-

23. Although the order granting the Remand Motions provided at the Trustee's request that

"[n]othing in this order and nothing stated during the course of the hearing of the remand

motions shall in any way affect the rights or legal positions of Trustee in Bankruptcy, Soneet

Kapila," Exhibit D (ECF 4479), at 3, the Trustee's counsel explained that this "clarification" was

prompted by concern about future amendments to the complaint or claims brought by other

creditors, and not the claims already asserted by the Term Lenders:

> I discussed this with [Term Lenders' counsel], and we – we are both pretty
> sure there's no property of the Estate involved, but the primary – the
> primary reason is we'd like to have this clarification. We don't know
> whether another Creditor is going to file another lawsuit and make some
> more allegations. We just want to make sure no one tries to use this ruling
> against the Trustee when he was not a party to this litigation.

Exhibit C (ECF 4479), at 22:14-21.

After considering the positions taken by Defendants and the Trustee, Judge King granted

the Remand Motions. Exhibit C (ECF 4479), at 7:3-8:6, 14:19-20:13; Exhibit D (ECF 4479), at

3. At the hearing held July 11, 2011, Judge King expressly rejected the argument that the

Trustee's separate lawsuit might create jurisdiction in this Court, finding that "I think that the related to jurisdiction based upon the suggestion that there may be some problem caused by the Trustee's attempt to recover any judgment that the Trustee might get against some common defendants is both remote, and speculative, and not sufficient to support a claim related to jurisdiction."  Exhibit C (ECF 4479), at 7:7-12.  In addition, Judge King rejected the argument of the Crown Defendants that any of the claims asserted by the Term Lenders were property of the bankruptcy estate of the Debtors, finding that "I believe that [Plaintiffs] are asserting their own rights against the defendants in this matter."  *Id.* at 7:13-16, 15:10-14.  Finally, in applying the 14-factor test to support its finding that remand is appropriate, Judge King adopted Defendants' position that the Nevada Action is "remote" from the Debtors' bankruptcy case:

> Number six, the degree of relatedness or remoteness from the main bankruptcy case.  I think that it really is, from a legal standpoint remote, *because these plaintiffs are asserting their own rights as Creditors*, and to the extent that there is factual overlap, again, that can be handled through coordinated discovery.

*Id.* at 17:14-19 (emphasis added).

### C.    The Trustee Action.

On June 8, 2011, after the commencement of the Nevada Action and a month before the hearing on the Remand Motions, the Trustee filed an adversary proceeding in this Court (the "Trustee Action") asserting claims against some, but not all, of the Nevada Defendants.[6]  Unlike the Nevada Action, the Trustee Action does not include any claims for fraud or negligent misrepresentation.  Rather, the Trustee alleges that the Miami Defendants in that case breached

---

[6]  The common defendants include Fontainebleau Resorts, LLC, Turnberry, Ltd., Turnberry Residential Limited Partner, L.P., Turnberry West Construction, Inc., Jeffrey Soffer, Sonny Kotite, Bruce Weiner, Glenn Schaeffer, James Freeman and Deven Kumar.  Howard Karawan, the Crown Defendants, and ULLICO were named only by the Term Lenders.  Ray Parello was named only by the Trustee.  The defendants in the Trustee Action are referred to as the "Miami Defendants."

their fiduciary duties by causing the Debtors to incur additional obligations for their own benefit, at times when they knew or should have known the Debtors were insolvent.[7]

The Trustee has consistently taken the position that his claims against the Miami Defendants are "separate" and "unique" from those asserted by the Term Lenders in the Nevada Action.  During a hearing in the Trustee Action in January 2012 (ECF 165), counsel for the Trustee told this Court: "I just want to add that ***term lenders out in Nevada is not the trustee***. ***The trustee has separate standing to prosecute these claims.  These claims are unique***.  These people were de facto and de jure officers and directors of this entity -- these entities.  ***Whatever they're doing out there has nothing to do with what the trustee's doing here***."  Exhibit I (ECF 4479), at 32:8-14 (emphasis added).  At a later hearing (ECF 237), in response to the Miami Defendants' first motion to dismiss, the Trustee argued that comparing the "fraud case out there" in Nevada with the "breach of fiduciary duty here" in the Trustee Action was "like measuring apples to oranges."  Exhibit J (ECF 4479), at 16:12-14.

The Trustee also repeatedly told this Court that the damages incurred by the Term Lenders are "distinct" than those asserted by the Trustee.  In a pleading filed in the Trustee Action (ECF 73), the Trustee stated that "the Trustee is not bringing claims for damages suffered by the creditors; rather, the Trustee is bringing claims for damages suffered by the Debtors as a result of FBR and the other D&O Defendants' breaches of fiduciary duties."  Exhibit K (ECF 4479), at 4.  As further explained by the Trustee:

> ***These damages [to the Debtors] are not predicated solely on "alleged misrepresentations of the D&O Defendants to the lenders of the***

---

[7] Trustee Action, *Second Amended Complaint* (ECF 287).  The Trustee further alleges, in a separate action, that certain affiliated companies of the Debtors transferred assets to themselves or to related companies at times when the Debtors were insolvent, giving rise to fraudulent transfer claims under federal bankruptcy law.  *Kapila v. Turnberry Associates et al.*, Adv. No. 11-02105-BKC-AJC-A (Bankr. S.D. Fla.).  By agreement of the parties, that action was abated nearly two years ago and there have been no material entries in the docket of this case since that time.  *Order Granting Agreed Motion Of Plaintiff, Chapter 7 Trustee Soneet R. Kapila, To Abate Adversary Proceeding* (ECF 20).

> ***Debtors," as suggested by FBR.***  Instead, the Amended Complaint clearly
> alleges that FBR also breached fiduciary duties by, among other things,
> failing to implement adequate safeguards and controls in regard to the
> Project.  The Amended Complaint further alleges that, as a result of these
> breaches, the Trustee is seeking damages for, among other things, the loss
> of the Debtors' enterprise value, as well as for payments (including
> construction funds) that the D&O Defendants caused the Debtors to
> inexplicably make to, among others, FBR, the other D&O Defendants and
> their affiliates. ***These are damages clearly suffered by the Debtors, which
> are distinct from the injuries suffered by the creditors***.  Therefore, the
> Trustee plainly has standing to redress FBR's conduct in this action.

*Id*. at 10 (emphasis added).[8]

Unlike the Term Lenders in the Nevada Action, the Trustee has made very little progress in prosecuting the Trustee Action.  As admitted in the 9019 Motion, the matters in the Trustee Action, which has been pending for three years, are "not yet at issue and no significant discovery has been taken."  9019 Motion at 12 [ECF No. 4470].  Indeed, it remains unknown whether the claims in the Trustee Action can even survive dismissal.

