

**ORDERED in the Southern District of Florida on August 14, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| In re:<br><br>FONTAINEBLEAU LAS VEGAS HOLDINGS, LLC, et al.,<br><br>    Debtors. | Chapter 7<br><br>Case No. 09-21481-BKC-AJC<br><br>*Jointly Administered* |
|---|---|

**ORDER DISAPPROVING SUPPLEMENTAL APPLICATIONS
FOR ALLOWANCE FILED BY EXAMINER'S COUNSEL**

THESE CASES initially were filed under Chapter 11 of the Bankruptcy Code. During the Chapter 11 phase, this Court ordered the appointment of an examiner, and the United States Trustee appointed Jeffrey R. Truitt (the "**Examiner**"). The Examiner employed the law firms Stutman, Treister & Glatt, P.C. ("**Stutman Treister**"), and GrayRobinson, P.A. ("**GrayRobinson**," and, together with Stutman Treister, the "**Examiner's Professionals**") to serve as his counsel in the Chapter 11 cases. The

Examiner and the Examiner's Professionals received compensation for their services in connection with the Examiner's responsibilities in the Chapter 11 case. After the Court converted these cases to Chapter 7, the Examiner and the Examiner's Professionals filed final applications for compensation and expense reimbursement [ECF Nos. 2569, 2571, and 2573] for the services they performed during the Chapter 11 phase. This Court approved the final applications, and the Trustee paid the Examiner and the Examiner's Professionals the last and final installment for their Chapter 11 services.

The services of an examiner and his or her professionals terminate upon conversion to Chapter 7. In these cases, the services for which the Examiner was appointed did in fact end at conversion. During the course of the cases, however, a lien-priority dispute emerged between the Debtors' financial lenders (the "**Term Lenders**") and the contractors, suppliers, and materialmen who provided goods and services to the Fontainebleau project in Las Vegas and asserted mechanic's lien claims (the "**Statutory Lienholders**"). The Statutory Lienholders objected to the Debtors' use of cash collateral under § 363 of the Bankruptcy Code and subsequent financing under § 364. The Statutory Lienholders appealed from this Court's orders authorizing use of cash collateral and postpetition financing. In an order entered after the conversion of the cases to Chapter 7, the District Court reversed this Court's orders and directed this Court to order disgorgement of professional fees until a determination could be made as to the relative priorities of the liens of the Term Lenders and the Statutory Lienholders [Case No. 09-23683-CIV-ALTONAGA, ECF No. 156]. In the face of that directive, the Term Lenders and numerous professionals, including the Examiner, through the Examiner's

Professionals, filed appeals to the Eleventh Circuit Court of Appeals from the District Court's order. The issues in those appeals were ultimately resolved by an agreement among all the parties [ECF No. 4129-1] (the "**Comprehensive Settlement Agreement**"), which was approved by this Court [ECF No. 4185].

Although the Examiner's Professionals now have been paid in full for their services as counsel to the Examiner, the firms logged additional postconversion services in prosecuting appeals through the Eleventh Circuit Court of Appeals. The fees incurred in prosecuting the Examiner's appeal to the Eleventh Circuit are the subject of the instant applications before the Court seeking allowance of fees and expenses.

The issue before the Court is whether the Bankruptcy Code provides a statutory basis for the allowance of fees to an examiner's lawyer for work done after the cases converted to Chapter 7 and the examiner's services terminated. In addition, if those services are not compensable under the provisions of § 330, are those same amounts allowable as administrative expenses under § 503? As explained herein, under the circumstances of these cases, the Court can find no statutory basis for allowance of postconversion fees and expenses to the Examiner's Professionals. Further, although the services performed after the conversion to Chapter 7 may have been well advised to protect the fees of the Examiner's Professionals and other Chapter 11 professionals in these cases, those services did not provide the necessary benefit to the estate to support allowance as an administrative expense.

## I. BACKGROUND[1]

*A.    Examiner's Appointment and Activities*

On June 9, 2009, certain of the Debtors filed voluntary petitions for relief, and on November 25, 2009, others of the Debtors filed voluntary petitions, all under Chapter 11 of the Bankruptcy Code. On October 14, 2009, while these cases were pending under Chapter 11, the Court ordered the appointment of an examiner (the "**Examiner Appointment Order**") [ECF No. 770]. The Examiner's duties, as set forth in the Examiner Appointment Order, related to the sale process and procedures. [*See* ECF No. 770, ¶¶ 1-3.] However, on November 6, 2009, during the Chapter 11 phase, the Court modified the Examiner's appointment to also include the defense of appeals of the Examiner Appointment Order. [ECF No. 932]. No further modifications to his appointment were made.