**D.    The Comprehensive Settlement Agreement and Entry of Consensual Bar Orders.**

In October 2013, the major constituencies in these bankruptcy cases entered into the CSA.  Under the CSA, each of the parties (the Contractors, the Term Lenders, Wilmington, the Title Companies, the Trustee, and the Turnberry Parties) specifically consented in writing to the imposition of certain bar orders.  Thus, all of the relevant constituencies were represented at the bargaining table and consented to the bar orders.  Moreover, the CSA created segregated "Settlement Funds" for the Contractors and for Wilmington and the Lenders who were subject to the bar orders.  Importantly, the claims of the Term Lenders against Defendants were expressly

---

[8]  As discussed below, the primary reason that the allegations in the Nevada complaint resemble those in the Trustee's complaint is that the Trustee's litigation counsel, in preparing his complaint, copied verbatim much of the Term Lenders' earlier filed complaint and other work product.

preserved and not made subject to any bar orders.  With nearly unanimous consent, this Court

approved the bar orders under the CSA (ECF 4185).

> E.      **Settlement Efforts Regarding the Claims Asserted in the Nevada Action and the Trustee Action.**

After an initial failed attempt to jointly mediate the claims of the Trustee against the

Miami Defendants, and the Term Lenders against the Nevada Defendants, the Trustee and the

Term Lenders signed a term sheet agreement that contemplated a joint policy-limits demand on

the D&O carriers, and an agreement that the Term Lenders would receive direct payment of

57.5 of any joint settlement with the Trustee, plus share as creditors in the remaining 42.5% to

be paid to the Debtors.  Exhibit E (ECF 4479).  This agreement was deliberately made outside of

mediation, and contemplated that written demands would be simultaneously made to the

Insurers, which occurred on or about June 6, 2013.

Following the Insurers' rejection of the joint written demands of the Trustee and Term

Lenders, the parties in the Nevada Action and in the Trustee Action, including the Term Lenders,

continued their efforts to settle jointly with the Nevada Defendants and the Miami Defendants in

the Trustee Action, including additional mediation sessions in New York on October 3 and 4 and

November 18, 2013.  At some point thereafter, the Term Lenders were no longer invited to

participate in the mediation or settlement discussions.  On June 2, 2014, the Trustee notified the

Term Lenders that, after a mediation session attended by the Miami Defendants, he was agreeing

to a "settlement" with the Defendants that, if approved, would transfer the entire value of the

Term Lenders' claims in the Nevada Action to the Nevada Defendants and the Insurers and to

the Trustee.  On June 26, 2014, the Trustee filed the 9019 Motion.

As described by the Trustee, the "settlement" totals $83.3 million:  $80 million from the

D&O carriers (leaving more than $45 million remaining on the policies), $3 million from Jeff

Soffer (a real estate developer with a net worth reputed to be in excess of a billion dollars), and

$100,000 each from defendants Schaeffer, Weiner and Parello.  TWC and Fontainebleau Resorts are paying nothing under the Settlement Agreement.  The total of $83.3 million is far lower than any number the Trustee ever previously indicated would be reasonable for a global settlement, but much higher than any amount previously demanded by the Trustee for his claims alone.  The Settlement Agreement also provides for the withdrawal of a claim in excess of $675 million asserted by TWC, which provides little or no value to the estate given that it is largely duplicative of claims of other Contractors and subject to disallowance or equitable subordination.

The Term Lenders have no objection to the Trustee's settlement of the Trustee Action. The Term Lenders' objection is premised on the fact that their own independent claims were tossed into the deal by a person (the Trustee) that does not own, and does not have standing to pursue, those Nevada claims.

## III.    ARGUMENT

Where, as here, the bar order seeks to enjoin "truly independent claims" that the Trustee has no standing to pursue and that do not seek recovery from property of the estate, this Court lacks any power or authority to grant the bar order requested by the Trustee.  The cases that might otherwise permit the entry of a bar order in "unusual circumstances," where each of the seven *Dow Corning* factors is satisfied, do not apply in a chapter 7 proceeding.  Even if the *Dow Corning* factors were available, the Trustee has made no pretense of complying with any (let alone all) of those factors.  Accordingly, this Court should conclude that it does not have the power or authority to impose the bar order requested by the Trustee.

### A.    The Eleventh Circuit Has Never Authorized a Bar Order Enjoining the Pursuit of "Truly Independent Claims" Such As Those Held by the Term Lenders.

Through the 9019 Motion, the Trustee is asking this Court to enter what the Eleventh Circuit has repeatedly declined to endorse – a bar order that enjoins "truly independent claims."

The Eleventh Circuit has never held that "truly independent claims" can be enjoined by a bar order over the objection of an affected claimant.  Rather, all of the published Eleventh Circuit decisions in which bar orders were affirmed involved either cross-claims for indemnity and contribution among co-defendants, *e.g.*, *Munford*, 97 F.3d at 455, or were otherwise based upon the barred entity's liability to a plaintiff in the settled case, *e.g.*, *In re United States Oil & Gas*, 967 F.2d at 495-96; *In re HealthSouth*, 572 F.3d at 865.

The Eleventh Circuit has repeatedly shown reluctance to approve bar orders that venture beyond the "narrow" authority that exists to enjoin claims for indemnity and contribution.  For example, in *U.S. Oil & Gas*, the Eleventh Circuit approved a bar order that applied to claims for fraud and negligence, but *only after making clear* that the claims were "nothing more than claims for contribution or indemnification with a slight change in wording."  *In re U.S. Oil & Gas*, 967 F.2d at 496 (quoting *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1433 (D.S.C. 1990)).  Noting that the cross-claim "seeks damages against A&A and Riley to the extent that it is liable to any of the plaintiffs herein," the Eleventh Circuit found that the claims "were not, in fact, independent of Pinnacle's or A &A's liability to the plaintiffs," and thus found that the bar order applied to Pinnacle's claims.  *Id.* at 495-96.

In *AAL High Yield Bond Fund*, the Eleventh Circuit confirmed that *U.S. Oil & Gas* did not approve a bar of "truly independent claims."  *AAL High Yield Bond Fund*, 361 F.3d at 1311-12.  While acknowledging that the language of the bar order in *U.S. Oil & Gas* was broad, the Eleventh Circuit emphasized that the holding in *U.S. Oil & Gas* was "much more narrow," explaining that the cross-claim at issue there was "an attempt to seek indemnity from [another defendant] for the federal securities law violations alleged against Pinnacle in the complaints" and thus, the "allegedly independent causes of action for fraud and negligence . . . were not, in fact, independent of Pinnacle's or [the other defendant's] liability to those same plaintiffs."  *Id.* at

1312.  The court clarified in *AAL High Yield Bond Fund* that its prior opinion in *U.S. Oil & Gas* "expressly declined to address the issue of 'truly independent claims,'" and held that "no controlling authority" exists in the Eleventh Circuit to authorize a bar order of "truly independent claims."  *Id.*  Based in part on the absence of such controlling authority, the court vacated the bar order entered by the lower court, and remanded with instruction to the lower court to provide justification "for barring claims that arise from causes of action brought by plaintiffs other than the instant plaintiffs or truly independent claims."  *Id.*

More recently, in *HealthSouth*, the Eleventh Circuit affirmed a bar order of a contractual claim for advancement of attorneys' fees incurred by a non-settling defendant to defend against suits brought against him.  Rejecting the non-settling defendant's argument that his claim was "truly independent," the Eleventh Circuit held that the attorneys' fees were "paid on account of liability to the underlying plaintiffs or the risk thereof", and thus found to be "so close to the nature of the claims which established case law holds are appropriately barred that our application of that case law here ***constitutes a minimal and reasonable extension thereof***."  *In re HealthSouth*, 572 F.3d at 864-65 (emphasis added).  But once again, the Eleventh Circuit took pains to emphasize that a "truly independent claim . . . might be *per se* inappropriate to bar."  *Id.* at 865.