In addition to the scope of the Examiner's services, the Examiner Appointment Order addressed the source of his compensation, providing that "[t]he Examiner, Examiner's expenses and the expense of the Examiner's professionals shall be a first priority and either way will be superior to the disputed liens and mortgage claims on the Debtors' property" [ECF No. 770, ¶ 8]. The Examiner's Professionals were employed to represent the Examiner in fulfillment of his duties under the Employment Order, *nunc pro tunc* to October 16, 2009 [ECF Nos. 931, 1353]. The Statutory Lienholders appealed from the Examiner's Appointment Order and certain cash collateral and debtor-in-

---

[1] The following background is merely a summary and recitation of pleadings and documents filed in the Court's record. As such, the Court takes judicial notice of the record and all pleadings and documents filed therein.

4

possession financing orders to the District Court, claiming their liens were senior to the interest of estate professionals, including the Examiner and the Examiner's professionals. The orders appealed from authorized use of funds against which the Statutory Lienholders claimed a senior lien to, among other things, pay administrative expenses including professional fees of the Examiner and the Examiner's Professionals. Notwithstanding the appeal, the Examiner's Professionals received payment for their fees incurred.

The Court approved the sale of the Fontainebleau Las Vegas project on January 29, 2010 [ECF No. 1671] and the sale closed on February 18, 2010 [ECF No. 1746]. No appeal of the sale order was filed. On April 12, 2010 (the "**Conversion Date**"), the Court converted the Debtors' cases from Chapter 11 to Chapter 7 [ECF No. 1944]. Soneet R. Kapila was appointed as the Chapter 7 trustee (the "**Trustee**") [ECF No. 1973]. The Examiner was not reappointed following the Conversion Date; and, the Examiner's Professionals were not retained by the Trustee as estate professionals following the Conversion Date.

On July 14, 2010, several months after the Conversion Date, the District Court on appeal remanded these cases. In its mandate, the District Court directed the Bankruptcy Court to recover funds that had been distributed—in effect ordering disgorgement of funds received—and to determine the priority of liens asserted by the group of Term Lenders and the Statutory Lienholders. The District Court said, in pertinent part:

> At bottom, the financing orders decreased the value of the Statutory Lienholders' interests in the Project by the amount of the priming lien granted to Icahn Nevada. Under those orders, funds were disbursed to the Term Lenders, the Examiner, and other

5

> professionals. Although the bankruptcy court cannot recover all the funds, it may and must recover the funds distributed to the Term Lenders, the Examiner, and the professionals pending a determination of the issue of priority — not to exceed any amount the Statutory Lienholders have requested. Any compensation to which the Examiner and other professionals may be entitled must be made in accordance with law.

[Remand Order, Case No. 09-23683-CIV-ALTONAGA, ECF No. 156, p. 67.]

Multiple parties filed notices of appeal from the Remand Order, including the Term Lenders, the Statutory Lienholders, the Examiner, the Examiner's Professionals, and the Trustee. On appeal to the Eleventh Circuit, the Trustee, the Examiner, and the Examiner's Professionals filed joint briefs. The appeal was briefed and argued, but ultimately was not decided because the parties settled. Instead, the Trustee, the Term Lenders, the Statutory Lienholders, and other parties (not including the Examiner or the Examiner's Professionals) entered into the Comprehensive Settlement Agreement (the "**CSA**"), which was approved by this Court on November 21, 2013 [ECF No. 4185]. The CSA allocated the sale proceeds and other available funds among the Term Lenders and the Statutory Lienholders and resolved disgorgement issues.