The claims for fraud and negligent misrepresentation asserted by the Term Lenders in the Nevada Action fall squarely within the meaning of the phrase "truly independent claims."  In *AAL High Yield Bond Fund*, the Eleventh Circuit defined "truly independent claims" as (1) "claims which are not based on the claimants' liability to the instant plaintiffs," or (2) "claims based on damages completely separate from the instant damages."  *AAL High Yield Bond Fund*, 361 F.3d at 1311.  Other circuits have adopted similar tests in limiting the permissible scope of a bar order.  Just last year, in *In re Greektown Holdings,* 728 F.3d 567 (6th Cir. 2013), the Sixth

Circuit, citing *HealthSouth* and other decisions (including one by Justice Sotomayor when she served on the Second Circuit), commented that "[o]ther circuits have been careful to limit bar orders 'to ensure that the only claims that are extinguished are claims where the injury is the non-settling defendant's liability to the plaintiffs' (*i.e.*, claims for contribution or indemnity)." *Id*. at 578-79 (quoting *Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 307 (2d Cir. 2003) (Sotomayor, J.).

The court in *Greektown* found to be "significant[]" the fact that "*'[n]o court has authorized barring claims with independent damages*.'" *Id*. at 579 (emphasis added) (quoting *TBG, Inc. v. Bendis*, 36 F.3d 916, 928 (10th Cir. 1994)). The Sixth Circuit explained the rationale for imposing such limits:

> This limitation [prohibiting the barring of claims with independent damages] makes sense because when the scope of a bar order is limited to claims for contribution or indemnity, the court can compensate the non-settling defendants for the loss of those claims by reducing any future judgment against them. . . . *A bar order that enjoins independent claims and provides no compensation is problematic to say the least*.

*Id*. (emphasis added). Based on that reasoning, the Sixth Circuit vacated a bar order that enjoined all claims "'arising out of or reasonably flowing from' both the facts and allegations of the adversary proceeding and the allegedly fraudulent transfers," finding that such language was "overly broad because they have the potential to bar claims for independent damages." *Id*.

Applying the definition of "truly independent claims" provided in *AAL High Yield Bond Fund* and followed in the Sixth Circuit and elsewhere, the Term Lenders' claims against the Nevada Defendants meet the first criteria for a "truly independent claim," as they are not claims for contribution or indemnity, nor otherwise based on any liability of the Term Lenders to the Trustee as plaintiff (indeed, no such liability exists).

In addition, the claims of the Term Lenders are "based on damages completely separate" from the damages incurred by the Trustee that form the basis of his claims in the Trustee Action.

This point is not in dispute – it is supported by Eleventh Circuit case law, and as discussed below, has been conceded by the Trustee.  In *Medkser*, 307 Fed. Appx. 262, the Eleventh Circuit held that claims for intentional misrepresentation by investors who received fraudulent materials involved "direct injuries sustained by these plaintiffs based [on] their own reliance on fraudulent statements and misrepresentations made to them," which was "not an injury to the corporation, but to these investors, and the suit may be brought as a direct action."  *Id*. at 265.  The court also held that "[t]he corporate entity could not bring suit to recover the investment that these plaintiffs made relying on the fraudulent actions of the defendants."  *Id*.

The Trustee has admitted that the damages incurred by the creditors such as the Term Lenders are "distinct" from those incurred by the Trustee.  *See* Exhibit K (ECF 4479), at 10 (arguing that damages sought in Trustee Action for breaches of fiduciary duty and fraudulent transfers "are damages clearly suffered by the *Debtors*, which are distinct from the injuries suffered by the creditors").  The Trustee has also acknowledged that "the Trustee is not bringing claims for damages suffered by the creditors; rather, the Trustee is bringing claims for damages suffered by the *Debtors* as a result of FBR and the other D&O Defendants' breaches of fiduciary duties."  *Id.* at 4 (emphasis added).[9]

Because the Term Lenders have asserted "truly independent claims" in the Nevada Action, the Trustee lacks authority to seize and settle those claims, through a bar order or otherwise.  In *In re Xenerga, Inc*., 449 B.R. 594 (Bankr. M.D. Fla. 2011), the court refused to approve a settlement by a bankruptcy trustee to the extent the trustee sought to compromise

---

[9]  The Nevada Defendants seem to agree that the damages sought by the Term Lenders are "completely separate" from those that can be sought by the Trustee.  In arguing that the Nevada Action was "remote" from this bankruptcy case, and should therefore be remanded to Nevada state court, the Nevada Defendants characterized the Nevada Action as involving "the claims of specific creditors against *non*-debtors.  A recovery by the Plaintiffs here will not benefit the debtors' estates."  Exhibit B, at 8:16-24 (italics in original); *see id*. at 5:1-4 ("[t]he complaint [in the Nevada Action] centers on the contention that Plaintiffs suffered damages as a result of alleged misrepresentations made by non-debtors to *them*, the Term Lenders.  No misrepresentations were made to the debtors") (italics in original).

independent claims.  The settlement included some "indirect claims derivative of an alter ego

action" that required the court to pierce the debtor's corporate veil, and other claims that were

regarded as direct claims that "do not rely upon either an alter ego finding or the debtor's

independent liability."  *Id*. at 600.  The Florida bankruptcy court held that the trustee lacked

authority to settle the direct claims:

> Because two of the Claims the trustee seeks to settle are direct claims held
> by NTAE against non-debtors, the trustee cannot settle these two claims.
> The proposed compromise improperly attempts to settle claims that are not
> property of the debtor's estate under § 541 of the Bankruptcy Code.

*Id.* at 601.

This Court reached the same conclusion in *In re America Capital Corp.*, 2011 Bankr.

LEXIS 1799, which involved claims that were personally owned by a non-debtor and not

derivative of the debtor.  This Court held that the Liquidating Agent "simply does not have the

power or authority to compromise or dispose of [such personal claims] through any agreement to

which [the owners of those personal claims] were not parties."  *Id*. at *4-5, *12-13.  Under that

same reasoning, the Trustee lacks authority to settle the Term Lenders' claims that, like those in

*Xenerga* and *America Capital*, are not property of and do not belong to the estate.