### B.     *Fee Applications of Examiner's Professionals*

Following the Conversion Date, and after the entry of the Remand Order, the Examiner's Professionals filed their final fee applications on August 25, 2010, for services rendered from October 16, 2009, through April 11, 2010 (the day before the Conversion Date) [ECF Nos. 2571 and 2573]. After a hearing on April 2, 2014, this Court approved the Examiner's Professionals' final fee applications [ECF No. 4344]. Then, two and a half years later, on October 27, 2016, Stutman Treister filed its

supplemental fee application seeking $449,796.00 for services rendered and $45,938.04 for expense reimbursement for the application period April 12, 2010, through February 19, 2014 [ECF No. 5038] (the "**Stutman Treister Supplemental Application**").  Also on October 27, 2016, GrayRobinson filed a supplemental fee application seeking $11,317.50 for services rendered and $1,280.74 for expense reimbursement for the application period from April 12, 2010, through November 13, 2013 [ECF. No. 5039] (the "**GrayRobinson Supplemental Application**" and, together with the Stutman Treister Supplement, the "**Supplemental Applications**").

The Examiner's Professionals seek compensation based upon two alternative theories under the Bankruptcy Code.  First, the Examiner's Professionals seek compensation under §§ 328 and 330 as reasonable compensation for actual, necessary services rendered by professional persons employed by the estate.  Second, and alternatively, the Examiner's Professionals seek compensation under §§ 105 and 503(b)(1).  The Examiner's Professionals argue that their services contributed in part to an environment in which a settlement could be reached, which eventually occurred through the approval of the CSA.  The Examiner's Professionals also argue that their postconversion services prevented the Court from having to order disgorgement of fees already paid to the Examiner's Professionals and other Chapter 11 professionals.

The Trustee filed a response to the Supplemental Applications [ECF No. 5153] (the "**Trustee's Response**").  In his response, the Trustee does not seek to derogate or disparage the work done by the Examiner's Professionals in their joint prosecution of the appeal to the Eleventh Circuit.  The Trustee acknowledges the cooperation, sharing of

7

information, and joint efforts among his professionals and the Examiner's Professionals. However, the Trustee argues that no statutory basis allows for compensation to an examiner's professional for postconversion services on appeal to protect the award and distribution of their fees. The Trustee maintains that following conversion to a Chapter 7, the Examiner ceased to serve and any of the purposes for which the Examiner was appointed ceased to exist. Moreover, such postconversion services on appeal did not confer any benefit upon the estate that would enhance the estate or benefit general unsecured creditors. In fact, the burden of allowance of the Examiner's Professionals' applications would be on the backs and to the detriment of general unsecured creditors. Likewise, the United States Trustee filed an objection to the Supplemental Applications [ECF No. 5154] (the "**United States Trustee's Objection**"), and JMB Capital Partners Master Fund, L.P. joined in the Trustee's Response and the United States Trustee's Objection [ECF No. 5155] ("**JMB's Response**").

The fees and costs for which approval and payment is sought by the Supplemental Applications are services performed by the Examiner's Professionals on behalf of the Examiner in the District Court appeal and the Eleventh Circuit appeal following the Conversion Date. The Supplemental Applications are the matters at issue. The Court conducted a hearing on the Supplemental Applications, the Trustee's Response, the United States Trustee's Objection, and JMB's Joinder on May 10, 2017, at 2:30 p.m.

## II. CONCLUSIONS OF LAW

The Court finds no statutory authority to justify approval of the Supplemental Applications. First, the Court cannot approve the compensation requested as reasonable

8

compensation for actual and necessary services under §§ 328 and 330. The Examiner's Professionals were not employed following the Conversion Date, and their services were not performed primarily for the benefit of the estate. Second, the services are not allowed under § 503(b), and the services did not help to preserve assets of the estate sufficient to justify allowance as an administrative expense. Because the Supplemental Applications do not satisfy either basis for allowance and payment, they are not approved.

### A. *The Examiner's Professionals were not employed postconversion and cannot be compensated under § 330.*

The Examiner's Professionals were employed and served during the Chapter 11 phase of these cases and were not employed after the Conversion Date. The services therefore were not performed by a professional person employed by the estate. The conversion terminated the appointment of the Examiner and the employment of his professionals. Section 348 plainly provides that upon conversion of a case from one chapter to another, the service of any trustee or examiner serving preconversion is terminated. 11 U.S.C. § 348(e) ("Conversion of a case under section 706, 1112, 1208, or 1307 of this title terminates the service of *any trustee or examiner* that is serving in the case before such conversion.") (emphasis added).