Unable to show that the Term Lenders' claims are not "truly independent," the Trustee

attempts to rewrite the standard governing the scope of permissible bar orders.  According to the

Trustee, "[t]he threshold test that is universally followed in the Eleventh Circuit and Florida

Federal Courts in order to obtain a bar order focuses on the 'interrelatedness' that exists where

the 'state proceedings arise out of the same "***common nucleus of operative facts***" as the

proceedings integral to the administration of the bankruptcy case.'"  9019 Motion, at 24

(emphasis added).  The only legal support offered by the Trustee for this "universal" test is the

district court's unpublished order in *Superior Homes I*.  The single case cited in *Superior

Homes I* in support of that proposition, *In re Rothstein Rosenfeldt Adler*, 2010 Bankr. LEXIS

3001, does not actually use the phrase "common nucleus of operative facts" that is quoted by the district court, nor did the Eleventh Circuit adopt that test in its unpublished decision affirming the district court.[10] Thus, none of the unpublished cases cited by the Trustee changes the meaning of "truly independent claims" as defined in the Eleventh Circuit's published opinion in *AAL High Yield Bond Fund* which, unlike the cases cited by the Trustee, is binding precedent.

Even if cases involving "common nucleus of operative facts" were excluded from "truly independent claims," as those terms have been used, both the Trustee and the Nevada Defendants have essentially admitted that the Term Lenders are not interrelated with those asserted in this bankruptcy case. Speaking about the Term Lenders' claims in the Nevada Action, the Trustee has said that "*[w]hatever they're doing out there has nothing to do with what the trustee's doing here*." Exhibit I (ECF 4479), at 32:8-14 (emphasis added), and that comparing the "fraud case out there" in Nevada with the "breach of fiduciary duty here" in the Trustee Action was "like measuring apples to oranges." Exhibit J (ECF 4479), at 16:12-14. As for the Nevada Defendants, they argued in support of remand that the Term Lenders' claims "*are clearly remote from the main bankruptcy cases of the Debtors*", Exhibit A (ECF 4479), at 11:20-24 (emphasis added), and did not change their position even after the Trustee filed his own lawsuit against them in this Court, insisting that "the Trustee's Action does not connect the [Nevada] Action to the main bankruptcy case" and that "overlapping underlying fact" are not sufficient to create "relatedness":

> [H]istorical facts do not establish that this action is related to the main bankruptcy case, nor is relatedness created by the fortuitous fact that the Trustee chose to file its adversary complaint in the main bankruptcy case.

---

[10] In contrast to its prior published decisions in *U.S. Oil & Gas*, *AAP High Yield Bond Fund*, and *HealthSouth*, the Eleventh Circuit did not, in its unpublished in *Superior Homes II*, consider its power and authority to enter a bar order enjoining "truly independent claims," but rather limited its discussion to whether the bankruptcy court had "related to" jurisdiction under 28 U.S.C. § 1334(b) and whether the settlement met the *Justice Oaks* factors for approval of a compromise. *Superior Homes II*, 521 Fed. Appx. at 897-98.

> Whatever relation exists between the [Nevada] Action and the main bankruptcy case *is too remote* to deny remand.

Exhibit B (ECF 4479), at 8:16-9:2 (emphasis added).

To the extent the allegations in the Trustee Action happen to resemble those in the Nevada Action, the reason is that the Trustee's litigation counsel borrowed heavily from Term Lenders' complaint when he prepared the Trustee's complaint, filed three months after the Term Lenders commenced the Nevada Action.  Indeed, 41 of the 75 substantive allegations in the Trustee's original Complaint were taken verbatim from the Term Lenders' earlier-filed action. Under the Trustee's reasoning, a trustee could appropriate truly independent claims filed by a third party by merely copying the factual allegations of a complaint filed in the separate action and then, by virtue of the trustee's duplicate complaint, asserting the existence of a "common nucleus of operative facts."  That is precisely the kind of "potential for abuse" of bar orders that should discourage courts from granting them in these circumstances.  *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 142 (2d Cir. 2005) ("[A] nondebtor release is a device that lends itself to abuse. . . .  The potential for abuse is heightened when releases afford blanket immunity").[11]

In summary, no authority exists in the Eleventh Circuit,  under *Munford* and its progeny or elsewhere, to support the entry of a bar order that enjoins "truly independent claims" such as

---

[11]  The Trustee's argument that the Term Lenders' agreement to the bar orders under the CSA is a concession that such bar orders can be imposed over the objection of a non-settling party with independent claims must also be rejected.  As the Court no doubt recalls, the CSA enjoyed the support of every major constituency in the bankruptcy case, each of which was fully represented in the negotiations leading to execution of the CSA.  Moreover, not a single creditor asserting non-derivative claims objected to entry of the bar orders.  The only creditor who did object to the bar orders under the CSA held a claim against the Defendants that was not independent but rather was derivative in nature, and thus could only be pursued by the estate.  Although courts have "tolerated" bar orders in circumstances where the parties affected by the bar order consent to its entry (*e.g.*, *In re Metromedia Fiber Network*, 416 F.3d at 142 (citing *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993)), such "tolerance" does not extend to bar orders to which parties object, such as the Term Lenders to the bar order under the Settlement Agreement.

those asserted by the Term Lenders in the Nevada Action.  In the absence of any alternative

authority, this Court lacks the power to grant the bar order requested by the Trustee.

> **B.      A Trustee Cannot Enjoin a Claim That It Lacks Standing to Pursue and
> That Does Not Seek to Recover Property of the Estate.**

In the Eleventh Circuit, a chapter 7 trustee does not have the power to seek a bar order of

a claim that it otherwise does not have standing to pursue and that does not seek to recover

property of the estate.  *In re Van Diepen*, 236 Fed. Appx. 498.

In *Van Diepen*, the chapter 7 trustee of a medical professional association (the "P.A.")

sought approval of a settlement of its fraudulent transfer claims against the individual doctor who

originally registered the P.A. and the new professional association that the doctor also registered.

The settlement included a bar order that applied to state law fraudulent transfer claims filed

against the doctor and the new professional association by Romagosa, an employee of the P.A.

Those state law claims, brought to assist the employee in the collection of her judgment against

the P.A., had been held by the bankruptcy court to be subject to the automatic stay as a result of

the bankruptcy filing.  *Id*. at 501.

The Eleventh Circuit held in *Van Diepen* that the bankruptcy court had authority to enjoin

Romagosa from pursuing her state law fraudulent transfer claims.  *Id*. at 502.  However, the

Eleventh Circuit also recognized in *Van Diepen* that "the bankruptcy court only had the authority

to approve an agreement settling claims and authority to enjoin Romagosa from pursuing claims

that the Trustee had standing to pursue on behalf of the [debtor] for the benefit of all the

[debtor's] creditors."  *Id*. at 502 n.6.  Importantly, the Eleventh Circuit held that the bankruptcy

court "did ***not*** have the authority" to bar Romagosa from pursuing independent claims

"personally" against the recipient for breach of contract and violation of the Fair Labor Standards

Act.  *Id*. at 502 (emphasis added).  Accordingly, the court held that "[i]f the FLSA state court

judgment entered against the P.A. actually holds Van Diepen jointly and severally liable for the

judgment, then Romagosa can pursue that claim independent of the P.A. and personally against Van Diepen, because any money recovered from this claim **would not be trust property**." *Id.* (emphasis added).