The Court did not reappoint the Examiner in the converted cases. The Court can find no statutory basis for the appointment or retention of an examiner in a case after conversion to Chapter 7, and it is undisputed that the Examiner's Professionals were not re-employed in these cases after the Conversion Date. 11 U.S.C. § 327(f).

Following conversion, § 330 of the Bankruptcy Code authorizes fees for only those attorneys employed as professional persons by the trustee with court approval

9

pursuant to § 327, even if the attorney's employment were to be approved before the conversion. *Lamie v. United States Trustee,* 540 U.S. 526 (2004) (bankruptcy statute governing compensation of professionals does not allow Chapter 7 debtor's attorney in case converted from Chapter 11 to be compensated from estate, unless attorney is employed by trustee with approval of bankruptcy court). An estate fiduciary, whose duties are terminated as a result of conversion, and counsel for that fiduciary, are not entitled to postconversion fees unless the employment is authorized. *In re Kuhn*, 337 B.R. 668, 676 (Bankr. N.D.Ind. 2006) ("The Court's order converting Kuhn's Chapter 7 case to a case under Chapter 13 was entered on March 23, 2005. At that point, compensable services of the attorney for the Chapter 7 Trustee terminated."); *In re Wells*, 87 B.R. 732, 737 (Bankr. N.D.Ga. 1988) (legal fees of attorney for trustee in converted case "were not authorized. He acted as a volunteer."); *In re Roberts,* 80 B.R. 565 (Bankr. N.D.Ga. 1987).

        Additionally, the postconversion services of the Examiner's Professionals were not "necessary and beneficial to the estate." The District Court's decision mandated that this Court consider disgorgement of compensation paid to the professionals, including the Examiner's Professionals. As such, the Examiner and the Chapter 11 professionals, including the Examiner's Professionals, had their own direct and specific pecuniary interests in the appeals they filed and prosecuted. The Term Lenders, Debtors' counsel, and counsel to the Official Committee of Unsecured Creditors (the "**Committee**") also had their own interests and pursued their own separate appeals. The Trustee, the only party authorized and empowered to act on behalf of the bankruptcy estate, filed a notice

of appeal and joined in the Examiner's brief, but the Trustee did not employ the Examiner's Professionals to draft the brief on his behalf.

The Examiner's Professionals argue that their services prevented the implementation of the District Court Order and created the benefits to the estate in the CSA. Those potential effects are commendable but fail to meet the standards for benefit to the estate. First, the negative effects of the District Court Order—disgorgement pending a determination of the priority of liens—would fall on the Term Lenders, the Chapter 11 professionals, and the Examiner's Professionals as the parties required to disgorge. Similarly, the benefits to the estate in the CSA flowed to the Term Lenders and the Statutory Lienholders. Of the funds disbursed under that agreement, $90 million went to the Term Lenders, $85 million went to the Statutory Lienholders, and $350,000 was retained in the estate. Disgorgement claims against the Chapter 11 professionals and the Examiner's Professionals were waived. The CSA was a beneficial milestone, but it allocated value across the estate. It did not create or preserve value, and $8 million of the value identified by the Examiner's Professionals went to eliminating the disgorgement claims against the professionals.

In arguing their entitlement to postconversion compensation in connection with the appeal, the services of the Examiner's Professionals are not distinguishable from the postconversion services of other professionals and other parties that took appeals from the District Court Order, including the Debtors, the Debtors' counsel, the Committee's counsel, and the Term Lenders. The appeals and subsequent mediation and settlement were part of the landscape for the compromise and the CSA, but no one entity's

involvement in that process rises to the level of overriding the compensation standards of § 330.

B.  *The Examiner's Professionals are not entitled to Chapter 7 administrative expense claims.*

Failing to qualify for postconversion compensation under the standards of § 330, the Examiner's Professionals alternatively seek administrative expense allowance of their fees as "actual, necessary costs and expenses of preserving the estate" under § 503(b). As the applicants, the Examiner's Professionals have the burden to demonstrate entitlement to an administrative expense claim. *E.g.*, *In re Concrete Prod., Inc.*, 208 B.R. 1000, 1006 (Bankr. S.D. Ga. 1996) (citations omitted).