Based on *Van Diepen*, this Court's authority to grant a bar order in this chapter 7 proceeding is limited to claims that the Trustee has standing to pursue, such as fraudulent transfer claims. Those claims are unique because, under 11 U.S.C. § 544, a trustee has the power "to avoid the transfer of property of the debtor that is voidable under state law," which the Eleventh Circuit understood to mean that any money recovered from those claims would be "trust property." *Id.* at 501-02. In *In re Zwirn*, 362 B.R. 536, cited favorably by the Eleventh Circuit in *Van Diepen*, this Court concluded that "fraudulently transferred property constitutes property of the debtor's estate, pursuant to § 541(a)(1), because *the debtor retains an equitable interest in such property*." *Id.* at 538. Other courts have held that claims against non-debtor parties that ultimately seek recovery from assets fraudulently transferred by the debtor, even if otherwise independent, are claims that belong to the estate and are thus subject to a bar order. *E.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423, 433 (Bankr. S.D.N.Y. 2010) ("even if the Florida Plaintiffs' claims assert direct injuries, they would nonetheless be deemed property of the estate under Seven Seas because they seek to recover fraudulently transferred funds") (citing *Highland Capital Mgmt., LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petroleum, Inc.*), 522 F.3d 575, 589 (5th Cir. 2008) (recognizing that claims are vested exclusively in trustee where such claims "ultimately seek to recover assets of the estate that are not under the debtor's control by reason of a fraudulent transfer, for instance, or because of the existence of separate corporate entities that are a sham")).

Significantly, all of the unpublished cases cited by the Trustee in the 9019 Motion for the proposition that "interrelated" claims are subject to bar orders involved the trustee's settlement

of fraudulent transfer claims.  9019 Motion, at 24 (citing *Superior Homes I*, *In re Rothstein Rosenfeldt Adler*, 2010 Bankr. LEXIS 3001, and *Berman*, 2014 WL 1745361).  In *Superior Homes*, the trustee brought fraudulent transfer claims seeking to recover fraudulent transfers made by the debtor to the defendants.  *Superior Homes I*, at *3-4.  Both the district court, and the Eleventh Circuit on further appeal, highlighted the fact that as a result of those transfers, "the assets of the Debtor and Non-Debtor Defendants became indistinguishable."  *Id*. at *3; *see Superior Homes II*, 521 Fed. Appx. at 897 ("[t]he Trustee also determined that these transfers rendered indistinguishable the assets of the Debtor and Non-Debtor Defendants").  The district court and Eleventh Circuit further found that, except for the "indistinguishable" cash and assets of $1 million, there were no other assets, based on the Trustee's determination that there was a "clear cut absence of coverage" under the relevant insurance policies.  *Superior Homes I*, at *12.  The bar order approved in *Superior Homes* applied to 560 creditors, but critically, those creditors were characterized by the Eleventh Circuit as seeking "to recover from the Non-Debtor Defendants the allegedly fraudulent transfers made between the Debtor and the Non-Debtor Defendants."  *Superior Homes II*, 521 Fed. Appx. at 897.  Based on those facts, the bar order in *Superior Homes* fits neatly within the narrow scope of bar orders permitted under *Van Diepen*.

The same is true of the bar order approved in *Berman*.  In that case, the trustee brought fraudulent transfer claims to recover sought $245,000 transferred by the debtor to APW.  Berman, who had loaned the $245,000 to the debtor that was subsequently transferred to APW, obtained a judgment against the debtor and then filed a complaint against APW based upon the transfer of the money to APW, alleging "unjust enrichment, fraudulent transfer, and money lent, among others."[12]  The court found that the trustee, not Berman, had standing to pursue the

---

[12] Following the bankruptcy filing, the complaint was amended to assert claims for "unjust enrichment, money lent, and promissory estoppel."  *Berman*, 2014 WL 1745361, at *390.

fraudulent transfer claim.  Under those facts, the court rejected Berman's argument that her claims against APW were "truly independent claims," finding that her claims "are all based on the same facts and arise from the same transaction as the statutory fraudulent-transfer claim that formed the basis of the Trustee's avoidance powers" – *i.e.*, the debtor's transfer of the $245,000 to APW.  Because the claims asserted by Berman were found not to be "truly independent," the district court held that, as part of the trustee's settlement with APW to recover on its fraudulent transfer claim, the bankruptcy court was authorized to enter a bar order that enjoined Berman's claims.[13]  *Berman,* 2014 WL 1745361.

In *Rothstein*, which involved a Ponzi scheme, the trustee filed a complaint against defendants to recover certain alleged fraudulent and preferential transfers.[14]  In seeking approval of a settlement under which defendants agreed to pay about 90% of their total assets, the trustee "identified that a significant portion of the non-exempt assets that compromise the payments to be made by Szafranski are from funds which were fraudulent transferred by the Debtor to Szafranski."  *Id.* at *18.  In approving a bar order over the objection of creditors who alleged "independent and direct claims" against the defendants, the court, citing *Van Diepen* and *Zwirn*, concluded that any recovery that the objecting parties could receive "would either be (i) property fraudulently transferred from the Debtor's bankruptcy estate, or (ii) property subject to the Trustee's fraudulent transfer claims."  *Id.* at *21.

In other circuits, courts have distinguished between the standing of a trustee to pursue claims to recover fraudulent transfers on the one hand, versus the standing of creditors to pursue

---

[13] Notably, the court in *Berman* vacated the bar order and remanded the matter to the bankruptcy court to determine whether the settlement was "inequitable" by virtue of the fact that Berman was to receive no compensation under the settlement agreement.  *Id.* at *399.

[14] The complaint was later amended to include claims for constructive trust, equitable lien, negligence and breach of fiduciary duty.  *In re Rothstein Rosenfeldt Adler*, 2010 Bankr. LEXIS 3001.

independent claims resulting in "particularized injury" on the other.  This distinction has been

recognized by the Second Circuit in cases arising from the Madoff Ponzi scheme.  In *Marshall v.

Picard* (*In re Bernard Madoff Investor Securities, Inc.*), 740 F.3d 81 (2d Cir. 2014), the Second

Circuit found that claims asserted by plaintiffs against non-debtor defendants were "derivative"

of fraudulent transfer claims brought by the trustee against those same parties.  The court

observed that "a typical fraudulent transfer claim is perhaps the paradigmatic example of a claim

that is 'general' to all creditors . . . .  It is normally the debtor's creditors, and not the debtor

itself, that have the right to assert a fraudulent transfer claim outside of bankruptcy, but in

bankruptcy such a claim is usually brought by the trustee, for the benefit of all creditors.  ***This is

because the claim is really seeking to recover property of the estate***."  *Id.* at 91 (emphasis

added).  Based on its review of the plaintiffs' claims that were enjoined, the Second Circuit

characterized the complaints as "plead[ing] nothing more than that the Picower Defendants

fraudulently withdrew money from BLMIS."  *Id.* at 92.  Missing from those complaints were any

allegations of "particularized injury" to the plaintiffs that could be "directly traced to

[defendants'] conduct."  *Id.* at 89-90.