As an initial matter, a request for allowance of an administrative expense cannot be a replacement for a fee application under § 330. *Id.* at 1010. Thus, even if the Court were to consider § 503(b) as an alternative basis for compensation to § 330, the list of administrative expense triggers does not include the type of claim asserted by the Examiner's Professionals. The Examiner's Professionals argue that they have made a substantial contribution to the case under § 503(b)(4), which allows for an administrative expense to counsel for a creditor who has made a substantial contribution in a case under Chapter 9 or Chapter 11. Paragraph (4) of § 503(b), however, is not applicable in a Chapter 7 case. "Despite the expansiveness with which the administrative expense category may be treated, such judicial construction is limited by the countervailing doctrine that section 503 priorities should be narrowly construed to maximize the value of the estate preserved for the benefit of all creditors." *In re Colortex Indus., Inc.*, 19

12

F.3d 1371, 1377 (11th Cir. 1994) (granting interest on postpetition trade claim administrative expense priority for period before conversion to Chapter 7).

To become entitled to a substantial contribution claim, the Examiner's Professionals argue that the limiting language in the specific subsection does not apply and that the statutory language is broad enough to include counsel for a terminated examiner making a substantial contribution in a Chapter 7 case. In support of their argument, the Examiner's Professionals rely on *In re Connolly N. Am., LLC*, 802 F.3d 810, 816 (6th Cir. 2015), in which the Sixth Circuit held that a court can allow a substantial contribution administrative expense claim in a Chapter 7 case, notwithstanding the plain language of § 503(b)(3)(D). However, the *Connolly* case is inapposite here. *Connolly* is not binding on this Court and conflicts with the majority view on the issue. *Id*. at 822–23 ("Other circuits and bankruptcy appellate panels—not to mention the vast majority of district and bankruptcy courts—have held expressly that substantial contributions in a Chapter 7 proceeding are not administrative expenses under § 503(b).") (O'Malley, J., dissenting) (citations omitted).

Courts in the Eleventh Circuit have been much more circumspect in their analysis of administrative expense priority claims. *E.g.*, *In re Concrete Prod., Inc.*, 208 B.R. 1000, 1006 (Bankr. S.D. Ga. 1996) ("The claim of priority should be founded on a strict statutory basis; if the claim does not derive from the language of Section 503, it must fail."). Florida bankruptcy courts are among those who have rejected the application of § 503(b)(4) in a Chapter 7 case. *See Connolly*, 802 F.3d at 823 n.2 (collecting cases); *In re Engler*, 500 B.R. 163, 174 (Bankr. M.D. Fla. 2013) (Williamson, J.) ("The Court,

however, joins the other courts that have recognized that '[w]hen a subsection directly addresses the type of administrative expense sought, the restrictions in it cannot be avoided by appealing to the non-exclusive nature of § 503(b).'") (citations omitted). The Court declines to adopt the minority view and finds that it cannot allow substantial contributions in Chapter 7 under the statute as enacted and the facts of the cases at bar.

Even if this Court were to follow *Connolly* and find that a substantial contribution could be made by a creditor in chapter 7, the facts here are distinguishable from *Connolly*. The Examiner is not a creditor, and thus fails the additional element of the statute. Also, in *Connolly*, the creditor's services related to removal of a Chapter 7 trustee whose gross negligence led to dismissal of certain estate litigation claims with prejudice. Here, the Examiner's Professionals were not performing services necessary to fill a void left by a trustee breaching its obligations to the estate. This conclusion is not altered by the fact that the Examiner and the Trustee were working cooperatively and in harmony to prosecute the appeal to the Eleventh Circuit.

The catch-all provision of § 503(b)(1) similarly does not encompass the type of claim at issue here. The benefit to the estate cannot be incidental to the benefit of the person providing the services. *E.g.*, *Ins. Co. of N. Am. v. Sullivan*, 333 B.R. 55, 67–68 (D. Md. 2005) (postpetition attorney's fees incurred by unsecured creditor not allowable as administrative expenses because the fees had been incurred, not to preserve the estate, but to preserve its own interest in the estate); *In re Commc'ns Mgmt. & Info., Inc.*, 172 B.R. 136, 143 (Bankr. N.D. Ga. 1994); *In re Charter Co.*, 52 B.R. 267, 271 (Bankr. M.D. Fla. 1985).