In *Marshall v. Picard*, the Second Circuit distinguished the claims asserted in that case

from those asserted by claimants in *Picard v. JPMorgan Chase & Co.* (*In re Bernard L. Madoff

Investment Securities LLC*), 721 F.3d 54 (2d Cir. 2013).  There, the trustee brought a complaint

alleging fraudulent and preferential transfers, as well as common law claims causes of action

including aiding and abetting fraud, arguing that the claims were brought on behalf of defrauded

customers.  The district court dismissed the common law fraud claims, finding the trustee lacked

standing to pursue them on behalf of third parties.  The Second Circuit affirmed, finding that the

fraud claims were "particular to [] individual creditors" and not "generalized in nature":

> The customers' claims against the Defendants are not "common" or
> "general."  A debtor's claim against a third party is "general" if it seeks to

augment the fund of customer property and thus affects all creditors in the same way.  Picard, however, seeks to assert claims on behalf of thousands of customers against third-party financial institutions for their handling of individual investments made on various dates in varying amounts.   The Defendants' alleged wrongful acts, then, could not have harmed all customers in the same way.

*Id.* at 71.  In reaching that conclusion, the Second Circuit relied heavily on a Supreme Court decision, *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416 (1972) holding that "federal bankruptcy law does not empower a trustee to collect money owed to creditors." 721 F.3d at 67.  As further explained by the Second Circuit:

That is because a bankruptcy trustee is not empowered "to collect money not owed to the estate"; the trustee's proper task "is simply to collect and reduce to money the property of the estates for which (he is trustee)."  Id. at 428-29 (citation and internal quotation marks omitted).  "[N]owhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties" on behalf of creditors.  Id. at 428.  This way, creditors can "make their own assessment of the respective advantages and disadvantages, not only of litigation, but of various theories of litigation," id. at 431; no consensus is needed as to "the amount of damages to seek, or even on the theory on which to sue," id. at 432; ***and disputes over*** inconsistent judgments and ***the scope of settlements can be avoided***, id. at 431-32.

*Id.* (emphasis added), quoting *Caplin*, 406 U.S. at 428-29, 431-32.

The Second Circuit's distinction between a trustee's standing to bring general claims such as for recovery of fraudulent transfers, versus the trustee's lack of standing to pursue and settle claims involving particularized injuries to creditors, echoes the ruling by the Eleventh Circuit in *Medkser*, 307 Fed. Appx. 262.  There, the court held that the claims for intentional misrepresentation (Counts 1-3), resulting in direct injury to the investors, belonged to the investors and could be pursued directly.  On the other hand, the Eleventh Circuit held that another cause of action (Count 4), based on allegations that defendants converted funds invested in the debtor, and transferred the funds from the debtor to personal accounts of the defendants, were "derivative claims," and affirmed the district court's ruling that only the debtor's

bankruptcy trustee could bring those claims.  *Id*. at 265; *see also Highland Capital*, 522 F.3d at 588 ("If the right belongs to the debtor's creditors, the distinction between personal and general claims takes on significance:  A trustee can assert the general claims of creditors, but is precluded from asserting those creditor claims that are personal").

The Term Lenders' independent claims for fraud and negligent misrepresentation that the Trustee seeks to enjoin are unrelated to any fraudulent transfer claims or other "general claims of creditors" that may otherwise exist.  The Term Lenders' claims are not based on any transfers by the Debtor as to which all creditors share a common interest, but rather are based on the separate, independent and particularized injuries to Term Lenders resulting from the Nevada Defendants' misrepresentations made directly to the Term Lenders, who relied on those misrepresentations to their detriment.  Indeed, both the Trustee and Soffer have conceded, most recently at the status conference last week, that the Term Lenders' claims are not property of the estate.  (ECF 4484, at 62:3-8, 71:4-5).

Nor are the Term Lenders seeking to recover from "trust funds" or other assets in which the Debtors have an "equitable interest" by virtue of any fraudulent transfers.  The most obvious source of recovery – the $126 million in remaining D&O insurance proceeds – is *not* property of the estate.  *E.g.*, *In re Laminate Kingdom LLC*, No. 07-10279-BKC-AJC, 2008 Bankr. LEXIS 1594 (Bankr. S.D. Fla. Mar. 13, 2008) (proceeds of D&O insurance policies held ***not*** to be property of the estate even though trustee, on behalf of debtor, made a direct claim to the policy proceeds) (citing *In re CHS Elecs., Inc*., 261 B.R. 538, 544 (Bankr. S.D. Fla. 2002) (Bankruptcy Code provides a trustee with no different status than a non-bankruptcy plaintiff with an unliquidated claim which may be covered by insurance proceeds)); *accord In re World Health Alternatives, Inc*., 369 B.R. 805 (Bankr. D. Del. 2007) (rejecting trustee's argument that proceeds of a D&O policy were an "asset of the estate," even though policy also insured debtor

directly and was a potential source of recovery of claims asserted by trustee, and finding that trustee had no preference over other claims against the policy).

Moreover, most of the Nevada Defendants are not even subject to fraudulent transfer claims by the Trustee, and of those that are, only one (Soffer) is paying any amount ($3 million) under the Settlement Agreement, through which Soffer hopes to extinguish not only the Trustee's claims for breach of fiduciary duty, but also the Term Lenders' independent claims. The other two fraudulent transfer defendants in the Trustee Action, TWC and FBR, are paying nothing under the Settlement Agreement.

The fact that the Trustee Action happens to include six counts (out of 25 total) alleging fraudulent transfer against three of the Miami Defendants does not change this result. Indeed, the avoidance claims against Soffer have been challenged as time barred. (ECF 284, at 2-3). It is also telling that the 9019 Motion does not even reference the fraudulent transfer claims, instead describing the causes of action in the "Second Amended Complaint in the D&O Adversary" to "include, inter alia, breach of fiduciary duty and aiding and abetting breach of fiduciary duty." 9019 Motion, at 5.

Unlike in *Rothstein*, none of the proceeds to be paid under the settlement have been identified as "trust funds" or other fraudulently transferred assets in which the estate has an "equitable interest" of the kind described by this Court in *Zwirn*. Rather, $80 million of the Settlement Amount is to be paid by the Insurers, proceeds that do not constitute "property of the estate." Another $300,000 is to be paid by Weiner, Kotite and Parello, none of whom are subject to any fraudulent transfer claims. The remaining $3 million is to be paid by Soffer, but Soffer has alleged, and the Trustee concedes, that Soffer did not actually receive any funds from the Debtor. (ECF 284, at 4 ("none of the transfers included in Exhibits 2, 3 or 4 to the Second Amended Complaint . . . was actually made to Jeffrey Soffer")); (ECF 305, at 5 (admitting that

claims against Soffer are based on allegation that he was "ultimate beneficiary" of transfers and not as the transferee)).