The Examiner's Professionals had a valid, vested, pecuniary interest in preserving the Court's orders, in light of the District Court order requiring disgorgement of fees paid to the Examiner and the Examiner's Professionals.  Had the parties not reached agreement on the CSA and the District Court order remained in effect, the bankruptcy cases would have proceeded with the Trustee pursuing disgorgement and administering remaining assets—an outcome which would hit professionals the hardest.  In the end, the Trustee benefitted by not having to pursue disgorgement claims, but so too the Examiner's Professionals benefitted as they did not have to disgorge.

Importantly, the services did not preserve the estate.  Contrary to the argument of the Examiner's Professionals [that the funds on hand as of the Conversion Date was what they preserved], those funds were arguably unexpended proceeds of DIP financing, and were not subject to disgorgement, or in jeopardy of dissipation, waste, or other loss.  The prosecution of the appeal of the District Court order preserved the status quo, but did not preserve the estate.

The appeal at the Eleventh Circuit was never decided.  The resulting settlement in the form of the CSA provided that the disputed funds were to remain property of the bankruptcy estate. The appeal did not preserve those funds.  The Trustee retained the funds until the CSA consensually resolved the issue.

C.     *The Supplemental Applications are not timely.*

The Examiner's Professionals seek to supplement final fee applications more than six years after they were filed and more than two years after they were approved.  Section 503(a) provides "[a]n entity may timely file a request for payment of an administrative

15

expense, or may tardily file such a request if permitted by the court for cause." 11 U.S.C. § 503(a). "Even when the court has not set a deadline for filing of a request for payment of administrative expenses, 'timeliness' under § 503(a) provides a judge with the discretion to deny a request for payment of administrative expenses filed so late in the case as to risk prejudicing other, more attentive, parties in interest. Such an untimely request is not simply barred; rather, the court may consider the cause of the late filing." *In re Wiley*, No. 10–12007–SDB, 2014 WL 294330, at *5 (Bankr. S.D. Ga. Jan. 24, 2014).

The Examiner's Professionals were compensated for services performed during the pendency of Chapter 11 [*see* ECF No. 4344]. "Equity courts in particular are guided in their exercise of jurisdiction by maxims such as *Equity Aids the Diligent*." *In re Higginbotham*, 111 B.R. 955, 961 (Bankr. N.D. Okla. 1990); accord *In re Hall*, 14 B.R. 186, 188 (Bankr. S.D. Fla. 1981) ("Equity aids only the diligent"). The supplement to a final fee application two years after the application was approved is not timely.

### III. Conclusion

The Examiner's Professionals seek compensation for postconversion services in connection with an appeal of an order requiring disgorgement of fees paid. The fees are not compensable under §§ 328 and 330 because the Examiner's Professionals were not employed following the Conversion Date, and their services were not performed primarily for the benefit of the estate. The fees are not compensable under §§ 105 and 503(b)(1) because the services did not create, enhance, or preserve assets of the estate. Despite an amorphous contribution to transformation from a litigious appellate

16

atmosphere to a settlement environment from which the CSA emerged, that type of involvement did not provide a tangible benefit to the estate sufficient to meet the Examiner's Professionals' burden to prove entitlement to administrative expenses under these circumstances.

Because the fees requested by the Examiner's Professionals satisfy neither the requirements of § 330 of the Bankruptcy Code for allowance as professional compensation nor the requirements of § 503 for allowance as administrative expenses, the Supplemental Applications will be disapproved.  Accordingly, it is

**ORDERED AND ADJUDGED** that the Stutman Treister Supplemental Application and the GrayRobinson Supplemental Application are DISAPPROVED.

###

Copies furnished to:

Soneet R. Kapila, C.P.A., Trustee (skapila@kapilamukamal.com)
Russell M. Blain, Esquire (rblain@srbp.com)
Frank P. Terzo, Esquire (fterzo@broadandcassel.com)
K. John Shaffer, Esquire (johnshaffer@quinnemanuel.com)
Eve H. Karasik, Esquire (ehk@lnbyb.com)
Jeffrey Resler, Esquire (jresler@stutman.com)
Daniel L. Gold, Esquire (dgold@goldbergsegalla.com)
Paul J. Battista, Esquire (pbattista@glb-law.com
Johanna Armengol, Esquire (Johanna.armengol@usdoj.gov)