Given the independent standing of the Term Lenders to pursue their Nevada claims, and the fact that the Term Lenders are not seeking to recover any fraudulently transferred property of the estate, the cases cited by the Trustee involving fraudulent transfers are inapposite and, in any event, subject to the rule stated by the Eleventh Circuit in *Van Diepen* that a bar order cannot enjoin claim which the Trustee does not have standing to pursue or that does not seek recovery of property of the estate.  Accordingly, this Court lacks the power or authority to enjoin the Term Lenders' Nevada claims under the Settlement Agreement.

### C.  In a Chapter 7 Proceeding, a Bankruptcy Court Does Not Have the Authority to Enter a Bar Order In "Unusual Circumstances" That Otherwise Is Available in a Chapter 11 Proceeding.

The Trustee is not entitled to seek a bar order by showing "unusual circumstances," such as compliance with the seven factors identified in *Dow Corning*.  As the Eleventh Circuit held in *Van Diepen*, the authority to grant a bar order based on "unusual circumstances" is "inapplicable" to a liquidation under chapter 7, and applies only to confirmation of a reorganization plan under chapter 11.  *In re Van Diepen*, 236 Fed. Appx. at 503.  Rather, the power to grant a bar order in chapter 7 was found to exist only where "the Trustee had the sole authority to prosecute, and therefore settle, the fraudulent conveyance claims against Van Diepen and OIM."  *In re Van Diepen*, 236 Fed. Appx. at 503.[15]

Other courts concur that authority to enter a bar order is not available in a chapter 7 proceeding.  In *Underwriters at Lloyd's, London v. Chancellor Corp. (In re Adley)*, 333 B.R.

---

[15] Unlike a Chapter 11 debtor, which typically is discharged upon confirmation of a plan of reorganization, a corporate debtor in a Chapter 7 cannot obtain a discharge or release of claims.  *Compare* 11 U.S.C. § 1141 with § 727.  While the bar order the Trustee seeks would not release claims against the Debtors, it would release claims against affiliates and Ds & Os of the Debtors.  It would be anomalous if a Debtor (through a Trustee) could secure a discharge of claims against insiders that it could not otherwise secure for itself.

587, 615 (Bankr. D. Mass. 2005), the court held that "[t]he attempt by Lloyds and the other parties to the Settlement to parlay the factors germane to the entry of an injunction in conjunction with the confirmation of a plan of reorganization to this Chapter 7 case is unavailing.  In short, the entry of the Bar Order would be extraordinary abuse of discretion.").  In *Walsh v. Hefren-Tillotson, Inc. (In re Devon Capital Mgmt., Inc.)*, 261 B.R. 619, 626 (Bankr. W.D. Pa. 2001), another chapter 7 case, the court approved the settlement agreement but not the proposed bar order.

In *Superior Homes I*, the district court held that the distinction between chapter 7 and chapter 11 proceedings was "insignificant."  *Superior Homes I*, at *8-10.  But in making that statement, the district court was actually addressing whether subject matter jurisdiction existed under the "conceivability test," and not whether the bankruptcy court had the power or authority under the Bankruptcy Code or otherwise to enter a bar order.  As explained by the Sixth Circuit in *Greektown*, the issue of "*jurisdiction* to enjoining" a claim is different than the issue of whether a court has "*the power* to enter the order."  *Greektown*, 728 F.3d at 577, 578 (emphasis added).  In *Superior Homes I* and *Superior Homes II*, the courts focused on the conceivability test for jurisdiction without ever considering the separate question of whether the bankruptcy court had the "power" or "authority" to enter the bar order.  To the extent that other courts have conflated the test for "related to" jurisdiction with the standard for this Court's power or authority to grant a bar order, they provide no guidance to answer the Court's inquiry that is the subject of this memorandum of law.

In summary, this Court does not have any power in a chapter 7 proceeding to enjoin a "truly independent claim" as to which the Trustee lacks standing or that does not seek to recover property of the estate.

**D.    Even if the Dow Corning Factors Were Applicable in Chapter 7, the Trustee Cannot Meet That Showing.**

Even if the "unusual circumstances" factors set forth in *Dow Corning* were applicable to this chapter 7 proceeding, the Trustee has not alleged facts in the 9019 Motion sufficient to meet any (much less all) of those requirements.  This Court has previously recognized that "a non-debtor release is an ***extraordinary remedy*** that is available, ***if at all***, only upon a showing of ***unusual circumstances***."  *In re Laminate Kingdom, LLC*, Case No. 07-10279-BKC-AJC, 2011 Bankr. LEXIS 4773, at *14-15 (Bankr. S.D. Fla. Dec. 5, 2011) (emphasis added).[16]  These factors are:[17]

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;
>
> (2) The non-debtor has contributed substantial assets to the reorganization;
>
> (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor;
>
> (4) The impacted class, or classes, has overwhelmingly voted to accept the plan;

---

[16] The Second Circuit has held that "A nondebtor release in a plan of reorganization should not be approved absent the finding that ***truly unusual circumstances*** render the release terms important to success of the plan." *Metromedia Fiber Network*, 416 F.3d at 143 (emphasis added).  Other circuits have employed similar restrictive language.  *E.g.*, *Behrmann v. Nat'l Heritage Found., Inc.*, 663 F.3d 704, 712 (4th Cir. 2011) ("we agree with Appellants that approval of nondebtor releases in this context should be granted ***cautiously and infrequently***") (emphasis added); *In re Ingersoll, Inc.*, 562 F.3d 856, 865 (7th Cir. 2009) (approving bar order as justified by "the unique circumstances of this case"); *In re Dow Corning*, 280 F.3d at 658 ("Because such an injunction is a dramatic measure to be used cautiously, we follow those circuits that have held that enjoining a non-consenting creditor's claim is only appropriate in 'unusual circumstances.'"); *In re Cont'l Airlines*, 203 F.3d at 212-13 (stating that nondebtor releases have been approved only in "extraordinary cases").

[17] A number of courts have held that all seven of the factors must be satisfied.  *E.g.*, *In re Cello Energy, LLC*, Case Nos. 10-04877-MAM-11, 10-04931-MAM-11, 10-04930-MAM-11, 2012 Bankr. LEXIS 1533, at *53 (Bankr. S.D. Ala. Apr. 10, 2012) ("Because P&W has not voted to accept the plan, all seven of the factors required for a release have not been met. Therefore, although the Court understands why B.e. Energy wants a release, the Court cannot grant one."); *In re SL Liquidating, Inc.*, 428 B.R. 799, 802 (Bankr. S.D. Ohio 2010) ("The varying positions of the parties as to which factor may be the most important reinforces this Court's interpretation of In re Dow Corning that, at least in the Sixth Circuit, all of the factors must be present and all the factors are important.").

(5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction;

(6) The plan provides an opportunity for those claimants who choose not to settle to recover in full;

(7) The bankruptcy court made a record.

*In re Dow Corning*, 280 F.3d at 658.

The six substantive factors are not satisfied here, *to wit:*.

(1)    Identity of Interest.  The Trustee has not contended that any of the Nevada Defendants has sought or is entitled to be indemnified by the Debtors with respect to the Term Lenders' claims.  Certainly, the entity defendants who are not covered by the D&O policies - FBR, TWC and TRLP – are not.  Moreover, "[i]t is well settled [in Florida] that a party cannot contract against liability for his own fraud."  *Oceanic Villas, Inc. v. Godson*, 148 Fla. 454, 458 (1941); *see also* Cal. Civ. Code § 1668.

(2)    Substantial Contribution to Reorganization.  This case is in chapter 7, and thus there will be no contribution to any reorganization.

(3)    Whether the injunction is essential for reorganization.  In *In re Optical Technologies, Inc.*, 216 B.R. 989, 994 (Bankr. M.D. Fla. 1997), the court held that the "unusual circumstances" test cannot be met where a chapter 11 plan of reorganization provides for total liquidation of the debtor.  This case is in chapter 7 and no part of the debtors' affairs were or will be reorganized.  Even if the prior Comprehensive Settlement Agreement could be analogized to a reorganization (which was not the case), that agreement did not hinge on the entry of the bar order now sought by the Trustee under the 9019 Motion – to the contrary, the CSA expressly preserved the Term Lenders' claims.

(4)    Whether the plan has been overwhelmingly accepted by the affected creditors.  Many of the Debtors' creditors other than the Term Lenders, such as the Contractors or the Title

Companies, have already released all independent claims that they may have against the Defendants. Such creditors cannot be fairly included in the class of persons affected by the bar order sought by the Trustee. Thus, the affected creditors are predominantly the Term Lenders – who overwhelmingly object to the proposed bar order. *See, e.g*., *In re GunnAllen Fin., Inc*., 443 B.R. 908, 913-914 (Bankr. M.D. Fla. 2011) (denying bar order where a "substantial number" of securities claimants opposed it and no claimant with valuable claims favored the settlement).

(5)    <u>Mechanism to pay all or substantially all of the claims affected by the bar order</u>. The 9019 Motion does not provide any mechanism to pay for any, let alone "substantially all," of the claims to be affected by the bar order. The Trustee does not propose to establish any specific settlement fund for the Term Lenders, much less a fund like those created in *Johns-Manville* or *A.H. Robins*, which were sized to achieve full payment of all claims channeled to those funds. *A.H. Robins*, 880 F.2d at 701 ($100 million plus excess coverage under $250 million policy provided for "payment in full" of affected claimants); *Johns-Manville*, 837 F.2d at 94 (objecting party could seek recovery against $770 million settlement fund). Courts have interpreted "substantially all" to require payment of at least 90% of the value of the claims. *E.g.*, *In re Am. Family Enters.*, 256 B.R. 377, 392 (D.N.J. 2000) (court approved a release where a class was being paid 90% of their claims and two other classes were getting 100%). In contrast, courts have rejected releases based on channeling injunctions that provide for a recovery of only 60%-70%. *E.g., In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 778 (Bankr. N.D. Tex 2007). Because no fund will be established to pay the Term Lenders' independent claims asserted in the Nevada Action, this factor is not remotely satisfied at all.

(6)    <u>Provision for Non-Settling Claimants to Recover In Full</u>. The Settlement Agreement does not provide the Term Lenders with any opportunity to recover in full the independent claims asserted against the Defendants in the Nevada Action. To the contrary, the

bar order under the Settlement Agreement will have the effect of releasing and discharging the Term Lenders' claims in the Nevada Action and enjoin them from seeking relief against those defendants.

Contrary to the Trustee's suggestion, the Term Lenders' pre-existing and independent claims against Bank of America are not a source of recovery provided under the proposed Settlement Agreement. Those claims are separate and distinct from those asserted in the Nevada Action. The mere fact that the Trustee does not seek to prevent the Term Lenders from pursuing those claims, without more, is not sufficient to meet this factor. In *Johns-Manville*, the objecting claimant retained its right to pursue claims against parties other than the insurer that funded the settlement, but the Second Circuit's approval was premised on the existence of the $770 million settlement fund to satisfy that claim. *Johns-Manville*, 837 F.2d at 91. No such fund is proposed here.

Thus, even if the bar order requested by the Trustee were being sought in a chapter 11 proceeding, this Court would not be empowered to approve the bar order, based on the failure of the Trustee to demonstrate that all of the *Dow Corning* factors are satisfied.

## IV.    CONCLUSION

For all of the above reasons, the court should determine that, as a threshold matter, it does not have the power or authority to enter the bar order requested by the Trustee. The Term Lenders' claims in the Nevada Action are "truly independent claims" which the Trustee has no standing to pursue, and which do not seek to recover any property of the estate. Accordingly, the Trustee is not entitled, even based on a showing of "unusual circumstances," to request a bar order in this chapter 7 proceeding. And even if this were a chapter 11 proceeding in which the *Dow Corning* factors were available, the Trustee has failed to show that those factors support the entry of a bar order.

Based on the foregoing arguments and authorities, the Term Lenders' respectfully request entry of an order or decision determining that the Court lacks the power and authority to enter the proposed bar order and for such other relief as may be just and appropriate.


Dated:  July 10, 2014                    JONES DAY


                                         By:  */s/ Sidney P. Levinson*
                                              Bruce S. Bennett (admitted *pro hac vice*)
                                              Sidney P. Levinson (admitted *pro hac vice*)
                                              555 South Flower Street, 50th Floor
                                              Los Angeles, CA 90071
                                              Telephone:  (213) 489-3939
                                              Facsimile:  (213) 243-2539
                                              bbennett@jonesday.com
                                              slevinson@jonesday.com

                                                        -and-

                                              Joshua D. Morse (admission *pro hac vice* to
                                              be requested)
                                              555 California Street, 26th Floor
                                              San Francisco, CA 94104
                                              Telephone:  (415) 626-3939
                                              Facsimile:  (415) 875-5700
                                              *jmorse@jonesday.com*

                                                        -and-

AKERMAN LLP (formerly known as Akerman Senterfitt LLP or Akerman Senterfitt)


By: */s/ Michael I. Goldberg*
   Michael I. Goldberg (FL Bar No. 886602)
   Las Olas Centre II
   One Southeast Third Avenue, 25th Floor
   Miami, Florida 33131-1714
   Telephone: (305) 374-5600
   Facsimile: (305) 374-5095
   *michael.goldberg@akerman.com*

      -and-

By: */s/ Joanne Gelfand*
   Joanne Gelfand (FL Bar No. 515965)
   One Southeast Third Avenue, 25th Floor
   Miami, Florida  33131-1714
   Telephone:  (305) 374-5600
   Facsimile:  (305) 982-5694
   *joanne.gelfand@akerman.com*

   *Counsel for the Term Lenders*

LAI-3218402v7